## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
## MCALLEN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | **BANKRUPTCY CASE NO. 10-70594** |
| **JOSE TREVINO, SR. and** | § | |
| **TERESA TREVINO** | § | **CHAPTER 13** |
| | § | |
| **DEBTORS** | § | |
| | § | |
| **JOSE TREVINO AND** | § | |
| **TERESA TREVINO,** | § | |
| | § | |
| **PLAINTIFFS,** | § | |
| | § | |
| **v.** | § | **ADVERSARY NO. 13-07031** |
| | § | |
| 1) **HSBC MORTGAGE SERVICES,** | § | |
|    **INC.,** | § | |
| | § | |
| 2) **U.S. BANK TRUST, N.A. as Trustee** | § | |
|    **for LSF8 MASTER** | § | |
|    **PARTICIPATION TRUST, and** | § | |
| | § | |
| 3) **CALIBER HOME LOANS, INC.,** | § | |
| | § | |
| **DEFENDANTS.** | § | |

## PLAINTIFFS' SECOND AMENDED COMPLAINT

TO THE HONORABLE UNITED STATES BANKRUPTY JUDGE:

COME NOW Jose and Teresa Trevino ("Plaintiffs" or "Debtors"), and file this their Second Amended Complaint against the above-named Defendants, HSBC Mortgage Services, Inc., U.S. Bank Trust, N.A. as Trustee for LSF8 Master Participation Trust, and Caliber Home Loans, Inc., and in support hereof Plaintiffs respectfully show the Court as follows:

## I. JURISDICTION, AUTHORITY AND VENUE

1.      This Court has jurisdiction of this adversary proceeding pursuant to 28 U.S.C. § 1334 and § 157(b) and (c).

2.      This adversary proceeding relates to the Chapter 13 case of the Debtors, *In re Jose Trevino and Teresa Trevino,* Case Number 10-70136, filed in the United States Bankruptcy Court for the Southern District of Texas, McAllen Division.

3.      Pursuant to Fed. R. Bankr. P. 7008(a), the Plaintiffs state that this complaint is a core proceeding within the meaning of 28 U.S.C. § 157.  Plaintiffs consent to the entry of final orders or judgment in this adversary proceeding by the bankruptcy judge if it is determined that the bankruptcy judge, absent consent of the parties, cannot enter final orders or judgment consistent with Article III of the United States Constitution.

4.      Venue is proper in this district pursuant to 28 U.S.C. § 1409 because a substantial portion of the events giving rise to Plaintiffs' claims occurred in this district, Plaintiffs filed for bankruptcy protection in this district, Defendants participated in Plaintiffs' bankruptcy proceeding in this district, and Defendants transact business in this district.

5.      Plaintiffs' action for declaratory relief is authorized by 28 U.S.C. §§ 2201 and 2202.

## II.  <u>PARTIES</u>

6.      The Plaintiffs in this case are the Debtors in Case Number 10-70591, filed in the United States Bankruptcy Court for the Southern District of Texas, McAllen Division.

7.      Defendant HSBC Mortgage Services, Inc. ("HSBC") is a foreign for-profit corporation doing business in Texas, and can be served with process by serving its agent for service of process, C.T. Corporation System, via certified mail, at 1999 Bryan St., Suite 900, Dallas, TX 75201.

8.      Defendant U.S. Bank Trust, N.A. as Trustee for LSF8 Master Participation Trust ("U.S. Bank Trust"), is a foreign corporate fiduciary that can be served with process by serving its agent for service of process, Elizabeth Becker, via certified mail, at 350 North Robert Street,

St. Paul, MN 55101.

9.      Defendant Caliber Home Loans, Inc. ("Caliber") is a foreign for-profit corporation that can be served with process by serving its agent for service of process, C.T. Corporation System, via certified mail, at 1999 Bryan St., Suite 900, Dallas, TX 75201.

### III.  INTRODUCTION

10.     In the underlying bankruptcy proceeding, the Chapter 13 Trustee notified Defendant HSBC that the Trustee would be paying pre-petition real estate taxes pursuant to the Debtor's Chapter 13 plan.[1]

11.     On July 24, 2013, HSBC filed a Fed. R. Bankr. P. 3002.1(c) Notice of Post-Petition Mortgage Fees, Expenses and Charges. Docket No. 82. Attached hereto as Ex. O is a true and correct copy of the 3002.1(c) Notice. The 3002.1(c) Notice is treated as a supplement to HSBC's proof of claim and will sometimes be referred to herein as "Claim No./Docket No. 82" or the "3002.1 Notice."

12.     HSBC's 3002.1(c) Notice filed on July 24, 2013 alleges that HSBC paid 2010 county taxes on April 22, 2013 in the amount of $2,933.83. The total "post-petition fees, expenses and charges" listed in HSBC's 3002.1(c) Notice is $4,450.15, and includes $1,516.32 allegedly paid for 2012 taxes. In fact, at the time HSBC filed the 3002.1 Notice, the taxing authorities had refunded all or most of the 2010 taxes that HSBC advanced on April 22, 2013.

13.     HSBC now admits that Hidalgo County returned "$2,835.66" of the $4050.15 referenced in the 3002.1 Notice on June 7, 2013. *See* Docket No. 38, p.8, n.16.[2] However,

---

[1] Debtors did not list the taxing authorities as being paid through the plan, but that was not intentional. The taxing authorities filed proofs of claim, those claims were allowed, and the Trustee began paying those claims in the manner in which she always pays pre-petition taxes: as secured claims. Debtors did not object to the allowance of the taxing authorities' claims, and the taxes are being paid by the Trustee.

[2] On information and belief, Hidalgo County actually refunded $2,867.39, which HSBC received on or about June 24, 2013, and $93.27, which HSBC received on or about June 27, 2013. These sums add up to $2,960.66, not the

HSBC claimed that it sent in another check for $2,835.66 on July 11, 2013.  *See id.*

14.     Hidalgo County never cashed the check that HSBC sent on July 11, 2013, which HSBC now acknowledges.  Indeed, a document HSBC recently produced shows that the back of that check has a stamp of "ENDORSEMENT CANCELLED", and the online records of the taxing authorities do not show any receipt of the $2,835.66 that was sent by HSBC on about July 11, 2013.

15.     Thus, HSBC filed a 3002.1 Notice, under penalty of perjury, seeking that the Trustee require Plaintiffs to pay HSBC, from property of the estate, $2,933.83 that ***was not owed***.

16.     HSBC's 3002.1(c) Notice started a chain reaction that would have destroyed the Plaintiffs' bankruptcy case and their ability to save their home from foreclosure.  The Chapter 13 Trustee filed a motion to dismiss the Debtors' bankruptcy case because payment of HSBC's 3002.1(c) Notice would cause the Plaintiffs' Chapter 13 bankruptcy plan to be deficient.  But for this lawsuit and emergency measures taken by Plaintiffs' counsel, the 3002.1 Notice would have caused the Debtors' case to be dismissed, and then Defendants probably would have foreclosed on the Plaintiffs' home, and Plaintiffs would have lost their home for moneys not actually owed.

17.     Plaintiffs are informed and believe, and therefore allege that HSBC has autonomous or semi-autonomous procedures for paying property taxes, including pre-petition taxes, and generating referrals for its counsel to file 3002.1 notices.  It appears that as soon as a check for the taxes is issued, a referral is made for a 3002.1 notice to be filed.  When it filed the 3002.1 Notice, HSBC had, upon information and belief, no procedure to prevent the filing of 3002.1 notices for amounts that were paid out and subsequently refunded to it, nor did it have any procedure for withdrawing 3002.1 notices that were filed in error.

18.     On information and belief, neither HSBC nor its counsel have systems to ensure

---

$2,835.66 alleged by HSBC.  *See, e.g.*, Docket No. 38, p. 8, n.16.

that the 3002.1 notices they file are correct when they are filed, even though such notices are filed under penalty of perjury.

19.     On information and belief, HSBC either lacks any policy for notifying its successor-in-interest (here, Defendant Caliber) of any amounts erroneously assessed to borrowers' accounts by HSBC prior to transfer of servicing, or, in the alternative, if such a policy exists, HSBC's practice is not to comply with such policy.

20.     In addition to constituting a violation of the automatic stay, Defendant's actions constitute an abuse of process.  Fed. R. Bankr. P. 3002.1 was enacted to halt mortgage servicer abuses that had been plaguing the bankruptcy system, and to ensure that debtors emerge with a current mortgage at the end of their Chapter 13 plan, as the Bankruptcy Code intended.  In this case, HSBC's actions have the effect of wrongfully placing the Debtors "in default" of their plan, and therefore in peril of having their bankruptcy case dismissed and losing their home to foreclosure.

21.     Defendant HSBC and U.S. Bank knew that the 2010 taxes that it sent on April 22, 2013 had been returned when it filed the 3002.1 Notice on July 24, 2013.  Yet, HSBC never amended its 3002.1 Notice to drop the claim for the 2010 taxes.

22.     Instead, on November 20, 2013, HSBC transferred its claim to Defendant Caliber, which continues to insist that it is entitled to collect the $2,933.83 that Plaintiffs do not owe.

23.     Mortgage servicers cannot be allowed to use the cover of Fed. R. Bankr. P. 3002.1(c) to steal money from the estate, deprive legitimate creditors of being paid on their claims in bankruptcy, violate the automatic stay, and jeopardize debtors' chance to obtain the fresh start promised by Chapter 13 of the Bankruptcy Code.

24.     Likewise, debtors should not be saddled with the challenge and expense of forcing mortgage servicers, through motions and lawsuits, to comply with the Bankruptcy Code

and Rules, and other state and federal laws.

25.     In this case, in addition to providing whatever relief is available and appropriate pursuant to 11 U.S.C. § 362(k) and Fed. R. Bankr. P. 3002.1, the Court can and should remedy Defendants' abuses of the bankruptcy process by providing relief pursuant to its inherent powers and its powers pursuant to 11 U.S.C. § 105(a), as well as state and federal debt collection laws, and other state laws.   These remedies include imposing sanctions and/or punitive damages, awarding actual damages and statutory damages, awarding the Debtors' attorneys' fees and costs, and providing injunctive and declaratory relief.

## IV.  <u>FACTUAL ALLEGATIONS</u>

26.     On or about February 21, 2005, Plaintiffs executed an Adjustable Rate Note in favor of Crevecor Mortgage, Inc.  Attached as <u>Ex. A</u> is a true and correct copy of the Proof of Claim filed by HSBC Mortgage Services, Inc. in Plaintiffs' bankruptcy case with the note and deed of trust attached.  *See* Claims Register Claim No. 21-1.

27.     Pursuant to the terms of the note, Plaintiffs' monthly mortgage payment is $690.63 (principal and interest), and is due on the 1st day of the month.  *See id.*

28.     On information and belief, Defendant HSBC acquired the loan and/or the servicing rights on or about July 10, 2009.  Upon information and belief, the loan was delinquent when HSBC acquired the loan and/or the servicing rights.

29.     Plaintiffs filed the above-captioned Chapter 13 bankruptcy petition on August 25, 2010 in order to save their home from foreclosure.  They also filed their Uniform Plan and Motion for Valuation of Collateral on that date.  Attached hereto as <u>Ex. B</u> is a true and correct copy of the Uniform Plan and Motion for Valuation of Collateral.  The plan provided that the regular monthly mortgage payment would be paid by the Trustee to Defendant HSBC.  In addition, the plan provided that the Trustee would pay HSBC's deficiency claim, thought by the

Debtors to be $14,521.19, during the life of the plan.  *See id.*

30.     Defendant was notified of Plaintiffs' bankruptcy on September 11, 2010 at three different addresses.  Attached hereto as <u>Ex. C</u> is a true and correct copy of the Notice of Chapter 13 Case, Meeting of Creditors, and Deadlines and the Certificate of Mailing from the Bankruptcy Noticing Center (Docket No. 24), listing HSBC as a party receiving notice.

31.     On September 13, 2010, Larry J. Buckley of Brice, Vander Linden & Wernick, P.C. entered an appearance on behalf of Defendant HSBC.  Attached hereto as <u>Ex. D</u> is a true and correct copy of Mr. Buckley's Notice of Appearance.  Docket No. 26.

32.     On November 18, 2010, the Court entered an order confirming the Debtors' plan (Docket No. 34), which was served on HSBC.  *See* Docket No. 36.

33.     Edinburg CISD filed a proof of claim on or about December 7, 2010 in the amount of $1,108.55 for 2010 real estate taxes.  Attached hereto as <u>Ex. E</u> is a true and correct copy of the proof of claim filed by Edinburg CISD.  The Edinburg CISD proof of claim is listed as Claim No. 16-1 on the Claims Registry.

34.     South Texas College filed a proof of claim on December 7, 2010 in the amount of $133.85 for 2010 real estate taxes.  Attached hereto as <u>Ex. F</u> is a true and correct copy of the proof of claim filed by South Texas College.  The proof of claim is listed as Claim No. 15-1 on the Claims Registry.

35.     South Texas ISD filed a proof of claim on December 7, 2010 in the amount of $43.99 for 2010 real estate taxes.  Attached hereto as <u>Ex. G</u> is a true and correct copy of the proof of claim filed by South Texas ISD.  The South Texas ISD proof of claim is listed as Claim No. 17-1 on the Claims Registry.

36.     Hidalgo County and Hidalgo County Drainage Ditch #1 (collectively, "Hidalgo County") filed a proof of claim on January 6, 2011 in the amount of $592.37 for 2010 real estate

taxes.  Attached hereto as Ex. H is a true and correct copy of the proof of claim filed by Hidalgo County and Hidalgo County Drainage Ditch #1.  The Hidalgo County and Hidalgo County Drainage Ditch #1 proof of claim is listed as Claim No. 23-1 on the Claims Registry.

37.    HSBC Mortgage Services, Inc. filed a proof of claim on December 20, 2010, listing arrearages of $19,685.50.  Attached hereto as Ex. I is a true and correct copy of the proof of claim filed by HSBC Mortgage Services, Inc.  The HSBC proof of claim is listed as Claim No. 21-1 on the Claims Registry.

38.    There are numerous problems with the HSBC proof of claim.  Page 2 of the claim shows $11,221.89 as the "Unpaid balance of late fees and other charges."

39.    Page 4 of the claim is a spreadsheet, and also shows the $11,221.89 "Balance of Late Fees and Other Charges."  *See id.*  This spreadsheet also shows that, apparently, an alleged balance of $4,491.71 came from a servicer prior to HSBC.  *See id.*   No information is provided in the spreadsheet as to the makeup of that $4,491.71.

40.    The itemized amounts listed from the time period after HSBC took over the loan are as follows, as set out on page 3 of the claim:

| | |
|---|---|
| Attorneys' Fees and Costs | $2,512.64 |
| Hazard Insurance | $3,141.01 |
| Taxes | $  776.81 |
| Late Fees | $  423.17 |

41.    The itemized amounts on page 4 of the claim are listed as follows:

| | |
|---|---|
| Attorneys' Fees and Costs | $2,512.64 |
| Hazard Insurance/Taxes | $7,671.95 |
| Inspection fees | $   12.50 |
| Late Charges | $1,024.80 |

42.     HSBC did not attach any documents to its claim evidencing the amounts claimed for pre-petition fees and charges.  Thus, HSBC did not attach any evidence that the amounts claimed were reasonable, or even actually incurred.  Plaintiffs have been forced to spend substantial time and expense attempting to verify these amounts as a result.

43.     On January 26, 2011, the Trustee filed her "Notice of Intent to Pay Claims," showing the payments that she would be making pursuant to the Plaintiffs' Chapter 13 plan.  The Notice showed that she would be paying HSBC's monthly mortgage payments, as well as HSBC's arrearage claim of $19,685.50.  Attached hereto as Ex. J is a true and correct copy of the Notice of Trustee's Intent to Pay Claims, along with the BNC certificate of notice.

44.     The Notice also showed that the Trustee would pay the real property tax claims of Edinburg CISD, Hidalgo County/Drainage Ditch, South Texas College and South Texas ISD. *See id.*

45.     The Notice was served on Defendant HSBC at numerous addresses.  *See id.*

46.     The Chapter 13 Trustee began paying the 2010 real property tax claims of Edinburg CISD, Hidalgo County/Drainage Ditch #1, South Texas College and South Texas ISD on April 28, 2011.  Attached hereto as Ex. K is a true and correct copy of the Chapter 13 Trustee's records of payments through September 18, 2014 on the claims of the taxing authorities and HSBC (now Caliber).

47.     On or about April 13, 2011, the Property Tax Department of HSBC sent the Debtors a letter informing them that their 2010 property taxes to Hidalgo County were seriously delinquent, and requesting proof of payment.  Attached hereto as Ex. Q is the April 13, 2011 letter from HSBC as well as other letters HSBC sent to the Debtors.

48.     On May 17, 2011, HSBC's system indicates that a request was made for permission to pay 2010 property taxes to Hidalgo County in the amount of $2,057.80, and to

Edinburg City in the amount of $641.59.  Approval was granted on May 21, 2011, and HSBC

sent the funds to the Hidalgo County Tax Office on June 1, 2011.

49.     On or about June 9, 2011, the Property Tax Department of HSBC sent the Debtors

a letter informing them that their 2010 property taxes to Edinburg City were seriously

delinquent, and requesting proof of payment.  Attached hereto as Ex. R is the June 9, 2011 letter

from HSBC as well as other letters HSBC sent to the Debtors.

50.     On July 13, 2011, well after HSBC was served with both the order approving the

plan, and the Trustee's notice of who she would be paying under the plan, the HSBC "Property

Tax Department of Mortgage Services" mailed the Debtors a letter demanding that the Debtors

pay the pre-petition 2010 property taxes immediately, and send proof of payment.  Attached

hereto as Ex. L is a true and correct copy of the July 13, 2011 letter sent to Mr. Trevino by

Defendant HSBC.  The letter states forthrightly HSBC's intention to violate the automatic stay

and/or the discharge injunction:

> This is our final request.  If we do not receive the above requested
> proof of payment within 15 days of this letter, we may advance
> payment on your behalf, pursuant to the terms of the mortgage.
> The payment will then be added to your loan and will be billed
> after discharge of the Chapter 13 Bankruptcy Plan.

51.     HSBC was notified that it overpaid Plaintiffs' 2010 property taxes to Hidalgo

County by $631.69 on July 21, 2011, and began processing the paperwork necessary to obtain a

refund of the excess funds.

52.     At the same time that HSBC was attempting to obtain the refund of the Hidalgo

County property taxes, and despite having already disbursed funds for the 2010 Edinburg City

taxes, HSBC's system reflects that permission to pay additional 2010 Edinburg City property

taxes in the amount of $777.01 was requested on August 2, 2011, and HSBC advanced $777.01

to pay additional taxes to Edinburg City on August 10, 2011.  Thus, HSBC had disbursed

$3,476.40 between May 21, 2011 and August 10, 2011 for 2010 taxes.

53.     On August 12, 2011, the Chapter 13 Trustee sent HSBC a letter.  Attached hereto

as Ex. M is a true and correct copy of the August 12, 2011 letter sent to HSBC by the Chapter 13

Trustee.  The letter enclosed HSBC's letter to the Debtors of July 13, 2011, and stated:

> Dear Sir or Madam:
>
> My office is in receipt of the attached correspondence concerning unpaid real property tax assessments for the above referenced bankruptcy case. Please take the time to carefully review the chapter 13 plan that has been filed in this case, along with any proof of claims that may have been submitted, especially those submitted by the taxing authorities for unpaid assessments your records show as outstanding.
>
> Some or all of the past due assessments that you have referenced may have already been scheduled for repayment through the chapter 13 plan. ***This may preclude you from recovering funds that you intend to advance, and if such advancement is made, the automatic stay provisions of Title 11 United States Code [11 U.S.C. § 362(a)] and the Federal Rules of Bankruptcy Procedure [FRBP 3001(3)(2)] may govern such actions.***
>
> Sincerely,
>
> /s/ Cindy Boudloche
> Cindy Boudloche, Trustee

*(emphasis added)*

54.     The Debtors moved to modify their plan on August 19, 2011, and an order

approving the modification was entered.  *See* Docket Nos. 59 and 61.

55.     On September 29, 2011, the Trustee filed her "Amended Notice of Intent to Pay

Claims," showing the payments that she would be making pursuant to the Plaintiffs' Chapter 13

plan.  The Trustee's notice showed that she would be paying HSBC's monthly mortgage

payments, as well as HSBC's arrearage claim of $19,685.50.  Attached hereto as Ex. N is a true

and correct copy of the Notice of Trustee's Intent to Pay Claims, along with the BNC certificate

of notice showing service on Defendant HSBC.

56.     The Trustee's notice also showed that the Trustee would pay the real property tax claims of Edinburg CISD, Hidalgo County/Drainage Ditch #1, South Texas College and South Texas ISD.  *See id.*

57.     The Trustee's notice was served on HSBC at numerous addresses.  *See id*.

58.     HSBC's account notes indicate that HSBC received the $631.69 refund from Hidalgo County on October 10, 2011.  Further, on October 12, 2012, the Hidalgo County Tax Office's records for Plaintiffs' account indicate it refunded $9.90, $2,057.80, and $777.01 to HSBC.  Thus, as of October 2012, the Hidalgo County Tax Office refunded all of the amounts paid by HSBC for the 2010 property taxes, $3,476.40 in total.

59.     On April 16, 2013, permission was once again requested to pay the 2010 property taxes.  Approval was granted on April 22, 2013, and HSBC disbursed $4,450.15 to the Hidalgo County Tax Office.  Of that amount, $2,933.83 was for the 2010 taxes, and $1,516.32 was for the 2012 taxes.

60.     Almost immediately after disbursement of the funds, HSBC's system reflects that a request was sent to HSBC's bankruptcy counsel to file a supplemental proof of claim in the amount of $4,450.15.

61.     On or about June 24, 2013, HSBC received Hidalgo County Check No. 156341 in the amount of $2,867.39.

62.     On or about June 27, 2013, HSBC received Hidalgo County Check No. 156342 in the amount of $93.27.

63.     On July 24, 2013, HSBC filed a Fed. R. Bankr. P. 3002.1(c) Notice of Post-Petition Mortgage Fees, Expenses and Charges.  Docket No. 82.  Attached hereto as Ex. O is a true and correct copy of the 3002.1 Notice.  The 3002.1 Notice is treated as a supplement to

HSBC's proof of claim.

64.    HSBC's 3002.1 Notice alleges that HSBC paid 2010 county taxes on April 22, 2013 in the amount of $2,933.83, and 2012 taxes in the amount of $1,516.32.   Defendant HSBC's 3002.1 Notice did not mention that the taxing authorities had refunded the 2010 taxes to HSBC.

65.    On September 21, 2013, the Trustee filed a motion to dismiss Plaintiffs' bankruptcy case on the grounds that Debtors' Chapter 13 plan is not feasible due to HSBC's 3002.1(c) Notice.   Docket No. 84.   Attached hereto as Ex. P is a true and correct copy of the Trustee's motion to dismiss, along with the BNC certificate of notice showing service on Defendant HSBC.

66.    Pursuant to the Southern District Home Mortgage Procedures, the Chapter 13 Trustee began making payments on HSBC's Claim No./Docket No. 82 on October 24, 2013.  *See* Ex. K.

67.    To complicate matters, HSBC Mortgage Services, Inc. transferred all of its home mortgage claims against the Debtors to U.S. Bank Trust, N.A. ("U.S. Bank Trust") as Trustee for LSF8 Master Participation Trust, and Caliber Home Loans, Inc. ("Caliber"), as its attorney in fact, on November 20, 2013.  Defendants U.S. Bank Trust and Caliber have accepted funds from the Chapter 13 Trustee on HSBC's improper Claim No./Docket No. 82.

68.    Defendants' actions are thwarting the Debtors' Chapter 13 plan and undermining their rights under Chapter 13 of the Bankruptcy Code.

## V.  **REQUEST FOR RELIEF**

### **COUNT I**

### **ABUSE OF PROCESS**

69.    The allegations in the paragraphs above are realleged and incorporated herein by

this reference.

70.     Defendants' actions constitute an abuse of process.  Fed. R. Bankr. P. 3002.1 was enacted to halt mortgage servicer abuses that had been plaguing the bankruptcy system, and ensure that debtors emerge with a current mortgage at the end of their Chapter 13 plan, as the Bankruptcy Code intended.  The 3002.1 Notice filed by HSBC in this case was an act to steal money from the estate because no contract or law allows HSBC to obtain money from the estate for amounts that the debtors simply do not owe.

71.     HSBC's conduct is abusive because it attempts to use the bankruptcy process to obtain money to which it is not even arguably entitled.

72.     Moreover, HSBC's actions are deceptive.  It presents a claim as valid in the 3002.1 Notice, when in fact, the request for funds is illegitimate, a fact that was known to HSBC at the time it filed the 3002.1 Notice.

73.     HSBC's actions are abusive because the 3002.1 Notice has the effect of compromising legitimate unsecured creditors' distributions under Plaintiffs' confirmed Chapter 13 plan because the Chapter 13 Trustee will direct payments to HSBC on the 3002.1 Notice instead of to unsecured creditors.

74.     HSBC's illegal actions in filing the 3002.1 Notice are especially abusive because they had the effect of wrongfully placing the Debtors "in default" of their plan and therefore in peril of having their bankruptcy case dismissed and losing their home to foreclosure.

75.     The actions of Defendant HSBC are a result of its policies and procedures in filing 3002.1 notices.  HSBC's records reveal that 3002.1 notices are filed in an automatic fashion whenever HSBC identifies an unpaid amount owed to a taxing authority, without care as to whether the taxing authority is being paid by the Chapter 13 Trustee, even when the taxing authority refuses payment, and without concern for the mandates of the Bankruptcy Code and

Rules.  HSBC's policy is to pay in an automatic fashion any outstanding taxes to taxing authorities, and then to immediately instruct its counsel to file a 3002.1 notice.  HSBC does not check whether (1) the amounts it is claiming are otherwise being paid through the debtor's plan, or (2) whether debtors in bankruptcy actually owe the amounts being claimed.  Had any rational person actually reviewed the file and the facts before filing the 3002.1 Notice, he or she would have realized that the money had been refunded, and thus would not have filed a false claim under penalty of perjury, especially one with such devastating consequences to everyone in the bankruptcy system, not the least of whom are the debtors attempting to save their homes through Chapter 13.

76.     Finally, Defendants commit abuse of process because they continue to argue that the 3002.1 Notice they filed for amounts the taxing authorities refused is legitimate, and that the Trustee should pay it, or, alternatively, even if the claim is not legitimate, this Court can provide no redress whatsoever.

77.     Defendant HSBC authorized, directed, and caused the filing of the 3002.1 Notice and HSBC and/or Caliber accepted payment from the Trustee pursuant to it.

78.     Defendant HSBC created, filed, and/or mailed such 3002.1 Notice using an unconscionable plan or scheme, which was designed to improperly influence the Court and the Office of the Chapter 13 Trustee.  Defendants U.S. Bank Trust and Caliber have not withdrawn or amended Docket/Claim No. 82, but rather continue to assert that they are entitled to accept payments from the Chapter 13 Trustee on such claim.

79.     Defendants are officers of the Court.  They directed and direct their actions to the judicial machinery itself.

80.     Plaintiffs ask this Court to find that Defendants' actions constitute an abuse of process.  Based upon such findings, and under its inherent powers and 11 U.S.C. § 105(a),

Plaintiffs seek an award of sanctions, declaratory and injunctive relief, actual damages, punitive damages, and attorneys' fees and costs.

**COUNT II - WITHDRAWN**

**<u>VIOLATION OF THE AUTOMATIC STAY – 3002.1 NOTICE</u>**

81. ~~The allegations in the preceding paragraphs are re-alleged and incorporated herein by this reference.~~

82. ~~The actions of Defendants constitute a violation of the automatic stay of the Bankruptcy Code.~~

83. ~~With respect to the $2,933.83 claimed in the 3002.1 Notice filed by Defendant HSBC, Defendant specifically violated 11 U.S.C. § 362(a)(3) because the filing of such 3002.1 Notice was an explicit act to obtain possession of property of the estate, and/or an act to obtain property from the estate, and/or an act to exercise control over property of the estate. Defendant HSBC had no claim to funds whatsoever because the outlays for those taxes were refunded to HSBC prior to HSBC's filing of the 3002.1 Notice, yet the 3002.1 Notice sought to cause the Chapter 13 Trustee to pay estate funds to Defendants for debts that were not owed, or even arguably owed.~~

84. ~~Defendants' acts were willful violations of § 362(a) of the Code. Defendants knew the Debtors were in a Chapter 13 bankruptcy proceeding. Defendants knew that the Debtors were protected by the automatic stay. Defendants intended to file the 3002.1 Notice.~~

85. ~~The Debtors have been forced to retain legal counsel and have incurred reasonable and necessary attorneys' fees. Such fees are properly taxed against Defendants by virtue of their violations of the Bankruptcy Code and orders of the Bankruptcy Court.~~

86. ~~The Court should award punitive damages for Defendants' violations of the automatic stay pursuant to 11 U.S.C. § 362(k). This is an especially appropriate circumstance to~~

~~award punitive damages due to the abuses of process caused by Defendants' acts, which were~~
~~consistent with Defendants' pattern and practice of attempting to pay pre-petition taxes and then~~
~~seek to recover them (whether or not such payments were accepted) through the filing of 3002.1~~
~~notices.  As described herein, the effect of Defendant HSBC's stay violation can be devastating~~
~~on debtors in bankruptcy and the whole bankruptcy system.~~

~~87.    Plaintiffs ask the Court to award actual damages, including attorneys' fees, and~~
~~punitive damages pursuant to 11 U.S.C. § 362(k) for Defendants' willful violation of the~~
~~automatic stay.~~

~~88.    Plaintiffs ask that the Court use its inherent and statutory powers pursuant to 11~~
~~U.S.C. § 105 to hold Defendants in contempt, award actual and punitive damages, including~~
~~attorneys' fees to Plaintiffs, and impose all available sanctions in an amount sufficient to deter~~
~~Defendants from future misconduct.~~

## COUNT III

## VIOLATION OF THE AUTOMATIC STAY – LETTERS (AS TO DEFENDANT HSBC)

89.    The allegations in the paragraphs above are realleged and incorporated herein by this reference.

90.    The actions of Defendant HSBC in sending the letters dated May 10, 2011, April 13, 2011, June 9, 2011, July 13, 2011, and March 20, 2013 were willful violations of the automatic stay as set forth in § 362(a)(3) of the Bankruptcy Code.

91.    Each letter was an act to obtain property from the estate, and was an act to exercise control over property of the estate, because the letters demanded that Plaintiffs pay property taxes immediately or through their Chapter 13 plan.

92.    Defendant HSBC had actual knowledge that Plaintiffs were debtors in a pending Chapter 13 case, and that the automatic stay was in effect at the time it sent the letters.

93.     Defendant HSBC intended to send the letters.

94.     The letters sought payment from Plaintiffs' bankruptcy estate, including Plaintiffs' post-petition income and plan payments.

95.     As such, Defendant's actions constitute willful violations of the automatic stay entitling Plaintiffs to actual damages, including costs and attorneys' fees, and punitive damages, as set forth in 11 U.S.C. § 362(k)(1).

**COUNT IV**

**<u>RELIEF PURSUANT TO FED. R. BANKR. P. 3002.1</u>**

96.     The allegations in the paragraphs above are realleged and incorporated herein by this reference.

97.     Defendant HSBC filed a "notice" in this case on July 24, 2013, purportedly pursuant to Fed. R. Bankr. P. 3002.1(c).

98.     Pursuant to Fed. R. Bankr. P. 3002.1(c), HSBC was required to file "a notice itemizing all fees, expenses, or charges (1) that were incurred in connection with the claim after the bankruptcy case was filed, and (2) that the holder asserts are recoverable against the debtor or against the debtor's principal residence."

99.     Fed. R. Bankr. P. 3002.1(i) provides that: "If the holder of a claim fails to provide any information as required by subdivision (b), (c) or (g) of this rule," the Court may take certain actions described therein.

100.    HSBC did not provide the information required by Fed. R. Bankr. P. 3002.1(c), because HSBC did not provide the information that its payment for the 2010 taxes had been refunded.  Moreover, HSBC failed to provide all appropriate information as to why it was asserting that $2,933.83 was recoverable against the Debtors or against the Debtors' principal residence even though the taxing authorities had refunded the amounts paid.

101.    As such, pursuant to Fed. R. Bankr. P. 3002.1(i), the Court should (a) prohibit Defendants from presenting any evidence of any alleged pre-petition tax-related payments in this adversary proceeding, the Debtors' bankruptcy case, or any other proceeding, (b) declare that the Debtors do not owe Defendants any amounts for any alleged pre-petition tax payments, (c) enjoin Defendants from any further efforts to collect such pre-petition tax payments, and (d) award Debtors' their reasonable attorneys' fees and costs for investigating the 3002.1 Notice and bringing this action.

## COUNT V

## CLAIM OBJECTION PURSUANT TO FED. R. BANKR. P. 3001 – ORIGINAL CLAIM NO. 21 (AS TO DEFENDANTS U.S. BANK TRUST AND CALIBER)

102.    The allegations in the paragraphs above are realleged and incorporated herein by this reference.

103.    As set forth above, Defendant HSBC filed Claim No. 21-1, alleging $19,685.50 in pre-petition arrearages.

104.    Plaintiffs hereby object to Claim No. 21-1.

105.    Defendant HSBC failed to provide any evidence that, with respect to an alleged $11,221.89 in pre-petition amounts due for "Late Fees and Other Charges," HSBC actually incurred those costs, or that such costs were reasonable.  Defendant HSBC certainly provided no documentation for any such alleged costs.

106.    Defendant HSBC failed to attach sufficient documentation to its claim to support its claim for outlays of hazard insurance, taxes, attorneys' fees, inspection fees, and other fees and costs.  Plaintiffs object that such amounts claimed are not reasonable pursuant to 11 U.S.C. § 506(b) and are also not allowable pursuant to 11 U.S.C. § 502(b)(1) because Defendants have failed to prove that they are entitled to these amounts under Texas law.

107.    Defendant HSBC has now provided at least some documentation evidencing the claims on its Claim No. 21-1.  However, with respect to every amount other than the amounts claimed for insurance disbursements, Defendant HSBC did not produce additional documents evidencing its proof of claim until August 18, 2014, which was only after (1) Plaintiffs filed this lawsuit, (2) served discovery, (3) spent much energy seeking that HSBC provide the documents requested in discovery because it had not done so, (4) filed a motion to compel, and (5) after HSBC obtained new counsel.

108.    Pursuant to Fed. R. Bankr. P. 3001, Plaintiffs are entitled to their attorneys' fees incurred in the work required to force HSBC to provide documents evidencing its claim that should have been filed with the proof of claim in the first place, and the Court should preclude Defendants from offering any information not yet produced in any proceeding to determine the validity and/or amount of Defendants' claim.

109.    Plaintiffs request that the Court disallow any amounts not found to be reasonable or payable pursuant to the note and security agreement, and Texas law.

## COUNT VI

## CLAIM OBJECTION TO CLAIM NO./DOCKET NO. 82 (THE 3002.1 NOTICE OF POST-PETITION MORTGAGE FEES, EXPENSES AND CHARGES)

110.    The allegations in the preceding paragraphs are re-alleged and incorporated herein by this reference.

111.    Fed. R. Bankr. P. 3002.1(d) provides that a mortgage lender with a lien on a debtor's principal residence may file a 3002.1(c) notice as a supplement to its proof of claim.

112.    Defendant HSBC should not have sought, and Defendants U.S. Bank Trust and Caliber should not be seeking, any amounts for alleged payments of 2010 taxes.

113.    Any notice filed pursuant to Fed. R. Bankr. P. 3002.1(c) is not accorded prima

facie validity.  *See* Fed. R. Bankr. P. 3002.1(d).

114.    Plaintiffs object to Defendants' claim Claim No./Docket No. 82 for the $2,933.83 for pre-petition taxes for 2010 pursuant to 11 U.S.C. § 502 for the reasons set forth herein.

## COUNT VII

### VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT (AS TO DEFENDANT HSBC WITH RESPECT TO FILING THE JULY 24, 2013 3002.1 NOTICE)

115.    The allegations in the preceding paragraphs are re-alleged and incorporated herein by this reference.

116.    Congress enacted the FDCPA to regulate the collection of consumer debts by debt collectors.  The express purpose of the FDCPA is to "eliminate abusive debt collection practices by debt collectors, to insure that debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses."  15 U.S.C. §1692e.

117.    The FDCPA is a strict liability statute, which provides for actual and statutory damages upon the showing of a single violation.  *See Bentley v. Great Lakes Collection Bureau*, 6 F.3d 60, 62-3, (2d Cir. 1993); *see also Taylor v. Perrin, Landry, deLaunay & Durand*, 103 F.3d 1232 (5th Cir. 1997).  "Because the Act imposes strict liability, a consumer need not show intentional conduct by the debt collector to be entitled to damages."  *Russell v. Equifax A.R.S.,* 74 F.3d 30 (2d Cir. 1996); *see also Gearing v. Check Brokerage Corp*., 233 F.3d 469 (7th Cir. 2000)(holding unintentional misrepresentation of debt collector's legal status violated FDCPA); *Clomon v. Jackson,* 988 F.2d 1314 (2d Cir. 1993).

118.    The FDCPA is also a remedial statute, and therefore must be construed liberally in favor of the debtor.  *Sprinkle v. SB&C Ltd*., 472 F. Supp. 1235 (W.D. Wash. 2006).  The remedial nature of the FDCPA requires that courts interpret it liberally.  *Clark v. Capital Credit*

*& Collection Services, Inc.*, 460 F.3d 1162 (9th Cir. 2006).  "Because the FDCPA, like the Truth in Lending Act (TILA) 15 U.S.C. §1601 et seq., is a remedial statute, it should be construed liberally in favor of the consumer." *Johnson v. Riddle*, 305 F.3d 1107 (10th Cir. 2002).

119.    Defendant HSBC is a debt collector as defined in 15 U.S.C. § 1692a.

120.    Defendant HSBC was attempting to collect a consumer debt as defined in 15 U.S.C. § 1692a.

121.    Plaintiffs are "consumers" as defined in 15 U.S.C. § 1692a.

122.    Defendant HSBC violated 15 U.S.C. § 1692e because it used false, deceptive, and misleading representations and means in connection with debt collection.

123.    Defendant HSBC violated 15 U.S.C. § 1692e(2) by misrepresenting the character and amount of the debt.

124.    Defendant HSBC also violated 15 U.S.C. § 1692e(5) because it took an action that could not be legally taken, i.e., filing the 3002.1 Notice in order to be paid by the Chapter 13 Trustee monies not actually owed by the Plaintiffs.

125.    Defendant HSBC violated 15 U.S.C. § 1692f because, in filing the 3002.1 Notice, HSBC used an unfair and unconscionable means to collect and attempt to collect an alleged debt, because Plaintiffs did not actually owe the money claimed.

126.    Defendant HSBC violated 15 U.S.C. § 1692f(1) by attempting to collect amounts not authorized by the Note or Deed of Trust, or by state law.

127.    As a direct and proximate cause of Defendant HSBC's violations of the FDCPA, Plaintiffs have been damaged.

128.    Plaintiffs are entitled to actual damages, statutory damages, and attorneys' fees as provided in 15 U.S.C. § 1692k.

## COUNT VIII

## <u>VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT (AS TO DEFENDANT HSBC WITH RESPECT TO THE MARCH 20, 2013 LETTER)</u>

129.    The allegations in the preceding paragraphs are re-alleged and incorporated herein by this reference.

130.    Defendant HSBC is a debt collector as defined in 15 U.S.C. § 1692a.

131.    Defendant HSBC was attempting to collect a consumer debt as defined in 15 U.S.C. § 1692a when it sent the March 20, 2013 letter.

132.    Plaintiffs are "consumers" as defined in 15 U.S.C. § 1692a.

133.    HSBC violated 15 U.S.C. § 1692e when it sent the March 20, 2013 letter because HSBC used false, deceptive, and misleading representations and means in connection with debt collection.

134.    HSBC violated 15 U.S.C. § 1692e(2) because it misrepresented the character and amount of the debt.

135.    Defendant HSBC also violated 15 U.S.C. § 1692e(5) because it threatened to take an action that could not be legally taken, i.e., it threatened to obtain the claimed debt by obtaining it through foreclosure of the property after discharge, without bankruptcy court approval of the charge.

136.    Defendant HSBC also violated 15 U.S.C. § 1692e(10) because it used a false and deceptive means to collect a debt and obtain information from Plaintiffs.

137.    Defendant HSBC violated 15 U.S.C. § 1692f because, in sending the letter, HSBC used an unfair and unconscionable means to collect and attempt to collect an alleged debt.

138.    Defendant HSBC violated 15 U.S.C. § 1692f(1) in sending the letter because it stated that it would take an action not permitted by law.

139.    Defendant HSBC violated 15 U.S.C. § 1692f(1) in sending the letter because it essentially threatened to foreclose on the Plaintiffs post-discharge if they did not pay the debt, and such action would not be lawful absent bankruptcy court approval, a fact not disclosed in the letter.

140.    As a direct and proximate cause of Defendant HSBC's violations of the FDCPA, Plaintiffs have been damaged.

141.    Plaintiffs are entitled to actual damages, statutory damages, and attorneys' fees as provided in 15 U.S.C. § 1692k.

## COUNT IX

## VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT (AS TO DEFENDANT CALIBER WITH RESPECT TO THE JULY 24, 2013 3002.1 NOTICE)

142.    The allegations in the preceding paragraphs are re-alleged and incorporated herein by this reference.

143.    Defendant Caliber is a debt collector as defined in 15 U.S.C. § 1692a.

144.    Defendant Caliber is and was attempting to collect a consumer debt as defined in 15 U.S.C. § 1692a.

145.    Plaintiffs are "consumers" as defined in 15 U.S.C. § 1692a.

146.    Defendant Caliber violated and is violating 15 U.S.C. § 1692e because it used and is using a false, deceptive, and misleading representations and means in connection with debt collection.

147.    Defendant Caliber violated and is violating 15 U.S.C. § 1692e(2) because it misrepresented and is misrepresenting the character and amount of the debt.

148.    Defendant Caliber also violated 15 U.S.C. § 1692e(5) because it took and is taking an action that cannot be legally taken, i.e., maintaining its position that the Chapter 13

Trustee should pay Caliber property of the estate to satisfy the amounts claimed as owed in the 3002.1 Notice, when such amounts claimed are not actually owed by the Plaintiffs.

149.    Defendant Caliber also violated 15 U.S.C. § 1692e(12) by representing to the Plaintiffs and to the Court that they are innocent purchasers of the mortgage loan account and have the status of a bona fide purchaser.  *See* Docket Nos. 13 and 29.

150.    Defendant Caliber violated and is violating 15 U.S.C. § 1692f because, in failing to withdraw the 3002.1 Notice, and in maintaining that the Trustee should pay Caliber monies pursuant to the 3002.1 Notice, Caliber used and is using an unfair and unconscionable means to collect and attempt to collect an alleged debt because Plaintiffs do not actually owe the money claimed.

151.    Defendant Caliber also violated 15 U.S.C. § 1692f(1) because it attempted and is attempting to collect amounts not authorized by the Note or Deed of Trust, or by state law.

152.    As a direct and proximate cause of Defendant Caliber's violations of the FDCPA, Plaintiffs have been damaged.

153.    Plaintiffs are entitled to actual damages, statutory damages, and attorneys' fees as provided in 15 U.S.C. § 1692k.

## COUNT X

## <u>VIOLATIONS OF THE TEXAS DEBT COLLECTION ACT</u>

154.    The allegations in the preceding paragraphs are re-alleged and incorporated herein by this reference.

155.    Plaintiffs are "consumers" as that term is defined by the Texas Debt Collection Act, set forth in Chapter 392 of the Texas Finance Code (the "TDCA").

156.    The Plaintiffs' relationship with Defendants arose out of a "consumer debt" as that term is defined in the TDCA.

---

**PLAINTIFFS' SECOND AMENDED COMPLAINT**                                              **Page 25**

157.    Defendants were and are "debt collectors" as that term is defined in the TDCA.

158.    Defendants violated § 392.303(a)(2) of the TDCA by collecting or attempting to collect a fee or expense incidental to Plaintiffs' obligation to Defendants because the fee or expense Defendants attempted and are attempting to collect is not authorized by the agreement creating the obligation and is not chargeable to the Plaintiffs.  Neither the note nor deed of trust, or any applicable law, allow Defendants to seek and obtain from Plaintiffs or their estate amounts that are simply not owed.

159.    Defendants violated § 392.304(a)(8) of the TDCA by misrepresenting the character, extent, and amount of the alleged debt.  Defendant HSBC violated this section by both sending the March 20, 2013 letter and in filing the July 24, 2013 3002.1 Notice.  Defendants U.S. Bank Trust and Caliber violated and are violating this section because they refuse to withdraw the 3002.1 Notice, and continue to demand payment of the 2010 tax amounts claimed in that Notice.

160.    Further, Defendants violated § 392.304(a)(19) of the TDCA, because, as described herein, Defendants used and are using false representations and deceptive means to collect money from Plaintiffs and their estate.  Defendant HSBC violated this section by both sending the March 20, 2013 letter and in filing the July 24, 2013 3002.1 Notice.  Defendants U.S. Bank Trust and Caliber violated and are violating this section because they refuse to withdraw the 3002.1 Notice, and continue to demand payment of the 2010 amounts claimed in that Notice.

161.    Plaintiffs' injury resulted from Defendants' gross negligence because Defendants actually knew that they were not entitled to collect the amounts they were seeking to collect in the 3002.1 Notice, which entitles Plaintiffs to exemplary damages pursuant to the Texas Civil Practice & Remedies Code § 41.003(a).

162.     Defendants have violated the TDCA and Plaintiffs are thus entitled to an injunction, their economic damages, and attorneys' fees pursuant to § 392.403 of the TDCA.

163.     Violations of the Finance Code are also deemed to be violations of the Texas Deceptive Trade Practices Act, Subchapter E, Chapter 17, Texas Business & Commerce Code, and are actionable under that subchapter.  As a result thereof, Defendants are liable for actual damages, treble damages, the payment of legal fees and expenses, and exemplary damages.

## COUNT XI

## UNREASONABLE DEBT COLLECTION

164.     The allegations in the preceding paragraphs are re-alleged and incorporated herein by this reference.

165.     Texas recognizes the common law tort of unreasonable debt collection.

166.     In engaging in the practices described herein, Defendants have engaged in unreasonable debt collection.

167.     Plaintiffs have been damaged as a result of Defendants' unreasonable debt collection, and are entitled to actual damages and attorneys' fees and costs.

168.     Because Defendants' conduct was willful and in extreme bad faith, Plaintiffs are entitled to punitive damages for Defendants' unreasonable debt collection.

## COUNT XII

## BREACH OF CONTRACT (AS TO DEFENDANTS HSBC AND U.S. BANK TRUST)

169.     The allegations in the paragraphs above are realleged and incorporated herein by this reference.

170.     The note and deed of trust constitute a contract among Plaintiffs and Defendants HSBC and U.S. Bank Trust.

171.     Plaintiffs tendered performance according to the terms of the contract.

172.    Defendants breached the contract by demanding that Plaintiffs pay amounts not due under the contract, and accepting payments of property of the estate from the Trustee for amounts not due under the contract.

173.    Plaintiffs have incurred actual damages and attorneys' fees as a result of Defendants' breach of contract.

174.    Pursuant to Tex. Civ. P. & Rem. Code § 38.001, Plaintiffs are entitled to their attorneys' fees for Defendant HSBC and U.S. Bank Trust's breach of contract.

## COUNT XIII – WITHDRAWN

## FRAUD (AS TO DEFENDANT HSBC)

175.    ~~The allegations in the paragraphs above are realleged and incorporated herein by this reference.~~

176.    ~~Defendant HSBC made a material representation in the July 24, 2013 3002.1 Notice to Plaintiffs, the Court, the Chapter 13 Trustee, and all of the Debtors' creditors. Defendant HSBC represented that it made a disbursement on April 22, 2013 for 2010 taxes, and that it was owed reimbursement for those taxes, even though the taxing authority had refunded the April 22, 2013 disbursement for 2010 taxes to HSBC.~~

177.    ~~HSBC's material representation was false as set forth herein.~~

178.    ~~When HSBC made the material representation, it (i) knew that the material representation was false, or (ii) made the material representation recklessly without any knowledge of its truth and as a positive assertion;~~

179.    ~~HSBC filed and served the 3002.1 Notice with the intent that it should be acted upon by the Court, the Chapter 13 Trustee, Debtors, and the Debtors' creditors.~~

180.    ~~The Chapter 13 Trustee acted in reliance upon the representation when she disbursed funds based on the filing of the 3002.1 Notice.~~

181. ~~Plaintiffs and the creditors of the estate have suffered damages as a result of HSBC's material misrepresentation.~~

## COUNT XIV - WITHDRAWN

### FRAUD BY NONDISCLOSURE (AS TO DEFENDANT HSBC)

182. ~~HSBC failed to disclose to Plaintiffs, the Court, the Chapter 13 Trustee and the creditors of the estate the fact that Hidalgo County had returned the 2010 taxes advanced on April 22, 2013 to HSBC.~~

183. ~~HSBC had a duty to disclose that fact.~~

184. ~~The fact of the refund was material.~~

185. ~~HSBC knew that Plaintiffs and all other relevant parties were ignorant of the facts, and that they did not have an equal opportunity to discovery the facts.~~

186. ~~HSBC was deliberately silent, when it had a duty to speak.~~

187. ~~By failing to disclose the facts, HSBC intended to induce the Chapter 13 Trustee, and thus Plaintiffs, to pay the amounts demanded.   By failing to disclose the facts, HSBC intended to induce the Court, the Trustee, the Plaintiffs, and all relevant parties to refrain from investigating the claim or objecting to it.~~

188. ~~Plaintiffs (and all other parties in this case) relied on HSBC's non-disclosure.~~

189. ~~Plaintiffs were injured as a result of HSBC's failure to disclose that Plaintiffs did not actually owe the amounts claimed by HSBC in the 3002.1 Notice.~~

## COUNT XV - WITHDRAWN

### FRAUD ON THE COURT (AS TO DEFENDANT HSBC)

190. ~~The allegations in the paragraphs above are realleged and incorporated herein by this reference.~~

---

191. ~~Defendant HSBC made a material representation in the July 24, 2013 3002.1 Notice to Plaintiffs, the Court, the Chapter 13 Trustee, and all of the Debtors' creditors. Defendant HSBC represented that it made a disbursement for 2010 taxes on April 22, 2013 and that it was owed reimbursement for those taxes, even though the taxing authorities refunded the 2010 taxes advanced on April 22, 2013 to HSBC.~~

192. ~~HSBC's material representation was false as set forth herein.~~

193. ~~When HSBC made the material representation to the Court, it (i) knew that the material representation was false, or (ii) made the material representation recklessly without any knowledge of its truth and as a positive assertion;~~

194. ~~HSBC filed and served the 3002.1 Notice with the intent that it should be acted upon by the Chapter 13 Trustee and the Court.~~

195. ~~The Court, the bankruptcy process, and other participants in the bankruptcy process have been damaged by Defendant HSBC's fraud on the Court.~~

196. ~~The Court can, and should, use its inherent and 11 U.S.C. § 105 powers, and/or its powers under Fed. R. Bankr. P. 9011 to sanction Defendant HSBC for its actions.~~

## COUNT XVI

## SANCTIONS

197. The allegations in the paragraphs above are realleged and incorporated herein by this reference.

198. Defendants' actions as alleged herein warrant the imposition of sanctions.

199. Plaintiffs ask this Court to, pursuant to its inherent powers and 11 U.S.C. § 105(a), award sanctions, declaratory and injunctive relief, actual damages, and attorneys' fees and costs.

## COUNT XVII

## REQUEST FOR INJUNCTIVE RELIEF
## (AS TO DEFENDANTS U.S. BANK TRUST AND CALIBER)

200.    The allegations in the paragraphs above are realleged and incorporated herein by this reference.

201.    For the reasons set forth above, Defendants U.S. Bank Trust and Caliber have committed abuse of process, violated, and are violating state and federal law.

202.    Unless restrained, Defendants U.S. Bank Trust and Caliber will, in all likelihood, continue to commit abuse of process and violate federal and state law by the actions described herein.  As a result, Plaintiffs seek a permanent injunction to enjoin further violations of the law by Defendants U.S. Bank Trust and Caliber.

203.    Section 105(a) allows the Court to exercise its equitable powers where necessary or appropriate to facilitate implementation of Code provisions, including the imposition of temporary and permanent injunctions.  Section 392.403(a)(1) of the TDCA allows the Court to grant injunctive relief.

204.    Plaintiffs are entitled to an injunction because (a) Plaintiffs will achieve success on the merits, (b) Defendants' U.S. Bank Trust and Caliber's illegal actions will result in the wrongful dismissal of Plaintiffs' Chapter 13 bankruptcy case and the foreclosure of Plaintiffs' home, which are irreparable injuries, (c) the injury to Plaintiffs if the injunction is not granted is dire and irreparable, and outweighs any damage to Defendants because Defendants will suffer no damage in ceasing its abuse of process and in complying with the provisions of the Bankruptcy Code and Rules and other federal and state laws, and (d) the injunction is in the public interest because it will protect Plaintiffs' right to a fresh start and promote compliance with the Bankruptcy Code.

205.    Plaintiffs are entitled to their reasonable costs and attorneys' fees in seeking the injunctions from this Court.

**COUNT XVIII**

**REQUEST FOR DECLARATORY RELIEF**

206.    The allegations in the paragraphs above are realleged and incorporated herein by this reference.

207.    Section 105(a) allows the Court to exercise its equitable powers where necessary or appropriate to facilitate implementation of Code provisions, including the imposition of temporary and permanent injunctions.

208.    Plaintiffs seek a declaration that Defendants' actions constitute an abuse of process, violated the automatic stay, violated the FDCPA and the TDCA, violated other state and federal law, and constituted fraud and fraud on the Court, as set forth herein.  Plaintiffs also ask this Court to issue a declaration pursuant to Fed. R. Bankr. P. 3002.1(i) that Defendants U.S. Bank Trust and Caliber may not present any information in any form as evidence that it paid any 2010 tax-related payments post-petition.

209.    Plaintiffs are entitled to their reasonable costs and attorneys' fees in seeking the declarations from this Court.

**COUNT XIX**

**REQUEST FOR ACTUAL AND PUNITIVE DAMAGES**

210.    The allegations in the paragraphs above are realleged and incorporated herein by this reference.

211.    Defendants' actions described herein are an abuse of process, and constitute violations of the Bankruptcy Code and Rules, and federal and state law as set forth herein.

212.    Plaintiffs seek imposition of all available damages, penalties, sanctions, punitive

damages, and attorneys' fees pursuant to the Court's inherent powers, 11 U.S.C. §§ 105(a), 362(k), Fed. R. Bankr. P. 3002.1, 15 U.S.C. 1692k, and § 392.403(b) of the TDCA in an amount sufficient to compensate Plaintiffs and deter Defendants from future misconduct.

## COUNT XX
## REQUEST FOR ATTORNEYS' FEES

213.    The allegations in the paragraphs above are realleged and incorporated herein by this reference.

214.    Defendants' violations as set forth above and their abuses of process can be remedied pursuant to the Court's inherent powers and 11 U.S.C. § 105, 362(k) and Fed. R. Bankr. P. 3002.1(i), 15 U.S.C. § 1692k and § 392.403(b) of the TDCA.

215.    The Plaintiffs have been forced to retain legal counsel and have incurred reasonable and necessary attorneys' fees to prevent Defendants from improperly forcing the dismissal of Plaintiffs' bankruptcy case and the ultimate foreclosure of Plaintiffs' home through the use of illegal and abusive practices.  Such fees are properly taxed against Defendants by virtue of their flagrant abuse of the bankruptcy process and laws as set forth herein.

216.    Plaintiffs are entitled to attorneys' fees pursuant to the Court's inherent contempt powers, 11 U.S.C. §§ 105 and 362(k), Fed. R. Bankr. P. 3002.1(i)(2), 15 U.S.C. 1692k, § 392.403(b) of the TDCA, and § 38.001 of the Tex. Civ. Prac. & Rem. Code.

## COUNT XXI
## NEGLIGENCE & GROSS NEGLIGENCE (AS TO DEFENDANT HSBC)

217.    The allegations in the paragraphs above are realleged and incorporated herein by this reference.

218.    Defendant HSBC owed a duty to Plaintiffs, independent of any contractual obligations to Plaintiffs, not to demand that Plaintiffs pay amounts that Plaintiffs do not actually owe.

219.    As described herein, Defendant HSBC breached that duty.

220.    HSBC's breach of that duty has damaged Plaintiffs, as described herein, and, due to the highly automated nature of HSBC's systems and processes, such damage was a foreseeable consequence of HSBC's actions and omissions.

221.    HSBC's actions and omissions as described herein also constitute gross negligence because HSBC's conduct involved an extreme degree of risk and a high probability of substantial harm to Plaintiffs.   HSBC knew, or should have known, that there was an issue with respect to Plaintiffs' property taxes because the funds HSBC sent to the taxing authorities were repeatedly refunded.   It was objectively foreseeable that HSBC's actions and omissions would severely prejudice Plaintiffs in precisely the manner that has come to fruition in this case, i.e. by causing the filing of a 3002.1 notice that demanded improper amounts in Plaintiffs' bankruptcy case, which resulted in substantial and unnecessary contested litigation over the claim.

222.    HSBC was aware of the risks involved with regard to its actions and omissions and proceeded in the course of conduct described herein with, at best, conscious indifference to the harm it could, and did, cause Plaintiffs.

223.    Plaintiffs have been damaged by HSBC's actions and omissions and seek to recover their actual damages, including attorneys' fees and costs, as well as exemplary damages related to Defendants' gross negligence pursuant to TEX. CIV. PRAC. & REM. CODE § 41.003.

## VI.  PRAYER

WHEREFORE, Plaintiffs request that this Court grant the relief as requested herein in favor of Plaintiffs by:

a)      Awarding Plaintiffs actual damages, including attorneys' fees and costs, and punitive damages for Defendants' violations of the automatic stay;

b)      Awarding Plaintiffs their reasonable expenses and attorneys' fees for Defendants' failure to comply with Fed. R. Bankr. P. 3002.1;

c)      Awarding Plaintiffs actual and statutory damages, including attorneys' fees, for violation of provisions of the Fair Debt Collection Practices Act;

d)      Awarding Plaintiffs their actual damages, and treble damages, for violations of the Texas Debt Collection Act and the Texas Deceptive Trade Practices Act;

e)      Entering an order sustaining Plaintiffs' objections to Defendants' proof of claim, Claim No. 21, and the supplement to the claim, Claim No./Docket No. 82;

f)      Entering an order declaring that any alleged escrow amount for any alleged 2010 taxes is barred and waived;

g)      Issuing the declarations as requested herein;

h)      Awarding Plaintiffs sanctions, declaratory and injunctive relief, actual damages, punitive damages, and attorneys' fees and costs for Defendants' abuses of process and other violations of law;

i)      Finding Defendants in contempt under the Court's inherent powers and 11 U.S.C. § 105 for abuse of process, abuse of the Bankruptcy Code, and abuse of the federal bankruptcy system, and awarding Plaintiffs appropriate relief, including attorneys' fees and costs, sanctions, and other such relief deemed appropriate by this Court;

j)      Awarding Plaintiffs pre-judgment and post-judgment interest, as well as reasonable attorneys' fees and costs;

k)      Entering an injunction barring Defendants U.S. Bank Trust and Caliber from attempting to collect any of the alleged 2010 tax amounts that it sought pursuant to Claim No./Docket No. 82; and

l)      Awarding such other relief as this Court may deem just and proper.

Dated: March 12, 2015.

Respectfully submitted,

ARMSTRONG KELLETT BARTHOLOW PLLC


/s/ *Karen L. Kellett*
      Karen L. Kellett
      Texas Bar No. 11199520

Theodore O. Bartholow, III
Southern District Bar No. 15171898
Texas Bar No. 24062602
Caitlyn N. Wells
Southern District Bar No. 2043070
State Bar No. 24070635
11300 N. Central Expy., Ste. 301
Dallas, Texas 75243
Tel: (214) 696-9000
Fax: (214) 696-9001

Ellen Stone
Texas Bar No. 19305000
The Stone Law Firm, P.C.
4900 N. 10th Street, Suite A-2
McAllen, TX 78504
Tel: (956) 630-2822
Fax: (956) 631-0742

ATTORNEYS FOR PLAINTIFFS

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was served via electronic mail to the persons listed below on March 12, 2015:

*/s/ Caitlyn N. Wells*
Caitlyn N. Wells

Bob B. Bruner
Fulbright & Jaworski LLP
1301 McKinney Street, #5100
Houston, TX 77010
*Attorneys for HSBC Mortgage Services, Inc.*

Glenn E. Glover
Bradley Arant Boult Cummings, LLP
1819 5th Ave. North
Birmingham, AL 35203
*Attorneys for HSBC Mortgage Services, Inc.*

Melissa Hayward
Michael Parmerlee
Franklin Chapman Skierski Hayward LLP
10501 N. Central Expy., Suite 106
Dallas, Texas 75231
*Attorneys for U.S. Bank Trust, as Trustee for*

*LSF8 Master Participation Trust and Caliber Home Loans, Inc.*