

ENTERED
01/31/2020

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
## MCALLEN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| **JOSE SR. TREVINO, et al** | § | **CASE NO: 10-70594** |
| Debtors | § | |
| | § | **CHAPTER 13** |
| | § | |
| _____ | § | |
| **TERESA TREVINO, et al** | § | |
| Plaintiffs | § | |
| | § | |
| vs. | § | **ADVERSARY NO. 13-7031** |
| | § | |
| **HSBC MORTGAGE SERVICES, INC., et al** § | | |
| Defendants | § | **Judge Eduardo V. Rodriguez** |

## <u>MEMORANDUM OPINION</u>
### *Resolving ECF No. 78*

Federal Rule of Bankruptcy Procedure 3002.1 requires a creditor to disclose to the debtor any changes to the amount of the home mortgage during the chapter 13 case. This rule prevents unexpected deficiencies in a home mortgage when a case is completed and closed. While the rule allows a court to take appropriate action when a creditor fails to notify a debtor, the rule is silent regarding incorrect information. The instant dispute before this Court primarily concerns an allegedly improperly filed Rule 3002.1(c) notice by Defendant HSBC Mortgage Services, Inc. ("*HSBC*"). HSBC sought reimbursement from Plaintiffs in the amount of $2,933.83 related to the payment of 2010 ad valorem taxes to Hidalgo County, Texas. Shortly thereafter, HSBC sold the loan to Defendant U.S. Bank Trust, N.A., as Trustee for LSF8 Master Participation Trust ("*USBT*"), with Defendant Caliber Home Loans, Inc. ("*Caliber*") acting as servicer.

After a six-year discourse in this Court, a trial was held on August 7, 2019, and concluded on October 1, 2019. Based on Plaintiffs' complaint, evidence admitted at trial, arguments of counsel, credibility of the witnesses, and relevant case law, this Court finds that

Counts I and IX are well founded and should be granted, Count VI should be sustained, Count XVI is subsumed by Count I; Counts XII, XVII, and XVIII are without merit and should be denied, and Counts XIX and XX should be granted in part and denied in part. The Court finds that it should award Plaintiffs $1,000.00 in statutory damages, $9,000 in punitive damages, and reasonable and necessary fees and expenses in an amount to be determined by this Court, as detailed infra.

## I.     FINDINGS OF FACT

This Court makes the following findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52, which is made applicable to adversary proceedings pursuant to Federal Rule of Bankruptcy Procedure 7052. To the extent that any finding of fact constitutes a conclusion of law, it is adopted as such. To the extent that any conclusion of law constitutes a finding of fact, it is adopted as such. To the extent not inconsistent herewith, this Court adopts and incorporates by reference each of the findings of facts in the two memorandum opinions entered by this Court.[1]

### a.  Plaintiffs' home mortgage

On February 21, 2005, Jose Trevino signed and executed an adjustable rate note for $91,500.00 in connection with the purchase of real property located at 3315 Sandie Lane, Edinburg, Texas 78541 (the "*Property*").[2] Executed alongside the adjustable rate note was a deed of trust signed by Jose Trevino and Teresa Trevino ("*Plaintiffs*") in favor of lender Crevecor Mortgage, Inc, with Mortgage Electronic Registration Systems, Inc. as the beneficiary.[3] The deed of trust contained the following provisions regarding Plaintiffs' obligations to provide

---

[1] ECF Nos. 105, 184.
[2] Defs.' Ex. 7.
[3] Defs.' Ex. 8.

funds to taxing authorities:

> **3. Funds for Escrow Items.**  Borrower shall pay to lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property . . .
> ***
> **9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.**  If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy . . .), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property.  Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument . . . .  Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument.  These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment . . . .[4]

It is undisputed that the Plaintiffs' mortgage loan was a debt that was incurred for personal, family or household purposes.[5]  On July 10, 2009, HSBC acquired the loan and the servicing rights.[6]

### b. Plaintiffs' chapter 13 plan

Approximately a year later, on August 25, 2010, Plaintiffs filed their chapter 13 bankruptcy petition.[7]  Under schedule D of their bankruptcy petition, Plaintiffs listed HSBC as having a claim for $14,521.19 in mortgage arrearages, and a $95,537.00 claim on the mortgaged Property.[8]  Plaintiffs' chapter 13 plan ("*Plan*") provided that they would continue making post-petition monthly loan payments on the Property to HSBC, and would cure the pre-petition loan

---

[4] Defs.' Ex. 8 at 135–138.
[5] ECF No. 310 at 3.
[6] *See* ECF No. 1 at 5, ¶ 23; ECF No. 23 at 3, ¶ 23 (answering complaint and admitting that HSBC acquired the loan and/or servicing rights on or about July 10, 2009).
[7] Citations to Plaintiffs' Bankruptcy case, 10-70594, shall take the form "Bankr. ECF No. —."  Bankr. ECF No. 1.
[8] *See* Defs.' Ex. 9 at 175.

arrearages owed to HSBC.[9]  Importantly, however, Plaintiffs failed to list—under either the Plan or in their bankruptcy schedules—the 2010 ad valorem real estate taxes which were assessed pre-petition, but would not come due until the following year, but certainly within the life of the Plan.  Additionally, Plaintiffs' monthly mortgage payment was $697.80, principal and interest only.[10]  Despite Plaintiffs' failure to include $1,878.76[11] in pre-petition 2010 ad valorem taxes in their bankruptcy schedules and Plan, the Court entered an order confirming the Plan on November 18, 2010.[12]

### c. Relevant proofs of claim

The following proofs of claim were filed in the Court's claim register:

i. Claim No. 15: filed on December 14, 2010 by South Texas College regarding Plaintiffs' 2010 property taxes in the amount of $133.85;[13]

ii. Claim No. 16: filed on December 14, 2010 by Edinburg CISD regarding Plaintiffs' 2010 property taxes in the amount of $1,108.55;[14]

iii. Claim No. 17: filed on December 14, 2010 by South Texas ISD regarding Plaintiffs' 2010 property taxes in the amount of $43.99;[15]

iv. Claim No. 21: filed on December 31, 2010 by HSBC filed a proof of claim  in the amount of $111,476.53.[16]  Included within HSBC's proof of claim was an itemization of all arrearages—totaling $19,685.50—as well as loan documents that required the Trevinos to pay their post-petition taxes, provide HSBC with notice of payment of the same, and also authorized HSBC to seek reimbursement from the Trevinos for property tax advances made on their behalf;[17]

v. Claim No. 23: filed on January 6, 2011 by Hidalgo County and Hidalgo County Drainage Ditch #1 (collectively, "Hidalgo County," together with South Texas College, Edinburg CISD, South Texas ISD, the "Hidalgo Taxing Authorities") regarding  Plaintiffs' 2010 property taxes in the amount of $592.37.

---

[9] Defs.' Ex. 10; Bankr. ECF No. 2.
[10] ECF No. 310 at 3.
[11] *See* Pls.' Exs. 6, 7, 8, 10.
[12] Bankr. ECF No. 34.
[13] Pls.' Exs. 6, 7, 8, 10.
[14] *Id.*
[15] *Id.*
[16] Pls.' Ex. 9; Defs.' Ex. 42.
[17] Pls.' Ex. 9.

### d.  Payment of claims

On January 24, 2011, Cindy Boudloche, the chapter 13 trustee, (the "*Trustee*") filed a Notice of Intent to Pay Claims, showcasing payments the Trustee would be making under the Plan.[18]  Even though the Plan did not provide for it, included within the Trustee's Claims Notice was, inter alia, the taxing authorities' claims.[19]  On September 29, 2011, the Trustee filed her Amended Notice of Intent to Pay Claims ("*Amended Claims Notice*"), which again demonstrated the Trustee's intent to pay, inter alia, the taxing authorities' 2010 tax claims, even though Plaintiffs' Plan still did not provision payment of the 2010 taxes.[20]

### e.  The July 24, 2013 3002.1 notice

Not surprisingly, this generated quite a bit of confusion.  On one hand, Plaintiffs' failure to include the 2010 ad valorem taxes made their Plan unfeasible.  On the other hand, the Trustee still paid the 2010 ad valorem taxes.  Born out of this confusion came HSBC's payment and refunding of Property taxes to Hidalgo County between 2011 and 2013:

| Date | Amount | Tax Year | Refunded? | When?[21] | 3002.1 Notice? |
|------|--------|----------|-----------|-----------|----------------|
| 5/21/2011 | $2,057.80 | 2010 | Yes | 10/12/2012 | No |
| 5/21/2011 | $641.59 | 2010 | Yes | 9/16/2011 | No |
| 8/10/2011 | $777.01 | 2010 | Yes | 10/12/2012 | No |
| *4/22/2013* | *$4,450.15* | *2010, 2012* | *Yes* | *6/7/2013* | *Yes* |
| 7/11/2013 | $2,835.66 | 2010 | Yes | 10/16/2013 | No |
| 10/17/2013 | $2,734.59 | 2010 | Yes | 10/31/2013 | No |

---

[18] Pls.' Ex. 11.
[19] *Id.*
[20] Defs.' Ex. 13.
[21] *See* Defs.' Ex. 45 at 971–74 and Pls.' Ex. 45 at 3794 for list of refund dates.

Of particular import are the 2010 and 2012 taxes that HSBC paid to Hidalgo County on April 22, 2013.[22]   Notwithstanding the refunding of $4,450.15 on June 7, 2013,[23] HSBC filed its July 24, 2013 Notice of Post-Petition Mortgage Fee, Expenses, and Charges ("*3002.1 Notice*"), claiming it was owed $4,450.15 from Plaintiffs' bankruptcy estate.[24]   The 3002.1 Notice stated that HSBC paid the 2010 county taxes in the amount of $2,933.83, and the 2012 county taxes in the amount of $1,516.32.

As a consequence of HSBC's 3002.1 Notice, on September 19, 2013, the Trustee filed her motion to dismiss Plaintiffs' case for failure to propose a feasible Plan.[25]   Plaintiffs filed a response to the Trustee's motion to dismiss, stating that they would modify the Plan prior to the hearing date on the motion to dismiss.[26]

### f.  Sale of the mortgage loan

On September 30, 2013, HSBC sold Plaintiffs' mortgage loan to USBT, with Caliber as servicer of the loan.[27]   Caliber filed its Transfer of Claim Other than for Security ("*Claim Transfer Notice*") on November 18, 2013.[28]   Included within the transfer to Caliber was the outstanding 3002.1 Notice.[29]   The Trustee set the 3002.1 Notice as Claim #46, within the Trustee's Amended Notice of Intent to Pay Claims.[30]

### g.  Plaintiffs' Plan modification

On December 13, 2013, Plaintiffs filed a Motion to Allow a Late Filed Claim for the City

---

[22] Pls.' Ex. 14.  Of particular curiosity is that on April 30, 2013, Hidalgo County's records listed that HSBC paid the $4,450.15 amount representing the 2010 and 2012 taxes in two amounts: $4,356.88, and $93.27.  *See* Defs.' Ex. 45 at 972.
[23] On June 7, 2013, Hidalgo County's records listed that it refunded HSBC $4,356.88, and $93.27, totaling $4,450.15.
[24] Pls.' Ex. 16.
[25] Pls.' Ex. 17.
[26] Pls.' Ex. 18.
[27] *See* Pls.' Exs. 20, 21.
[28] Pls.' Ex. 21.
[29] Pls.' Ex. 45 at 3800.
[30] Bankr. ECF No. 110.

of Edinburg ("*Motion to Allow*"), and an Amended Motion to Modify Confirmed Plan on ("*Amended Motion to Modify*") on January 9, 2014.[31]  In their Motion to Allow, Plaintiffs noted that the City of Edinburg had not yet filed its proof of claim for the 2010 taxes, and wanted those taxes paid through the Plan in order to prevent any further collection by the City of Edinburg.[32]  In their Amended Motion to Modify, Plaintiffs sought to modify their Plan to address the advances made by HSBC for the 2012 property taxes.[33]  Plaintiffs additionally stated their intent to object to HSBC's claim for the 2010 taxes within HSBC's 3002.1 Notice on the grounds that the 2010 taxes were being paid by the Trustee through the Plan.[34]  The Court granted the Motion to Allow on January 6, 2014, and entered an order modifying the Plan on January 23, 2014.[35]

### h.  The instant adversary proceeding

On December 30, 2013—approximately 42 days after Caliber filed its Claims Transfer Notice—Plaintiffs initiated this adversary proceeding against HSBC, USBT, and Caliber.[36]  Plaintiffs' causes of action included, inter alia, damages allegedly resulting from the filing of the 3002.1 Notice, alleged violations of the automatic stay, violation of the plan and confirmation order, contempt, abuse of process, injunctive relief, and declaratory relief.[37]  The complaint also contained a request for actual damages, punitive damages, and attorneys' fees against Caliber and USBT.[38]

The gravamen of Plaintiffs' complaint is revealed in their October 15, 2014 amended complaint:

---

[31] Pls.' Exs. 23, 24, 26.
[32] Pls.' Ex. 24.
[33] Pls.' Ex. 26.
[34] Pls.' Ex. 23. Plaintiffs' statement that the 2010 taxes were being paid by the Trustee through the Plan was incorrect, as the Plan did not provision payment for the 2010 taxes.
[35] Pls.' Exs. 25, 28.
[36] ECF No. 1.
[37] *Id.*
[38] *Id.*

> HSBC's 3002.1(c) Notice started a chain reaction that had the effect of destroying the Plaintiffs' plan and their ability to save their home from foreclosure. The Chapter 13 Trustee filed a motion to dismiss the Debtors' bankruptcy case because payment of HSBC's 3002.1(c) Notice caused the Plaintiffs' Chapter 13 bankruptcy plan to be deficient. But for the actions of Plaintiffs' counsel, HSBC would have caused the Debtors' case to be dismissed, and then probably would have foreclosed on the Plaintiffs, thereby denying them their right to complete their Chapter 13 plan and cure their pre-petition deficiencies.[39]

On December 16, 2014, Caliber informed Plaintiffs that it was transferring the servicing of their mortgage loan to Select Portfolio Servicing, Inc. ("*SPS*") effective January 2, 2015.[40] This was followed up by a letter dated March 5, 2015, informing Plaintiffs that Wilmington Savings Fund Society, FSB, d/b/a Christiana Trust, as Indenture Trustee, for the CSMC 2015-RPL1 Trust, Mortgage-Backed Notes, Series 2015-RPL1 ("*Wilmington*") has taken over ownership of their mortgage loan, effective February 25, 2015.[41] At no time during the period in which Caliber and USBT owned/serviced the mortgage note did they amend, withdraw, or seek leave from this Court to withdraw the 3002.1 Notice. Nevertheless, neither Caliber nor USBT received any funds from the Trustee on account of the 3002.1 Notice.[42]

On March 12, 2015, Plaintiffs filed their second amended complaint.[43] Following the issuance of this Court's July 31, 2015 Amended Memorandum Opinion and Order, the following claims remained:

    a. Count I: Abuse of process as to Caliber and USBT;
    b. Count VI: Objection to claim no./docket no. 82 pursuant to FED. R. BANKR. P. 3002.1;
    c. Count IX: Violations of the Fair Debt Collection Practices Act as to Caliber with respect to the July 24, 2013 FED. R. BANKR. P. 3002.1 Notice pursuant to 15 U.S.C. §§ 1692e, 1692e(2), 1692e(5), 1692f, 1692f(1); and 1692k;
    d. Count XII: Breach of contract as to USBT;

---

[39] ECF No. 58, at 4–5.
[40] Pls.' Ex. 37; Defs.' Ex. 58.
[41] Pls.' Ex. 40.
[42] *See* Bankr. ECF No. 182 (indicating that under the 3002.1 Notice, the Trustee only paid $1,516.32 to SPS, representing the 2012 taxes, as the 2010 taxes were disallowed, and the 2012 taxes were never in dispute).
[43] ECF No. 76.

     e. Count XVI: Sanctions as to Caliber and USBT
     f. Count XVII: Request for injunctive relief as to Caliber and USBT;
     g. Count XVIII: Request for declaratory relief as to Caliber and USBT;
     h. Count XIX: Request for actual & punitive damages as to Caliber and USBT;
     i. Count XX: Request for attorney's fees as to Caliber and USBT.

After almost two years of protracted motion practice and mediation, on May 9, 2016, this Court approved a confidential settlement agreement and release between Plaintiffs and HSBC.[44] HSBC was subsequently dismissed from this Adversary Proceeding.[45]  On July 21, 2016, this Court granted Plaintiffs a discharge.[46]  With only Caliber and USBT left as Defendants, this Court conducted a trial on August 7, 2019, which concluded on October 1, 2019.  At the conclusion of the trial, this Court took the matter under advisement.  The matter is now ripe for consideration, and the Court issues the instant Memorandum Opinion.

## II.  CONCLUSIONS OF LAW

### A.  Jurisdiction, venue, and this Court's constitutional authority to enter a final order.

This Court holds jurisdiction pursuant to 28 U.S.C. § 1334 and now exercises its jurisdiction in accordance with Southern District of Texas General Order 2012-6.[47]  While bankruptcy judges can issue final orders and judgments for core proceedings, absent consent, they can only issue reports and recommendations for non-core proceedings.[48]  Here, Plaintiffs filed their notice of consent on June 6, 2016,[49] and Defendants filed their notice of non-consent on June 6, 2016.[50]  However, this Court finds that pursuant to 28 U.S.C. § 157(b)(2)(A), this Adversary Proceeding contains core matters, as it primarily involves a Rule 3002.1 dispute made

---

[44] ECF Nos. 126, 131.
[45] ECF Nos. 142, 144.
[46] Bankr. ECF No. 139.
[47] *In re*: Order of Reference to Bankruptcy Judges, Gen. Order 2012–6 (S.D. Tex. May 24, 2012).
[48] *See* 28 U.S.C. §§ 157(b)(1), (c)(1); *see also Stern v. Marshall*, 564 U.S. 462, 480 (2011); *Wellness Int'l Network, Ltd. v. Sharif*, 135 S. Ct. 1932, 1938–40 (2015).
[49] ECF No. 134.
[50] ECF No. 136.

applicable under § 1322, and a § 105(a) dispute regarding abuse of the judicial process.

Regarding the non-core claims involved, this Court finds that resolution of such claims are

inextricably intertwined with resolution of the core claims.[51]   As such, this Court may enter final

orders and judgments.   However, should the Honorable United States District Court find that the

Bankruptcy Court did not have authority to enter final orders and judgments, this Court requests

that the District Court convert this Memorandum Opinion into a Report and Recommendation.

Finally, venue is governed by 28 U.S.C. §§ 1408, 1409.   Venue is proper because the Court

presided over Plaintiffs' bankruptcy.[52]

## B.  Count I: Abuse of process

Plaintiffs assert that Caliber and USBT's actions—in continuing to assert the legitimacy

of the 3002.1 Notice—constitute an abuse of process under § 105(a).[53]   Section 105(a) states that

"[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry

out the provisions of this title . . . or to prevent an abuse of process."[54]   Under § 105, Bankruptcy

judges have broad authority to take necessary or appropriate actions to prevent an abuse of the

bankruptcy process, including imposition of sanctions.[55]   The imposition of sanctions—which

may consist of attorney's fees—under § 105(a) must be accompanied by a specific finding of bad

---

[51] *See In re Spillman Development Group, Ltd.*, 710 F.3d 299, 306 (5th Cir. 2013) (holding that creditor's state contract–law claims were inextricably intertwined with the interpretation of a right created by federal bankruptcy law); *Honigman, Miller, Schwartz & Cohn v. Weitzman (In re DeLorean Motor Co.)*, 155 B.R. 521, 525 (9th Cir. BAP 1993) (holding that an otherwise non–core state law claim was inextricably tied to the determination of an administrative claim against the estate and similarly tied to questions concerning the proper administration of the estate); *Maitland v. Mitchell (In re Harris Pine Mills)*, 44 F.3d 1431, 1438 (9th Cir. 1995) (citing *Honigman, Miller, Schwartz & Cohn* with approval); *see also CDX Liquidating Trust v. Venrock Assoc.*, No. 04–7236, 2005 WL 3953895, at *2 (N.D. Ill. Aug. 10, 2005) (holding that where non–core claims were inextricably intertwined with core claims, the non–core claims should be treated as core claims); *Electric Machinery Enterprises, Inc. v. Hunt Construction Group, Inc. (In re Electric Machinery Enterprises, Inc.)*, 416 B.R. 801, 866–67 (Bankr. M.D. Fla. 2009) (adopting inextricably intertwined approach).
[52] *See* Bankr. ECF No. 1.
[53] *See* ECF No. 78 at 13–15.
[54] 11 U.S.C. § 105(a).
[55] *Marrama v. Citizens Bank of Mass.*, 549 U.S. 365, 375 (2007); *Chambers v. NASCO, Inc.*, 501 U.S. 32, 42-46 (1991).

faith conduct.[56]  Bad faith conduct may be established  if a court finds that the party "deliberately abused the judicial process."[57]

While "abuse of process" under § 105(a) is not defined in the Bankruptcy Code, a few courts essentially define it as "maneuvers or schemes which would have the effect of undermining the integrity of the bankruptcy system."[58]  Plaintiffs offered several cases demonstrating situations where courts have relied on § 105(a) for authority to sanction conduct, or to prevent an abuse of the judicial process.[59]  In most of those cases, bankruptcy courts have found that the filing of false documents—which disrupted the bankruptcy process and prejudiced debtors—constituted an abuse of process.

Rule 3002.1 was adopted to address the problem caused when mortgage companies applied fees and costs to a debtor's mortgage during bankruptcy without notice to the debtor, and then, based on those post-petition defaults, sought to foreclose upon debtor's property after plan completion.[60]  Rule 3002.1 solves this by providing a procedure for notice to be provided by a creditor for mortgage payment changes during a chapter 13 case, and an opportunity for the

---

[56] *Leonard v. Luedtke* (*In re Yorkshire, LLC*), 540 F.3d 328, 332 (5th Cir. 2008); *see also Roadway Exp., Inc. v. Piper*, 447 U.S. 752, 766 (1980); *Chambers*, 501 U.S. at 42–44.

[57] *The Cadle Co. v. Moore* (*In re Moore*), 739 F.3d 724, 730 (5th Cir. 2014).

[58] *In re Calder*, 93 B.R. 739, 740 (Bankr. D. Utah 1988); *see also In re Burrell*, 148 B.R. 820, 824 (Bankr. E.D. Va. 1992) (characterizing abuse of process as a situation where "[i]naction by the court . . . would undermine the integrity of the bankruptcy system.").

[59] *See, e.g.*, *Rojas v. Citi Corp Trust Bank FSB* (*In re Rojas*), No. 07-70058, 2009 WL 2496807, at *3, 9 (Bankr. S.D. Tex. Aug. 12, 2009) (filing a false proof of claim in contravention of § 501 and Rule 3001 would constitute an abuse of process); *In re Schuessler*, 386 B.R. 458, 488–489 (Bankr. S.D.N.Y. 2008) (holding that abuse of process arises when a creditor revokes a privilege granted to a debtor without notice, solely because of their bankruptcy filing, and the creditor's action disrupts the bankruptcy process and unnecessarily prejudices the debtor); *Brannan v. Wells Fargo Home Mortgage, Inc.* (*In re Brannan*), 485 B.R. 443, 454 (Bankr. S.D. Ala. 2013) (holding that the submission of fraudulent affidavits in support of motions for relief would constitute abuse of process); *In re Fagan*, 376 B.R. 81, 82 (Bankr. S.D.N.Y. 2008) (imposing sanctions based on fact that debtors must not be subjected to risk of foreclosure and loss of their homes on basis of false certifications of post-petition defaults); *In re Haque*, 395 B.R. 799 (Bankr. S.D. Fla. 2008) (imposing sanctions pursuant to § 105(a) for filing false stay relief affidavits claiming entitlement to default interest).

[60] *See* FED. R. BANKR. P. 3002.1.

debtor to contest them during the chapter 13 case.[61]  This rule is applicable to chapter 13 cases in which the claims are secured by a security interest in the debtor's principal residence, and are in accordance with 11 U.S.C. § 1322(b)(5).[62]

Here, even though Plaintiffs' Plan did not provide for payment of the 2010 and 2012 ad valorem taxes, the Trustee's Amended Claims Notice indicated her intent to pay the taxing authorities' claims.  The Trustee's payment of the ad valorem tax claims not provided in the Plan was in error.  Because Plaintiffs' Plan failed to provide payment of the 2010 and 2012 taxes, HSBC paid the 2010 and 2012 Property taxes.  Notwithstanding the fact that Hidalgo County refunded the 2010 and 2012 taxes back to HSBC on June 7, 2013, HSBC filed its 3002.1 Notice on July 24, 2013.[63]  On November 18, 2013, HSBC, transferred the loan to Caliber and USBT.[64]

For approximately one year—before Caliber and USBT transferred the servicing and ownership of the loan to SPS and Wilmington—the Rule 3002.1 Notice remained on file with this Court.  This is the centerpiece of Plaintiffs' abuse of process claim.  Plaintiffs maintain that because Caliber and USBT failed to withdraw, seek withdrawal, or modify the 3002.1 Notice, Caliber and USBT "continue[d] to argue that the 3002.1 Notice they filed is legitimate, and that the Trustee should pay it," and "Caliber accepted payment from the Trustee pursuant to [the 3002.1 Notice]."[65]

Under Rule 3006, once Plaintiffs filed their Adversary Proceeding against Caliber and USBT, Defendants could not withdraw the 3002.1 Notice without Court intervention.[66]  The only

---

[61] *See id.*

[62] *See id.*

[63] *See* Pls.' Exs. 14, 16; Defs.' Ex. 45 at 971.

[64] Bankr. ECF No. 90.

[65] ECF No. 78 at 15.

[66] *See* FED. R. BANKR. P. 3006 (stating that a creditor may not unilaterally withdraw a claim if, inter alia, a complaint against that creditor in an adversary proceeding has already commenced, except by court order, and only after a hearing); FED. R. BANKR. P. 3002.1(d) (noting that procedurally, the Rule 3002.1 Notice supplemented USBT and

method for Defendants to have removed their Rule 3002.1 Notice would have been to file a motion seeking leave from this Court to withdraw it.  While no such motion was ever filed before this Court, this Court notes Defendants' conduct and judicial admissions below:[67]

- Internal communications demonstrating Defendants' intent to amend the 3002.1 Notice;[68]
- "[M]y client will agree to remove the 2010 taxes from the account (in fact, I believe this has already been done);[69]
- "Movants have always been and remain willing to correct the Debtors' account to remove HSBC's assessment of the 2010 taxes if such assessment was erroneous;"[70]
- "Now, I agree, Your Honor, that that issue needs to be corrected, and that the loan needs to be corrected so that . . . erroneous amounts aren't included;"[71]
- USBT "no longer desires to prosecute its Notice of Post-Petition Fees, Expenses, and Charges filed with the Court on April 21, 2014.  The 2010 taxes were included in the Chapter 13 plan;"[72]
- "Caliber has reviewed the Debtors' account and corrected it to remove the Debtors' obligation to repay the 2010 taxes;"[73] and
- "The Caliber Defendants deny all remaining allegations contained in Paragraph 22 of the Complaint and specifically deny that the Caliber Defendants continue to insist that they are entitled to collect the $2,933.83 at issue for the 2010 taxes in this Adversary Proceeding."[74]

While the examples above seem to indicate that Defendants never intended to collect the 2010 taxes vis-a-vi the 3002.1 Notice, Defendants' complete failure in conducting due diligence and diligently pursuing a withdrawal or modification of the 3002.1 Notice is troublesome.  Defendants' excuse that "[they] did not file the 3002.1 Notice" and thus did not take any "affirmative action,"[75] that they were "expressly precluded from unilaterally withdrawing the

---

Caliber's proof of claim); Bankr. ECF No. 110 (noting that chapter 13 trustee marked Caliber's 3002.1 Notice as Claim #46).

[67] *See White v. ARCO/Polymers, Inc.*, 720 F.2d 1391, 1396 (5th Cir. 1983) ("Factual assertions in pleadings . . . are considered to be judicial admissions conclusively binding on the party who made them.").

[68] Defs.' Ex. 54 (sharing draft of 3002.1 Notice amendment with HSBC's counsel, eliminating claim for the 2010 taxes).

[69] Defs.' Ex. 53.

[70] Defs.' Ex. 33 at 346.

[71] Defs.' Ex. 32 at 330.

[72] Defs.' Ex. 21.

[73] Defs.' Ex. 39 at 708.

[74] Defs.' Ex. 41 at 797.

[75] ECF No. 313 at 26, ¶ 68.

3002.1 Notice,"[76] and that they "did not pursue the amounts claimed in the 3002.1 Notice,"[77] are insufficient to escape liability.   As assignees of the loan, Defendants had a responsibility to ensure the accuracy of all filings with this Court.   While Defendants may not have been able to unilaterally withdraw the 3002.1 Notice, Defendants had other options available to them, including utilization of Rule 3006.   Defendants' failure to verify the status of the 2010 taxes, and failure to withdraw or amend the 3002.1 Notice caused complications within Plaintiffs' bankruptcy case that cannot be overlooked.

Whether through deliberate or inadvertent means, the process utilized by Defendants in this case impacted the bankruptcy process.   Plaintiffs sought the protection of the Bankruptcy Code to prevent the foreclosure of their home and to have a chance to get out of debt.   Especially in view of Texas' long-standing policy of protecting homesteads, bankruptcy courts must make every effort to ensure that all motions that would have an impact on a debtor's bankruptcy plan and homestead contain accurate information.[78]   A 3002.1 notice, and by extension § 1322(b)(5), is of critical importance both to consumer debtors and creditors, as it primarily concerns a mortgage debt on the debtor's principal residence.   It provides an avenue for creditors who are entitled to and seek recovery of fees, expenses, or charges made after the filing of the debtor's bankruptcy case and that is recoverable against the debtor's principal residence—free of violation of the automatic stay—and also notifies a debtor of the fees being sought by the entitled creditor, so that the debtor may address it appropriately.   Before moving on such a motion, a secured creditor's analysis should be more than simply putting pen to paper, which was apparently done in this case.   In filing a 3002.1 notice, a responsible person must consider the

---

[76] *Id.* at 26, ¶ 70.
[77] *Id.* at 27, ¶ 71.
[78] *See In re Parsley*, 384 B.R. 138, 142 (Bankr. S.D. Tex. 2008).

specific facts and details and conclude that the motion is actually necessary and warranted.

When the Official Form 410S2—the 3002.1 Notice—is submitted under penalty of perjury, the Court expects that the facts asserted have been carefully researched and, to the best of the creditor's knowledge, are not only true, but are complete enough to be an accurate characterization.  Official Form 410S2 states in bold: "I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief."  Whether Defendants service a few loans, or a few million, it is not excused from conducting its due diligence.

One of the Court's duties is to ensure that debtors appearing before the Court will have a chance at a fresh start if they do what is required of them.  Another of the Court's duties is to examine a creditor's policies or practices which interfere with the debtor's rights, and prevent such conduct if necessary.[79]  Had Defendants completed all of their due diligence, Defendants would never have kept the 3002.1 Notice on file with the Court.  Instead, Defendants would have withdrawn it, or sought immediate leave from this Court to withdraw or amend it.

While this Court is aware that the Trustee and Plaintiffs' actions contributed to the confusion, Caliber and USBT cannot disclaim their responsibility to ensure the accuracy of all filings inherited by them.  Defendants' actions, or lack thereof, taken together, constituted a maneuver which undermined the integrity of the bankruptcy system, disrupted the bankruptcy process, and were a deliberate abuse of the judicial process.  This Court finds that such actions

---

[79] *See In re Lyon & Reboli, Inc.*, 24 B.R. 152, 154 (Bankr. E.D.N.Y. 1982) (noting obligation of court under § 105 to pass upon propriety of salaries of insiders where there is potential for, and the prima facie appearance of, abuse); *In re Panem*, 352 B.R. 269, 278 (Bankr. D. Colo. 2006) (reasoning that if court failed to review terms and conditions of submitted stipulation, it would abdicate its duties); *In re Earl*, 140 B.R. 728, 741 (Bankr. N.D. Ind. 1992) (using § 105(a) where "Court must preserve the integrity of the Bankruptcy system and prevent the abusive use of the Bankruptcy system invoked only to thwart the legitimate rights of creditors, and preclude an unwarranted congestion of its docket by enjoining the Debtor from again filing another chapter 13 case in the near future."); *In re Fasano*, 85 B.R. 639 (Bankr. S.D. Fla. 1988) (holding debtors in contempt, citing "Court's duty under Section 105 to protect the bankruptcy system from abuse.").

constitute bad faith.  Therefore, with the evidence before the Court, this Court finds that Plaintiffs' abuse of process claim and request for reasonable and necessary attorneys' fees and expenses in relation thereto should be granted in an amount to be determined by this Court.

### C.  Count VI: Objection to docket no. 82, pursuant to FED. R. BANKR. P. 3002.1

Plaintiffs object to the 3002.1 Notice—specifically the $2,933.83, which represented payment of the 2010 real property taxes.[80]  The gravamen of Plaintiffs' objection is that it should be disallowed, as HSBC was already refunded that amount from the taxing authority.[81]  Although Plaintiffs filed this as an objection to a proof of claim pursuant to § 502, because the matter before the Court is a notice of fees and expenses pursuant to Rule 3002.1(c), Plaintiffs' "claim objection" is in fact a motion for a determination of fees, expenses, or charges under  Rule 3002.1(e),[82] and will be treated as such by this Court.

Rule 3002.1(e) provides a mechanism for objecting to supplemental claims filed under 3002.1(c):

> On motion of a party in interest filed within one year after service of a notice under subdivision (c) of this rule, the court shall, after notice and hearing, determine whether payment of any claimed fee, expense, or charge is required by the underlying agreement and applicable nonbankruptcy law to cure a default or maintain payments in accordance with § 1322(b)(5) of the Code.[83]

The Court's first step is determining wherein the burden of proof lies.  Normally, a properly filed proof of claim comprises "prima facie evidence of the validity and amount of the claim,"[84]  and is "deemed allowed, unless a party in interest . . . objects."[85]  An objecting party "bears the initial

---

[80] Bankr. ECF No. 82.
[81] *See* ECF No. 105 at 17 ("The Trevinos assert that they have double paid for the 2010 taxes: the Trustee has been making payments to both the taxing authorities and to HSBC and movants for the same $2,933.83 tax obligation.").
[82] *See In re Lighty*, 513 B.R. 489, 490 (Bankr. D.S.C. 2014) (treating "objection" to post-petition charge as motion under Rule 3002.1(e)).
[83] FED. R. BANKR. P. 3002.1(e).
[84] FED. R. BANKR. P. 3001(f).
[85] 11 U.S.C. § 502(a).

burden of production and must provide evidence showing the claim is legally insufficient" under §502.[86]   In this case, although Plaintiffs filed the objection, this Court concludes that Defendants must bear the burden of proving its entitlement to the post-petition fees.   Under Rule 3002.1(d), the prima facie evidentiary benefits of filing a proof of claim under Rule 3001(f) do not apply to a creditor's notice of post-petition fees, suggesting that the drafters had no intention of affording creditors any special advantage with respect to supplemental fees and charges.   Further, by possessing the 3002.1 Notice, it is Defendants who seek to change the status quo by asking for amounts beyond that which was set forth in the original proof of claim.   In general, creditors possess greater knowledge of the particular circumstances giving rise to the supplemental charges.   As such, the Court determines it prudent to assign the burden of proof to Defendants under Rule 3002.1(e).[87]

Here, the Court finds that Defendants have not met their burden of proof.[88]   While it is undisputed that Plaintiffs were obligated to pay the Property taxes under the Deed of Trust,[89] not only did the Trustee's Amended Claims Notice state her intent to pay the 2010 taxes,[90] but the Trustee's Final Report and Account indicated that she paid the 2010 taxes—albeit without authority to do so—to the various taxing authorities.[91]   Additionally, HSBC was already refunded payment of the 2010 taxes by the county taxing authority prior to filing the 3002.1 Notice.[92]   With the 2010 taxes paid by the Trustee, Defendants have no claim to the 2010 taxes under their 3002.1 Notice.   As such, this Court finds that the 2010 ad valorem taxes within

---

[86] *In re Arcapita Bank B.S.C.(c)*, 508 B.R. 814, 817 (Bankr. S.D.N.Y. 2014) (citation omitted).
[87] *Cf. In re Bodrick*, 498 B.R. 793, 803–04 (Bankr. N.D. Ohio 2013); *In re Brumley*, 570 B.R. 287, 289–90 (Bankr. W.D. Mich. 2017).
[88] Bankr. ECF No. 82.
[89] *See* Defs.' Exs. 7, 8.
[90] *See* Defs.' Ex. 13.
[91] *Compare* Pls.' Exs. 6, 7, 8, 10 *with* Bankr. ECF No. 182.
[92] *See* Defs.' Ex. 45 at 971–74, and Pls.' Ex. 45 at 3794.

Defendants' 3002.1 Notice, totaling $2,933.83, is not required to cure a default or maintain payments in accordance with § 1322(b)(5) of the Bankruptcy Code.  Therefore, the Court finds that it should sustain Plaintiffs' objection to docket no. 82, pursuant to Federal Rule of Bankruptcy Procedure 3002.1.

### D. Count IX: Violations of the Fair Debt Collection Practices Act as to Caliber with respect to the July 24, 2013 Rule 3002.1 notice pursuant to 15 U.S.C. §§ 1692e, 1692e(2), 1692e(5), 1692f, 1692f(1); and 1692k

Count IX of Plaintiffs' Amended Complaint alleges that Caliber violated the Fair Debt Collection Practices Act ("*FDCPA*").[93]  The FDCPA was enacted to "eliminate abusive debt collection practices, to ensure that debt collectors who abstain from such practices are not competitively disadvantaged, and to promote consistent state action to protect consumers."[94] Because "Congress clearly intended the FDCPA to have a broad remedial scope," the FDCPA "should therefore be construed broadly and in favor of the consumer."[95]  In order to prevail on a FDCPA claim, a plaintiff must prove the following: (1) the plaintiff has been the object of collection activity arising from consumer debt; (2) the defendant is a debt collector defined by the FDCPA; and (3) the defendant has engaged in an act or omission prohibited by the FDCPA.[96] "The FDCPA is a strict liability statute that makes debt collectors liable for violations that are not knowing or intentional."[97]

---

[93] *See* ECF No. 78.
[94] *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA,* 559 U.S. 573, 577 (2010).
[95] *Daugherty v. Convergent Outsourcing, Inc.*, 836 F.3d 501, 511 (5th Cir. 2016) (internal citations and quotations omitted).
[96] *Stewart v. Alonzo*, No. C–08–347, 2009 WL 174938, at *2 (S.D. Tex. Jan. 26, 2009) (quoting *Matter of Mayer*, 199 B.R. 616, 619 (E.D. La. 1996)).
[97] *Donohue v. Quick Collect, Inc.*, 592 F.3d 1027, 1030 (9th Cir. 2010) (internal quotations marks omitted); *see also Ellis v. Solomon and Solomon, P.C.*, 591 F.3d 130, 135 (2d Cir 2010) ("To recover damages under the FDCPA, a consumer does not need to show intentional conduct on the part of the debt collect.  The Act is a strict liability statute, and the degree of a defendant's culpability may only be considered in computing damages.") (internal quotation marks omitted); *Lee v. Credit Mgmt., LP*, 846 F. Supp. 2d 716, 722 (S.D. Tex. 2012) (collecting cases).

      *i.    Whether Plaintiffs have been the object of collection activity arising from consumer debt*

      While no direct authority exists on whether a 3002.1 Notice constitutes a collection activity, sufficient authority regarding whether a proof of claim constitutes a collection activity exists for the Court to analogize.  First, because a proof of claim is intended to result in some recovery for the creditor on the debt that is set out in the proof of claim, the filing of such would be within the ordinary meaning of "debt collection."[98]  Similarly, a 3002.1 notice that is intended to result in some recovery for the creditor on the debt set out within the notice would be classified as "debt collection."  Many decisions holding that the filing of a proof of claim is not a debt collection activity are collected in *Humes v. LVNV Funding, LLC* (*In re Humes*),[99] which explains that:

> If filing a proof of claim constituted a "collection" activity [under the FDCPA], then filing proofs of claim under § 502(b) would be fundamentally at odds with language in § 362(a)(6) providing that the filing of a petition "operates as a stay, applicable to all entities, of . . . any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title.

      The Court does not find this rationale persuasive.  A proof of claim—or a 3002.1 notice—and the automatic stay may harmoniously coexist.  That is because while the automatic stay prohibits debt collection activities, and filing a proof of claim is an action to collect a debt, it is well established that the automatic stay does not prohibit actions taken in the bankruptcy case itself.[100]  It is well within a creditor's rights to promulgate a 3002.1 notice within the bankruptcy case, as to alert a debtor and trustee as to modifications in payments, and to adjust accordingly.  Even though the bankruptcy estate acts as a separate entity from the debtor, a proof of claim—or

---

[98] *See Crawford v. LVNV Funding, LLC*, 758 F.3d 1254, 1262 (11th Cir. 2014) ("Filing a proof of claim is the first step in collecting a debt in bankruptcy and is, at the very least, an 'indirect' means of collecting a debt.").

[99] *Humes v. LVNV Funding, LLC* (*In re Humes*), 496 B.R. 557, 581 (Bankr. E.D. Ark. 2013).

[100] *See Eger v. Eger* (*In re Eger*), 507 B.R. 1 (Bankr. N.D. Ga. 2014) (collecting authorities).

3002.1 notice—filed in a bankruptcy case would be actionable under the FDCPA if it violated one of the Act's provisions.[101]   The application of the FDCPA to this case does not support the proposition that the 3002.1 Notice is not an attempt to collect a debt.   Therefore, the filing of the 3002.1 Notice constitutes a collection activity.

### ii.   *Whether Caliber is a debt collector*

The FDCPA defines the term debt collector, in part, as:

> [A]ny person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another . . . .   The term does not include—
> ***
> (F) any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity . . . (iii) concerns a debt which was not in default at the time it was obtained by such person . . . .[102]

"The legislative history of § 1692a(6) indicates conclusively that a debt collector does not include the consumer's creditors, a mortgage servicing company, or an assignee of a debt, as long as the debt was not in default at the time it was assigned."[103]   Caliber, as the mortgage servicing company, would not qualify as a debt collector only if it obtained the note from HSBC while the note was not in default.

Plaintiffs' Note stated the terms of a default: "[i]f I do not pay the full amount of each monthly payment on the date it is due, I will be in default."[104]   On August 25, 2010, Plaintiffs filed their chapter 13 bankruptcy petition.[105]   Under Schedule D of their bankruptcy petition, Plaintiffs listed HSBC as having an outstanding claim for $14,521.19 in mortgage arrearages,

---

[101] *See In re Perkins*, 533 B.R. 242, 257 (Bankr. W.D. Mich. 2015).
[102] 15 U.S.C. § 1692a(6).
[103] *Perry v. Stewart Title Co.*, 756 F.2d 1197, 1208 (5th Cir. 1985).
[104] Defs.' Ex. 7 at 126.
[105] Bankr. ECF No. 1.

and a $95,537.00 claim on the mortgaged Property.[106]   HSBC's proof of claim asserted a pre-

petition arrearage in the amount of $19,685.50.[107]   Plaintiffs' Plan provided that they would

continue making post-petition monthly loan payments on the Property to HSBC, and would cure

the pre-petition loan arrearages owed to HSBC through the Plan.[108]   This was supported by the

Trustee's summary and analysis, which provided that Plaintiffs would pay HSBC's $19,685.50

arrearage over five years, culminating in a total of $23,873.09 being paid by 2015.[109]   On

September 30, 2013, HSBC sold Plaintiffs' mortgage loan to USBT, with Caliber acting as the

mortgage servicer.[110]   Because there was a pre-petition arrearage arising from the Note and Deed

of Trust at the time Caliber acquired the mortgage servicing rights from HSBC, Plaintiffs were in

default on their loan.   Therefore, Caliber is a debt collector under the provisions of the FDCPA.

### iii.   *Whether Caliber engaged in an act or omission prohibited by the FDCPA.*

Plaintiffs allege that Caliber violated the following FDCPA provisions:

- Section 1692e, which prohibits a debt collector from making false or misleading statements in connection with the collection of a debt.[111]
- Section 1692e(2)(A),[112] which states that the false representation of the character, amount, or legal status of any debt is a violation of 1692e.[113]
- Section 1692e(5), which states that the threat to take any action that cannot legally be taken or that is not intended to be taken is a violation of 1692e.[114]
- Section 1692f, which prohibits a debt collector from using unfair or unconscionable means to collect or attempt to collect a debt.[115]

---

[106] *See* Defs.' Ex. 9 at 175.

[107] Claim No. 21.

[108] Defs.' Ex. 10; Bankr. ECF No. 2.

[109] *See* Bankr. ECF No. 63.  On July 27, 2017, the Trustee filed her final report and account, which indicated that Plaintiffs paid their mortgage arrearage over the life of the Plan, ending on September 8, 2015.

[110] *See* Pls.' Exs. 20, 21.

[111] *See* ECF No. 78 at 24.

[112] 15 U.S.C. § 1692e(2) states that the following conduct is a violation: "(2) The false representation of – (A) the character, amount, or legal status of any debt; or (B) any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt."  Plaintiffs state within their § 1692e(2) claim that Caliber "is violating 15 U.S.C. § 1692e(2) because it misrepresented and is misrepresenting the character and amount of debt."  *See* ECF No. 78 at 24.  Taken together, Plaintiffs' § 1692e(2) claim is actually a § 1692e(2)(A) claim, and the Court will treat it as such.

[113] *See* ECF No. 78 at 24.

[114] *See id.*

- Section 1692f(1), which states that the collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law is a violation of 1692f.[116]

### i.   *Claims under § 1692e*

When evaluating a claim under this subsection or any other subsection of § 1692, the Court must view the violation from the perspective of an "unsophisticated or least sophisticated consumer."[117]   The Court must "assume that the plaintiff-debtor is neither shrewd nor experienced in dealing with creditors."[118]   At the same time, however, the unsophisticated consumer is not one "tied to the very last rung on the [intelligence or] sophistication ladder."[119] The unsophisticated consumer is "not illiterate and can be expected to read the entire collection letter with some care."[120]   Thus, "debt collection letters must be considered as a whole when determining if they violate the FDCPA."[121]

Before the Court advances to its analysis, it will address Caliber's citation to the Supreme Court's *Midland Funding, LLC v. Johnson*[122] case.   Caliber asserts that *Midland Funding* stands

---

[115] *See id.* at 25.

[116] *See id.*

[117] *McMurray v. ProCollect, Inc.*, 687 F.3d 665, 669 (5th Cir. 2012) (quoting *Goswami v. Am. Collections Enter.*, 377 F.3d 488, 495 (5th Cir. 2004)).

[118] *Goswami*, 377 F.3d at 495.

[119] *Goswami*, 377 F.3d at 495; *See McMahon v. LVNV Funding, LLC,* 744 F.3d 1010, 1020 (7th Cir. 2014) ("[I]f the debt collector uses language in its dunning letter that would mislead an unsophisticated consumer into believing that the debt is legally enforceable, regardless of whether the letter actually threatens litigation ..., the collector has violated the FDCPA."). *But see Huertas v. Galaxy Asset Mgmt.,* 641 F.3d 28, 32–33 (3d Cir. 2011) ("[T]he FDCPA permits a debt collector to seek voluntary repayment of the time-barred debt so long as the debt collector does not initiate or threaten legal action in connection with its debt collection efforts."); *Freyermuth v. Credit Bureau Servs., Inc.,* 248 F.3d 767, 771 (8th Cir. 2001) ("[I]n the absence of a threat of litigation or actual litigation, no violation of the FDCPA has occurred when a debt collector attempts to collect on a potentially time-barred debt that is otherwise valid.").   In addition, one district court in the Southern District of Texas has followed the Third and Eighth Circuits' construction of the statute, reaching the conclusion advocated by Defendants.   *See Daugherty v. Convergent Outsourcing, Inc.,* No. CIV.A. H–14–3306, 2015 WL 3823654, at *6 (S.D. Tex. June 18, 2015).

[120] *Osborn v. Ekpsz, L.L.C.,* 821 F. Supp. 2d 859, 867 (S.D. Tex. 2011) (citing *Greco v. Trauner, Cohen & Thomas L.L.P.,* 412 F.3d 360, 363 (2d Cir. 2005)).

[121] *Gomez v. Niemann & Heyer, L.L.P.,* No. 1:16-CV-119 RP, 2016 WL 3562148, at *3 (W.D. Tex. June 24, 2016) (citing *Gonzalez v. Kay,* 577 F.3d 600, 607 (5th Cir. 2009)).

[122] 137 S. Ct. 1407 (2017).

for the proposition that the Trustee's degree of legal sophistication controls, rather than the perspective of the unsophisticated or least sophisticated consumer, i.e. Plaintiffs.[123]   Caliber further uses *Midland Funding* to highlight alleged similarities, claiming "similar to proofs of claims related to time-barred debts, unpaid taxes related to a debtor's residence constitute a claim under the Bankruptcy Code, even if the claim is ultimately unenforceable."[124]

In *Midland Funding*, the Supreme Court held that filing a proof of claim in a chapter 13 bankruptcy case that is time barred is not a false, deceptive, misleading, unfair, or unconscionable debt collection practice within the meaning of the FDCPA.[125]   In evaluating the legal consequences of filing a proof of claim that is subject to an affirmative defense, the Supreme Court observed that there are differences between ordinary civil litigation and bankruptcy proceedings that may mute some policy concerns that led to the enactment of the FDCPA.  This observation supported the Court's fundamental holding that the Bankruptcy Code permits the filing of a stale proof of claim that is subject to a statute of limitations defense. However, this does not mean that there is some irreconcilable conflict between the Bankruptcy Code and the FDCPA, or—like Caliber would have this Court accept—that the FDCPA can never apply in the context of filing a proof of claim or similarly related filing within the chapter 13 context.

While there is at least one post-*Midland Funding* bankruptcy court that holds that the filing of a proof of claim cannot be an unconscionable debt collection practice prohibited by the

---

[123] "Moreover, to determine whether an act misleads under [sic] 1692(e) and (f) 'requires consideration of the legal sophistication of its audience.'  The 'audience' in a chapter 13 case includes a trustee who is likely to understand that a proof of claim is a statement to a right to payment and subject to disallowance . . . . As the Supreme Court made clear in *Johnson*, the protections afforded Plaintiffs in their chapter 13 Bankruptcy Case minimized their risk because the Trustee could evaluate those claims and the claims themselves are subject to disallowance."  ECF No. 313 at 32 (citing *Johnson*, 137 S. Ct. at 1413).
[124] ECF No. 313 at 32–33.
[125] *See generally Midland Funding, LLC v. Johnson*, 137 S. Ct. 1407 (2017).

FDCPA,[126] many other courts continue to evaluate FDCPA claims arising from creditor conduct occurring during a bankruptcy case on their merits.[127]  Likewise, this Court is not persuaded by Caliber's argument that the filing of the 3002.1 Notice cannot violate the FDCPA.[128]  As noted supra, the Supreme Court has not spoken definitively on the issue, but rather observed the differences between civil litigation and bankruptcy proceedings.  Where the Supreme Court has not spoken definitively on the issue, this Court will follow Fifth Circuit precedent and engage in analysis around the unsophisticated or least sophisticated test.[129]

     **a.** *Section 1692e*

Plaintiffs allege that Caliber violated § 1692e because it used a false, deceptive, and misleading representation in connection with its 3002.1 Notice.  Section 1692e makes it unlawful for a debt collector to falsely represent the collection of a debt.[130]  While the Fifth Circuit has not explicitly defined what it means for a debt collection letter to be false, deceptive, or misleading under the FDCPA, a review of circuit court decisions nationwide supports the conclusion that false, deceptive, and misleading function identically.[131]  The Second Circuit definition—which is widely accepted—states that a debt collection letter is deceptive when it can be reasonably read to have two or more different meanings, one of which is inaccurate.[132]  Some courts have stated

---

[126] *See In re Derby*, No. 18-03097 KLP, 2019 WL 1423084, at *5 (Bankr. E.D. Va. Mar. 28, 2019).

[127] *See In re Thomas*, 578 B.R. 355 (Bankr. W.D. Va. 2017); *In re Thomas*, 592 B.R. 99, 104 (Bankr. W.D. Va. 2018), *aff'd sub nom. Midland Funding LLC v. Thomas*, 606 B.R. 687 (W.D. Va. 2019); *see also Moore v. Jefferson Capital Sys., LLC*, No. 4:15-CV-00418 JAR, 2017 WL 2813536, at *2 (E.D. Mo. June 29, 2017).

[128] This Court has already held that the FDCPA and Bankruptcy Code provisions applicable to proofs of claim are not in conflict.  *See In re Trevino*, 535 B.R. 110, 137 (Bankr. S.D. Tex. 2015).

[129] *McMurray v. ProCollect, Inc.*, 687 F.3d 665, 669 (5th Cir. 2012).

[130] 15 U.S.C. § 1692e.

[131] *Gomez v. Niemann & Heyer, L.L.P.*, No. 1:16-CV-119 RP, 2016 WL 3562148, at *4 (W.D. Tex. June 24, 2016).

[132] *Russell v. Equifax A.R.S.*, 74 F.3d 30, 35 (2d. Cir. 1996); *Gomez*, 2016 WL 3562148, at *5 (collecting cases).

that this provision prohibits collection letters that "confuse," which "seems to simply be an extension of the underlying principle" underlying the FDCPA.[133]

On its face, the claim that Caliber is entitled to reimbursement of the 2010 ad valorem taxes from Plaintiffs is unequivocally false.  On April 22, 2013, HSBC paid the 2010 taxes on Plaintiffs' Property to Hidalgo County.[134]  HSBC was refunded this payment on June 7, 2013, due to the fact that the Trustee improperly paid the ad valorem taxes.[135]  Notwithstanding the refund, HSBC filed its 3002.1 Notice on July 24, 2013.[136]  Without correcting the 3002.1 Notice, HSBC sold the loan to USBT, with Caliber as servicer.[137]  While Caliber—as servicer—was entitled to collect outstanding loan payments on the Property, Caliber was not entitled to collect on taxes it was never owed.  And by failing to withdraw, failing to seek leave to withdraw, or failing to modify the 3002.1 Notice, Caliber asserted its entitlement to reimbursement of the 2010 taxes.  Because Caliber's 3002.1 Notice was a false representation in connection with a debt collection, this Court finds that the filing of the 3002.1 Notice violates § 1692e of the FDCPA, and therefore should grant Plaintiffs' § 1692e claim.

### b.  Section 1692e(2)(A)

Plaintiffs allege that Caliber violated § 1692e(2)(A) because it misrepresented the character and amount of the 2010 taxes under the 3002.1 Notice.  Section 1692e(2)(A) makes it unlawful for a debt collector to falsely represent the character, amount, or legal status of any debt."[138]  In connection with the Court's ruling on the § 1692e claim, the Court finds that

---

[133] *Russell*, 74 F.3d at 35 (citing, among others, *Gonzales v. Arrow Financial Services, LLC*, 660 F.3d 1055, 1062 (9th Cir. 2011)).
[134] Pls.' Ex. 14.
[135] *See* Defs.' Ex. 45 at 971–74, and Pls.' Ex. 45 at 3794.
[136] Pls.' Ex. 16.
[137] *See* Pls.' Exs. 20, 21.
[138] 15 U.S.C. § 1692e(2)(A).

Caliber's 3002.1 Notice falsely represented the character, amount, or legal status of what Plaintiffs' owed to Caliber.   As such, the Court finds that it should grant Plaintiffs' § 1692e(2)(A) claim.

### c.  Section 1692e(5)

Plaintiffs allege that Caliber violated § 1692e(5) because it maintained the position that the Trustee should pay Caliber monies from property of the estate to satisfy the 2010 taxes under the 3002.1 Notice, when the 2010 taxes were not actually owed by Plaintiffs.  Section 1692e(5) proscribes debt collectors from "threat[ening] to take any action that cannot legally be taken or that is not intended to be taken."[139]   In connection with the Court's ruling on the § 1692e claim, the Court finds that Caliber's 3002.1 Notice was an action that could not be legally taken, because Caliber was never entitled to those amounts.  As such, this Court finds that it should grant Plaintiffs' § 1692e(5) claim.

### ii.  Claims under §§ 1692f,  f(1)

Plaintiffs allege that Caliber violated § 1692f and 1692f(1) because, in failing to withdraw the 3002.1 Notice, Caliber used an unfair and unconscionable means to collect and attempt to collect an alleged debt that Plaintiffs did not actually owe.

Section 1692f is a catchall provision that states "[a] debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt."[140]   The subsections of § 1692f provide a nonexclusive list of proscribed conduct under the statute, including § 1692f(1), which prohibits the "collection of any amount (including any interest, fee, charge, or expense incidental

---

[139] 15 U.S.C. § 1692e(5).
[140] 15 U.S.C. § 1692f.

to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law."[141]

Although the catchall provision of § 1692f specifically notes that both actual collection and collection attempts are proscribed by statute, § 1692f(1) refers only to the collection of any amounts not authorized by contract or by law.[142]   Regardless, the Court finds that this catchall provision is intended to encompass the nonexclusive list of enumerated offenses in its subsections, and that the "attempt" language of § 1692f also applies to § 1692f(1).   Such a conclusion is consistent with jurisprudence addressing this same issue.[143]   Thus, "[a] debt collector violates § 1692f(1) when it sends a letter attempting to collect money not permitted by law."[144]

Here, by failing to withdraw, failing to seek leave to withdraw, or failing to modify the 3002.1 Notice, Caliber improperly attempted to collect the 2010 ad valorem taxes on Plaintiffs Property.   Because Caliber attempted to collect money not permitted by law, Caliber violated §§ 1692f, f(1).   As such, this Court finds that it should grant Plaintiffs' §§ 1692f, f(1) claims, and

---

[141] *Id.* § 1692f(1).

[142] *Compare* 15 U.S.C. § 1692f *with* § 1692f(1).

[143] *See, e.g.*, *Diaz v. Kubler Corp.*, 785 F.3d 1326, 1328 (9th Cir. 2015) ("[T]he [FDCPA] prohibits debt collectors from trying to collect any amount that is not 'expressly authorized by the agreement creating the debt or permitted by law.' 15 U.S.C. § 1692f(1)."); *McCollough v. Johnson, Rodenburg & Lauinger, LLC*, 637 F.3d 939, 949 (9th Cir. 2011) ("Section 1692f(1) prohibits the use of 'unfair or unconscionable means to collect or attempt to collect any debt[.]' "); *Miller v. Wilpoff & Abramson, L.L.P.*, 321 F.3d 292, 308 (2d Cir. 2003) ("[P]laintiff's cause of action under § 1692f(1) requires a showing that defendants attempted to collect an amount not expressly permitted either by the agreement creating the debt or by law."); *Shami v. Nat'l Enter. Systems*, 914 F. Supp. 2d 353, 357 (E.D.N.Y. 2012) ("The fact that subsection (1) of § 1692f does not specify that it includes both collections of and attempts to collect unauthorized incidental fees does not limit the general provision of the statute that includes attempts to collect.   Courts in this circuit and others have continued to resolve cases involving § 1692f(1) where no actual collection appears to have taken place, instead focusing on the communication seeking payment itself."); *B-Real, LLC v. Rogers*, 405 B.R. 428, 433 (M.D. La. 2009) ("Section 1692f(1) prohibits a debt collector from seeking to collect on any amount 'unless . . . permitted by law.' "); *Jackson v. Adcock*, No. 03-3369, 2004 WL 1900484, at *5 n.27 (E.D. La. Aug. 23 2004) (reading §§ 1692f and f(1) in tandem to apply the "attempt" language of 1692f to 1692f(1)).

[144] *Demarais v. Gurstel Chargo, P.A.*, 869 F.3d 685, 691 (8th Cir. 2017) (citing *Duffy v. Landberg*, 215 F.3d 871, 875 (8th Cir. 2000)).

award reasonable and necessary attorneys' fees and expenses in connection thereto pursuant to 15 U.S.C. § 1692k in an amount to be determined by this Court.

### E.  Count XII: Breach of contract as to USBT

Count XII of Plaintiffs' amended complaint alleges that USBT breached the Note and Deed of Trust by demanding that Plaintiffs pay amounts not due under the contract, and accepting payments of property of the estate from the Trustee for amounts not due under the contract.  Under Texas law, "[t]he essential elements of a breach of contract action are: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach[145]

### i.  *Existence of a valid contract*

On February 21, 2005, Jose Trevino signed and executed an adjustable rate note in connection with the purchase of the Property.[146]  Executed alongside the note was a deed of trust signed by Plaintiffs in favor of Crevecor Mortgage, Inc.[147]  When a contract incorporates by reference a provision from another document, that provision becomes a part of the contract into which it was incorporated and is thus construed with the contract.[148]  Separate documents executed at the same time, for the same purpose, and in the course of the same transaction are to be construed together.[149]  The note and deed of trust were executed contemporaneously. Thereafter, on July 10, 2009, HSBC acquired the loan and servicing rights.[150]  On September 30,

---

[145] *Crose v. Humana Ins. Co.*, 823 F.3d 344 (5th Cir. 2016).
[146] Defs.' Ex. 7.
[147] Defs.' Ex. 8.
[148] *PER Group, L.P. v. Dava Oncology, L.P.*, 294 S.W.3d 378 (Tex. App.–Dallas 2009, no pet.).
[149] *Jones v. Kelley*, 614 S.W.2d 95 (Tex. 1981).
[150] *See* ECF No. 1 at 5, ¶ 23, ECF No. 23 at 3, ¶ 23 (answering complaint and admitting that HSBC acquired the loan and/or servicing rights on or about July 10, 2009).

2013, USBT acquired the loan rights.[151]   There is no dispute regarding the lawfulness of the assignments.   Therefore, the Court finds that these documents demonstrate a valid contract between Plaintiffs and USBT.

### ii.   Performance or tendered performance by Plaintiffs

A party seeking recovery for breach of a contract must then establish that it either performed under the contract, tendered performance under the contract, or was excused from performing its contractual obligations.[152]   Here, while Plaintiffs originally failed to make payments under the note, Plaintiffs' proposed to cure their arrearages through their bankruptcy plan.   Section 1322(b)(3) provides that a plan may "provide for the curing or waiving of any default."[153]   Plaintiffs' confirmed plan proposed to cure their arrearages through pro rata payments over 55 months.[154]   As of July 21, 2016, Plaintiffs completed all their plan payments, and received a discharge.[155]

Because Plaintiffs completed all Plan payments and received a discharge, their default was cured under § 1322(b)(3).   Thus, this Court finds that Plaintiffs performed under the contract.

### iii.   Breach of contract by USBT

Third, there must be a breach of the contract by USBT.[156]   The Court must first determine what conduct was required of USBT.   Then, the Court must determine if USBT failed to perform as required.[157]   Under Texas law, "a breach of contract occurs when a party fails or refuses to

---

[151] Pls.' Exs. 20, 21.
[152] *Mead v. Johnson Group*, 615 S.W.2d 685, 689 (Tex. 1981).
[153] 11 U.S.C. § 1322(b)(3).
[154] Bankr. ECF Nos. 2, 101.
[155] Bankr. ECF No. 139.
[156] *Crose v. Humana Ins. Co.*, 823 F.3d 344 (5th Cir. 2016).
[157] *See Meek v. Bishop Peterson & Sharp*, 919 S.W.2d 805, 808 (Tex. App.–Houston [14th Dist.] 1996, writ denied) (citing *Garza v. Southland Corp.*, 836 S.W.2d 214, 219 (Tex. App.–Houston [14th Dist.] 1992, no writ)).

perform an act or thing that he has expressly or impliedly promised to do."[158]   Additionally,

Texas law requires that every party to a contract perform its promises with care, skill, reasonable

expedience, and faithfulness.[159]   A promisor therefore breaches a contract when it either fails to

perform as promised or the method of its performance causes damage to the promisee.[160]

The deed of trust expressly states:

> **3. Funds for Escrow Items.**  Borrower shall pay to lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property . . .
> ***
> **9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.**  If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy . . .), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property.  Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument . . . .  Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument.  These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment . . . .[161]

Pursuant to the provisions of the deed of trust, the lender had explicit authorization to pay the ad

valorem taxes on the Property if Plaintiffs failed to do so.  Having determined the parameters of

conduct required of lender as it pertains to the payment of the ad valorem taxes, the Court must

now determine if the lender failed to perform as required, or the method of performance caused

---

[158] *See Fidelity Deposit Co. of Maryland v. Stool*, 607 S.W.2d 17, 25 (Tex. App.–Tyler 1980, no pet.) (citing *Crutcher–Rolfs–Cummings v. Ballard*, 540 S.W.2d 380, 386 (Tex. Civ. App. – Corpus Christi 1976, writ ref'd n.r.e.)); *Provident Sav. Life Assurance Soc'y of N.Y. v. Ellinger*, 164 S.W. 1024, 1026 (Tex. Civ. App.–Austin 1913, writ ref'd).

[159] *See Sw. Bell Tel. Co. v. DeLanney*, 809 S.W.2d 493, 494 (Tex. 1991).

[160] *See Jones v. Star Houston, Inc.*, 45 S.W.3d 350, 355 (Tex. App.–Houston [1st Dist.] 2001, no writ); *Entergy Gulf States, Inc. v. Akrotex, Inc.*, 40 S.W.3d 201, 204 (Tex. App.–Beaumont 2001, no pet.).

[161] Defs.' Ex. 8 at 135–138.

damage to the promisee.

On April 22, 2013, HSBC paid the outstanding 2010 and 2012 ad valorem taxes to Hidalgo County.[162]   On June 7, 2013, Hidalgo County refunded the payment of the 2010 and 2012 ad valorem taxes back to HSBC.[163]   HSBC's actions should have ended there.   However, despite the refunding of 2010 and 2012 ad valorem taxes, on July 24, 2013 by Hidalgo County, HSBC filed the 3002.1 Notice with the Court, claiming entitlement to reimbursement of the same.[164]   As a consequence of HSBC's 3002.1 Notice, on September 19, 2013, the Trustee filed her Motion to Dismiss Plaintiffs' case for failure to propose a feasible Plan.[165]   Several days later, on September 30, 2013, USBT purchased the loan from HSBC.[166]   USBT never withdrew, sought leave to withdraw, or modified the 3002.1 Notice.   By failing to withdraw, failing to seek leave to withdraw, or failing to modify the 3002.1 Notice, USBT claimed reimbursement of monies under the ad valorem provisions of the contract in which it was not entitled to.   As such, this Court finds that USBT breached the Note and Deed of Trust.

### iv.   *Damages sustained by Plaintiffs as a result of the breach*

In a breach of contract suit, damages are limited to the actual damages that are the natural, probable, and foreseeable consequences of the defendant's breach.[167]   To prevail in a breach of contract suit seeking actual damages—compensation for provable economic harm— there must be a showing that the plaintiff was actually harmed, not merely wronged.[168]   As a general rule, mental anguish is not an element of damages that may be recovered in an action on

---

[162] Pls.' Ex. 14.
[163] *See* Defs.' Ex. 45 at 972.
[164] Pls.' Ex. 16.
[165] Pls.' Ex. 17.
[166] *See* Pls.' Exs. 20, 21.
[167] *Hallmark v. Hand*, 885 S.W.2d 471, 481 (Tex. App.—El Paso 1994, no pet.) (citing *Mead v. Johnson Group, Inc.*, 615 S.W.2d 685, 687 (Tex. 1981)).
[168] *Intercontinental Group Partnership v. KB Home Lone Star L.P.*, 295 S.W.3d 650, 656 (2009).

breach of contract.[169]   Pursuant to § 38.001 of the Texas Civil Practice and Remedies Code, to recover attorney's fees, one must (1) prevail on a cause of action for which attorney's fees are recoverable, and (2) recover damages.[170]

Here, Plaintiffs have—without providing any evidence—alleged they "incurred actual damages and attorneys' fees."[171]   Taking the record before this Court, however, Plaintiffs fail to evidence any suffering of provable economic harm arising from USBT's breach of the Note and Deed of Trust.   Throughout trial, Plaintiffs have testified that they have suffered general mental anguish, but did not provide specificity or causality as to their afflictions.   Without a record proving economic harm arising from USBT's breach of the Note and Deed of Trust, this Court finds that Plaintiffs did not make a showing of actual damages.   Because actual damages were not proven here, attorney's fees under § 38.001 cannot be recovered either.   And because Plaintiffs failed to prove the fourth element of a breach of contract claim, this Court finds that Plaintiffs' breach of contract claim should be denied.

### F.   Count XVI: Sanctions

Under Count XVI, Plaintiffs seek sanctions, including attorneys' fees, against Defendants pursuant to the Court's inherent powers and § 105(a).   One of a Bankruptcy court's numerous tools by which to sanction wrongful conduct is through its inherent power.[172]   When sanctions are imposed under the Court's inherent power, this Court's "investigation of legal and evidentiary sufficiency is particularly probing," and this Court must "probe the record in detail to get at the underlying facts and ensure the legal sufficiency of their support for the district court's

---

[169] *See Rubalcaba v. Pacific/Atlantic Crop Exchange, Inc.*, 952 S.W.2d 552, 558 (Tex. App.—El Paso 1997, no pet.) (collecting cases).

[170] TEX. CIV. PRAC. & REM. CODE § 38.001; *Green Intern., Inc. v. Solis*, 951 S.W.2d 384, 390 (1997) (noting that jury's findings that a breach of contract with zero damages suffered by plaintiff did not permit award of attorneys' fees to plaintiff).

[171] ECF No. 78 at 28.

[172] *Chambers*, 501 U.S. at 44.

more generalized finding of 'bad faith.' "[173]  "Because of their very potency, inherent powers must be exercised with restraint and discretion.  A primary aspect of that discretion is the ability to fashion an appropriate sanction for conduct which abuses the judicial process."[174]  "As with all judicially imposed sanctions, the court must impose the least onerous sanction that addresses the situation."[175]  When a court imposes sanctions using its inherent powers that are penal in nature—such as the imposition of a fine or an award of attorney's fees, the standard is clear and convincing.[176]

This Court declines to impose sanctions under its inherent powers, and instead imposes sanctions under Count I.  Therefore, this Court finds that Count XVI should be subsumed by Count I.

### G.  Count XVII: Request for injunctive relief

Count XVII seeks a permanent injunction against Defendants "to enjoin further violations of the law."[177]  The Fifth Circuit has recognized § 105(a) as granting bankruptcy courts the authority to grant injunctive relief.[178]  A permanent injunction under § 105 is warranted if the movant meets his burden of establishing the traditional elements for issuance of a permanent injunction.[179]  "A plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a

---

[173] *Carroll v. Abide* (*Matter of Carroll*), 850 F.3d 811, 815 (5th Cir. 2017).

[174] *Chambers*, 501 U.S. at 44–45 (citation omitted).

[175] *In re Hughes*, No. 06-32726-SGJ-7, 2007 WL 1087784, at *3 (Bankr. N.D. Tex. Apr. 4, 2007).

[176] *See In re Parsley*, 384 B.R. 138, 179, 180 (Bankr. S.D. Tex. 2008).

[177] ECF No. 78 at 31.

[178] *Mirant Corp. v. Potomac Elec. Co.* (*In re Mirant Corp.*), 378 F.3d 511, 523 (5th Cir. 2004).

[179] *See Commonwealth Oil Ref. Co., Inc. v. U.S. Envtl. Prot. Agency* (*In re Commonwealth Oil Refining Co., Inc.*), 805 F.2d 1175, 1188–89 (5th Cir. 1986), *cert. denied*, 483 U.S. 1005 (1987).

permanent injunction."[180]   In the context of injunctive relief, an adequate remedy at law exists if the situation to be enjoined can be remedied by legally measurable damages.[181]

In their amended complaint, Plaintiffs argue that "[u]nless restrained, Defendants . . . will, in all likelihood, continue to commit abuse of process and violate federal and state law by the actions described herein."[182]   However, because the Court granted Plaintiffs' FDCPA claims, an adequate remedy at law exists.   Therefore, the Court finds that it should deny Plaintiffs' request for injunctive relief and attorneys' fees and expenses in relation thereto.

### H.  Count XVIII: Request for declaratory relief

Under the Declaratory Judgment Act, "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."[183]   Courts have consistently interpreted this permissive language as a broad grant of discretion to district courts to refuse to exercise jurisdiction over a declaratory action that they would otherwise be empowered to hear.[184]

"In determining whether [to] exercise jurisdiction over an action for declaratory relief, a district court should analyze '(1) whether the judgment will serve a useful purpose in clarifying or settling the legal issues involved; and (2) whether a judgment would finalize the controversy and offer relief from uncertainty.'"[185]   To that end, dismissal of a declaratory judgment action is warranted where the declaratory relief plaintiff seeks is duplicative of other causes of action.[186]

---

[180] *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).

[181] *Dresser–Rand Co. v. Virtual Automation Inc.*, 361 F.3d 831, 848 (5th Cir. 2004) (citing *Haq v. America's Favorite Chicken Co.*, 921 S.W.2d 728, 730 (Tex.App.–Corpus Christi 1996, writ dism'd w.o.j.)).

[182] ECF No. 78 at 31.

[183] 28 U.S.C. § 2201(a).

[184] *See Wilton v. Seven Falls Co.*, 515 U.S. 277, 282–83 (1995); *Public Serv. Comm'n of Utah v. Wycoff*, 344 U.S. 237, 241 (1952).

[185] *Kuhns v. Ledger*, 202 F. Supp. 3d 433, 443 (S.D.N.Y. 2016) (quoting *Dow Jones & Co. v. Harrods Ltd.*, 346 F.3d

Among Plaintiffs remaining live claims, Plaintiffs seek a declaration from the Court that Defendants' actions constituted an abuse of process, was a violation of state law, and violated the FDCPA[187]   However, the Court finds that there is no need for the declaratory relief, as the relief sought is merely duplicative of Plaintiffs other causes of action.  Because any declaratory relief would not serve a useful purpose in clarifying or settling legal issues involved, the Court declines Plaintiffs' invitation to make such declarations.   As such, the Court finds that it should deny Plaintiffs claim for declaratory relief and attorneys' fees and expenses in relation thereto.

## I.  Count XIX & XX: Damages and attorneys' fees

In Counts XIX and XX, Plaintiffs seek actual and punitive damages, including attorneys' fees, pursuant to the Court's inherent powers, § 105(a), Federal Rule of Bankruptcy Procedure 3002.1, and 15 U.S.C. § 1692k.[188]   The Court already found that Count XVI was subsumed by Count I.  The Court will discuss what remains in turn.

### i.   Actual damages, punitive damages, and attorneys' fees under § 105(a)

Under § 105, bankruptcy courts have broad authority to take any action that is necessary or appropriate to prevent the abuse of process.[189]   In applying § 105's plain language, courts have used § 105 to grant plaintiffs a broad range of remedies, including any damage remedy available in a private cause of action.[190]   In a decision regarding chapter 13 mortgage payments, the Fifth

---

357 (2d Cir. 2003)).

[186] *Kuhns*, 202 F. Supp. 3d at 443 (quoting *Catalano v. BMW of N. Am., LLC*, 167 F. Supp. 3d 540, 563 (S.D.N.Y. 2016)) (internal punctuation and brackets omitted); *see also Cypress/Spanish Fort I, L.P. v. Prof'l Svc. Indus., Inc.*, 814 F. Supp. 2d 698, 710 (N.D. Tex. 2011) (dismissing plaintiff's request for declaratory relief that was duplicative of plaintiff's claim for breach of contract on the grounds it was duplicative and unnecessary).

[187] ECF No. 78.

[188] *Id.*

[189] *Marrama v. Citizens Bank of Massachusetts*, 549 U.S. 365, 373–74 (2007); *U.S. v. Sutton*, 786 F.2d 1305, 1307 (5th Cir. 1986) (noting that § 105(a) "authorizes a bankruptcy court to fashion such orders as are necessary to further the purposes of the substantive provisions of the Bankruptcy Code.").

[190] *Placid Ref. Co. v. Terrebonne Fuel & Lube, Inc.* (*In re Terrebonne Fuel & Lube, Inc.*), 108 F.3d 609, 613 (5th Cir. 1997) ("Reading [§ 105(a)] under its plain meaning, we conclude that a bankruptcy court can issue any order, including a civil contempt order, necessary to carry out the provisions of the bankruptcy code . . . which compensate

Circuit advised bankruptcy courts that they may use their § 105 authority to prohibit creditor abuses of the chapter 13 process.[191]

As discussed under Count I, the assessment of sanctions and attorney's fees is undoubtedly within a court's power, and may be awarded upon a finding of bad faith.[192]   Bad faith conduct may be established if a court finds that the party "deliberately abused the judicial process."[193]

Under Count I, the Court found that Defendants deliberately abused the bankruptcy process by failing to withdraw, failing to seek leave to withdraw, or failing to modify the 3002.1 Notice.   Because Defendants deliberately abused the bankruptcy process, the Court found that Defendants' actions constituted bad faith.   This Court, reticent that its powers to sanction must be exercised with restraint and discretion, finds that pursuant to § 105(a), Defendants should be jointly and severally liable to Plaintiffs for punitive damages in the sum of $9,000, and should additionally compensate Plaintiffs for their reasonable and necessary attorneys' fees and expenses in prosecuting the abuse of process claim in an amount to be determined by this Court. Plaintiffs alleged their economic damages as:" $247.34 for mileage expenses; 2) 11.99 for future mileage; 3) Plaintiffs' time spent prosecuting case for $1,775; 4) unspecified expenses; and 5) $2,034.33 in unspecified damages.[194]   At trial, however, Plaintiffs provided no proof or evidence to corroborate these claims.   As such, the Court finds that it should award Plaintiffs $0 in actual

---

a debtor for damages suffered as a result of a creditor's violation of a post-confirmation injunction under 11. U.S.C. §1141 . . . ."); *In re Nat'l Gypsum Co.*, 118 F.3d 1056, 1062 (5th Cir. 1997) (noting that the discharge injunction granted by § 524(a) is a substantive right conferred by the Bankruptcy Code, often enforced by a motion for contempt); *Jove Eng'g, Inc. v. I.R.S.*, 92 F.3d 1539, 1554 (11th Cir. 1996) ("Therefore, the plain meaning of § 105(a) encompasses any type of order, whether injunctive, compensative or punitive, as long as it is 'necessary or appropriate to carry out the provisions of' the Bankruptcy Code.").
[191] *Campbell v. Countrywide Home Loans, Inc.*, 545 F.3d 348, 356 n.1 (5th Cir. 2008).
[192] *Chambers*, 501 U.S. at 45 – 46.
[193] *The Cadle Co. v. Moore* (*In re Moore*), 739 F.3d 724, 730 (5th Cir. 2014).
[194] ECF No. 310 at 48, 54.

damages.

### ii.    *Fed. R. Bankr. P. 3002.1*

Under Federal Rule of Bankruptcy Procedure 3002.1(i), if the holder of a claim fails to provide any information regarding a notice of expenses, the Court may—after notice and a hearing—award reasonable expenses and attorney's fees caused by the failure to notify.[195] Because Rule 3002.1(i) provides relief in situations involving a lack of notice, rather than incorrect notice, the Court finds that it should deny Plaintiffs' request to award reasonable and necessary fees and expenses under Rule 3002.1(i).

### iii.    *15 U.S.C. § 1692k*

15 U.S.C. § 1692k in part, provides:

(a)  Amount of damages
Except as otherwise provided by this section, any debt collector who fails to comply with any provision of this subchapter with respect to any person is liable to such person in an amount equal to the sum of –
　(1) any actual damage sustained by such person as a result of such failure;
　(2)(A) in the case of any action by an individual, such additional damages as the court may allow, but not exceeding $1,000; or
　(2)(B) in the case of a class action, (i) such amount for each named plaintiff as could be recovered under subparagraph (A), and (ii) such amount as the court may allow for all other class members, without regard to a minimum individual recover, not to exceed the lesser of $500,000 or 1 per centum of the net worth of the debt collector; and
　(3) in the case of any successful action to enforce the foregoing liability, the costs of the action, together with a reasonable attorney's fee as determined by the court.  On a finding by the court that an action under this section was brought in bad faith and for the purpose of harassment, the court may award to the defendant attorney's fees reasonable in relation to the work expended and costs.
(b)  Factors considered by court
In determining the amount of liability in any action under subsection (a), the court shall consider, among other relevant factors—
　(1) in any individual action under subsection (a)(2)(A), the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, and the extent to which such noncompliance was intentional; or
***

---

[195] Fed. R. Bankr. P. 3002.1(i).

(c) Intent

A debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonable adapted to avoid any such error.[196]

Under the FDCPA, a court may allow actual damages, statutory damages up to a maximum of $1,000,[197] and attorneys' fees.[198]   However, a debt collector may not be held liable in any action under the subchapter if the debt collector shows by a preponderance of evidence that the violation was: (1) unintentional; (2) resulted from a bona fide error; and (3) the bona fide error occurred despite procedures designed to avoid the error, [199]  Here, even assuming arguendo that Caliber's failure to withdraw, seek leave to withdraw, or modify the 3002.1 Notice was unintentional and resulted from a bona fide error, Caliber failed to produce any evidence that it had procedures in place designed to avoid such error.  As such, the Court finds that the bona-fide error defense does not apply.

Actual damages include not only out-of-pocket expenses, but also damages for personal humiliation, embarrassment, mental anguish, and emotional distress.[200]   To recover such damages, Plaintiffs must introduce direct evidence of the nature, duration, and severity of the mental anguish, thus establishing a substantial disruption in the Plaintiffs' daily routine.[201]  The evidence must show a high degree of mental pain and distress that is more than mere worry,

---

[196] 15 U.S.C. § 1692k.

[197] *See Arianas v. LVNV Funding LLC*, 54 F. Supp. 3d 1308, 1311 (M.D. Fla. 2014) ("Neither the [Florida Consumer Collection Practices Act] nor the FDCPA permits Plaintiff to recover statutory damages in the amount of $1,000 per violation); *Versteeg v. Bennett, DeLoney & Noyes, P.C.*, 839 F. Supp. 2d 1238, 1241 (D. Wyo. 2011) (prevailing on multiple FDCPA claims still entitles claimant to $1,000 statutory maximum); *Frazier v. Absolute Collection Service, Inc.*, 767 F. Supp. 2d 1354, 1366 (N.D. Ga. 2011) (holding same); *Overcash v. United Abstract Group, Inc.*, 549 F. Supp. 2d 193, 196 (N.D.N.Y. 2008) (holding same).

[198] 15 U.S.C. § 1692k(a)(1)–(3).

[199] 15 U.S.C. § 1692k(c).

[200] *Reyelts v. Cross*, 968 F.Supp.2d 835, 846 (N.D. Tex. 2013).

[201] *Id.*

anxiety, vexation, embarrassment, or anger.[202]   Here, while Plaintiffs have testified generally to damages, and mental distress, anxiety, and worry,[203] the Court finds that such generalized testimony is not specific or substantial enough to establish a disruption in Plaintiffs' daily routine.   Plaintiffs provided no proof or evidence to corroborate these claims, beyond mere generalized allegations.   The Court therefore finds that it should award Plaintiffs $0 in actual damages regarding their *15 U.S.C. § 1692k* claim

With regard to statutory damages, a plaintiff need not establish actual damages to recover under the FDCPA.[204]   The factors a court may consider in awarding statutory damages are set forth in the statute and include: "the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, and the extent to which such noncompliance was intentional."[205]   "The decision on whether to award additional damages and on the size of any such award is committed to the sound discretion of the district court."[206]   Here, Caliber failed to withdraw, failed to seek leave to withdraw, or failed to modify the 3002.1 Notice for the entire length of time it serviced Plaintiffs' Property loan.   Caliber's failure to diligently correct the improper 3002.1 Notice caused needless expense, and amounted to bad faith.   Accordingly, the Court finds that it should award Plaintiffs the full amount of additional damages available under 15 U.S.C. § 1692k(a)(2)(A): $1,000.

Lastly, under 15 U.S.C. § 1692k(a)(3), the Court finds that Caliber should compensate Plaintiffs for their reasonable and necessary attorneys' fees and expenses, in an amount to be determined by this Court, in prosecuting the FDCPA claims.

---

[202] *Id.*
[203] ECF No. 330 at 193, 228-29.
[204] *Eastman v. Baker Recovery Services* (*In re Eastman*), 419 B.R. 711, 733 (Bankr. W.D. Tex. 2009).
[205] 15 U.S.C. § 1692k(b)(1).
[206] *Clomon v. Jackson*, 988 F.2d 1314, 1322 (2d Cir. 1993).

### III. <u>CONCLUSION</u>

Accordingly, the Court finds that:

a. Count I: Abuse of process as to Caliber and USBT should be granted;
b. Count VI: Objection to docket no. 82, pursuant to FED. R. BANKR. P. 3002.1 should be sustained;
c. Count IX: Violation of the FDCPA as to Caliber pursuant to 15 U.S.C. §§ 1692e, 1692e(2), 1692e(5), 1692f, and 1692f(1) should be granted;
d. Count XII: Breach of contract as to USBT should be denied;
e. Count XVI: Sanctions as to Caliber and USBT is subsumed by Count I;
f. Count XVII: Request for injunctive relief as to Caliber and USBT should be denied;
g. Count XVIII: Request for declaratory relief as to Caliber and USBT should be denied;
h. Counts XIX and XX: Request for actual & punitive damages and request for attorneys' fees as to Caliber and USBT should be granted in part and denied in part:

    i. Under Count I and pursuant to 11 U.S.C. § 105(a), Plaintiffs' claim for actual damages should be denied.

    ii. Under Count I and pursuant to 11 U.S.C. § 105(a), Caliber and USBT should be held jointly and severally liable to Plaintiffs for punitive damages in the sum of $9,000.

    iii. Under Count I and pursuant to 11 U.S.C. § 105(a), Plaintiffs should be awarded reasonable and necessary attorneys' fees and expenses against Caliber and USBT in an amount to be determined by this Court for prosecuting the abuse of process claim.

    iv. Under Count VI and pursuant to Federal Rule of Bankruptcy Procedure 3002.1(i), Plaintiffs' claim for reasonable and necessary fees and expenses should be denied.

    v. Under Count IX and pursuant to 15 U.S.C. § 1692k(a)(1), Plaintiffs' claim for actual damages should be denied.

    vi. Under Count IX and pursuant to 15 U.S.C. § 1692k(a)(2)(A), Plaintiffs should be awarded the sum of $1,000 in statutory damages against Caliber.

    vii. Under Count IX and pursuant to 15 U.S.C. § 1692k(a)(3), Plaintiffs should be awarded reasonable and necessary attorneys' fees and expenses against Caliber in an amount to be determined by this Court for prosecuting the 15 U.S.C. §§ 1692e, 1692e(2), 1692e(5), 1692f, and 1692f(1) claims.

i. Interest should accrue at 1.55% per annum until paid. [207]

---

[207] UNITED STATES DISTRICT & BANKRUPTCY COURT – SOUTHERN DISTRICT OF TEXAS, https://www.txs.uscourts.gov (last visited Jan. 30, 2020).

     j.   Any requests for damages and attorneys' fees not expressly granted herein should be denied.

     k.   Plaintiffs must file an application for reasonable and necessary attorneys' fees and expenses in accordance with this Court's Judgment within 30 calendar days of entry of same.

A judgment consistent with this Memorandum Opinion will be entered on the docket simultaneously herewith.

SIGNED 01/31/2020.

Eduardo V. Rodriguez
United States Bankruptcy Judge