United States Bankruptcy Court
Southern District of Texas

**ENTERED**

September 10, 2021

Nathan Ochsner, Clerk

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION**

| | | |
|---|---|---|
| IN RE: | § | |
| **JOSE SR. TREVINO** | § | **CASE NO: 10-70594** |
| and | § | |
| **TERESA TREVINO,** | § | **CHAPTER 13** |
| Debtors. | § | |
| _____ | § | |
| **TERESA TREVINO** | § | |
| and | § | |
| **JOSE SR. TREVINO,** | § | |
| Plaintiffs, | § | |
| | § | |
| VS. | § | **ADVERSARY NO. 13-7031** |
| | § | |
| **U.S. BANK TRUST, N.A.** | § | |
| and | § | |
| **CALIBER HOME LOANS, INC.,** | § | |
| Defendants. | § | |

## <u>MEMORANDUM OPINION</u>

U.S. Bank Trust, N.A., as trustee for LSF8 Master Participation Trust, and Caliber Home

Loans, Inc. seeks summary judgment as to Teresa and Jose Trevino's claims for compensation and

expenses as set forth in the application of Plaintiffs' counsel for "Allowance of Compensation and

Reimbursement of Expenses" jointly filed by Kellett & Bartholow PLLC and Stone Curtis PLLC.

On July 15, 2021, the Court held a hearing.  For the reasons stated herein, summary judgement is

granted against Kellett & Bartholow PLLC and Stone Curtis PLLC regarding their fees between

December 2013 and July 7, 2014.  If Kellett & Bartholow PLLC and Stone Curtis PLLC carry

their burden at trial to show that their fees and expenses are reasonable and necessary for that time

period, they will be awarded no more than $1,837.50 in fees and $247.99 in expenses.  Addition-

ally, as for Kellett & Bartholow PLLC and Stone Curtis PLLC's fees between July 8, 2014, and

March 21, 2016, if they carry their burden at trial to show that their fees and expenses are

reasonable and necessary for that time period, they will be awarded no more than $28,105.00 in fees and $1,871.56 in expenses. The remainder of U.S. Bank Trust, N.A., as trustee for LSF8 Master Participation Trust, and Caliber Home Loans, Inc.'s motion for summary judgment is denied. Additionally, the Court denies Kellett & Bartholow PLLC and Stone Curtis PLLC's request for summary judgment that they are entitled to fees and costs for their defense of the fee application.

As required by Rule 56(f)(1), notice is hereby given to U.S. Bank Trust, N.A., as trustee for LSF8 Master Participation Trust, and Caliber Home Loans, Inc. of the Court's intention to grant summary judgment for Kellett & Bartholow PLLC and Stone Curtis PLLC, finding that they are entitled to recover reasonable and necessary attorneys' fees pursuant to this Court's prior judgment awarding fees pursuant to 11 U.S.C. § 105(a) and 15 U.S.C. § 1692k(a)(3) and that in determining the necessity and reasonableness of their requested fees and expenses, there is no proportionality analysis required in connection with Teresa and Jose Trevino's damages award. U.S. Bank Trust, N.A., as trustee for LSF8 Master Participation Trust, and Caliber Home Loans, Inc. have twenty days from the entry of this Court's accompanying order to respond to the Court's notice. Kellett & Bartholow PLLC and Stone Curtis PLLC are granted twenty days from the date of U.S. Bank Trust, N.A., as trustee for LSF8 Master Participation Trust, and Caliber Home Loans, Inc.'s response, if any, to reply. No other briefing will be accepted on the matter.

A genuine dispute of material fact remains regarding the amount, necessity and reasonableness of Kellett & Bartholow PLLC and Stone Curtis PLLC's fees and expenses which will be determined after a final trial on the merits.

# I. BACKGROUND

1.  On August 25, 2010, Jose Trevino ("*Mr. Trevino*") and Teresa Trevino ("*Ms. Trevino*"), (together, "*Plaintiffs*") filed a voluntary petition for relief under chapter 13 of title 11 of the United States Code, commencing the above-captioned bankruptcy case ("*Bankruptcy Case*").[1]

2.  On August 25, 2010, Ellen Stone of The Stone Law Firm, P.C. ("*Stone Firm*"), in McAllen, Texas filed her "Bankruptcy Rule 2016(b) Disclosure and Application for Approval of Fixed Fee Agreement" ("*Fixed Fee Agreement*") setting forth the services to be rendered by, and fees to be paid to Stone as counsel for the Trevinos in their Bankruptcy Case.[2]  The Fixed Fee Agreement specifically states that the fixed fee arrangement set forth therein "does not include . . . [r]epresentation of the Debtors in an adversary proceeding, either as a plaintiff or a defendant."[3]

3.  On August 26, 2010, the Court approved the Fixed Fee Agreement.[4]

4.  On December 31, 2010, HSBC Mortgage Services, Inc. ("*HSBC*"), the holder of the loan on Plaintiffs' residential property ("*Property*"), filed a proof of claim in Plaintiffs' Bankruptcy Case ("*Claim #21*").[5]

5.  On July 24, 2013, HSBC filed its "Notice of Post-Petition Mortgage Fee, Expenses, and Charges" ("*3002.1 Notice*"),[6] claiming that it paid, inter alia, certain 2010 *ad valorem* taxes on the Property in the amount of $2,933.83.[7]

6.  On November 18, 2013, U.S. Bank Trust, N.A., as trustee for LSF8 Master Participation Trust ("*USBT*") acquired Plaintiffs' loan on the Property ("*Loan*") from HSBC, and Caliber Home Loans, Inc. ("*Caliber*," and together with USBT "*Defendants*") began servicing the Loan.[8] That same day, USBT filed its "Transfer of Claim Other than for Security" ("*Claim Transfer Notice*").[9]  The Claim Transfer Notice transferred Claim #21 from HSBC to USBT.[10]

7.  On December 30, 2013, Plaintiffs filed the instant adversary proceeding.[11]

---

[1] Any reference to "Code" or "Bankruptcy Code" is a reference to the United States Bankruptcy Code, 11 U.S.C., or any section (i.e. §) thereof refers to the corresponding section in 11 U.S.C.  Citations to the Trevino's bankruptcy case, 20-32883, shall take the form "Bankr. ECF No. __."  Bankr. ECF No. 1.

[2] Bankr. ECF No. 10.

[3] *Id.*

[4] Bankr. ECF No. 12.

[5] 11-70475, Claim No. 21.

[6] Bankr. ECF No. 82.

[7] *Id.* at 1.

[8] ECF No. 341 at 1, 3.

[9] Bankr. ECF No. 90.

[10] *Id.*

[11] ECF No. 1.

8.  On January 2, 2015, the servicing of Plaintiffs' Loan was again transferred, this time to Select Portfolio Servicing, Inc.[12]

9.  On February 25, 2015, Plaintiffs' Loan was transferred by USBT to Wilmington Savings Fund Society, FSB, d/b/a Christiana Trust, as Indenture Trustee, for the CSMC 2015-RPL1 Trust, Mortgage-Backed Notes, Series 2015-RPL1.[13]

10. On March 12, 2015, Plaintiffs filed an amended complaint ("*Amended Complaint*").[14]  The gravamen of Plaintiffs' complaint was:

> HSBC's 3002.1(c) Notice started a chain reaction that would have destroyed Plaintiffs' bankruptcy case and their ability to save their home from foreclosure.  The chapter 13 Trustee filed a motion to dismiss the [Plaintiffs'] bankruptcy case because payment of HSBC's 3002.1(c) Notice would cause Plaintiffs' chapter 13 bankruptcy plan to be deficient.  But for this lawsuit and emergency measures taken by Plaintiffs' counsel, the 3002.1 Notice would have caused the [Plaintiffs'] case to be dismissed . . .[15]

11. On April 1, 2015, HSBC, USBT, and Caliber filed motions to dismiss Plaintiffs' Amended Complaint.

12. On June 19, 2015, this Court ruled on those motions to dismiss, dismissing several of Plaintiffs' claims.[16]  This Court amended its order on July 31, 2015.[17]

13. On July 6, 2015, Claim #21 was transferred from USBT to Wilmington.[18]

14. On September 17, 2018, Kellett & Bartholow PLLC ("*KB Firm*") and Stone Law Firm, P.C. (*Stone Firm*," and together with KB Firm, "*Applicants*"), filed their "Amended Disclosure of Compensation of Attorneys for Debtors" ("*Disclosure*"), disclosing their fee arrangement with Plaintiffs.[19]  Attached to the Disclosure is an "Agreement for Employment and Power of Attorney," by and between Plaintiffs, the KB Firm, and the Stone Firm.[20]  The Disclosure includes a second attachment expressing a co-counseling agreement between the KB Firm and the Stone firm regarding the representation of Plaintiffs.[21]  The Disclosure was filed approximately five years after the Applicants began representing Plaintiffs in this adversary proceeding and more than two years after Plaintiffs received their discharge in their Bankruptcy Case.

---

[12] ECF No. 341 at 8.
[13] *Id.*
[14] ECF No. 78.
[15] *Id.* at 4, ¶ 16.
[16] ECF No. 97.
[17] ECF No. 106.
[18] Bankr. ECF No. 117.
[19] Bankr. ECF No. 187.
[20] *Id.* at 4.
[21] *Id.* at 10.

15. On August 7, 2019, a trial was conducted on Plaintiffs' remaining claims ("*Trial*").[22]  The Trial ultimately concluded on October 1, 2019.[23]  At no time prior to the Trial did the KB Firm or the Stone Firm file an application in Plaintiffs' Bankruptcy Case to be employed as special counsel for Plaintiffs in the adversary proceeding.

16. On January 31, 2020, the Court issued a memorandum opinion ("*Trial Opinion*") and judgment ("*Judgment*"), denying Plaintiffs relief on numerous causes of action and denying Plaintiffs' claims for actual damages.[24]  The Court concluded, however, that Defendants violated the Fair Debt Collection Practices Act and committed an abuse of process by not withdrawing the 3002.1 Notice during the period of time when Defendants owned Plaintiffs' Loan.  As a result, the Court found Defendants liable to Plaintiffs for $1,000 in statutory damages under the FDCPA and $9,000 in punitive damages.  The Court further deemed Defendants liable for Plaintiffs' reasonable and necessary attorneys' fees and expenses pursuant to 11 U.S.C. § 105(a) and 15 U.S.C. § 1692k(a)(3), in an amount to be determined following further proceedings.[25]

17. On May 15, 2020, Applicants filed their "Application of Plaintiffs' Counsel for Allowance of Compensation and Reimbursement of Expenses" ("*Fee Application*"), seeking, collectively, $676,576.50 in attorneys' fees and $67,121.59 in expenses, for a grand total of $743,698.09.[26]

18. On August 14, 2020, Defendants filed their objection to the Fee Application ("*Fee Objection*"), objecting to the Fee Application in its entirety.[27]

19. On August 31, 2020, Plaintiffs entered their notice of consent to entry by this Court of final orders on non-core matters[28] and Defendants entered their notice of non-consent.[29]

20. On March 19, 2021, Defendants filed their "Motion for Summary Judgment as to Application of Plaintiffs' Counsel for Allowance of Compensation and Reimbursement of Expenses" ("*Motion*").[30]  Plaintiffs filed a response on April 16, 2021 ("*Response*").[31]  Defendants filed their reply on April 23, 2021.[32]  Plaintiffs filed a sur-reply on April 30, 2021.[33]

21. On June 3, 2021, the Court held a hearing on the Motion.

---

[22] Aug. 7, 2019 Min. Entry.
[23] Oct. 1, 2019 Min. Entry.
[24] ECF No. 342.
[25] *Id.*
[26] ECF No. 374.
[27] ECF No. 390.
[28] ECF No. 393.
[29] ECF No. 392.
[30] ECF No. 428.
[31] ECF No. 430.
[32] ECF No. 431.
[33] ECF No. 434.

## II.   JURISDICTION, VENUE, AND CONSTITUTIONAL AUTHORITY

This Court holds jurisdiction pursuant to 28 U.S.C. § 1334 and now exercises its jurisdiction in accordance with Southern District of Texas General Order 2012–6.[34]  Bankruptcy judges wield constitutional authority to issue final orders and judgments for core proceedings but can only issue reports and recommendations for non-core proceedings, unless the parties consent to the entry of final orders or judgments on non-core matters.[35]  The instant action is a core proceeding.  The application of Plaintiffs' counsel for allowance of compensation and reimbursement of expenses arises under title 11,[36] making this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (B), and (O).

Nevertheless, adjudication of Defendants' Motion for Summary Judgment does not require this Court to enter a final order or judgment because "[a] partial summary judgment is an interlocutory motion, and the constitutional limitations on the Court's authority to enter final judgments are not implicated."[37]  This Court need only issue an interlocutory order or judgment to resolve Defendants' Motion and may do so even where the Court does not have authority to issue a final order or judgment.[38]

Finally, venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

### III.   SUMMARY JUDGMENT STANDARD

## A.  Federal Rule 56(c)

---

[34] *In re*: *Order of Reference to Bankruptcy Judges*, Gen. Order 2012–6 (S.D. Tex. May 24, 2012).

[35] *See* 28 U.S.C. §§ 157(b)(1), (c)(1); *see also, e.g.*, *Stern v. Marshall*, 564 U.S. 462, 480 (2011); *Wellness Int'l Network, Ltd. v. Sharif*, 135 S. Ct. 1932, 1938–40 (2015).

[36] *See* 28 U.S.C. § 157(b)(1).

[37] *Olstowski v. Petroleum Analyzer Co. (In re Atom Instrument Corp.)*, 478 B.R. 252, 255 (Bankr. S.D. Tex. 2012) (citing *West v. Peterson (In re Noram Res., Inc.)*, 2012 Bankr. LEXIS 2991, at *3–4 (Bankr. S.D. Tex. July 2, 2012)).

[38] *In re Atom Instrument Corp.*, 478 B.R. at255.  The Advisory Committee Notes to Rule 60(b) of the Federal Rules of Civil Procedure explain that "interlocutory judgments are not brought within the restrictions of this rule, but rather they are left subject to the complete power of the court rendering them to afford such relief from them as justice requires." FED. R. CIV. P. 60(b) advisory committee's note.

Federal Rule of Civil Procedure 56[39] permits a party to move for summary judgment, "iden-tifying each claim or defense—*or the part of each claim* or defense—on which summary judgment is sought."[40]  Rule 56 states that the Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[41]  A genuine dispute of material fact exists if the fact at issue could affect the outcome of the case and based on the evidence, a reasonable jury could return a verdict for the non-moving party.[42]

A court is not to weigh summary judgment evidence, assess its probative value, or resolve factual disputes.[43]  The facts must be reviewed with all "justifiable inferences" drawn in the non-movant's favor.[44]  Nevertheless, factual controversies will be resolved in a non-movant's favor "only when there is an actual controversy—that is, when both parties have submitted evidence of contradictory facts."[45]  Where the facts are undisputed and only questions of law exist, a court must apply the appropriate law to the facts to determine whether the movant is entitled to judgment as a matter of law.[46]

Here, Applicants bear the burden of proof at trial to show that their requested fees are reasonable and necessary.  Accordingly, Defendants must show the absence of a genuine issue of disputed fact that entitles them to judgment as a matter of law.[47]  If Defendants fail to meet this

---

[39] Incorporated by FED. R. BANKR. P. 7056 in adversary proceedings

[40] FED. R. CIV. P. 56(a) (emphasis added).

[41] *Id.*

[42] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[43] *Williams v. Time Warner Operation, Inc.*, 98 F.3d 179, 181 (5th Cir. 1996).

[44] *Morris v. Covan World Wide Moving, Inc.,* 144 F.3d 377, 380 (5th Cir.1998).

[45] *Laughlin v. Olszewski,* 102 F.3d 190, 193 (5th Cir.1996).

[46]  *Sheline v. Dun & Bradstreet Corp.*, 948 F.2d 174, 176 (5th Cir. 1991); see *Barnes v. Allstate Ins. Co.*, 2014 WL 1457696, at *1 (E.D. La. Apr. 14, 2014) ("Because the facts are undisputed and this motion presents only a question of law, resolution on summary judgment is appropriate.").

[47] *See Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 335 (5th Cir. 2017).

burden, summary judgment must be denied.[48]  If successful, the burden shifts to Applicants.  To defeat summary judgment, Applicants must "identify specific evidence in the summary judgment record demonstrating that there is a genuine dispute as to a material fact concerning the essential elements of their case for which they will bear the burden of proof at trial,"[49] and articulate precisely how the evidence supports their claims.  If Applicants fail to meet this burden, summary judgment in Defendants' favor is appropriate.[50]

## IV.  ANALYSIS

Defendants assert that they are entitled to summary judgment because (A) Applicants failed to obtain court approval to represent Plaintiffs and failed to timely disclose their fee arrangements with Plaintiffs;  (B) Plaintiffs are not entitled to attorneys' fees for defending the fee application; and (C) Applicants' fees are neither reasonable nor necessary because first, the hours expended by Applicants and the attorneys' fees requested are disproportionate to the success Plaintiffs realized in this adversary proceeding and second, that "special circumstances" justify denying the request for fees entirely.

In their sur-reply, Applicants urge this Court to summarily find in their favor, pursuant to Federal Rule of Civil Procedure 56(f)(1), that Plaintiffs are entitled to recover their reasonable attorneys' fees and expenses of this litigation based on this Court's prior award of fees and expenses pursuant to 11 U.S.C. § 105(a) and 15 U.S.C. § 1692k(a)(3), which is the "law of the case." The only remaining disputed issue of fact, Applicants insist, is the dollar amount of Plaintiffs' attorneys' fees and costs.  Applicants also ask this Court to find that no "proportionality analysis"

---

[48] *United States v. $92,203.00 in U.S. Currency*, 537 F.3d 504, 507 (5th Cir. 2008) (citing *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)).

[49] *Baranowski v. Hart*, 486 F.3d 112, 119 (5th Cir. 2007) (citing *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc)).

[50] FED. R. CIV. P. 56(e); *Celotex*, 477 U.S. 317, 322–23 (1986); *Tran Enters., LLC v. DHL Express (USA), Inc.*, 627 F.3d 1004, 1010 (5th Cir. 2011).

applies to this Court's assessment of the amount of Plaintiffs' attorneys' fees in this case and that Plaintiffs may recover their reasonable attorneys' fees and expenses for defending their fee application.  The Court will consider each in turn.

### A.  Whether summary judgment is appropriate because Applicants failed to obtain court approval to represent Plaintiffs and failed to timely disclose their fee arrangements with Plaintiffs

Defendants assert that the Fee Application should be denied entirely because Applicants failed to timely obtain this Court's approval of their employment to represent Plaintiffs in the adversary proceeding and failed to timely disclose their fee arrangements with Plaintiffs.[51]  As Defendants correctly articulate, "[t]he payment of attorney's fees may be broken into two separate sub-inquiries: (1) if the attorney has been properly employed and (2) if properly employed, if the fees are reasonable."[52]  Applicants failure to comply with a plethora of statutes and rules governing the employment of counsel, Defendants continue, strips Applicants of any entitlement to a fee award.[53]  Defendants conclude that Applicants have committed an abuse of process and as this Court previously held, § 330(a)(1) does not permit the Court to award compensation to attorneys not properly employed.[54]

Section 327(e) of the Bankruptcy Code permits a trustee to employ an attorney to represent a debtor for a specified special purpose.  An attorney seeking employment must file an application in compliance with Federal Rule of Bankruptcy Procedure 2014(a).[55]  The Fifth Circuit has held that "failure to disclose [pursuant to Bankruptcy Rule 2014(a)] is sufficient grounds to revoke an

---

[51] ECF No. 429 at 2, 9, ¶¶ 1, 21.
[52] *Lopez v. Portfolio Recovery Assocs., LLC (In re Lopez)*, 576 B.R. 84, 92 (Bankr. S.D. Tex. 2017) (quoting *In re Palacios*, 2016 Bankr. LEXIS 249, at *11–12 (Bankr. S.D. Tex. Jan. 27, 2016)).
[53] ECF No. 429at 10, ¶ 23.
[54] *Id.* (citing *In re Palacios*, 2016 Bankr. LEXIS 249, at *14).
[55] FED. R. BANKR. P. 2014(a) ("An order approving the employment of attorneys . . . pursuant to § 327 . . . of the Code shall be made only on application of the trustee or committee.").

employment order and deny compensation."[56]  Additionally, Local Rule 2014-1 requires that the application contain the statement required by Bankruptcy Rule 2016(b) and § 329 of the Bankruptcy Code.  Lastly, retention of "special counsel in an individual chapter . . . 13 case for the purpose of prosecuting a tort claim must be filed in a form as published on this Court's website" or "[l]eave from this [Local Rule] must be sought by a separate motion."[57]

It is undisputed that Applicants never filed an employment application and did not timely file the required disclosures in Plaintiffs' chapter 13 case.[58]  The parties disagree, however, over whether Applicants were required to seek employment pursuant to 11 U.S.C. § 327 at the time the adversary proceeding was filed on December 30, 2013.[59]  That is purely a matter of law, which the Court can determine on summary judgment.[60]

In essence, Applicants argue that Fifth Circuit case law in effect on December 30, 2013, did not require a chapter 13 debtor's attorney to be employed pursuant to 11 U.S.C. § 327.[61]  Nevertheless, Applicants insist, this Court already found that Applicants are entitled to fees and costs pursuant to 11 U.S.C. § 105(a) and 15 U.S.C. § 1692k(a)(3) and that decision is the law of the case.[62]  The law-of-the-case doctrine "posits that when a court decides upon a rule of law, that decision should continue to govern the same issue in subsequent stages in the same case."[63]  Therefore, this Court's Trial Opinion and Judgment, Applicants contend, "resolves the outcome of the

---

[56] *Wright v. Csabi (In re Wright)*, 578 B.R. 570, 581 (Bankr. S.D. Tex. 2017) (quoting *I.G. Petroleum, L.L.C. v. Fenasci (In re W. Delta Oil Co.)*, 432 F.3d 347, 355 (5th Cir. 2005)).
[57] BANKR. S.D. TEX. R. 2014-1(d).
[58] ECF No. 429 at 11, ¶ 24; ECF No. 430 at 6 ("[T]his Court has already authorized [Fee] The Applicants' attorneys' fees, notwithstanding the trial record's undisputed evidence and testimony regarding [Fee] The Applicants' lack of employment and failure to timely file disclosures in Plaintiffs' Chapter 13 case.") (citing ECF No. 430-1 at 131–37).
[59] ECF No. 430 at 7.
[60] FED. R. CIV. P. 56(a).
[61] ECF No. 430 at 7.
[62] *Id.* at 5.
[63] *Med. Ctr. Pharm. v. Holder*, 634 F.3d 830, 834 (5th Cir. 2011).

present issue."[64]  Applicants recognize that a court may revisit its prior decision, but that it should

only do so where extraordinary circumstances are present.[65]  The Court now turns to the law-of-

the-case doctrine.

### 1.  The law-of-the-case doctrine

The law-of-the-case doctrine applies only to those issues actually decided by the court, not

those that could have been decided but were not.[66]  Even if an issue was decided, there are three

exceptions to the application of the doctrine.[67]  Those exceptions are: (i) the evidence at a subse-

quent trial is substantially different; (ii) there has been an intervening change of law by a control-

ling authority; or (iii) the earlier decision is clearly erroneous and would work a manifest injus-

tice.[68]

### a.  Whether the law-of-the-case doctrine is applicable in this case

First, this Court considers whether Applicants' employment and entitlement to attorneys'

fees and costs were actually decided by this Court.[69]  Applicants point to this Court's Judgement,

finding that reasonable and necessary attorneys' fees and costs should be awarded under § 105(a)

and § 1692k(a)(3).[70]  Applicants additionally offer the trial transcript, arguing that this Court au-

thorized those fees and costs "notwithstanding the trial record's undisputed evidence and

---

[64] ECF No. 430 at 5.

[65] *Id.* at 6.

[66] *Lindquist v. City of Pasadena*, 669 F.3d 225, 238–39 (5th Cir. 2012).

[67] *United States v. Agofsky*, 516 F.3d 283, 283 (5th Cir. 2008) (citing *United States v. Matthews*, 312 F.3d 652, 657 (5th Cir. 2002)).

[68] *Id.*

[69] *See Windmill Run Assocs. v. Fannie Mae (In re Windmill Run Assocs.)*, 2017 Bankr. LEXIS 2254, at *12–13 (Bankr. S.D. Tex. Aug. 11, 2017) (finding that the law-of-the-case doctrine was not applicable because the fees specifically requested in the adversary proceeding at bar were not addressed in the court's prior memorandum opinion, but that nevertheless, recovery of fees was not permitted).

[70] ECF No. 430 at 5; ECF No. 341 at 16, 28, 40; ECF No. 342 at 2.

testimony regarding Applicants' lack of employment and failure to timely file disclosures in Plaintiffs' chapter 13 case."[71]

This Court's Judgment orders that Plaintiffs should be awarded reasonable and necessary attorneys' fees and that Applicants must file a fee application within 30 days of entry of the Judgment.[72] This Court did not, however, decide whether Applicants' failure to seek proper employment in this case foreclosed Applicants right to fees and costs, although the issue was presented at trial.[73] Therefore, the applicability of the law-of-the-case doctrine is limited to Plaintiffs' entitlement to fees and costs pursuant to § 105(a) and § 1692k(a)(3). The doctrine does not apply to the issue of Applicants' proper employment (or lack thereof) and how that impacts the reasonable and necessary fees to which they are entitled. The Court now turns to the exceptions to the doctrine.

### i. No evidence substantially different than what was presented at Trial is now available

Defendants' Motion raises two issues that were presented at trial: (1) that Applicants failed to timely file an employment application; and (2) that Applicants failed to timely file required disclosures.[74] No new or different evidence has been submitted to this Court.

### ii. Defendants do not argue that there was an intervening change of law by a controlling authority post-Trial

Defendants do not contend that the law governing Plaintiffs' entitlement to fees and costs, § 105(a) or § 1692k(a)(3), has changed since Trial.

### iii. This Court's Judgment was not clearly erroneous and would not work a manifest injustice

A court may revisit its prior decision in any circumstance, but "should be loathe to do so in the absence of extraordinary circumstances such as where the initial decision was 'clearly

---

[71] ECF No. 430 at 6.
[72] ECF No. 342 at 1–2.
[73] *See* ECF No. 430-1 at 131–37.
[74] ECF No. 430-1 at 131–37; ECF No. 429 at 9, ¶ 21.

erroneous and would work a manifest injustice.'"[75]   To determine whether this Court's Judgment was clearly erroneous, the Court will consider whether it was "dead wrong" to award reasonable and necessary attorneys' fees despite Applicants' failure to follow the requirements for employment of special counsel set forth by the Bankruptcy Code, the Bankruptcy Rules, and this Court's Local Procedures.[76]

"To be clearly erroneous, a decision must strike [the court] as more than just maybe or probably wrong; it must be dead wrong."[77]   The question is whether it was clearly erroneous to award Plaintiffs fees and costs if Applicants were not properly employed and failed to timely file required disclosures.  If yes, then this Court must decide whether the Judgment works a manifest injustice.  Applicants are adamant that when this adversary proceeding commenced on December 30, 2013, case law in the Fifth Circuit and in most other districts in the country did not require a chapter 13 debtor's attorney to be employed pursuant to 11 U.S.C. § 327.[78]   Because it was not the law at the time, Applicants conclude, it was not clearly erroneous for this Court to award attorneys' fees and costs.

### a)   When the underlying adversary proceeding was filed, it was not readily apparent from case law that an employment application was required

This Court's *In re Wright* decision makes clear that "[s]pecial counsel acting on behalf of a debtor or the estate must seek lawful employment from this Court while simultaneously following the required Bankruptcy Rules."[79]   However, because this adversary proceeding was filed four years before *In re Wright* was issued, a survey of relevant law in existence on December 30, 2013, is necessary.  Fifth Circuit case law on whether a chapter 13 debtor's attorney must be employed

---

[75] *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 817 (1988) (quoting *Arizona v. California*, 460 U.S. 605, 618 n.8 (1983)).
[76] *Id.*
[77] *Id.*
[78] ECF No. 430 at 7.
[79] 578 B.R. 570, 580–81 (Bankr. S.D. Tex. 2017).

pursuant to § 327 when this adversary proceeding was filed is scant.  Only two cases provide guidance.

*In re Gutierrez* found that § 327 is applicable only when professionals are retained by a trustee, not when retained by the debtor.[80]  The court further held that a chapter 13 debtor's attorney could be paid from estate property "even though clearly not retained by 'the trustee' (and so clearly not bound by section 327(a))."[81]  In *In re Powell*, the court held that §§ 327(a) and (e) apply only to the trustee and not to a chapter 13 debtor, because a chapter 13 debtor does not have the same rights and responsibilities as a trustee.[82]

Courts around the country, then as now, are split on the issue.  For example, in contrast to *In re Gutierrez* and *In re Powell*, in *In re Moore*, the court held that "only those attorneys who are employed pursuant to § 327 may receive compensation from the estate."[83]  In *In re Goines*, the court held that the word "trustee" in § 327(e) included a chapter 13 debtor-in-possession and thus, a chapter 13 debtor had a duty to file an application to employ special counsel.[84]  Solely based on the Fifth Circuit case law cited above and the broader split in the courts over the issue, it was not readily apparent in 2013 that an employment application had to be filed.

### b)  Plaintiffs were required by the Local Rules to file an application to employ special counsel in this case

Local rules also control employment application requirements.  When lawyers appear before this Court, they are required to be familiar with the Southern District of Texas Bankruptcy Local Rules and to follow those rules scrupulously.[85]  Local Rule 2014-1(d) as currently worded was in effect in 2013.  That rule requires that an application to retain special counsel for the purpose

---

[80] 309 B.R. 488, 500 (Bankr. W.D. Tex. 2004).
[81] *Id.*
[82] 314 B.R. 567, 569–70 (Bankr. N.D. Tex. 2004).
[83] 312 B.R. 902, 909 (Bankr. N.D. Ala. 2004).
[84] 465 B.R. 704, 706 (Bankr. N.D. Ga. 2012).
[85] *In re Wright*, 578 B.R. at 575–76.

of filing a tort claim in an individual chapter 13 case be filed using the form on the Court's website or that leave from Local Rule 2014-1(d) be sought in a separate motion.[86]  Defendants maintain that this rule was applicable to Applicants because nearly all of their claims against Defendants sounded in tort.[87]  Applicants, conversely, argue that the original complaint did not contain any tort actions, that Defendants provided no evidence that the Court's website contained a form for employment pursuant to § 327(e), as opposed to § 328(a),[88] and that the Local Rule conflicted with Fifth Circuit case law at the time.[89]

Applicants are incorrect that Plaintiffs' original complaint did not contain any tort claims. Plaintiffs' complaint alleged an abuse of process,[90] which is a claim sounding in tort.[91]  Moreover, even if the Southern District of Texas Bankruptcy Court's website did not contain a form to employ counsel pursuant to § 327(e), Plaintiffs were not excused from complying with Local Rule 2014-1(d).  That rule did not specify that applications were required solely for those seeking employment under § 328(a).  Lastly, Applicants point this Court to *Kinsley*, which holds that local rules have the force of law, provided there is no conflict with the Constitution, the Supreme Court, or a statute.[92]  Applicants' grievance with the rule is that it conflicted with the case law of certain trial courts in the Fifth Circuit, not the Constitution, the Supreme Court, or a statute.[93]  Additionally, Federal Rule of Bankruptcy Procedure 9029, states:

---

[86] BLR 2014-1(d). The Bankruptcy Local Rules that governed this adversary proceeding became effective October 7, 2013.

[87] ECF No. 429 at 11.

[88] Applicant's sur-reply states, "the only form K&B can find on the website for the Bankruptcy Court for the Southern District of Texas is an "Application to Employ [Name of Law Firm] as Special Litigation Counsel Pursuant to 11 U.S.C. § 328(a)" for employment on a contingency fee basis.  Plaintiffs did not employ K&B on a contingency basis pursuant to 11 U.S.C. § 328(a) for this adversary proceeding." ECF No. 434 at 3 n.2.

[89] ECF No. 434 at 3 n.2.

[90] ECF No. 1 at ¶¶ 88–94.

[91] *Allred v. Moore & Peterson*, 117 F.3d 278, 284 (5th Cir. 1997) ("The essential elements of abuse of process, as the tort has developed, have been stated to be: first, an ulterior purpose, and second, a willful act in the use of the process not proper in the regular conduct of the proceeding.").

[92] ECF No. 434 at 3 n.2 (citing *Kinsley v. Lakeview Regional Med. Ctr., LLC*, 570 F.3d 586, 589 (5th Cir. 2009)).

[93] ECF No. 430 at 7 (citing *In re Gutierrez*, 309 B.R. at 499–500; *In re Powell*, 314 B.R. at 569–70).

> Each district court . . . may make and amend rules governing practice and procedure in all cases and proceedings within the district court's bankruptcy jurisdiction which are consistent with—but not duplicative of—Acts of Congress and these rules and which do not prohibit or limit the use of the Official Forms.

Nothing in *Kinsley*, the case cited by Applicants, nor Bankruptcy Rule 9029, specifies that a local rule in conflict with case law at the trial court level voids the local rule. Despite the muddiness of the case law at the time, the Local Rules required an employment application in this adversary proceeding. Nevertheless, does Applicants' failure to file that application make the portion of this Court's Judgment awarding reasonable and necessary fees and costs "dead wrong?"[94] This Court thinks not.

### c) Despite Plaintiffs' failure to adhere to the Local Rules, this Court's decision to award reasonable and necessary attorneys' fees was not "dead wrong"

Counsel that fails to strictly adhere to the provisions and rules governing employment and disclosure of special counsel proceeds at one's own risk.[95] Courts in the Fifth Circuit have precluded attorneys from recovering fees where strict adherence was not observed.[96] Nevertheless, courts have broad discretion in awarding and denying fees paid in connection with bankruptcy proceedings.[97] As recognized in *In re Zars*, "part of the judge's discretion in [awarding attorney's

---

[94] *See United States v. Slanina*, 359 F.3d 356, 358 (5th Cir. 2004) (quoting *Hopwood v. Texas*, 236 F.3d 256, 272–73 (5th Cir. 2000)).

[95] *See In re W. Delta Oil Co.*, 432 F.3d at 355.

[96] *In re Owsley*, 2021 Bankr. LEXIS 895, at *13–14 (Bankr. S.D. Tex. Apr. 5, 2021) (denying counsel's request for pre-employment fees where the employment application did not adhere to § 327(e), Local Rule 2014-1(a), or Local Rule 2014-1(b)); *In re Am. Hous. Found.*, 2014 Bankr. LEXIS 2411, at *17 (Bankr. N.D. Tex. June 3, 2014) ("The Bankruptcy Code does not authorize the payment of a professional whose employment has not been authorized.") (citing first 11 U.S.C. §§ 327, 328; then citing *In re Monument Auto Detail, Inc.*, 226 B.R. 219, 224–25 (B.A.P. 9th Cir. 1998) ("Court approval of the employment of *counsel for a debtor in possession* is the sine qua non to counsel getting paid. Failure to obtain court approval of a professional in accordance with § 327 and Rule 2014 precludes the payment of fees.")); *Decloutte v. Austin (In re Decloutte)*, 2018 Bankr. LEXIS 1869, at *40–43 (Bankr. S.D. Tex. June 20, 2018) (denying counsel's *nunc pro tunc* application because it failed to strictly comply with Local Rule 2014-1(b) and counsel's application for compensation because, inter alia, counsel was not employed pursuant to § 327(e)).

[97] *Arnes v. Boughton (In re Prudhomme)*, 43 F.3d 1000, 1003 (5th Cir. 1995); *In re Anderson*, 936 F.2d 199, 204 (5th Cir. 1991) ("It is well established law that, absent compliance with the Bankruptcy Code and Rules, an attorney has no absolute right to an award of compensation. This is particularly true when an attorney fails to seek prior approval of employment or fee distribution. However, the bankruptcy court is one of equity and thus has broad equitable—and hence discretionary—powers to award attorney's fees.").

fees] includes the power to deny attorney's fees or order their disgorgement when attorneys do not file Rule 2016(b) statements as the Code requires."[98]   No provision of the Bankruptcy Code requires a judge to deny attorneys' fees where an attorney failed to abide by § 329.   Additionally, an attorney's failure to abide by Rule 2016 revokes the attorney's "*right* to compensation, but the bankruptcy judge still has the discretion to authorize an application for an amount of compensation tailored to the circumstances of the case."[99]   If  Applicants' involvement in this case does not go against the policy objectives of the relevant employment and disclosure provisions, then, in an exercise of discretion, this Court finds it appropriate to award at least some fees and costs.

The standards for employment of special counsel serve a gatekeeping function.  Enacted in 1978, § 327 was part of the Bankruptcy Reform Act which aimed to "eliminate the abuses and detrimental practices that had been found to prevail.  Among such practices was the cronyism of the 'bankruptcy ring' and attorney control of bankruptcy cases."[100]   The House Report noted that "in practice . . . the bankruptcy system operates more for the benefit of attorneys than for the benefit of creditors."[101]   To combat that cronyism, § 327(e) requires that the employment of special counsel be "in the best interest of the estate" and that the "attorney does not represent or hold any interest adverse to the debtor or to the estate with respect to the matter on which such attorney is to be employed."   Section 327 in conjunction with the other strict standards for employment of professional persons[102] prioritize avoiding conflicts of interest between special counsel, the estate, the debtor, and the trustee.[103]   Those standards also "enable the court to control administrative

---

[98] 434 B.R. 421, 433 (Bankr. W.D. Tex. 2010).
[99] *Id.* (citing *In re Fricker*, 131 B.R. 932, 944 (Bankr. E.D. Pa. 1991)).
[100] *In re Aladdin Petroleum Co.*, 85 B.R. 738, 740 (Bankr. W.D. Tex. 1988) (citing H.R. No. 595, 95th Cong. 2d Sess. 92, *reprinted in* 1978 U.S. Code Cong. & Admin. News 5787, 5963, 6053 (1977).
[101] *Id.*
[102] *E.g.*, 11 U.S.C. § 329; FED. R. BANKR. P. 2014(a), 2016(a)–(b).
[103] *In re Consolidated Bancshares, Inc.*, 785 F.2d at 1256 (stating, "[t]o prevent conflicts, the [Bankruptcy] Code provides several checkpoints" and pointing to § 329 and Federal Rule of Bankruptcy Procedure 2016(b)).

expenses and to prevent those performing work without the necessary authority from being 'officious intermeddler[s] or gratuitous volunteer[s].'"[104]  Considering the policy behind the relevant provisions, this Court assesses whether Applicants' involvement in this case violates those policies.

### 1)  Employment of special counsel was in the best interest of the estate

First, employment of special counsel must be in the best interest of the estate.  The "best interest of the estate" is not defined by the Bankruptcy Code.[105]  Thus, to determine whether employment of special counsel is in the best interest of the estate, a court must consider whether the employment would help the debtor-in-possession to maximize the estate to pay creditors.[106]  Employment of special counsel "must be for the benefit of the estate and not merely for the personal benefit of the debtor."[107]  Here,  Applicants' representation of Plaintiffs in this matter was in the best interest of the estate.  As a result of Defendants' 3002.1 Notice, the trustee filed a motion to dismiss Plaintiffs' bankruptcy case for failure to propose a feasible plan.[108]  Engagement of Applicants and the filing of this adversary proceeding allowed Plaintiffs to submit a feasible plan, disburse a total of $105,877.52 to creditors—$24,590.43 of that to unsecured creditors[109]—and receive a discharge.[110]  Accordingly, despite the lack of an employment application, engagement of special counsel was in the best interest of the bankruptcy estate.

### 2)  Applicants did not conceal their involvement in this case

---

[104] *In re Wright*, 578 B.R. at 581 (quoting *In re Sound Radio, Inc.*, 145 B.R. 193, 202 (Bankr. D.N.J. 1992)).
[105] *In re Garcia*, 2016 Bankr. LEXIS 4442, at *26 (Bankr. S.D. Tex. Dec. 22, 2016) (quoting *In re Lyons*, 439 B.R. 401, 405 (Bankr. S.D. Tex. 2010)).
[106] *Id.* at *26–27 (citing *In re Johnson*, 433 B.R. 626, 638 (Bankr. S.D. Tex. 2010)).
[107] *Id.* (quoting *In re Johnson*, 433 B.R. at 639).
[108] ECF No. 341 at 6.
[109] Bankr. ECF No. 182 at 3.
[110] Bankr. ECF No. 139.

Second, Applicants never attempted to conceal their involvement in this adversary proceeding.  Both Plaintiffs' original complaint and Amended Complaint are signed by Karen L. Kellett ("*Kellett*") of the KB Firm and list Theodore O. Bartholow, III, of the KB firm, and Ellen Stone of the Stone Firm as "Attorneys for Plaintiffs."[111]  Thus, from the outset of the adversary proceeding, Applicants' involvement was known.

Moreover, the facts in this case are easily distinguished from *In re Wright*, where this Court found that the attorneys there were liable for flagrant and willful violations of the employment provisions relevant here: §§ 327(e) and 329 and Bankruptcy Rule 2014.[112]  In that case, one attorney applied, and was approved, to represent a chapter 13 debtor as special counsel.[113]  Two years later, that attorney was awarded fees from a settlement in the case and this Court ordered the attorney to deliver the remainder of the proceeds to the chapter 13 trustee.[114]  Instead, the attorney wire transferred large sums to two other attorneys, despite never disclosing a fee-sharing agreement.[115]  Only after the debtor initiated an adversary proceeding seeking, inter alia, disgorgement of unauthorized fees, did special counsel file a motion for leave to amend his employment application and disclose his agreement with the other two attorneys.[116]

Here, neither firm hid their involvement in this case.  In addition to signing the original and Amended Complaint, the Fee Application discloses the fees and costs incurred by each firm.[117]  Additionally, although Applicants' Disclosure was untimely filed, it was filed nearly one year before the Trial took place and nearly a year and a half before this Court's Judgment was entered,

---

[111] ECF No. 1.  At the time the original complaint and Amended Complaint were filed, Kellett & Bartholow PLLC was Armstrong Kellett Bartholow PLLC.  ECF No. 430-1 at 2, ¶ 2.
[112] 578 B.R. at 589–90.
[113] *Id.* at 578.
[114] *Id.*
[115] *Id.*
[116] *Id.* at 576, 579.
[117] ECF No. 374.

unlike in *In re Wright* where no disclosures were submitted to the Court until after the debtor sought disgorgement.

### 3) Applicants' interest was not adverse to Plaintiffs' interest

Third, there is no evidence in the record that Applicants had any interest adverse to Plaintiffs. Section 327(e), unlike subsection (a), does not require special counsel to be "disinterested;" it requires that special counsel does not have any interest adverse to the debtor.[118] An adverse interest arises when special counsel has an "economic interest that tends to lessen the value of the debtor's estate, or creates an actual or potential dispute in which the estate is a rival claimant."[119] Applicants' Response indicates that the KB Firm had no prior relationship with Plaintiffs, the chapter 13 trustee, or the US Trustee before it started representing Plaintiffs in 2013.[120] In response to questioning by Defendants' counsel at Trial, Kellett stated that that she was retained by Plaintiffs sometime in 2013[121] and that she may have entered into a different fee agreement with Plaintiffs regarding litigation over taxes against a different defendant, but could not recall the matter or whether a fee agreement was actually entered.[122] The Stone Firm was representing Plaintiffs in their underlying bankruptcy case and continued representing them in this adversary proceeding.[123] Moreover, Defendants' Motion does not allege that Applicants held any adverse interests. Conclusively, the Court finds that Applicants did not have interests adverse to Plaintiffs or the bankruptcy estate.

### 4) Applicants never sought or received money from Plaintiffs or the bankruptcy estate and did not blatantly disregard direct orders from this Court

---

[118] *In re Garcia*, 2016 Bankr. LEXIS 4442, at *33.

[119] *In re Jackson*, 484 B.R. 141, 154 (Bankr. S.D. Ted. 2012); *see also In re W. Delta Oil Co.*, 432 F.3d at 357 ("[S]pecial counsel employed under § 327(e) need only avoid possessing interests adverse to the debtor or to the estate with respect to the matter on which such attorney is to be employed.").

[120] ECF No. 430 at 10.

[121] ECF No. 332 at 6:7–10:1.

[122] *Id.* at 7:22–9:24.

[123] Bankr. ECF No. 10.

Fourth, Applicants never received money from Plaintiffs or the bankruptcy estate and did not ignore express orders from this Court.  Applicants' dealings in this case are distinguishable from those in *In re Wright* and *Palacios*.  In *In re Wright*, the plaintiff, identifying the disbursed funds as estate property, demanded that the two undisclosed attorneys return the disbursements from special counsel.[124]  Two of the attorneys complied, several months after the demand was sent; the last attorney never returned the money and a judgment was entered against him.[125]  In another case, *Palacios*, special counsel requested fees from the debtor's estate, but blatantly and willfully disregarded this Court's admonishment that compliance with Local Rule 2014-1 was absolutely required.[126]  Special counsel's actions alerted this Court that "something foul [was] indeed afoot."[127]

While Applicants' actions in this case were irresponsible, they were not so egregious.  Unlike the attorneys in *In re Wright*, there is an absence of evidence in the record that Applicants received any money from Plaintiffs' bankruptcy estate not belonging to them or that Applicants have shared any money with counsel not identified in Plaintiffs' Amended Complaint or other court filings.[128]  Moreover, unlike the attorney in *Palacios*, there is an absence of evidence in the record that Applicants received unqualified instructions from this Court to comply with all relevant employment provisions, yet blatantly and willfully disregarded those instructions.

This Court recognizes that Applicants failed to comply with Local Rule 2014-1.  Applicants' failure to comply with that rule is in no way excused merely because this Court did not explicitly order Applicants to comply; their compliance was required absent any admonishment

---

[124] 578 B.R. at 578.
[125] *Id. See also* Min. Entry November 27, 2018.
[126] 2016 Bankr. LEXIS 249, at *43–44.
[127] *Id.*
[128] *See* ECF No. 330, at 217:3–17.  Ms. Trevino testified that she understood herself and her husband, Mr. Trevino, would be responsible for paying attorneys' fees as a result of this adversary proceeding, but that they did not have the ability to pay those fees in the event they were unsuccessful in the litigation.  *See also* Case No. 10-70594.

from this Court. And while that failure impacts the reasonableness of Applicants' fees, this Court finds that Applicants' actions are distinguishable from those in *In re Wright* and *Palacios*, warranting this Court's discretion in favor of awarding Applicants at least some attorneys' fees and costs after a final trial on the merits.

As explained above, this Court has discretion to determine whether to award or deny compensation despite counsel's failure to comply with the applicable employment and disclosure provisions. Although failure to comply revokes an attorney's right to compensation and is a sufficient basis for a court to deny compensation, nothing dictates that a court mandatorily do so. Thus, this Court finds that its decision to award reasonable and necessary attorneys' fees was not clearly erroneous.

### d)  This Court's Judgment would not work a manifest injustice

To determine whether the Judgment would work a manifest injustice, the Court must decide whether its decision, if left unchanged, would cause an inequitable result and be out of line with applicable policy.[129]  Whether a court's decision works a manifest injustice is a case-by-case inquiry.[130]  Establishing a manifest injustice is a high hurdle;[131] "a showing of [such] requires that there exists a fundamental flaw in the court's decision that without correction would lead to a result that is both inequitable and not in line with applicable policy."[132]  As explored in detail above, awarding reasonable and necessary attorneys' fees in this case is in line with applicable policy. Additionally, it is not inequitable. This Court previously found Caliber and USBT liable for abuse of process and found Caliber liable for violations of the FDCPA.[133]  Pursuant to fee-shifting statutes, 11 U.S.C. § 105(a) and 15 U.S.C. § 1692k(a)(3), this Court also found Defendants liable for

---

[129] *Bender Square Partners v. Factory Mut. Ins. Co.*, 2012 U.S. Dist. LEXIS 74709, at *12 (S.D. Tex. May 27, 2012).
[130] *Id.*
[131] *Id.* at *13 (citing *Westerfield v. U.S.*, 366 Fed. Appx. 614, 619 (6th Cir. 2010)).
[132] *Id.* (quoting *Alvarado v. Tex. Rangers*, 2005 U.S. Dist. LEXIS 11851, at *7 (W.D. Tex. June 14, 2005)).
[133] ECF No. 342 at 1.

attorneys' fees and costs.[134]  Ordering Defendants to pay Plaintiffs' attorneys' fees and costs is not inequitable because it is based on Defendants' liability, not Plaintiffs or Applicants' failure to comply with the applicable employment and disclosure procedures.

Accordingly, as a matter of law, Defendants' request for summary judgment on the basis that Applicants failed to obtain court approval to represent Plaintiffs and to timely disclose their fee agreement with Plaintiffs is denied.

## B.  Whether Applicants are entitled to attorneys' fees for defending the fee application

At a hearing on Plaintiffs' motion for a protective order related to Applicants' defense of their Fee Application, this Court granted Applicants' request to supplement the Fee Application to include matters related to the motion for protective order.[135]  Defendants anticipatorily argue they are entitled to summary judgment "to the extent" Applicants supplement their Fee Application to include fees and expenses related to their defense of the Fee Application.[136]  Defendants admit that no such application has been filed yet, but they anticipate one is forthcoming.[137]  In their sur-reply, Applicants urge this Court to summarily find that Applicants may recover their reasonable attorneys' fees and expenses for defending their Fee Application, pursuant to Rule 56(f)(1).[138]  No supplemental fee application has yet been filed; thus, this issue is not justiciable.

For Defendants' request to be justiciable, it must be ripe.[139]  An action is not ripe unless an actual controversy exists.[140]  "[A]n actual controversy exists where 'a substantial controversy of sufficient immediacy and reality [exists] between parties having adverse legal interests.'"[141]

---

[134] *Id.* at 2.
[135] Dec. 21, 2021 Min. Entry.
[136] ECF No. 429 at 12, ¶ 26.
[137] *Id.*
[138] ECF No. 434 at 3.
[139] *Orix Credit Alliance, Inc. v. Wolfe*, 212 F.3d 891, 896 (5th Cir. 2000).
[140] *Id.*
[141] *Id.* (quoting *Middle S. Energy, Inc. v. City of New Orleans*, 800 F.2d 488, 490 (5th Cir. 1986)).

Because no supplemental fee application has been filed, no actual controversy exists.  Any decision by this Court at this point would constitute a constitutionally prohibited advisory opinion.[142]

Accordingly, Defendants' request for entry of summary judgment on the basis that Applicants' eventual request for fees and expenses resulting from their defense of the Fee Application be denied summarily is denied.

## C.  Whether the Applicants' fees are reasonable and necessary

In its Judgment, this Court awarded reasonable and necessary attorneys' fees and expenses. The Fee Application requests a total of $676,576.50 in fees and $67,121.59 in expenses between the KB Firm and the Stone Firm.[143]  Defendants dispute that the fees requested are reasonable and necessary, contending that (1) the results obtained do not support the fees requested and (2) the claims raised were not complex or novel, and the time spent litigating them was unreasonable.[144] Defendants do not challenge the necessity and reasonableness of the $67,121.59 in Applicants' combined expenses in the portion of their Motion relevant to this part of the Memorandum Opinion.  Those expenses are not considered herein.

Plaintiffs bear the burden of proof at trial to demonstrate that the attorneys' fees requested are reasonable as to the hours expended and rates charged.[145]  The Fifth Circuit employs the lodestar method in calculating attorneys' fees.[146]  The lodestar is calculated by multiplying the number of hours reasonably expended by the prevailing hourly rate in the community for similar work.[147] The lodestar is then adjusted up or down depending on the respective weight of the twelve factors

---

[142] *Flast v. Cohen*, 392 U.S. 83, 96 (1968) ("And it is quite clear that the oldest and most consistent thread in the federal law of justiciability is that the federal courts will not give advisory opinions.") (internal quotation marks and citations omitted).

[143] ECF No. 374 at 1–2.

[144] ECF No. 429 at 13–20.

[145] *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983), *superseded, in part, by statute*, Prison Litigation Reform Act of 1995, Pub. L. No. 104-134, 110 Stat. 1321.

[146] *Transamerican Nat. Gas Corp. v. Zapata P'ship (In re Fender)*, 12 F.3d 480, 487 (5th Cir. 1994).

[147] *Id.*

outlined in *Johnson v. Georgia Highway Express, Inc.*[148]  The lodestar may be adjusted only as to those *Johnson* factors not already taken into account by the lodestar.[149]  The four *Johnson* factors already reflected in the lodestar calculation are: the novelty and complexity of the issues, the special skill and experience of counsel, the quality of the representation, and the results obtained from the litigation.[150]  Bankruptcy courts wield "'considerable discretion' when determining whether an upward or downward adjustment of the lodestar is warranted."[151]

Defendants may satisfy their summary judgment burden by pointing out to the Court the absence of evidence sufficient to sustain Applicants' evidentiary burden as to a required element of Applicants' claim, *i.e.* that the hours expended and the rates charged are reasonable and necessary.[152]  If Defendants fail to meet this burden, summary judgment must be denied.[153]  Conversely, if Defendants succeed, then Applicants "must identify specific evidence in the summary judgment record demonstrating that there is a genuine dispute as to a material fact concerning the essential elements of their case for which they will bear the burden of proof at trial."[154]  If Applicants fail to meet this burden, summary judgment in Defendants' favor is appropriate.[155]

### 1. Whether the results obtained by Plaintiffs support Applicants' request for fees

Defendants attempt to illustrate two points: (1) that the hours expended by Applicants and the attorneys' fees requested are not reasonable because they are disproportionate to the success

---

[148] *Id.* (citing *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974)).

[149] *Id.* (citing *Shipes v. Trinity Indus.*, 987 F.2d 311, 319–20 (5th Cir. 1993)).

[150] *In re Pilgrim's Pride Corp.*, 690 F.3d 650, 656 (5th Cir. 2012) (citing *In re Fender*, 12 F.3d at 488).

[151] *Id.* (citing *Cahill v. Walker & Patterson, P.C.*, 428 F.3d 536, 540 (5th Cir. 2005)).

[152] *See Celotex Corp.*, 477 U.S. at 325.

[153] *United States v. $92,203.00 in U.S. Currency*, 537 F.3d 504, 507 (5th Cir. 2008) (citing *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)).

[154] *Baranowski v. Hart*, 486 F.3d 112, 119 (5th Cir. 2007) (citing *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc)).

[155] FED. R. CIV. P. 56(e); *Celotex*, 477 U.S. at 322–23; Tran Enters., 627 F.3d at 1010.

Plaintiffs realized in this adversary proceeding; and (2) that "special circumstances" justify deny-ing the request for fees entirely.  The Court takes each in turn.

### a.  Whether Applicants' attorneys' fees are proportionate to the results obtained

Defendants first cite *Hensley* for the proposition that a plaintiffs' partial or limited success in litigation dictates the reasonableness of hours expended.[156]  In *Hensley*, the Supreme Court held that where a plaintiff obtains excellent results at trial, the plaintiff's attorney should be fully com-pensated, even if the plaintiff was not successful on every contention raised.[157]  However, the Court continued, where "a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times the reasonable hourly rate may be an ex-cessive amount.  This will be true even where the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith."[158]  Defendants additionally cite *Migis*, wherein the Fifth Circuit reversed an award of attorneys' fees because it was six and a half times the damages award amount.[159]

### i.   There is no requirement in the Fifth Circuit that an attorneys' fees award be proportional to the amount of damages awarded

To demonstrate disproportionality, Defendants point to Plaintiffs' damages award totaling $10,000—$1,000 in damages under the FDCPA and $9,000 in punitive damages—comparing it to the $676,575.50[160] billed solely in attorneys' fees, not including costs.[161]  Where the Fifth Circuit reduced attorneys' fees that were only six and a half times more than a plaintiff's damages award,

---

[156] ECF No. 429 at 13, ¶ 29.

[157] 461 U.S. at 435.

[158] *Id.* at 436.

[159] *Gurule v. Land Guardian, Inc.*, 912 F.3d 252, 259 (5th Cir. 2018) (discussing *Migis v. Pearle Vision, Inc.*, 135 F.3d 1041, 1048 (5th Cir. 1998)).

[160] In the Fee Application, the KB Firm requests $641,737 in fees and the Stone Firm requests $34,839.50 in fees, for a total of $676,576.50.  ECF No. 374 at 1–2.  However, Defendants' Motion for Summary Judgment calculates the total at $676,575.50, one dollar short of the sum requested in the Fee Application.  ECF No. 429 at 14, ¶ 30.  This creates a fact issue that can only be resolved after a final trial on the merits.

[161] ECF No. 429 at 14, ¶ 30.

Defendants contend, "attorneys' fees that are 67 times greater than damages practically mandate reduction under the principle of proportionality."[162]

Defendants' proportionality argument does not satisfy their burden. Fifth Circuit case law does not require proportionality between a damages award and attorneys' fees. In *Gurule*, the Fifth Circuit said that it "has consistently emphasized that there is no *per se* requirement of proportionality in an award of attorney's fees." The Court continued that its decision in *Migis* "[did] not impose a strict proportionality requirement" and that "the key flaw in *Migis* was that the district court's meager 10% reduction of the fee award . . . failed to adequately consider just how limited the plaintiff's success was."[163] Additionally, the Fifth Circuit in *Davis* expressly stated that attorney's fees must be reasonable, although they "need not be proportionate to the minimal statutory damages in FDCPA cases."[164]

Accordingly, Defendants' request for entry of summary judgment on the basis that Applicants' fees are not proportionate to the damages awarded to Plaintiffs in the underlying suit is denied.

### ii.  The amount of Plaintiffs' damages award is not a measure of overall success and cannot be the sole basis for reduction of Applicants' fees and expenses

While the cases cited by Defendants do not stand for a proportionality requirement, Defendants are correct that they stand for the proposition that the Court must consider Plaintiffs' overall success in determining the reasonableness of any attorneys' fee award. Defendants point to this Court's "Amended Memorandum Opinion," resolving Defendants' motion to dismiss ("*MTD Opinion*"), dismissing several of Plaintiffs' causes of action and declare that "Applicants consistently sought to concoct alternative theories and factual bases for liability, none of which

---

[162] *Id.*
[163] *Gurule*, 912 F.3d at 259 (internal quotation marks and citations omitted).
[164] *Davis v. Credit Bureau of the South*, 908 F.3d 972, 977 (5th Cir. 2018).

survived dismissal."[165]   Defendants also discuss this Court's Judgment, stating that "the Court denied most of [Plaintiffs'] claims and found that they sustained no actual damages."[166]

However, a cursory review of this Court's MTD Opinion demonstrates that several claims survived dismissal and those that survived were the reason for the Trial.  Second, Defendants don't quantify "most of [Plaintiffs'] claims" in any definite terms.  Based on this Court's review of Plaintiffs' Amended Complaint, the MTD Opinion, and the Judgment, of Plaintiffs' 21 claims, some related only to HSBC who is not a defendant in this instant proceeding, four were withdrawn, several more were dismissed, four were denied in whole or in part at Trial, and Plaintiffs succeeded on their claims for abuse of process, violations of the FDCPA, claim objection, attorneys' fees, and succeeded in part on their claim for damages.[167]   Plaintiffs succeeded on less than one quarter of their originally pleaded claims.

To determine whether to adjust the fee award where a plaintiff succeeded on only some claims, courts ponder two questions: (1) "did the plaintiff fail to prevail on claims that were unrelated to the claims on which he succeeded?"; and (2) "did the plaintiff achieve a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award?"[168]   The first question considers whether the claims raised were based on the same facts and legal theories.[169]   If Plaintiffs' claims were based on the same facts and legal theories, it would be difficult for Applicants to separate the hours expended on each claim.[170]   If, on the other hand, the facts and theories underlying the claims were distinctly different, those claims should be treated as though

---

[165] ECF No. 429 at 15–16, ¶ 34.  Defendants miscite the ECF No. as 184, but correctly identify the Amended Memorandum Opinion as entered on July 31, 2015.  The correct ECF No. is 105.
[166] ECF No. 429 at 7, ¶ 16.
[167] ECF Nos. 78, 105, 242.
[168] 461 U.S. at 434.
[169] *Id.*
[170] *Id.* at 435.

they were raised in separate lawsuits and "work on an unsuccessful claim cannot be deemed to have been 'expended in pursuit of the ultimate result achieved.'"[171]

Defendants' Motion does not address the first question.  Instead, it focuses solely on the second, arguing that Plaintiffs' success was minimal.  In *Hensley*, the Supreme Court found that the district court's award there may have been reasonable based on the "substantial success" the plaintiff realized in the case and noted that had the plaintiff succeeded on only one of the six claims brought, the fee award would have been excessive.[172]  But, "[t]here is no precise rule or formula for making these determinations."[173]

Viewing the summary judgment evidence cited by Defendants in the light most favorable to Applicants, this Court cannot conclude that there is an absence of evidence in the record that Plaintiffs realized great success.  What the evidence shows is that Plaintiffs were successful to some extent, and most importantly on Plaintiffs' claims for abuse of process and violations of the FDCPA.  Moreover, as stated in *Black*, "while the district court must take the degree of success obtained into account, it would be an abuse of discretion for the district court to reduce [the applicant's] attorney's fee award solely on the basis of the amount of damages obtained."[174]  Thus, Plaintiffs' small damages award, as Defendants describe it, cannot be the basis on which this Court measures Plaintiffs' success in determining whether to reduce any attorneys' fee award.

Accordingly, Defendants' request for entry of summary judgment on the basis that the attorneys' fees are not reasonable compared to the amount of success Plaintiffs realized in the underlying suit is denied.

---

[171] *Id.*
[172] *Id.* at 436.
[173] *Id.*
[174] 732 F.3d 492, 503 (5th Cir. 2013).

### b.  Whether "special circumstances" justify denying the Applicants' request for fees entirely

Citing *Davis*, Defendants contend that the FDCPA does not require the Court to award Applicants any attorneys' fees where there are "special circumstances" at play.[175]  In *Davis*, the plaintiff was awarded $1,000 under the FDCPA and subsequently sought approximately $130,000 in attorneys' fees.[176]  The court denied the plaintiff's request, finding that although the defendant violated the FDCPA and attorneys' fees are ordinarily justified thereunder as a disincentive to future similar conduct, it appeared that the litigation was created to garner such fees.[177]  The court also found that the plaintiff and her attorney colluded to create the plaintiff's claim, that the fees charged were duplicative and excessive, and that the hours billed and the hourly rate were "excessive by orders of magnitude."[178]  On appeal, the Fifth Circuit affirmed the lower court's decision, finding that the case presented special and unusual circumstances, noting that the court "disapprov[es] of utilizing technical violations of the FDCPA solely as a means for generating attorney's fees."[179]

Here, Defendants assert that the Applicants had ulterior motives—to recover copious and unjustifiable attorneys' fees—in litigating this case, creating special circumstances that justify denial of attorneys' fees entirely.[180]  In support, Defendants offer the deposition of Ms. Trevino, allegedly showing that settlement was impossible because Applicants "constantly and consistently demanded substantial and wholly unreasonable compensation of [their] fees as part of any settlement" and "[Plaintiffs] were never apprised of any settlement offers."[181]  Defendants did not

---

[175] ECF No. 429 at 14, ¶ 31.
[176] *Davis v. Credit Bureau of the South*, 908 F.3d 972, 974–75 (5th Cir. 2018).
[177] *Id.*
[178] *Id.*
[179] *Id.* at 981.
[180] ECF No. 429 at 15–16, ¶¶ 34–35, 38.
[181] *Id.* ¶ 34.

submit   a copy of the deposition in support of their Motion; however, the Court located it in the Trial record from 2019.[182]   The cited portion of that deposition, 18:16–31:21, does not support Defendants' allegations regarding settlement.   Rather, the testimony in that portion relates to Defendants' contention that Plaintiffs lacked "any basic understanding of the basis for this litigation or their damages," which Defendant insists "calls into question the Fee Applicants' motives in drawing out this litigation."[183]   But, Defendants did not cite to the deposition in support of that contention.

Nevertheless, Defendants do not point this Court to any legal obligation owed by Applicants to Defendants to apprise Plaintiffs of any settlement offers.   Unquestionably, Applicants had an ethical obligation to Plaintiffs to present them with any such offers, but this Court fails to see how Applicants' obligation to their clients translates into an obligation owed to Defendants.   Likewise, Defendants' assertion that Plaintiffs' lack of knowledge about their case or the damages therein "calls into question" Plaintiffs' motives does not create special circumstances warranting the denial of attorneys' fees either.   Again, Applicants surely owed an obligation to their clients to communicate with them about the case and its progression, but Applicants' duty to their clients is not a duty Applicants owe to Defendants.   Moreover, some of the questioning contained in the cited portion of the deposition asks about violations of the automatic stay by name.   This Court is unsurprised that Ms. Trevino, a non-lawyer, wasn't familiar with the automatic stay.   That is precisely why laypersons hire attorneys: to address the legal problems for which they have little to no vocabulary for or understanding of.

Looking to *Davis*, the trial court found, and the Fifth Circuit agreed, that there was evidence in the record that the plaintiff colluded with her attorney "in establishing the [FDCPA] cause of

---

[182] See ECF No. 300, Ex. D-50.
[183] ECF No. 429 at 15–16, ¶ 34; ECF No. 300, Ex. D-50 at 18:16–31:21.

action and created the appearance that [the defendant], a Louisiana entity, engaged in debt collection activities in Texas."[184]  Even if Applicants did not apprise Plaintiffs of Defendants' settlement offers, that failure does not amount to anything akin to collusion.  Plaintiffs' FDCPA claim was in no way manufactured and this Court found Defendants in violation thereof.

Defendants next contend that this matter could have been expeditiously resolved through motions practice by local counsel using the mechanism set forth in Bankruptcy Rule 3002.1, but instead Applicants "[chose] a path of prolonged litigation."[185]  Caliber's failure to withdraw the 3002.1 Notice, Defendants continue, must not have risen to the level of "abuse of process" until after the litigation was filed.[186]  In support, Defendants offer the trial testimony of Kellett, again not submitted in support of their Motion, but found on the Court's docket.[187]  Defendants argue that the testimony makes clear that Applicants never reached out to Defendants regarding the 3002.1 Notice before filing this lawsuit.[188]

Regardless, there is no requirement in Bankruptcy Rule 3002.1 that a plaintiff first notify the filer of a 3002.1 notice before filing suit against that entity.  The only compulsory notice requirements in 3002.1 apply to the holder of a claim and the trustee.[189]  As this Court previously held, Plaintiffs could have objected to Defendants 3002.1 Notice under Bankruptcy Rule 3002.1(e) or by bringing an adversary proceeding.[190]  Nothing required Plaintiffs to object over bringing an adversary proceeding.[191]  The case law Defendants cite, *Davis*, simply does not support a finding

---

[184] 908 F.3d at 979.
[185] ECF No. 429 at 16–17, ¶ 36.
[186] *Id.*
[187] ECF No. 332 at 64:21–66:20.
[188] ECF No. 429 at 17 n.77.
[189] *See* Fed. R. Bankr. P. 3002.1(b)(1), (c), (f), (g).
[190] *Trevino v. HSBC Mortg. Servs. (In re Trevino)*, 535 B.R. 110, 127 (Bankr. S.D. Tex. 2015).
[191] *Id.*

that special circumstances exist to deny attorneys' fees for violations of the FDCPA in their en-

tirety.

Accordingly, Defendants' request for entry of summary judgment on the basis that special

circumstances warrant denial of attorneys' fees altogether is denied.

### 2.  Whether Plaintiffs' claims were complex and novel, and the time spend litigating them was unreasonable

Defendants' final attack on the reasonableness of Applicants' fees centers around: (a) De-

fendants' argument that Applicants engaged in unnecessary discovery and failed motions practice,

accruing astronomical attorneys' fees without warrant; and (b) certain of Applicants' time entries.

Defendants maintain that there was nothing complex or novel about this case.  The Court interprets

Defendants' argument regarding novelty and complexity as asking this Court to find that the fees

assessed were excessive based on a lack of novelty and complexity in this case.

### a.  Whether Plaintiffs' claims were novel and complex

Novelty and complexity matter only insofar as a fee applicant has requested enhancement

of the lodestar amount.  An award should be enhanced only in exceptional cases "in which the

issues are so novel or complex that the lodestar amount awarded would not provide a reasonable

fee that would adequately reflect the quality of the representation."[192]  While Applicants bear the

burden at trial to show they are entitled to an enhancement of the fee award based on the novelty

and complexity of the case,[193] there is no evidence in the Fee Application that Applicants are seek-

ing an enhancement.  In fact, the Fee Application notes that the novelty and difficulty of issues is

subsumed in the lodestar.[194]

---

[192] *Von Clark v. Butler*, 916 F.2d 255, 260 (5th Cir. 1990) (citing *Pennsylvania v. Delaware Valley Citizens' Council*, 478 U.S. 546, 566–67 (1985)).

[193] *Id.* (denying the applicant's request for a fee enhancement because the applicant did not provide sufficient record evidence of the complexity of the case).

[194] ECF No. 374 at 17.

Presumably because of a lack of novelty and complexity, Defendants contend that Plaintiffs did not need to engage in such extensive litigation.  Defendants insist that Plaintiffs did not need six years, multiple rounds of depositions, intrusive discovery, or an expert to learn and prove the basic facts upon which Plaintiffs relied at trial because most of the facts Plaintiffs relied upon were stipulated.[195]  The foundation of Plaintiffs' claims, Defendants maintain, was that Defendants failed to amend or withdraw the 3002.1 Notice, a fact that this Court agreed with, citing Defendants' own admissions.[196]  Defendants cite this Court's Trial Opinion as evidence of those findings.[197]

What is evident from this case is that both parties engaged in extensive litigation and motion practice, together prolonging this case.  Defendants' attempt to simplify this case and place blame solely on Plaintiffs for the prolonged litigation does not play well in this Court.  Both parties had a hand in protracting this adversary proceeding.  This Court's Trial Opinion does reflect that some findings were based on Defendants' admissions, but a finding of liability is not all this case is comprised of.  For example, Plaintiffs had to respond to Defendants' two motions to dismiss[198] and Defendants' motion for summary judgment,[199] plus, there was extensive satellite litigation back and forth regarding discovery.

Applicants attach the declaration of John Rao, an attorney at the National Consumer Law Center having considerable experience in bankruptcy and mortgage servicing, to their Response.[200] Therein, Mr. Rao explains that the issues raised in this case related to Bankruptcy Rule 3002.1 were novel and complex in part because that rule went into effect shortly before this adversary

---

[195] ECF No. 429 at 17–18, ¶ 39.
[196] *Id.*
[197] *Id.* (citing ECF No. 341 at 13, 15).
[198] ECF Nos. 13, 81.
[199] ECF No. 264.
[200] ECF No. 430-1 at 82–95.

proceeding commenced.[201]   The rule was added on April 26, 2011, and this case was filed a little

over two years later.   Additionally, Mr. Rao declared that this Court's decision in *In re Trevino*,

dismissing Plaintiffs' claim pursuant to Bankruptcy Rule 3002.1(i) was not a settled interpretation

of law at the time and courts since have disagreed with this Court's ruling.[202]   Mr. Rao's declaration

demonstrates that Applicants' efforts in litigating an issue that was not well developed in the case

law at the time of this suit were not per se unreasonable.   Considering the evidence cited by both

parties, Defendants did not satisfy their burden of pointing this Court to a lack of evidence from

which Applicants could establish that their fees are reasonable considering the novelty and com-

plexity, or lack thereof, of Plaintiffs' claims.   At a minimum, a genuine dispute as to a material

fact remains as to whether Plaintiffs' claims were complex or novel, and whether the time spent

litigating them was unreasonable.

Accordingly, Defendants' request for entry of summary judgment that Plaintiffs' claims

were not complex or novel, and the time spend litigating them was unreasonable is denied.

### b.   Whether Applicants engaged in unnecessary and unwarranted discovery and mo- tions practice.

Defendants also contend that Applicants engaged in unnecessary discovery and motions

practice.[203]   Defendants point to this Court's MTD Opinion, arguing that the $44,000 allegedly

incurred for Plaintiffs' motion to compel is absurd and should be denied where this Court found

that the motion raised meritless "argle-bargle" regarding the form of electronically stored docu-

ments and agreed with Defendants that some of Plaintiffs' discovery requests were vague, broad,

or burden-shifting.[204]   Defendants miscite the record.   The opinion Defendants intended to refer to

---

[201] *Id.* at 88, ¶ 28.
[202] *Id.* at 88–89, ¶ 29 (citing *In re Trevino*, 535 B.R. at, 131; *In re Couvertier Lopez*, 2019 WL 856302 (Bankr. D.P.R. Feb. 20, 2019); *In re Tollstrup*, 2018 WL 1384378 (Bankr. D. Or. Mar. 16, 2018); *In re Ferrell*, 580 B.R. 181 (Bankr. D.S.C. 2017); *In re Howard*, 563 B.R. 308 (Bankr. N.D. Cal. 2016)).
[203] ECF No. 429 at 18, ¶ 40.
[204] *Id.* (citing "July 31, 2015 Opinion," which is ECF No. 105).

was entered January 12, 2017, at docket number 184.  Additionally, Defendants provide no citation for the $44,000 figure or show how they arrived at that number.  In an affidavit submitted by Applicants, an associate at the KB Firm declared that she could not determine where that figure came from, could not determine how Defendants calculated that number, and could not reproduce it.[205]

Where a plaintiff prevails in a lawsuit, "[a]ttorney's fees are properly awarded even from plaintiff's unsuccessful motions practice."[206]  Excluding time spent on motions practice that is without merit, as opposed to merely unsuccessful, may be appropriate.[207]  This Court's ruling on Plaintiffs' motion to compel does not indicate that it was meritless overall.  While the Court denied several of Plaintiffs' request, it also granted several requests.[208]  However, it is true that this Court referred to Plaintiffs' requests numbered three through nine as "meritless argle-bargle."[209]  Because of those meritless requests, a reduction in Applicants' fee for the time spent on the motion to compel may be justified, but without having any explanation or evidence in the record as to how Defendants arrived at the $44,000 figure, this Court cannot decide upon any sensical fee reduction at the summary judgment stage.  It merely creates a genuine dispute as to a material fact that must be resolved by trial on the merits.

Accordingly, entry of summary judgment as to Defendants' contention that Plaintiffs engaged in unnecessary and unwarranted discovery and motions practice is denied.

### 3.  Whether some of Applicants' specific time entries should be reduced

---

[205] ECF No. 430-1 at 6, ¶ 7.

[206] *Feld Motor Sports, Inc. v. Traxxas, LP*, 2016 U.S. Dist. LEXIS 62750, at *28 (E.D. Tex. May 12, 2016) (quoting *Alvarado v. Five Town Car Wash Inc.*, 2015 U.S. Dist. LEXIS 123057, at *5 (E.D.N.Y. July 23, 2015)).

[207] *Id.* (nothing that the cases cited by the defendant "excluded time spent on unsuccessful efforts, not because the motions were unsuccessful, but because the court in those cases, found the motion practice to be without merit.").

[208] ECF No. 185.

[209] ECF No. 184 at 36.

Finally, Defendants assert that the Court should reduce Applicants' fees request, if not completely, in substantial proportions for various reasons.[210]  The Court considers each argument in turn.

### a.   Whether Applicants' block-billed time entries should be reduced

Defendants complain about all entries that were block-billed by Applicants.  A time entry may be denied as vague if multiple services are lumped together without distinguishing the time spent on each task.[211]  Block-billed entries are typically reduced because they lack specificity from which the court can determine their reasonableness and necessity.[212]  Where the amount of block-billed entries are egregious, a court may reduce the fee award by a greater percentage than if block-billed entries are scarce.[213]

Defendants first dispute the following entries: (1) Kellett's and Megan F. Clontz's ("*Clontz*") time entries on October 4, 2016, in the amount of $950 and $3,275, respectively and (2) $3,000 on August 25, 2014, on several general tasks that were aggregated with other work, allegedly making it impossible for the Court to determine whether the time spent on each task was reasonable.[214]  Defendants miscite the record again.  Kellett's time entry on October 4, 2016, was $950, but Clontz's was only $375, not $3,275.[215]  Defendants also object to a fourth set of block-billed entries alleging that "[t]he KB Firm billed approximately $60,800 to 'prepare for trial' without substantiating what those preparations were."[216]  Adding all the Fee Application entries containing the inadequate "prepare for trial description,"[217] this Court comes up with a total of

---

[210] ECF No. 429 at 19, ¶ 41.

[211] *In re HL Builders, LLC*, 2020 Bankr. LEXIS 3055, at *20 (Bankr. S.D. Tex. Oct. 30, 2020) (citing *In re Digerati Tech., Inc.*, 537 B.R. 317, 334 (Bankr. S.D. Tex. 2015)).

[212] *In re Mata*, 2020 Bankr. LEXIS 3102, at *26 (Bankr. S.D. Tex. Oct. 29, 2020).

[213] *Id.*

[214] ECF No. 429 at 19, ¶ 41(citing ECF No. 374-1, at 57 and 42, respectively).

[215] ECF No. 374-1 at 57.

[216] *See id.* at 121–24.

[217] *Id.*

$65,910.  The Court cannot determine how Defendants arrived at the $60,800 figure.  The discrepancies between the amounts contained in the Fee Application and the amounts Defendants set forth in their Motion created a genuine dispute of material fact that can only be resolved after a trial on the merits.

Accordingly, Defendants' request for entry of summary judgment as to Applicants' block-billed time entries is denied.

### b.  Whether certain of Applicants' fees from December 2013 through March 21, 2016 should be reduced

Defendants complain that "[Plaintiffs] perfunctorily claim it was impossible to differentiate between work performed on their claims against HSBC versus their claims against the Caliber Parties."[218]  "Overall," Defendants continue, "Applicants seek to have the [Defendants] pay 100% of the fees and expenses for matters Applicants claim cannot be attributed solely to [Defendants] or HSBC—totaling at least $73,560 in fees and $3,675 in expenses."[219]  Defendants cite Kellett's declaration, which states: "[f]rom December 2013 through July 7, 2014, [the KB Firm] incurred $17,300 in fees and seeks payment of $3,675.00 in fees related to general matters with respect to the litigation as a whole that could not be attributed solely to either [Defendants] or HSBC."[220]  Kellett's declaration also states, "From July 8, 2014 through March 21, 2016, [the KB Firm] incurred $76,550.00 in fees and seeks payment of $56,210.00 in fees related to general matters with respect to the litigation as a whole that could not be divided between [Defendants] and HSBC."[221]

On the KB Firm's own admission that it could not attribute the amounts billed from December 2013 through July 7, 2014, and July 8, 2014 through March 21, 2016, to either Defendants

---

[218] ECF No. 429 at 19, ¶ 42 (citing ECF No. 374-1 at 5, 10).
[219] *Id.* (citing 374-1 at 5, 10).
[220] ECF No. 374-1 at 6, ¶ 23.
[221] *Id.* at 11, ¶ 50.

or HSBC, this Court finds that a reduction of the amounts requested by 50% is appropriate. For fees between December 2013 and July 7, 2014, the KB Firm billed $17,350 and wrote off $13,675.[222] The KB Firm requests only $3,675 for that time.[223] If the KB Firm carries its burden at trial to show that those fees are reasonable and necessary, it will be awarded no more than $1,837.50 against Defendants. Additionally, the KB Firm indicated that it incurred $495.99 in expenses for that same time.[224] If the KB Firm carries its burden at trial, it will be awarded no more than $247.99 against Defendants for expenses during that time. For fees between July 8, 2014, and March 21, 2016, the KB Firm billed $76,555 in fees and wrote off $20,345 of those fees.[225] The KB Firm seeks reimbursement of $56,210 in fees.[226] If the KB Firm carries its burden at trial, it may recover no more than $28,105 of those fees against Defendants. The KB Firm additionally incurred $3,743.12 in expenses during that time. Again, if the KB Firm carries its burden at trial, it may be awarded no more than $1,871.56 against Defendants.

Lastly, Defendants contend: "[we] filed two motions to dismiss [Plaintiffs'] claims, while HSBC actually filed a motion for judgment on the pleadings and a separate motion to dismiss. Those were separate motions that required separate responses; yet [Plaintiffs] have inexplicably attempted to bill the entirety of that time—approximately $58,000—against [us]."[227] In support, Defendants cited to ECF No. 374-1 at 42–44 (related to a discovery motion and HSBC's Motion for Judgment on the Pleadings); 44–45 (related to the motions to dismiss); 46 (related to a status conference); and 47 and 53 (related to mediation).[228] Of the "approximately $58,000," Defendants

---

[222] *Id.* at 6, ¶ 23.

[223] *Id.*

[224] *Id.* at 7, ¶ 25.

[225] *Id.* at 11, ¶ 50.

[226] *Id.*

[227] ECF No. 429 at 19, ¶ 42 (citing ECF No. 374-1 at 42–44 (related to discovery motion and HSBC's Motion for Judgment on the Pleadings); 44-45 (related to the motions to dismiss); 46 (related to a status conference); and 47 and 53 (related to mediation)).

[228] *Id.*

complain about, this Court was only able to find $35,890 using Defendants' cites.   Again, these discrepancies create a genuine dispute as to a material fact that cannot be resolved on summary judgment but only after a trial on the merits.

Accordingly, Defendants' request for entry of summary judgment on this ground is denied.

### c.  Whether Applicants' fees should be reduced for excessive amounts of time spent on certain tasks

Defendants complain that Applicants "spent an excessive amount of time on several additional matters."[229]  Defendants complain of seven entries specifically: (i) approximately $11,000 to draft Plaintiffs' Second Amended Complaint; (ii) approximately $15,000 to respond to [Defendants'] motion to dismiss; (iii) approximately $33,000 to prepare two motions for sanctions, one of which was withdrawn and the other apparently never filed; (iv) approximately $22,000 preparing for and deposing a Caliber corporate representative; (v) approximately $14,000 *reviewing* the deposition of Caliber's first corporate representative; (vi) approximately $25,000 preparing to file a summary judgment motion; and (vii) approximately $7,000 drafting a sur-reply in opposition to [Defendants'] summary judgment motion, which appears not to have been filed. [230]

Defendants do not identify for this Court what standard it should use in deciding whether these fees are excessive; they merely make the bald claim that the fees are excessive.  All the identified entries reflect is that Applicants charged certain amounts for the specified activities. That evidence in no way demonstrates to this Court that there is a lack of evidence from which Applicants will be able to prove that those fees were reasonable and necessary.

Accordingly, Defendants have not met their summary judgment burden as to their laundry list of alleged excessive fees and their request for summary judgment on this ground is denied.

---

[229] *Id*. at 19–20, ¶ 43.
[230] *Id.* (citing ECF No. 374-1 at 43).

### d. Whether the KB Firm is entitled to charge out-of-town rates

For the first time in their reply brief, Defendants contend that the KB firm is not entitled to charge out-of-town rates and that the prevailing rates for attorneys in the Rio Grande Valley are the proper, applicable rates.[231]  As a matter of law, Defendants are not entitled to summary judgment on this argument because "arguments raised for the first time in a reply brief are generally waived."[232]

Accordingly, as a matter of law, Defendant's request for summary judgment regarding Applicants' use of out-of-town rates is denied.

## D. Whether Applicants are entitled to summary judgment as to certain of Defendants' claims

In their sur-reply, Applicants urge this Court to summarily find in their favor, pursuant to Federal Rule of Civil Procedure 56(f)(1), incorporated by Federal Rule of Bankruptcy Procedure 7056, the following:

(1) Plaintiffs are entitled to recover their reasonable attorneys' fees and expenses of this litigation based on this Court's prior award of fees and expenses pursuant to 11 U.S.C. § 105(a) and 15 U.S.C. § 1692k(a)(3), which is the "law of the case."  The only remaining disputed issue of fact is the dollar amount of Plaintiffs' attorneys' fees and costs;

(2) Plaintiffs may also recover their reasonable attorneys' fees and expenses for defending their fee application; and

(3) There is no "proportionality" analysis that applies to this Court's assessment of the amount of Plaintiffs' attorneys' fees in this case.

---

[231] ECF No. 431 at 7, ¶ 10.
[232] *Jones v. Cain*, 600 F.3d 527, 541 (5th Cir. 2010) (citing *United States v. Jackson*, 426 F.3d 301, 304 n.2 (5th Cir. 2005) ("Arguments raised for the first time in a reply brief . . . are waived.")).

Rule 56(f)(1) states, "[a]fter giving notice and a reasonable time to respond, the court may grant summary judgment for a nonmovant."

In Part B above, this Court already found that this Court's decision to award reasonable and necessary attorneys' fees and expenses pursuant to 11 U.S.C. § 105(a) and 15 U.S.C. § 1692k(a)(3) is the law of the case. Plaintiffs' summary judgment request as to their right to recover fees and expenses for the defending the fee application is denied.[233] This Court also found that there is no proportionality requirement in the Fifth Circuit.[234]

Accordingly, pursuant to Rule 56(f)(1), notice is hereby given to Defendants of the Court's intention to grant summary judgment for Applicants on item numbers one and three above. Defendants have twenty days from the entry of the order accompanying this memorandum opinion to respond to the Court's notice. Applicants are granted twenty days from the date of Defendants' response, if any, to reply. No other briefing will be accepted on the matter.

## V. CONCLUSION

A judgement consistent with this memorandum opinion will be entered on the docket simultaneously herewith.

SIGNED September 10, 2021

_Eduardo Rodriguez_
Eduardo Rodriguez
United States Bankruptcy Judge

---

[233] See Part IV(B) *supra*.
[234] See Part IV(C)(1)(a)(i) *supra*.