United States Bankruptcy Court
Southern District of Texas

**ENTERED**

February 09, 2023

Nathan Ochsner, Clerk

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## MCALLEN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | **CASE NO: 10-70594** |
| **JOSE SR. TREVINO** | § | |
| and | § | **CHAPTER 13** |
| **TERESA TREVINO,** | § | |
| | § | |
| Debtors. | § | |
| _____ | § | |
| **TERESA TREVINO** | § | |
| and | § | |
| **JOSE SR. TREVINO,** | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| VS. | § | **ADVERSARY NO. 13-7031** |
| | § | |
| **U.S. BANK TRUST, N.A.** | § | |
| and | § | |
| **CALIBER HOME LOANS, INC.,** | § | |
| | § | |
| Defendants. | § | |

### <u>MEMORANDUM OPINION</u>

"A request for attorney's fees should not result in a second major litigation."[1]

Nevertheless, U.S. Bank Trust, N.A., as trustee for LSF8 Master Participation Trust and Caliber

Home Loans, Inc. has objected to the request of Jose Trevino and Teresa Trevino's counsel, Kellett

& Bartholow PLLC and Stone Curtis, PLLC's, for a combined total of $798,686 in attorneys' fees

and $75,382.29 in expenses for a grand total of $874,068.29 stemming from extended litigation in

a case that has been pending in this Court since 2013.  The Court conducted a four-day trial

commencing on September 19, 2022, and concluding on September 22, 2022.  For the reasons

stated herein, this Court finds that of the $763,846.50 in attorneys' fees and $72,229.12 in expenses

---

[1] *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).

requested by Kellett & Bartholow, PLLC, only $230,448.20 in attorneys' fees and $44,447.04 in expenses are reasonable and necessary and thus awarded to Kellett & Bartholow PLLC.  Further, this Court finds that of the $34,839.50 in attorneys' fees and $3,153.17 in expenses requested by Stone Curtis, PLLC, only $6,967.91 in fees and $2,454.17 in expenses are necessary and reasonable and thus awarded to Stone Curtis, PLLC.

## I.   BACKGROUND

This Court makes the following findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure ("*Rule*") 52, which is made applicable to adversary proceedings pursuant to Federal Rule of Bankruptcy Procedure ("*Bankruptcy Rule*") 7052.  To the extent that any finding of fact constitutes a conclusion of law, it is adopted as such.  To the extent that any conclusion of law constitutes a finding of fact, it is adopted as such.  This Court made certain oral findings and conclusions on the record.  This Memorandum Opinion supplements those findings and conclusions.  If there is an inconsistency, this Memorandum Opinion controls.[2]

For the purposes of this Memorandum Opinion and, to the extent not inconsistent herewith, this Court adopts and incorporates by reference each of the Background Facts in this Court's June 19, 2015, January 12, 2017, January 31, 2020, December 21, 2020, and September 10, 2021, Memorandum Opinions.[3]

In late 2013, Jose Trevino and Teresa Trevino ("*Plaintiffs*") filed suit against HSBC Mortgage Services, Inc. ("*HSBC*"), U.S. Bank Trust, N.A., as trustee for LSF8 Master Participation Trust ("*USBT*") and Caliber Home Loans, Inc. ("*Caliber*").[4]  In 2016, Plaintiffs

---

[2] Citations to the docket in this adversary proceeding styled *Trevino v. U.S. Bank Trust, N.A.* et al. 13-7031, shall take the form "ECF No. ——," while citations to the bankruptcy case, 10-70594, shall take the form "Bankr. ECF No. ——."
[3] ECF Nos. 96, 184, 341, 419, and 445.
[4] ECF No. 1.

settled with HSBC[5] and HSBC was dismissed from the case,[6] but litigation against USBT and Caliber ("*Defendants*") continued.  Finally, on August 7, 2019, a trial commenced[7] and ultimately concluded on October 1, 2019.[8]

On January 31, 2020, the Court issued a memorandum opinion ("*Trial Opinion*")[9] and judgment ("*Trial Judgment*"), denying Plaintiffs relief on numerous causes of action and denying Plaintiffs' claims for actual damages.[10]  The Court concluded, however, that Defendants violated the Fair Debt Collection Practices Act ("*FDCPA*") and committed an abuse of process by not withdrawing the 3002.1 Notice during the period of time when Defendants owned Plaintiffs' Loan. As a result, the Court found Defendants liable to Plaintiffs for $1,000 in statutory damages under the FDCPA and $9,000 in punitive damages.[11]  The Court further deemed Defendants liable for Plaintiffs' reasonable and necessary attorneys' fees and expenses pursuant to 11 U.S.C. § 105(a) and 15 U.S.C. § 1692k(a)(3), in an amount to be determined following further proceedings.[12]

The litigation didn't end there, however.  On May 15, 2020, Kellett & Bartholow PLLC ("*KB Firm*") and Stone Curtis, PLLC ("*Stone Curtis*" and together with KB Firm, "*Applicants*") filed their "Application of Plaintiffs' Counsel for Allowance of Compensation and Reimbursement of Expenses" ("*Fee Application*"), seeking, collectively, $676,576.50 in attorneys' fees and $67,121.59 in expenses, for a grand total of $743,698.09.[13]  On August 14, 2020, Defendants objected to the Fee Application ("*Fee Objection*") in its entirety.[14]  On March 19, 2021, Defendants

---

[5] ECF No. 137.
[6] ECF No. 144.
[7] Aug. 7, 2019 Min. Entry.
[8] Oct. 1, 2019 Min. Entry.
[9] ECF No. 341.
[10] ECF No. 342.
[11] *Id.*
[12] *Id.*
[13] ECF No. 374.
[14] ECF No. 390.

filed their, "Motion for Summary Judgment as to Application of Plaintiffs' Counsel for Allowance of Compensation and Reimbursement of Expenses" ("*Motion for Summary Judgment*").[15] Plaintiffs filed a response on April 16, 2021 ("*MSJ Response*").[16]  Defendants filed their reply on April 23, 2021.[17]  Plaintiffs filed a sur-reply on April 30, 2021 ("*Sur-Reply*").[18]  Plaintiffs' Sur-Reply sought entry of summary judgment in their favor on limited matters.[19]

On September 10, 2021, this Court issued its Memorandum Opinion and Judgment resolving the Motion for Summary Judgment and notified Plaintiffs and Defendants that it intended to grant summary judgment in part, in favor of Plaintiffs pursuant to Plaintiffs' Sur-Reply.[20]  On October 21, 2021, this Court entered a Judgment resolving Plaintiffs' Sur-Reply.[21]  In the interim, on September 24, 2021, Plaintiffs filed their "Plaintiffs' Limited Motion to Reconsider Opinion and Judgment at Docket Nos. 445 and 446" ("*Limited Motion to Reconsider*").[22]  After reviewing the Limited Motion to Reconsider, this Court entered an Amended Judgment on October 22, 2021.[23]

On January 10, 2022, Plaintiffs filed their "Supplemental Application of Plaintiffs' Counsel for Allowance of Compensation and Reimbursement of Expenses," ("*Supplemental Fee Application*"), seeking reimbursement of $122,109.50 in attorneys' fees and $8,260.70 in expenses accumulated defending the Fee Application against Defendants' Objection.[24]  On February 7, 2022, Defendants filed "The Caliber Parties' Objection to the Supplemental Application of

---

[15] ECF No. 428.
[16] ECF No. 430.
[17] ECF No. 431.
[18] ECF No. 434.
[19] *Id.*
[20] ECF Nos. 445, 446.
[21] ECF No. 451.
[22] ECF No. 449.
[23] ECF No. 454.
[24] ECF No. 466.

Plaintiffs' Counsel for Allowance of Compensation and Reimbursement of Expenses" ("*Supplemental Fee Objection*").[25]  In total, KB Firm seeks $641,737.00 in fees and $63,968.42 in expenses from the Fee Application and $122,109.50 in fees and $8,260.70 in expenses from the Supplemental Fee Application for a total award sought of $836,075.62.  Stone Curtis seeks $34,839.50 in fees and $3,153.17 in expenses from the Fee Application for a total award sought of $38,037.67.  Together, Applicants seek a total award of $874,068.29 in fees and expenses.

On September 19, 2022, this Court conducted a four day trial on the Fee Application and the Supplemental Fee Application concluding on September 22, 2022.  After the trial concluded, the Court ordered Applicants and Defendants to submit post-trial briefing, to be filed no later than December 6, 2022, on why various requested fees should or should not be awarded in light of the evidence presented at trial.[26]  On December 5, 2022 the Court granted "Defendant's Unopposed Motion for an Extension of Time to File Post-Trial Briefs" extending the deadline to file the post-trial briefs to December 13, 2022.[27]  On December 13, 2022 Applicants timely filed their "Plaintiffs' Post-Trial Brief in Support of Their Counsel's Application and Supplemental Application for Allowance of Compensation and Reimbursement of Expenses"[28] ("*Applicant's Post-Trial Brief*") and Defendants timely filed their "The Caliber Parties' Post-Trial Brief"[29] ("*Defendant's Post-Trial Brief*").  The matter is now concluded and ripe for determination.

## II.    CREDIBILITY OF WITNESSES

It is the Court's duty to assess and weigh the credibility of witnesses.[30]  At the September 19-22, 2022, trial, the Court heard testimony from six witnesses: (1) Ellen Stone, (2) Caitlyn Wells,

---

[25] ECF No. 470.
[26] September 22, 2022, Min. Entry; ECF No. 528 at 143-44.
[27] ECF Nos. 532, 533.
[28] ECF No. 537.
[29] ECF No. 538.
[30] *In re Burg*, 641 B.R. 120, 128 (Bankr. S.D. Tex. 2022) (citing *Port Arthur Towing Co. v. John W. Towing, Inc. (In re Complaint of Port Arthur Towing Co.)*, 42 F.3d 312, 318 (5th Cir. 1995)).

(3) Karen Kellett, (4) Marcos Oliva, (5) Abelardo Limon, and (6) Catherine Curtis. After observing the witnesses and listening to their testimony, the Court makes the following observations regarding the credibility of the witnesses, as set forth below.

### 1. Ellen Stone

Ellen Stone served as counsel to Plaintiffs in their underlying bankruptcy. At trial, Ellen Stone responded to questions clearly, completely, and directly.[31] Thus, the Court finds that she is a very credible witness and gives substantial weight to her testimony.

### 2. Caitlyn Wells

Caitlyn Wells is an attorney for the KB Firm and has worked on the present Adversary Case on behalf of Plaintiffs. At trial, Caitlyn Wells responded to questions clearly, completely, and directly.[32] Thus, the Court finds that she is a very credible witness and gives substantial weight to her testimony.

### 3. Karen Kellett

Karen Kellett is a partner at the KB Firm and has worked on the present Adversary Case on behalf of Plaintiffs. At trial, Karen Kellett responded to questions clearly, completely, and directly.[33] Thus, the Court finds that she is a very credible witness and gives substantial weight to her testimony.

### 4. Marcos Oliva

Marcos Oliva is consumer bankruptcy attorney in the Rio Grande Valley. At trial, Marcos Oliva responded to questions clearly, completely, and directly.[34] Thus, the Court finds that he is a very credible witness and gives substantial weight to his testimony.

---

[31] *See e.g.*, *In re Burg*, 641 B.R. 120, 128 (Bankr. S.D. Tex. 2022).
[32] *See e.g.*, *id.*
[33] *See e.g.*, *id.*
[34] *See e.g.*, *id.*

### 5.  Abelardo Limon

Abelardo Limon is consumer bankruptcy attorney in the Rio Grande Valley.  At trial, Abelardo Limon responded to questions clearly, completely, and directly.[35]  Thus, the Court finds that he is a very credible witness and gives substantial weight to his testimony.

### 6.  Catherine Curtis

Catherine Curtis served as bankruptcy counsel for the Plaintiffs in the underlying bankruptcy case.[36]  At trial, Catherine Curtis responded to questions clearly, completely, and directly.[37]  Thus, the Court finds that she is a very credible witness and gives substantial weight to her testimony.

### III.    JURISDICTION, VENUE, AND CONSTITUTIONAL AUTHORITY

This Court holds jurisdiction pursuant to 28 U.S.C. § 1334 and now exercises its jurisdiction in accordance with Southern District of Texas General Order 2012–6.[38]  Bankruptcy judges wield constitutional authority to issue final orders and judgments for core proceedings but can only issue reports and recommendations for non-core proceedings, unless the parties consent to the entry of final orders or judgments on non-core matters.   The instant action is a core proceeding.   The application of Plaintiffs' counsel for allowance of compensation and reimbursement of expenses arises under title 11, making this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (B), and (O).

This Court may only hear a case in which venue is proper.[39]  28 U.S.C. § 1409(a) provides that "a proceeding arising under title 11 or arising in or related to a case under title 11 may be

---

[35] *See e.g.*, *id.*
[36] ECF No. 525 at 73, ¶¶ 23-25.
[37] *See e.g.*, *In re Burg*, 641 B.R. at 128.
[38] In re: Order of Reference to Bankruptcy Judges, Gen. Order 2012–6 (S.D. Tex. May 24, 2012).
[39] 28 U.S.C. § 1408.

commenced in the district court in which such case is pending." Venue is proper before this Court

pursuant to 28 U.S.C. §§ 1408 and 1409 because Plaintiffs reside in Edinburg, Texas[40] and the

Court presided over their chapter 13 bankruptcy proceeding.

While bankruptcy judges can issue final orders and judgments for core proceedings, absent

consent, they can only issue reports and recommendations on non-core matters.[41] Here, Plaintiffs

filed their notice of consent on August 31, 2020,[42] and Defendants filed their notice of non-consent

to the entry of final orders on all non-core matters by this Court on the same date.[43] However, this

Court finds that because this Memorandum Opinion and Order supplements the Court's January

31, 2020, Judgment to the extent it determines reasonable attorneys' fees, the matter is a core

proceeding under 28 U.S.C. § 157(b)(2), and this Court has the constitutional authority to enter a

final order.

Regarding any non-core claims involved, this Court finds that resolution of such claims is

inextricably intertwined with resolution of the core claims.[44] As such this Court can enter final

orders and judgments. However, should the Honorable United States District Court determine that

the Bankruptcy Court did not have authority to enter final orders and judgments, this Court requests

---

[40] Bankr. ECF No. 1.

[41] *See* 28 U.S.C. §§ 157(b)(1), (c)(1); *see also Stern v. Marshall*, 564 U.S. 462, 480 (2011); *Wellness Int'l Network, Ltd. v. Sharif*, 135 S. Ct. 1932, 1938–40 (2015).

[42] ECF No. 393.

[43] ECF No. 392.

[44] *E.g.*, *In re Spillman Development Group, Ltd.*, 710 F.3d 299, 306 (5th Cir. 2013) (holding that creditor's state contract-law claims were inextricably intertwined with the interpretation of a right created by federal bankruptcy law); *Honigman, Miller, Schwartz & Cohn v. Weitzman* (*In re DeLorean Motor Co.*), 155 B.R. 521, 525 (9th Cir. BAP 1993) (holding that an otherwise non–core state law claim was inextricably tied to the determination of an administrative claim against the estate and similarly tied to questions concerning the proper administration of the estate); *Maitland v. Mitchell* (*In re Harris Pine Mills*), 44 F.3d 1431, 1438 (9th Cir. 1995) (citing *Honigman, Miller, Schwartz & Cohn* with approval); *see also CDX Liquidating Trust v. Venrock Assoc.*, No. 04–7236, 2005 WL 3953895, at *2 (N.D. Ill. Aug. 10, 2005) (holding that where non–core claims were inextricably intertwined with core claims, the non–core claims should be treated as core claims); *Electric Machinery Enterprises, Inc. v. Hunt Construction Group, Inc.* (*In re Electric Machinery Enterprises, Inc.*), 416 B.R. 801, 866–67 (Bankr. M.D. Fla. 2009) (adopting inextricably intertwined approach).

that the Honorable United States District Court convert this Memorandum Opinion into a Report and Recommendation.

## IV.    ANALYSIS

### A. Applicants' Fee Application

KB Firm seeks $641,737.00 in legal fees for the time period from December 3, 2013, to March 1, 2020, plus $63,968.42 in expenses for a total award of $705,705.42.[45]  Stone Curtis, seeks $34,839.50 in legal fees and $3,153.17 in expenses for a total award of $37,992.67 for the same time period as KB Firm.[46]  As demonstrated by the table below, the combined total award requested in the Fee Application is $743,698.09:[47]

| Kellett & Bartholow, PLLC | | | | | |
|---|---|---|---|---|---|
| **Timekeeper** | **Hours in 1/10 Increments** | **Rate** | **Total** | **Adjusted Hours in 1/10 Increments** | **Adjusted** |
| | | | | | |
| Theodore O. Bartholow, III | 26.5 | $435.00 | $11,527.50 | 22.7 | $9,874.50 |
| Theodore O. Bartholow, III (Travel Rate) | 10 | $217.50 | $2,175.00 | 10 | $2,175.00 |
| Theodore O. Bartholow, III (12/03/2013 – 12/31/2017) | 94.1 | $400.00 | $37,640.00 | 63.4 | $25,360.00 |
| Theodore O. Bartholow, III (12/03/2013 – 12/31/2017 Travel Rate) | 31.5 | $200.00 | $6,300.00 | 31.5 | $6,300.00 |
| **Subtotal** | | | **$57,642.50** | | **$43,709.50** |
| | | | | | |
| Karen L. Kellett | 907.3 | $500.00 | $453,650.00 | 769.2 | $384,600.00[48] |

---

[45] ECF No. 374 at 1.
[46] *Id.* at 2.
[47] *See generally* ECF No. 374-1.
[48] ECF No. 374 at 8 incorrectly reflects a total of $388,200.00.

| | | | | | |
|---|---|---|---|---|---|
| Karen L. Kellett (Travel Rate) | 87.5 | $250.00 | $21,875.00 | 87.5 | $21,875.00 |
| **Subtotal** | | | **$475,525.00** | | **$406,475.00** |
| | | | | | |
| Caitlyn N. Wells | 749.3 | $300.00 | $224,790.00 | 555.3 | $166,590.00 |
| Caitlyn N. Wells (12/03/2013 – 5/31/2015) | 85.5 | $250.00 | $21,375.00 | 53.4 | $13,350.00 |
| Caitlyn N. Wells (Travel Rate) | 10 | $150.00 | $1,500.00 | 10 | $1,500.00 |
| **Subtotal** | | | **$247,665.00** | | **$181,440.00** |
| | | | | | |
| Megan F. Clontz | 155.8 | $250.00 | $38,950.00 | 30.9 | $7,725.00 |
| Megan F. Clontz (12/03/2013 – 5/31/2015) | 1.1 | $200.00 | $220.00 | 0 | $0.00 |
| Megan F. Clontz (Travel Rate) | 9.4 | $125.00 | $1,175.00 | 9.1 | $1,137.50 |
| **Subtotal** | | | **$40,345.00** | | **$8,862.50** |
| | | | | | |
| Claude D. Smith | 29.2 | $350.00 | $10,220.00 | 0 | $0.00 |
| O. Max Gardner, III | 0.5 | $475.00 | $237.50 | 0 | $0.00 |
| Brenda Morott (paralegal) | 34.2 | $150.00 | $5,130.00 | 4.6 | $690.00 |
| Carter S. Plotkin (paralegal) | 7.9 | $100.00 | $790.00 | 0 | $0.00 |
| Bakhtawar Khan (paralegal) | 11.7 | $100.00 | $1,170.00 | 0 | $0.00 |
| Tye McWhorter | 13.4 | $100.00 | $1,340.00 | 0 | $0.00 |
| Myra Ali (paralegal) | 16.0 | $100.00 | $1,600.00 | 0 | $0.00 |
| Todd Cohen (paralegal) | 17.7 | $100.00 | $1,770.00 | 0 | $0.00 |
| Randi Daun (paralegal) | 100.6 | $100.00 | $10,060.00 | 5.6 | $560.00 |
| Megan Parry (paralegal) | 90.6 | $100.00 | $9,060.00 | 0 | $0.00 |
| Sam Weeks (paralegal) | 32.0 | $100.00 | $3,200.00 | 0 | $0.00 |
| **Subtotal Fees** | | | **$44,577.50** | | **$1,250.00** |
| | | | | | |
| **Total Fees** | | | **$865,755.00** | | **$641,737.00** |
| | | | | | |
| **Case Expenses** | | | | | $63,968.42 |
| **Total** | | | | | **$705,705.42** |

| Stone Curtis, PLLC | | | |
|---|---|---|---|
| **Timekeeper** | **Hours** | **Rate** | **Total** |
| | | | |
| Catherine Curtis | 3.7 | $225 | $832.50 |
| | | | |
| Catherine Curtis | 1.75 | $350 | $612.50 |
| **Subtotal** | | | **$1,445.00** |
| | | | |
| Ellen Stone | 0.1 | $375 | $37.50 |
| Ellen Stone | 82.52 | $350 | $28,882.00 |
| Ellen Stone | 0.25[49] | $300 | $75.00 |
| Ellen Stone (Travel Rate) | 13.75 | $175 | $2,406.25 |
| **Subtotal** | | | **$31,445.75** |
| | | | |
| Raul Frias | 4.0 | $95 | $380.00 |
| Raul Frias | 0.75 | $100 | $75.00 |
| **Subtotal** | | | **$455.00** |
| | | | |
| Julisa Resendez | 3.75 | $100 | $375 |
| **Subtotal** | | | **$375.00** |
| | | | |
| Mary Olivarez | 12.25 | $95 | $1,163.75 |
| **Subtotal Fees** | | | **$1,163.75** |
| | | | |
| **Total Fees** | | | **$34,839.50** |
| | | | |
| **Case Expenses** | | | **$3,153.17** |
| **Total** | | | **$38,037.67** |
| | | | |
| **Grand Total** | | | **$743,698.09** |

Determining the proper amount of attorney's fees to award is guided by two sub-inquiries: whether the attorney was properly employed and if so, whether the fees charged are reasonable and necessary.[50]  The Court takes these sub-inquiries in turn.

---

[49] ECF No. 374 at 9 reflects .4 hours billed at $300/hour for a total of $75.00.  The May 7, 2017 time entry at ECF No. 374-4 at 9, however, reflects that only .25 hours was billed at $300/hour for a total of $75.00.
[50] *Lopez v. Portfolio Recovery Assocs., LLC (In re Lopez)*, 576 B.R. 84, 92 (Bankr. S.D. Tex. 2017) (quoting *In re Palacios*, 2016 WL 361569 (Bankr. S.D. Tex. Jan. 27, 2017)).

## B.  Whether fees should be reduced for the failure to comply with Bankruptcy Rule 2016(b) and Local Rule 2014-1(d)

Defendants first argue that Applicants' fees and expenses should be denied entirely because Applicants failed to obtain Court approval to represent Plaintiffs and failed to timely disclose their fee arrangements to Plaintiffs.[51]  This Court's Summary Judgment Memorandum Opinion has already discussed at length whether Applicants were properly employed in this case.[52]  Upon review of relevant Fifth Circuit case law in effect at the time this case was filed, the Court found that it was not readily apparent in 2013 that Plaintiffs were required to file an employment application to employ special counsel pursuant to § 327.[53]  However, it was undisputed that Applicants did not timely file the disclosures required by Bankruptcy Rule 2016(b).[54]  The Court also found that Applicants failed to comply with Local Rule 2014-1(d).[55]  The Court concluded that despite Applicants' failure, it was proper for this Court to award Plaintiffs reasonable and necessary attorneys' fees, but that the failure impacts the reasonableness of Applicants' fees.[56]  "It is well established law that, absent compliance with the Bankruptcy Code and Rules, an attorney has no absolute right to an award of compensation."[57]  It is within this Court's discretion to reduce attorney's fees when attorneys do not comply with the rules governing employment and compensation of counsel.[58]  Plaintiffs' original complaint was filed on December 30, 2013, but

---

[51] ECF No. 390 at 7-10.

[52] *See generally* ECF No. 445.

[53] *Id.* at 14.

[54] *Id.* at 10.

[55] *Id.* at 14–16.

[56] *Id.* at 21–22.

[57] *In re Anderson*, 936 F.2d 199, 204 (5th Cir. 1991) (citation omitted).

[58] *See, e.g.*, *I.G. Petroleum, L.L.C. v. Fenasci (In re W. Delta Oil Co.)*, 432 F.3d 347, 355 (5th Cir. 2005) (finding that counsel that fails to make a full disclosure under Rule 2014(a) proceeds at their own risk because failure to do so is grounds to deny compensation); *Klein v. Owsley (In re Owsley)*, 2022 U.S. Dist. LEXIS 84756, at *10–11 (S.D. Tex. Mar. 31, 2022) (affirming bankruptcy court's decision to reduce requested fees because counsel's *nunc pro tunc* request pursuant to Local Rule 2014-1(b) was inadequate); *Tex. Comptroller of Pub. Accounts v. Zars (In re Zars)*, 434 B.R. 421, 433 (Bankr. W.D. Tex. 2010) ("The Court agrees with the Comptroller that, certainly, part of the judge's discretion in these matters includes the power to deny attorney's fees or order their disgorgement when attorneys do not file Rule 2016(b) statements as the Code requires."); *In re Berg*, 356 B.R. 378, 384 (Bankr. E.D. Pa. 2006)

Applicants' Bankruptcy Rule 2016(b) disclosures were not filed until September 17, 2018.[59] Such a significant delay, especially in light of the experience touted by KB Firm, is unreasonable.

In *In re Ball*, the District Court for the Southern District of Texas reduced counsel's requested fees and expenses by 50% for a similar failure to timely comply with Bankruptcy Rule 2016(b).[60] While some courts have uncritically lumped fees and expenses together when reducing fee awards for failing to comply with applicable employment rules,[61] this Court acknowledges that reducing actual out of pocket expenses is more punitive to a firm than reducing fees on a dollar by dollar basis. Absent a showing of bad faith, which the Court has already determined was not present in this case,[62] the Court will not penalize Applicants' allowed expenses and imposes a 50% penalty only on the requested fees.

Applicants request in their Post-Trial Brief that any penalty the Court assesses against them for failing to comply with Local Rule 2014-1(d) or Bankruptcy Rule 2016(b) be paid to one or more consumer rights legal services organizations as opposed to being merely reduced from the fee award.[63] Although the Court finds this request well placed in spirit, Applicants provide no authority for the Court to rely on in making this unorthodox proposal. Thus, the Court declines this request.

Accordingly, given Applicants' failure to timely file the required disclosures under Bankruptcy Rule 2016(b) and comply with Local Rule 2014-1(d), Defendants' objection is

---

(decision to sanction for even inadvertent transgressions of the reporting requirements lies within the discretion of the bankruptcy court).

[59] Bankr. ECF No. 188.

[60] *See, e.g.*, *In re Ball*, No. 07-32628-H4-13, 2011 WL 7748356, at *2 (Bankr. S.D. Tex. Sept. 23, 2011) (reducing counsel's fees and expenses by 50% for failure to file Rule 2016(b) disclosure timely, noting that fees and expenses could be eliminated completely for failure to comply but that because counsel did provide services benefiting the debtor, fees and expenses would only be reduced by 50%); *In re Kucherka*, 2010 Bankr. LEXIS 6316, at *5–6 (Bankr. S.D. Tex. Mar. 23, 2010) (same).

[61] *Id.*

[62] ECF No. 445 at 21-22.

[63] ECF No. 537 at 4, 28.

sustained in part and this Court finds it appropriate to reduce any award for fees to Applicants by 50%. The Court shall reduce the $641,737.00 and $34,839.50 in fees sought by KB Firm and Stone Curtis respectively in the Fee Application by 50% after all line-item reductions are deducted as discussed *infra*.

The Court will next consider whether the requested fees in the Fee Application are reasonable and necessary.

### C. Whether Applicants' requested fees in the Fee Application are reasonable and necessary

The Fifth Circuit has adopted the lodestar method for determining the reasonable amount of attorneys' fees.[64] The lodestar is calculated by multiplying the number of hours reasonably expended by the prevailing hourly rate in the community for similar work.[65] There is a strong presumption of the reasonableness of the lodestar amount.[66] However, after calculating the lodestar amount, the Court has discretion to adjust the fee upwards or downwards based on the twelve factors outlined in *Johnson v. Georgia Highway Express, Inc.*[67] Those twelve factors are:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or other circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; (12) awards in similar cases.[68]

---

[64] *Trevino v. U.S. Bank Trust, N.A. (In re Trevino)*, 633 B.R. 485, 509 (Bankr. S.D. Tex. 2021) (citing *Transamerican Nat. Gas Corp. v. Zapata P'ship (In re Fender)*, 12 F.3d 480, 487 (5th Cir. 1994)).
[65] *In re Trevino*, 633 B.R. at 509.
[66] *In re HL Builders, LLC*, 630 B.R. 32, 43 (Bankr. S.D. Tex. 2020) (citing *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 552 (2010)).
[67] 488 F.2d 714, 717–19 (5th Cir. 1974).
[68] *Johnson*, 488 F.2d at 717–19.

The lodestar may be adjusted only as to those *Johnson* factors not already taken into account by the lodestar.[69]  The four *Johnson* factors already reflected in the lodestar calculation are: (2) the novelty and complexity of the issues; (3) the special skill and experience of counsel; (8) the results obtained from the litigation; and (9) the quality of the representation.[70]  Aside from the *Johnson* factors, the Court may also "consider all relevant factors" in making any adjustment to the lodestar fee.[71]

Bankruptcy courts wield "'considerable discretion' when determining whether an upward or downward adjustment of the lodestar is warranted."[72]  Although the party seeking attorney's fees bears the initial burden of submitting adequate documentation of the hours reasonably expended and of the attorney's qualifications and skill, the party seeking reduction of the lodestar bears the burden of showing that a reduction is warranted.[73]

KB Firm requests compensation of $641,737, which is comprised of 1,643 attorney hours and 10.2 paraprofessional hours.[74]  KB Firm additionally requests $63,968.42 in expenses.[75]  Stone Curtis requests compensation of $34,839.50, which is comprised of 102.22 attorney hours and 20.75 paraprofessional hours.[76]  Stone Curtis additionally requests $3,153.17 in expenses.[77]

Defendants make the following specific objections to the Fee Application:

1. The KB Firm failed to justify its high hourly rates as being within the prevailing hourly rates for similar work in the McAllen community

2. The results obtained do not support Plaintiffs' request for fees

---

[69] *In re Fender*, 12 F.3d at 487 (citing *Shipes v. Trinity Indus.*, 987 F.2d 311, 319–20 (5th Cir. 1993)).
[70] *In re Pilgrim's Pride Corp.*, 690 F.3d 650, 656 (5th Cir. 2012) (citing *In re Fender*, 12 F.3d at 488).
[71] *Barron & Newburger, P.C. v. Tex. Skyline, Ltd. (In re Woerner)*, 783 F.3d 266, 277 (5th Cir. 2015).
[72] *Id.* (citing *Cahill v. Walker & Patterson, P.C.*, 428 F.3d 536, 540 (5th Cir. 2005)).
[73] *Hensley*, 461 U.S. at 437.
[74] ECF No. 374 at 1.  KB Firm notes that 2,197.7 attorney hours and 324.1 paraprofessional hours were expended on this case, but KB Firm self-adjusted the number of hours covered by the Fee Application.
[75] *Id.*
[76] *Id.* at 2.
[77] *Id.*

3. Plaintiffs' claims were neither complex nor novel

4. The time spent by Plaintiffs' counsel in litigating the claims was wholly unreasonable

5. The Fee Application is replete with instances of top-heavy billing, overstaffing, and overbilling for the tasks involved

6. Defendants' offer of judgment early in the adversary proceeding warrants a substantial reduction to Plaintiffs' requested fees[78]

Defendants' objections are to the lodestar calculation itself, including the four *Johnson* factors subsumed by the lodestar. The Court will consider each objection in turn.

### 1. Reasonableness of the hourly rates charged

The Court must determine the reasonable hourly rate for Applicants in this case. A reasonable hourly rate is based on the prevailing market rates in the community where the trial court sits.[79] The applicant must prove that the rates sought are in accordance with the prevailing community rates for similar services by reasonably comparable attorneys.[80] A district court may not rely on its own experience in the relevant legal market to set a reasonable hourly billing rate.[81] In the Fifth Circuit, out-of-town counsel may be awarded out-of-town rates under certain limited circumstances and Applicants have the burden to establish the necessity of hiring out of town counsel.[82] Courts employ a two-prong test to determine whether out-of-town rates may be awarded: (1) "whether hiring out-of-town counsel was reasonable in the first instance," and (2) "whether the rates sought by the out-of-town counsel are reasonable for an attorney of his or her degree of skill, experience, or reputation."[83]

The Court will consider both the rates billed by KB Firm and by Stone Curtis in turn.

---

[78] ECF No. 390.

[79] *E.g.*, *Blum v. Stenson*, 465 U.S. 886, 895 (1984); *Tollett v. City of Kemah*, 285 F.3d 357, 368 (5th Cir. 2002).

[80] *Lopez v. Portfolio Recovery Assocs., LLC (In re Lopez)*, 576 B.R. 84, 92 (Bankr. S.D. Tex. 2017) (citing *McClain v. Lufkin Indus. Inc.*, 649 F.3d 374, 381 (5th Cir. 2011)).

[81] *League of United Latin Am. Citizens #4552 v. Roscoe Indep. Sch. Dist.*, 119 F.3d 1228, 1234 (5th Cir. 1997) (citations omitted).

[82] *In re Lopez*, 576 B.R. at 92 (citing *McClain*, 649 F.3d at 382); *McClain v. Lufkin Indus., Inc.*, 649 F.3d 374, 381-382 (5th Cir. 2011).

[83] *Id.* (quoting *In re Rodriguez*, 517 B.R. 724, 731 (Bankr. S.D. Tex. 2014)).

### a.   KB Firm's rates

The rates KB Firm charged for the work of attorneys and seeks to recover under the Fee

Application are as follows:

     i.     Karen L. Kellett ("*Kellett*") - $500/hour

     ii.    Theodore O. Bartholow, III ("*Bartholow*") - $400/hour through 12/31/2017; $435/hour post-12/31/2017

     iii.   Caitlin N. Wells ("*Wells*") - $250/hour through 5/31/2015; $300/hour post-5/31/2015

     iv.   Megan. F. Clontz ("*Clontz*") - $200/hour through 5/31/2015; $250/hour post-5/31/2015

     v.    Claude D. Smith ("*Smith*") - $350/hour

     vi.   O. Max Gardner, III ("*Gardner*") - $475/hour[84]

Applicants contend that the rates charged by KB Firm "are reasonable and are consistent with the

rates charged by attorneys of similar experience, skill, and reputation in the area of consumer

bankruptcy litigation involving mortgage-related abuses of the Bankruptcy Code and Rules and

violations of the FDCPA."[85]   Defendants object, asserting that Applicants have not offered any

evidence of the prevailing hourly rates for lawyers in the McAllen area.[86]   Defendants argue that

rates should be limited to $300.00 per hour and cite *Moreno v. Perfection Collection, LLC* in

support.[87]   In *Moreno*, the court held that "[a]ttorneys in cases under the FDCPA within the

Southern District of Texas, Houston Division, are generally awarded fees using a $300.00 hourly

rate."[88]

---

[84] ECF No. 374.
[85] *Id.* at 9–10, ¶ 13.
[86] ECF No. 390 at 18–19, ¶ 38.
[87] ECF No. 538 at 19.
[88] No. CV H-18-2757, 2018 WL 6334837, at *1 (S.D. Tex. Dec. 5, 2018).

In response to Defendants, Applicants assert that it was reasonable for Plaintiffs to hire out-of-town counsel where "there are essentially no consumer bankruptcy litigation attorneys in the McAllen or Brownsville Division [sic] of the Southern District of Texas that have the knowledge and legal/financial resources to engage in the type of litigation at issue here."[89] Applicants also respond to Defendants citation to *Moreno* by noting that the issues in *Moreno* were less complicated than the present case, Defendants' expert did not opine on the reasonableness of KB Firm's rates, and that this Court has previously found KB Firm's rates reasonable in similar cases.[90] Satisfactory evidence that the requested rate is reasonable usually consists of declarations or evidence of rates actually billed and paid by plaintiff's counsel; rates charged by attorneys in similar lawsuits; and the relative skill of the attorney involved.[91]

At trial, Applicants presented testimony from two current practitioners in the Rio Grande Valley, Marcos Oliva ("*Oliva*") and Abelardo Limon ("*Limon*"), as well as testimony from one of the Applicants in this case, Ellen Stone ("*Stone*"). Stone, who served as primary counsel for Plaintiffs in their bankruptcy, testified that she was not personally equipped to take on a large mortgage litigation case nor did she have personal knowledge of any other consumer bankruptcy lawyer in the Rio Grande Valley taking on large mortgage litigation cases.[92] Stone testified that her practice focused on volume chapter 7 and 13 filings, and that matters such as the present case were generally referred to outside counsel.[93] Limon testified that his practice is also primarily a volume consumer bankruptcy practice, and that in his twenty years practicing in the Rio Grande Valley he had only filed three adversary proceedings, none of which from his recollection were

---

[89] ECF No. 465 at 13.
[90] ECF No. 537 at 13.
[91] *Blum*, 465 U.S. at 896 n.11.
[92] ECF No. 525 at 31-32, 35, ¶¶ 8-11.
[93] *Id.* at 31, ¶ 19 – 32, ¶ 1.

related to mortgage servicing litigation.[94]  Limon further testified that he was not aware of any other firm in the Rio Grande Valley that brings mortgage servicing litigation against major lenders and mortgage servicers on behalf of debtors.[95]  Oliva similarly testified that he generally would not initiate an adversary against a lender or mortgage servicer on behalf of his clients, and that he was not familiar with any other firms in the Rio Grande Valley that do.[96]

In an analogous case, *In re Lopez*, this Court found that it was reasonable for the plaintiff to hire KB Firm to represent him where: (1) the adversary proceeding involved both bankruptcy and consumer causes of action; (2) law firms in the McAllen/Brownsville area lacked the resources necessary to appropriately litigate a case such as the plaintiff's; (3) Stone Curtis, the plaintiff's bankruptcy counsel, maintained a relationship with KB Firm that the plaintiff reasonably relied on in choosing counsel; and (4) based on Kellett's testimony, the RGV had a need for consumer financial litigation attorneys and KB Firm filled that need.[97]

Here, Plaintiffs' asserted bankruptcy causes of action such as violations of Rule 3002.1 and a claim objection, plus consumer causes of action such as FDCPA violations.[98]  Thus, just as in *In re Lopez*, Plaintiffs' adversary proceeding consisted of both bankruptcy and consumer causes of action.  Plaintiffs, like the plaintiff in *In re Lopez*, also employed Stone Curtis as their bankruptcy counsel[99] and relied on the relationship between Stone Curtis and KB Firm in choosing KB Firm to represent them in the adversary proceeding.  The Court also finds based on the testimony discussed *supra* from Stone, Limon, and Oliva that no firm in the Rio Grande Valley would have accepted the case at the time and that KB Firm filled that need.  Therefore, just as it was reasonable

---

[94] *Id.* at 126, ¶¶ 3-11, 128, ¶ 20 – 129, ¶ 6.
[95] *Id.* at 130, ¶¶ 6-13.
[96] Id. at 152, ¶¶13-19, 163, ¶¶ 17-20.
[97] 576 B.R. at 97–99.
[98] ECF No. 342.
[99] Case No. 10-70594.

in *In re Lopez* for the plaintiff to hire KB Firm to represent him in his adversary proceeding against a creditor, it was reasonable here for Plaintiffs to hire the KB Firm.  The Court also distinguishes the present case from *Moreno* by noting, as asserted by Applicants, that *Moreno* involved only straight forward FDCPA claims that did not interact with bankruptcy claims.[100]  Thus, *Moreno* was less complicated than the case *sub judice*.  Furthermore, *Moreno* does not stand for the proposition that $300.00 is the most that a court can award for litigation of FDCPA claims, only that it is the rate "generally awarded."[101]  Determining a reasonable rate is a fact intensive inquiry that will invariably change on a case-by-case basis.

The Court next considers whether the rates charged by KB Firm are reasonable based on the degree of experience, skill, or reputation of the attorneys who worked on the case.[102]  The reasonable rate is based on the out-of-town counsel's "home" rates, i.e., Dallas.[103]  In *In re Lopez*, this Court found that, based on Kellett's expert testimony regarding billing rates in the Dallas area, KB Firm's fees were "commensurate with the reasonable rates charged by a qualified Dallas litigator."[104]  At trial, Kellett provided expert testimony that KB Firm billing rates in this case were reasonable and commensurate with those approved in Dallas courts and by this Court in similar cases involving FDCPA claims in the past.[105]  As such, this Court finds that the rates charged by KB Firm in this case were likewise commensurate with the reasonable rates charged by a qualified Dallas litigator.

Accordingly, the Court finds that it was reasonable for Plaintiffs to employ KB Firm and KB Firm's hourly rates are reasonable and Defendants' objection is overruled.

---

[100] *See Moreno*, No. CV H-18-2757, 2018 WL 6334837.
[101] *See id.*
[102] *In re Lopez*, 576 B.R. at 92.
[103] *Id.* at 100 (citing *McClain*, 649 F.3d at 382).
[104] *Id.* (quoting *In re Rodriguez*, 517 B.R. at 733).
[105] ECF No. 525 at 181, ¶ 11 – 183, ¶ 25; ECF No. 526 at 12, ¶ 13 – 15, ¶ 9; ECF No. 526 at 118, ¶¶ 5-15.

### b. Stone Curtis' rates

The rates Stone Curtis charged for the work of attorneys and seeks to recover under the Fee Application are as follows:

i.      Catherine Stone Curtis ("*Curtis*") - $225 for 3.7 hours; $350 for 1.75 hours

ii.     Ellen Stone - $300 for 0.25 hours; $350 for 82.52 hours; $375 for 0.1 hours

While the Fee Application discloses the rates charged by Stone Curtis, the Fee Application does not independently speak to the qualifications and skills of the attorneys at Stone Curtis.[106] Nevertheless, Defendants' objection solely addresses the rates charged by the KB Firm, not those charged by Stone Curtis[107] and "[w]hen the rate is not contested, it is *prima facie* reasonable."[108]

Accordingly, the Court finds that the rates billed by Stone Curtis are reasonable.

### 2. Reasonableness of hours expended

The second step in calculating the lodestar is determining the number of hours reasonably expended.  Defendants lodged several objections regarding the reasonableness of the hours billed as discussed *supra*: (a) the results obtained do not support Plaintiffs' request for fees; (b) Plaintiffs' claims were neither complex nor novel; (c) the time spent by Plaintiffs' counsel in litigating the claims was wholly unreasonable; (d) the Fee Application is replete with instances of top-heavy billing, overstaffing, and overbilling for the tasks involved; (e) Defendants' offer of judgment early in the adversary proceeding warrants a substantial reduction to Plaintiffs' requested fees.[109]

The Court takes each in turn.

### a. Whether the results obtained support Plaintiffs' request for fees

---

[106] *Id.* at 9–11, ¶¶ 13–19.
[107] *Id.*
[108] *La. Power & Light Co.*, 50 F.3d at 328 (quoting *Islamic Ctr. v. Starkville*, 876 F.2d 465, 469 (5th Cir. 1989)).
[109] ECF No. 390.

Defendants argue that the hours expended by Applicants and the attorneys' fees requested are not reasonable because they are disproportionate to the success Plaintiffs realized in this adversary proceeding; and "special circumstances" justify denying the request for fees entirely.[110] Defendants raised these same arguments in their Motion for Summary Judgment.[111]  The Court denied summary judgment to Defendants and granted in favor of Plaintiffs on the issue of proportionality.[112] This Court found that there is no proportionality requirement in the Fifth Circuit between the damages awarded and the attorneys' fees sought.[113]

Although no proportionality requirement exists in the Fifth Circuit, this Court must nevertheless consider Plaintiffs' overall success in determining the reasonableness of any attorneys' fee award, which may include consideration of the proportionality of the attorneys' fees sought to the damages awarded.[114] To determine whether to adjust the fee award where a plaintiff succeeded on only some claims, courts contemplate two questions: (i) "did the plaintiff fail to prevail on claims that were unrelated to the claims on which he succeeded?"; and (ii) "did the plaintiff achieve a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award?"[115]  A party may not recover attorney's fees for work done on unsuccessful claims that were "distinctly different claims for relief that are based on different facts and legal theories," because that work "cannot be deemed to have been 'expended in pursuit of the ultimate result achieved.'"[116] Conversely, where the successful and unsuccessful claims "involve

---

[110] ECF No. 390 at 11–15, ¶¶ 23–31.

[111] ECF No. 429 at 13–17, ¶¶ 29–38.

[112] ECF No. 445 at 26–27; ECF No. 451 at 2, ¶ 1(b).

[113] ECF No. 445 at 26–27; ECF No. 451 at 2, ¶ 1(b).

[114] *Hensley*, 461 U.S. at 436 ("Again, the most critical factor is the degree of success obtained."); *Gurule v. Land Guardian, Inc.*, 912 F.3d 252, 259 (5th Cir. 2018) (finding that the district court did not err in considering the relationship between the amount of the fee awarded and the results obtained).

[115] *Hensley*, 461 U.S. at 434.

[116] *Miniex v. Houston Hous. Auth.*, 2019 U.S. Dist. LEXIS 174525, at *18 (S.D. Tex. Sept. 13, 2019) (quoting *Hensley*, 461 U.S. at 434–35).

a common core of facts or will be based on related legal theories," a court "should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation."[117] The Court will consider each in turn.

### i. Whether Plaintiffs failed to prevail on claims that were unrelated to the claims on which they succeeded

Plaintiffs originally brought 21 counts, but only 14 of those counts were asserted against USBT and Caliber: (1) abuse of process, (2) violation of the automatic stay (3002.1 Notice), (4) relief pursuant to Bankruptcy Rule 3002.1, (5) claim objection pursuant to Rule 3001 to claim no. 21, (6) claim objection as to claim no./docket no. 82, (9) violations of FDCPA (as to Caliber with respect to July 24, 2013 3002.1 Notice), (10) violations of Texas Debt Collection Act, (11) unreasonable debt collection, (12) breach of contract, (16) sanctions, (17) request for injunctive relief, (18) request for declaratory relief, (19) request for actual and punitive damages, and (20) request for attorneys' fees.[118]  In their Second Amended Complaint, Applicants withdrew count (2) violation of the automatic stay (3002.1 Notice).[119]

Five counts (one in part) were dismissed by this Court's Amended Order on Defendants' Motion to Dismiss: (4) relief pursuant to Rule 3002.1, (5) claim objection pursuant to Rule 3001 to claim no. 21, (9) violations of FDCPA, but only as to the claim against Caliber pursuant to 15 U.S.C. § 1692e(12); (10) violations of Texas Debt Collection Act, and (11) unreasonable debt collection.[120]

At trial, Plaintiffs did not prevail on the following counts: (12) breach of contract, (17) request for injunctive relief, and (18) declaratory relief.[121]  Plaintiffs prevailed on the following

---

[117] *Id.* (quoting *Hensley*, 461 U.S. at 435).
[118] ECF No. 78.
[119] *Id.*
[120] ECF No. 106.
[121] ECF No. 342.

counts: (1) abuse of process; (6) claim objection as to claim no./docket no. 82; and (9) violations of the FDCPA.[122]  The following counts were granted in part and denied in part: (19) request for actual and punitive damages and (20) request for attorneys' fees.[123]  Plaintiffs were not awarded any actual damages, but were awarded \$9,000 in punitive damages under § 105(a).[124]  Plaintiffs were also awarded \$1,000 in statutory damages under § 1692k(a)(2)(A).[125]  Lastly, Plaintiffs were awarded attorneys' fees for  prosecution of their claims for abuse of process and violations of the FDCPA.[126]  Plaintiffs assert that all of the claims remaining after adjudication of Defendants' Motion to Dismiss were closely related and thus even time spent on the unsuccessful claims is compensable.[127]

In *Miniex*, the court determined that the plaintiff's dismissed claims were somewhat factually interrelated with her successful claims and therefore, the time spent litigating the dismissed claims should not be automatically deducted from the fee award.[128]  Here, Plaintiffs' dismissed and denied claims were factually interrelated with their successful claims because they were all based on Defendants' failure and refusal to amend or withdraw the July 24, 2013 Rule 3002.1 notice despite not being owed the money claimed in the notice.[129]  As such, the time spent litigating the dismissed and denied claims will not be automatically reduced because the legal theory on which those claims were based was not "distinctly different" than the theory upon which Plaintiffs' successful claims were based.

### ii.    Whether Plaintiffs achieved a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award

---

[122] *Id.*
[123] *Id.*
[124] *Id.*
[125] *Id.*
[126] *Id.*
[127] ECF No. 374 at 4–5.
[128] 2019 U.S. Dist. LEXIS 174525, at *18.
[129] ECF No. 78.

In *Miniex*, despite finding that the plaintiff's fee award should not be automatically reduced for her failure to succeed on claims that were factually interrelated to those on which she was successful, the court found that a 35% reduction of time spent on motions for summary judgment and objections was warranted because the plaintiff's "relief, however significant, [was] limited in comparison to the scope of the litigation as a whole."[130]  "In determining a reasonable attorney's fee award based on the plaintiff's degree of success, there is no precise rule or formula, instead the district court necessarily has discretion in making this equitable judgment."[131]

Here, Plaintiffs were successful on very few counts compared to the 14 originally lodged against Defendants, winning $1,000 in statutory damages and $9,000 in punitive damages.[132] Although eight counts made it to trial, this Court's Trial Judgment explicitly stated that "[u]nder Count I and pursuant to 11 U.S.C. § 105(a), Plaintiffs are awarded reasonable and necessary attorneys' fees and expenses against Caliber and USBT in an amount to be determined by this Court *for prosecuting the abuse of process claim*" and "[u]nder Count IX and pursuant to 15 U.S.C. § 1692k(a)(3), Plaintiffs are awarded reasonable and necessary attorneys' fees and expenses against Caliber in an amount to be determined by this Court *for prosecuting the 15 U.S.C. §§ 1692e, 1692e(2), 1692e(5), 1692f, and 1692f(1) claims*."[133]  Thus, the Court's award of attorneys' fees was expressly limited.  Additionally, the Fee Application states that "injunctive relief became moot as to [USBT] and Caliber when Wilmington Trust filed a notice of transfer of claim on July 6, 2015.  After that date, Plaintiffs spent no time on injunctive relief . . . ."[134]  The Court does not see how that statement can be true when the injunctive relief continued to be

---

[130] 2019 U.S. Dist. LEXIS 174525, at *18–19 (quoting *Combs v. City of Huntington*, 829 F.3d 388, 394 (5th Cir. 2016)).
[131] *Combs*, 829 F.3d at 396 (cleaned up).
[132] ECF No. 342.
[133] *Id.* (emphasis added).
[134] ECF No. 374 at 4, ¶ 6.

asserted against USBT and Caliber and was argued at trial, four years after Plaintiffs' assert that it became moot.[135]  Lastly, the Fee Application states that KB Firm "wrote off any time specifically related to Plaintiffs' negligence claims [count 10] and Plaintiffs' § 1692e(12) claim [count 9], all of which was incurred prior to the Court's dismissal of those claims in its July 31, 2015 opinion on the motions to dismiss."[136]  Applicants make no mention of time specifically related to counts 4, 5, and 11, however.

Despite the factual interrelation between the successful and unsuccessful claims, the Court finds that the level of success realized does not justify expending a combined 1,745.22 professional hours on this case.  Although this Court notes that KB Firm wrote off a total of 554.7 hours in exercising billing judgment, further reduction is warranted.

Accordingly, Defendants' objection is sustained and Applicants overall fees will be reduced by an additional 20% to account for the results obtained. The Court shall reduce the $641,737.00 and $34,839.50 in fees sought by KB Firm and Stone Curtis respectively in the Fee Application by additional 20% after all line-item reductions are deducted as discussed *infra*.

### b.  Whether Plaintiffs' claims were neither complex nor novel

Defendants argue that because Plaintiffs' claims were not novel and complex that Plaintiffs "did not need multiple rounds of depositions and discovery to learn the basic facts upon which they relied at trial."[137]

Courts consider the novelty and complexity of particular claims when a party is seeking enhancement of an award.[138]  An award should be enhanced only in exceptional cases "in which the issues are so novel or complex that the lodestar amount awarded would not provide a

---

[135] ECF No. 332 at 71, ¶ 12, 138, ¶ 23 – 139, ¶ 10.
[136] ECF No. 374 at 4–5, ¶ 7.
[137] ECF No. 390 at 16–18, ¶¶ 32–36.
[138] *Von Clark v. Butler*, 916 F.2d 255, 260 (5th Cir. 1990) (citing *Pennsylvania v. Delaware Valley Citizens' Council*, 478 U.S. 546, 566–67 (1985)).

reasonable fee that would adequately reflect the quality of the representation."[139]  Based on the Fee Application and Plaintiffs' Response, although Applicants assert that the claims were novel and complex, no award enhancement based on that novelty and complexity is sought.  In fact, the Fee Application notes that the novelty and complexity of issues is subsumed in the lodestar.[140]

Accordingly, because the second *Johnson* factor—novelty and difficulty of the issue—is subsumed in the lodestar[141] and Plaintiffs are not seeking an upward adjustment of the award, Defendants' objection is overruled.

### c.  Whether the time spent by Plaintiffs' counsel in litigating the claims was wholly unreasonable

Defendants next argue that the amount of time spent on motions practice was unnecessary, time entries were block billed, Plaintiffs are seeking payment from Defendants for work on matters against HSBC, and excessive amounts of time were spent on several matters.[142]  The Court will consider each in turn.

### i.    Meritless filings

Defendants complain that Plaintiffs are seeking an absurd amount—approximately $44,000—related to their Motion to Compel.[143]  Defendants' primary argument is that the $44,000 should be reduced or denied entirely where this Court found that the motion raised meritless "argle-bargle" regarding the form of electronically stored documents and agreed with Defendants that some of Plaintiffs' discovery requests were vague, broad, or burden-shifting.[144]  Where a plaintiff prevails in a lawsuit, "[a]ttorney's fees are properly awarded even from plaintiff's unsuccessful

---

[139] *Id.*
[140] ECF No. 374 at 17.
[141] *In re Pilgrim's Pride Corp.*, 690 F.3d at 656 (citing *In re Fender*, 12 F.3d at 488).
[142] ECF No. 390 at 16–18.
[143] ECF No. 390 at 16, ¶ 33.
[144] *Id.*

motions practice."[145]  Excluding time spent on motions practice that is without merit, as opposed to merely unsuccessful, may be appropriate.[146]

While this Court referred to Plaintiffs' requests for production numbered three through nine as "meritless argle-bargle," this Court denied in part and granted in part several of Plaintiffs' other requests on the merits.[147]  Plaintiffs' Motion to Compel pertained to twenty requests for production.  Of those twenty, Plaintiffs' arguments about seven of those requests were meritless and another three were withdrawn.  Therefore, Plaintiffs' Motion to Compel with respect to ten requests for production, although successful only in part, was not meritless.  This Court finds that a 50% reduction of the fees expended for the Motion to Compel is warranted.  Despite their objection, Defendants failed to present any evidence explaining the source of the $44,000 figure in their objection at trial.  Defendants do not provide an explanation for the $44,000 figure in their Post-Trial Brief either.  Notwithstanding, the Court has identified $25,195 in billing entries that pertain specifically to the motion to compel:[148]

---

[145] *Feld Motor Sports, Inc. v. Traxxas, LP*, 2016 U.S. Dist. LEXIS 62750, at *28 (E.D. Tex. May 12, 2016) (quoting *Alvarado v. Five Town Car Wash Inc.*, 2015 U.S. Dist. LEXIS 123057, at *5 (E.D.N.Y. July 23, 2015)).
[146] *Id.* (noting that the cases cited by the defendant "excluded time spent on unsuccessful efforts, not because the motions were unsuccessful, but because the court in those cases, found the motion practice to be without merit.").
[147] *See* ECF No. 184 at 36; ECF No. 185.
[148] ECF No. 374-1 at 48, 54-57; *6/6/2016 billing entry reduced only as it pertains to the motion to compel.

| Date | | | Description | | | |
|---|---|---|---|---|---|---|
| 8/17/2014 | Adversary Proceeding | CNW | Prepare motion to compel against Caliber. | $250.00 | 1.50 | $375.00 |
| 8/17/2014 | Adversary Proceeding | TOB | Work on motion to compel as to Caliber. | $400.00 | 3.50 | $1,400.00 |
| 8/18/2014 | Adversary Proceeding | CNW | Continue preparing motion to compel production against Caliber. | $250.00 | 3.50 | $875.00 |
| 8/19/2014 | Adversary Proceeding | TOB | Extensive edits to motion to compel as to Caliber. | $400.00 | 2.50 | $1,000.00 |
| 8/23/2014 | Adversary Proceeding | KLK | Revise motion to compel against Caliber and review exhibits for same. | $500.00 | 2.00 | $1,000.00 |
| 5/3/2016 | Adversary Proceeding | KLK | Review originally-filed motion to compel and exhibits | $500.00 | 0.20 | $100.00 |
| 5/26/2016 | Adversary Proceeding | KLK | Research regarding Caliber system of record for account information for upcoming motion to compel. | $500.00 | 0.30 | $150.00 |
| 6/5/2016 | Adversary Proceeding | KLK | Draft amended motion to compel, legal research regarding same, and review of document production requests, answers, and notes from Rule 26 conference in conjunction with the same. | $500.00 | 2.80 | $1,400.00 |
| 6/6/2016 | Adversary Proceeding | KLK | Review new spreadsheet of some transactions produced by Caliber, and compare to transaction history sent by SPS; complete analysis of same. (2.5) Revise amended motion to compel. (2.6)* | $500.00 | 5.10 | $2,550.00 |
| 6/6/2016 | Adversary Proceeding | KLK | Further revisions to amended motion to compel and finalize same | $500.00 | 3.20 | $1,600.00 |
| 4/6/2016 | Adversary Proceeding | KLK | Review Defendants' response to motion to compel and compare with our motion. (.5) Correspondence with M. Hayward regarding depositions. (.1) | $500.00 | 0.60 | $300.00 |
| 7/7/2016 | Adversary Proceeding | KLK | Further work on deposition topics by reviewing our discovery and Caliber's brief in opposition to our motion to compel. | $500.00 | 0.50 | $250.00 |
| 7/11/2016 | Adversary Proceeding | KLK | Review pleadings in Trent v. Beneficial/Caliber for exhibits for hearing on motion to compel | $500.00 | 0.40 | $200.00 |
| 7/30/2016 | Adversary Proceeding | KLK | Conference call with J. Patterson regarding [Redacted]. (.5). Begin review of video of Harris deposition and deposition transcript. (1.5) Further review of documents produced by Caliber and continue work on supplement to motion to compel. (2.4). | $500.00 | 4.40 | $2,200.00 |
| 8/1/2016 | Adversary Proceeding | KLK | Work on supplemental disclosures and witness and exhibit list for hearing on Plaintiff's motion to compel. | $500.00 | 0.50 | $250.00 |
| 8/2/2016 | Adversary Proceeding | KLK | Review exhibits for hearing on motion to compel, and exhibit and witness list. | $500.00 | 0.70 | $350.00 |
| 8/2/2016 | Adversary Proceeding | KLK | Review deposition to prepare for hearing on motion to compel. | $500.00 | 5.00 | $2,500.00 |
| 8/3/2016 | Adversary Proceeding | KLK | Prepare for hearing on motion to compel. | $500.00 | 7.50 | $3,750.00 |
| 8/23/2016 | Adversary Proceeding | TOB | Telephone conference with KLK regarding new documents received from Caliber and strategy for hearing on motion to compel set for September 13, 2016. | $400.00 | 0.30 | $120.00 |
| 9/10/2016 | Adversary Proceeding | KLK | Review deposition transcript and mark for presentation of testimony at hearing on motion to compel set for September 13, 2016. | $500.00 | 8.20 | $4,100.00 |
| 9/11/2016 | Adversary Proceeding | MFC | Prepare for September 13, 2016 hearing on Plaintiff's motion to compel. | $250.00 | 8.10 | $2,025.00 |
| | | | | | **Total:** | **$25,195.00** |

The Court reduces the above fees by 50% from $25,195 to $12,597.50.  Additionally, the Court has identified $32,980 in billing entries that pertain to the motion to compel in addition to other matters:[149]

| | | | | | | |
|---|---|---|---|---|---|---|
| 9/12/2016 | Adversary Proceeding | Prepare for September 13, 2016 hearing on motion to compel and to supplement complaint. | KLK | $500.00 | 8.90 | $4,450.00 |
| 9/13/2016 | Adversary Proceeding | Prepare for September 13, 2016 hearing on motion to compel and to supplement complaint. | KLK | $500.00 | 8.00 | $4,000.00 |
| 10/13/2016 | Adversary Proceeding | Prepare for hearings on motion to compel, motion to supplement, and motion for sanctions. | KLK | $500.00 | 6.80 | $3,400.00 |
| 10/15/2016 | Adversary Proceeding | Prepare for hearings on motion to compel, motion to supplement, and motion for sanctions. | KLK | $500.00 | 10.00 | $5,000.00 |
| 10/16/2016 | Adversary Proceeding | Prepare for hearings on motion to compel, motion to supplement, and motion for sanctions. | KLK | $500.00 | 9.00 | $4,500.00 |
| 10/16/2016 | Adversary Proceeding | Prepare for hearing on motion to compel/motion for sanctions by reviewing corporate rep deposition testimony to identify quotes, conferring with KLK regarding strategy. | TOB | $400.00 | 5.20 | $2,080.00 |
| 10/17/2016 | Adversary Proceeding | Prepare for hearings on our motion to compel, motion to supplement, motion for sanctions. | KLK | $500.00 | 5.50 | $2,750.00 |
| 10/17/2016 | Adversary Proceeding | Travel to McAllen for hearing on motion to compel and motion for sanctions; prepare en route. | TOB | $200.00 | 6.00 | $1,200.00 |
| 10/17/2016 | Adversary Proceeding | Preparation for hearing on motion to compel / motion for sanctions. | TOB | $400.00 | 6.00 | $2,400.00 |
| 10/17/2016 | Adversary Proceeding | Travel to McAllen for hearing; prepare en route. | KLK | $250.00 | 6.00 | $1,500.00 |
| 10/18/2016 | Adversary Proceeding | Prepare for today's continued hearing on motion to compel. (1.5) Attend hearing on motion to compel,motion for sanctions, and motion to supplement. (6.0) | KLK | $500.00 | 7.50 | $3,750.00 |
| 10/18/2016 | Adversary Proceeding | Attend hearing on motion to compel / motion for sanctions. | TOB | $400.00 | 6.00 | $2,400.00 |
| | | | | | Total: | $32,980.00 |

The Court finds that each of the above entries, in addition to pertaining at least in part to the motion to compel, are also largely block-billed and/or vague in their description.  Large billing entries with vague descriptions such as "preparation for hearing" hinders the Court's ability to assess the reasonableness of these fees.  Similarly, time spent preparing for separate motions should be separated into different billing entries.  As such, the above entries are also reduced by 50% from $32,980 to $16,490.

In sum, fees pertaining to the motion to compel are reduced by 50% from $58,175 to $29,087.50.

### ii.    Block billed and vague time entries

---

[149] ECF No. 374-1 at 56-58.

Defendants next complain that the Fee Application contained several block-billed entries to include: (1) Kellett and Clontz's time entries on October 4, 2016, in the amount of $950 and $3,275, respectively; (2) $3,000 on August 25, 2014 on several general tasks that were aggregated with other work making it impossible for the Court to determine whether the time spent on each task was reasonable; and (3) approximately $60,800 to "prepare for trial" without substantiating what those preparations were.[150]

A time entry may be denied as vague if multiple services are lumped together without distinguishing the time spent on each task.[151]   Block-billed entries are typically reduced because they lack specificity from which the court can determine their reasonableness and necessity.[152] Where the amount of block-billed entries are egregious, a court may reduce the fee award by a greater percentage than if block-billed entries are scarce.[153]   Likewise, the phrase "prepare for trial" is an "exceptionally terse description[] of activities [that does] not satisfy the applicant's burden"[154] of presenting adequate documentation of the hours reasonably expended.[155]   The documentation provided "must be sufficient for the court to verify that the applicant has met its burden."[156]   While this Court recognizes that substantial time is needed to prepare for trial, vague descriptions such as "prepare for trial" do not provide enough information for the Court to conduct

---

[150] ECF No. 390 at 16–17, ¶ 34.
[151] *In re HL Builders, LLC*, 2020 Bankr. LEXIS 3055, at *20 (Bankr. S.D. Tex. Oct. 30, 2020) (citing *In re Digerati Tech., Inc.*, 537 B.R. 317, 334 (Bankr. S.D. Tex. 2015)).
[152] *In re Mata*, 2020 Bankr. LEXIS 3102, at *26 (Bankr. S.D. Tex. Oct. 29, 2020).
[153] *Id.*
[154] *Nassar v. Univ. of Tex. Sw. Med. Ctr.*, 2010 U.S. Dist. LEXIS 76711, 2010 WL 3000877, at *4 (N.D. Tex. July 27, 2010) (citations omitted).
[155] *League of United Latin Am. Citizens # 4552 v. Roscoe Indep. Sch. Dist.*, 119 F.3d 1228, 1233 (5th Cir. 1997).
[156] *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 324 (5th Cir. 1995).

a meaningful evaluation of the challenged hours.[157]  Time awarded may be reduced or eliminated for vague entries.[158]

Regardless of objections to fee applications, or lack thereof, the Court's duty is to examine the application for non-compensable hours.  Therefore, the Court has reviewed the Fee Application for all block-billed entries and those containing the "prepare for trial" description, including those entries complained of by Defendants.  The entries meeting Defendants' descriptions are as follows:[159]

---

[157] *See, e.g.*, *Preston Exploration Co., LP v. GSP, LLC*, 2013 U.S. Dist. LEXIS 88786, at *22–23 (S.D. Tex. June 25, 2013); *Williams v. Shinseki*, 2013 U.S. Dist. LEXIS 64485, at *7–9 (N.D. Tex. May 6, 2013); *Nassar*, 2010 U.S. Dist. LEXIS 76711, 2010 WL 3000877, at *13.
[158] *Nassar*, 2010 U.S. Dist. LEXIS 76711, 2010 WL 3000877, at *12; *Williams*, 2013 U.S. Dist. LEXIS 64485, at *9.
[159] ECF No. 374-1 at 42, 57, 121-124.

| 08/25/2014 | KLK | Adversary Proceeding | Continue preparation for status conference on our motion to compel, HSBC's motions for summary judgment, motion for protection, motion to stay, and Caliber's just filed motions. | $500.00 | 6.0 | $3,000.00 |
|---|---|---|---|---|---|---|
| 10/04/2016 | KLK | Adversary Proceeding | Review transcript of hearing on motion to compel and motion to supplement complaint, and review Harris depo regarding same, in preparation for continued hearing on October 17, 2016. | $500.00 | 1.9 | $950.00 |
| 10/4/2016 | MFC | Adversary Proceeding | Review documents from September 13, 2016 hearing and update witness and exhibit list in preparation for October 17, 2016 hearing. | $250.00 | 1.5 | $375.00 |
| 07/22/2019 | CNW | Adversary Proceeding | Further preparation for trial. | $300.00 | 5.0 | $1,500.00 |
| 07/26/2019 | KLK | Adversary Proceeding | Trial preparation. | $500.00 | 9.6 | $4,800.00 |
| 07/28/2019 | CNW | Adversary Proceeding | Continue preparing for trial. | $300.00 | 6.5 | $1,950.00 |
| 07/29/2019 | CNW | Adversary Proceeding | Continue preparing for trial. | $300.00 | 5.3 | $1,590.00 |
| 07/30/2019 | CNW | Adversary Proceeding | Continue preparing for trial. | $300.00 | 7.5 | $2,250.00 |
| 07/31/2019 | CNW | Adversary Proceeding | Continue preparing for trial. | $300.00 | 11.0 | $3,300.00 |
| 08/01/2019 | CNW | Adversary Proceeding | Continue preparing for trial. | $300.00 | 6.7 | $2,010.00 |
| 08/02/2019 | KLK | Adversary Proceeding | Prepare for trial. | $500.00 | 4.5 | $2,250.00 |

| 08/03/2019 | KLK | Adversary Proceeding | Meet with clients to prepare for trial. (3.0) Prepare for trial. (6.4) | $500.00 | 9.4 | $4,700.00 |
|---|---|---|---|---|---|---|
| 08/04/2019 | CNW | Adversary Proceeding | Continue preparing for trial. | $300.00 | 8.0 | $2,400.00 |
| 08/04/2019 | KLK | Adversary Proceeding | Prepare for trial generally. (8.2) Prepare for trial by meeting with C. Boudloche (.7) Prepare for trial by meeting with expert witness J. Patterson. (3.0). | $500.00 | 11.9 | $5,950.00 |
| 08/05/2019 | CNW | Adversary Proceeding | Prepare for second day of trial. | $300.00 | 3.0 | $900.00 |
| 08/05/2019 | KLK | Adversary Proceeding | Prepare for trial. (2.0) First day of trial. Housekeeping, Ms. Boudloche, expert J. Patterson. (7.5) Prepare for second day of trial. (3.0). | $500.00 | 12.5 | $6,250.00 |
| 08/06/2019 | CNW | Adversary Proceeding | Prepare for and attend trial. | $300.00 | 9.5 | $2,850.00 |
| 08/06/2019 | KLK | Adversary Proceeding | Second day of trial. Defendant's; witnesses called by Ms. Kellett: Mr. Smith by deposition, Mr. Harris by deposition. Also Mr. and Mrs. Trevino on direct by TO3. (7.5) Prepare for third day of trial. (2.0). | $500.00 | 9.5 | $4,750.00 |
| 08/07/2019 | KLK | Adversary Proceeding | Prepare for third day of trial. (.8) Third day of trial – Kellett testimony called by Defendants (trial continued.) (7.0) | $500.00 | 7.8 | $3,900.00 |
| 09/24/2019 | KLK | Adversary Proceeding | Prepare for trial. | $500.00 | 4.9 | $2,450.00 |
| 09/25/2019 | KLK | Adversary Proceeding | Prepare for trial. | $500.00 | 9.2 | $4,600.00 |

| 09/26/2019 | KLK | Adversary Proceeding | Prepare for trial. | $500.00 | 8.8 | $4,400.00 |
|---|---|---|---|---|---|---|
| 09/27/2019 | KLK | Adversary Proceeding | Prepare for trial. | $500.00 | 8.3 | $4,150.00 |
| 09/28/2019 | KLK | Adversary Proceeding | Prepare for final days of trial. | $500.00 | 10.2 | $5,100.00 |
| 09/29/2019 | KLK | Adversary Proceeding | Prepare for final days of trial. | $500.00 | 11.5 | $5,750.00 |
| 09/30/2019 | TOB | Adversary Proceeding | Prepare for trial. | $435.00 | 9.0 | $3,915.00 |
| 10/01/2019 | TOB | Adversary Proceeding | Prepare for and attend trial. | $435.00 | 7.0 | $3,045.00 |
| 10/01/2019 | KLK | Adversary Proceeding | Prepare for continued trial. (2.0) Attend last day of trial. (5.0) | $500.00 | 7.0 | $3,500.00 |
| | | | | | **Total:** | **$92,585.00** |

Here, because only approximately 30 of more than 600 time entries are block billed or contain the vague "prepare for trial" description, the Court concludes that the fees should be reduced rather than eliminated altogether.

As such, Applicants' block-billed entries and entries containing the "prepare for trial" description are reduced by 30%[160] from $92,585 to $64,809.50.

### iii.    Work on matters related to dismissed defendant HSBC

Defendants next argue that time billed for work related to dismissed defendant HSBC should be reduced or eliminated.[161]  KB Firm seeks fees and expenses for general work performed between December 2013 and July 7, 2014 in the amount of $3,675 and $495.99 respectively.[162]

---

[160] *See In re HL Builders, LLC*, 630 B.R. 32, 52–53 (Bankr. S.D. Tex. 2020) (reducing certain time entries by 30% for vagueness).
[161] ECF No. 390 at 16-17.
[162] ECF No. 374 at 34-37, 41.

KB firm seeks fees and expenses for general work performed between July 8, 2014 and March 21, 2016 in the amount of $56,210 and $3,743.12 respectively.[163]

On Kellett's own admission that the work on general matters could not be divided between HSBC, USBT, and Caliber, this Court found that fees and expenses for work on general matters billed between December 2013 and July 7, 2014 should be capped at $1,837.50 and $247.99, respectively and between July 8, 2014 and March 21, 2016, should be capped at $28,105 and $1,871.56, respectively, subject to Applicants' demonstration that such fees and expenses were reasonable and necessary.[164]

At trial, Kellett testified that the fees and expenses sought between December 2013 and July 7, 2014, and July 8, 2014 and March 21, 2016, were for work on general matters that are not solely related to HSBC.[165]   Wells also indicated in her testimony that work performed between December 2013, to July 7, 2014, and July 8, 2014, to March 21, 2016, was for work that is not solely related to HSBC.[166]   Based on the testimony presented by Kellett and Wells at trial, the Court finds that Applicants have carried their burden to show that work on general matters between December 2013 to July 7, 2014 and July 8, 2015 to March 21, 2016, was reasonable and necessary.

As such, in accordance with the fee caps discussed *supra*, Applicants are awarded fees and expenses in the amount of $1,837.50 and $247.99, respectively for general work performed between December 2013 and July 7, 2014, and are awarded $28,105 and $1,871.56 in fees and expenses for general work performed between July 8, 2014 and March 21, 2016.

Defendants also complain that Applicants are improperly seeking approximately $58,000 in fees for work related to a motion to dismiss and motion for judgment on the pleadings filed

---

[163] *Id.* at 42-47, 51-52.
[164] ECF No. 445 at 39.
[165] ECF No. 526 at 166, ¶ 21 – 167, ¶ 23.
[166] ECF No. 525 at 174, ¶ 23 – 175, ¶ 14; 176, ¶¶ 15-20.

solely by HSBC.[167]  Although Defendants identify specific page numbers and brief descriptions of what they object to, they do not identify the specific time entries.[168]  After review, the Court identifies only one entry that Applicants seek compensation for that relates to HSBC other than those already discussed for work on general matters:[169]

| 11/17/2016 | KLK | Adversary Proceeding | Review all financial records and filings of HSBC, Caliber, and SPS in preparation for sending to expert. | $500.00 | 1.7 | $850.00 |
|---|---|---|---|---|---|---|

Furthermore, Wells provided testimony at trial that all matters that pertained solely to HSBC were segregated out of the Fee Application.[170]  Other than the one entry identified above, the Court finds Wells' testimony to be an accurate reflection of the billing records.

As such, the one billing entry identified above is reduced by 30% from $850.00 to $595.00.

### iv.  Excessive billing

Lastly, Defendants complain that Applicants spent an excessive amount of time on several matters to include: (a) approximately $11,000 to draft Plaintiffs' Second Amended Complaint; (b) approximately $15,000 to respond to Defendants' motion to dismiss; (c) approximately $33,000 to prepare two motions for sanctions, one of which was withdrawn and the other apparently never filed; (d) approximately $22,000 preparing for and deposing a Caliber corporate representative; (e) approximately $14,000 reviewing the deposition of the first Caliber corporate representative; (f) approximately $25,000 preparing to file a summary judgment motion; and (g) approximately $7,000 drafting a sur-reply in opposition to Defendants' summary judgment motion, which appears not to have been filed.[171]

---

[167] ECF No. 390 at 17, ¶ 35.
[168] *Id.* n.56 ("[ECF No. 374-1] at 42–44 (related to discovery motion and HSBC's Motion for Judgment on the Pleadings); 44-45 (related to the motions to dismiss); 46 (related to a status conference); and 47 and 53 (related to mediation)).
[169] ECF No. 374-1 at 58.
[170] ECF No. 526 at 31, 33
[171] ECF No. 390 at 17–18, ¶ 36.

"Generalized statements that time spent was unreasonable or unnecessary are not particularly helpful and not entitled to much weight."[172]  Here, Defendants simply state that "[Plaintiffs'] counsel spent an excessive amount of time on several additional matters . . . ."[173] Defendants provide no explanation as to why the time spent was excessive.  Nevertheless, the Court considers each complaint in turn.

Defendants offered an expert report prepared by former bankruptcy judge Dennis Michael Lynn ("*Lynn*") that speaks to Plaintiffs' second amended complaint.  Lynn compared Plaintiffs' Second Amended Complaint ("*SAC*") to their First Amended Complaint ("*FAC*") and stated that because the SAC was substantially similar to the FAC and many of the differences were in regard to HSBC, not Defendants, charges attributable to Defendants for the changes should not exceed $1,500.[174]  The time entries pertaining to the SAC are:[175]

| 9/2/2014 | Adversary Proceeding | KLK | Conference with E. Stone about status confernece nad Court's ruling for us to re-plead | $500.00 | 0.3 | $150.00 |
| 9/15/2014 | Adversary Proceeding | KLK | Conference with TO3 regarding stratgey after hearin gand prior to amended complaint | $500.00 | 0.4 | $200.00 |
| 10/15/2014 | Adversary Proceeding | KLK | Further drafting of amended complaint, review discovery and case law for same | $500.00 | 11.6 | $5,800.00 |
| 10/15/2014 | Adversary Proceeding | TOB | Edit amended complaint and evaluate formulation of causes of action for amended complaint | $400.00 | 6 | $2,400.00 |
| 10/29/2014 | Adversary Proceeding | KLK | Further draft of second amended compolaint. | $500.00 | 4 | $2,000.00 |
| 10/30/2014 | Adversary Proceeding | CNW | Edit second amended complaint. | $250.00 | 1.5 | $375.00 |
| 10/31/2014 | Adversary Proceeding | CNW | Continue editing second amended complaint | $250.00 | 1 | $250.00 |
| 3/11/2015 | Adversary Proceeding | CNW | Edit amended complaint to comply with court's rulings. | $250.00 | 0.5 | $125.00 |
| | | | | | Total: | $11,300.00 |

[172] *Castorena v. Mendoza*, 2011 U.S. Dist. LEXIS 166802, at *14 (S.D. Tex. Mar. 14, 2011) (quoting *Norman v. Housing Authority of City of Montgomery*, 836 F.2d 1292, 1302 (11th Cir. 1988)).
[173] ECF No. 390 at 17–18, ¶ 36.
[174] ECF No. 490-7 at 5.
[175] ECF No. 374-1 at 43-44.

This Court agrees with Lynn's expert report.  The time billed by KB Firm for the SAC was neither necessary nor reasonable.

As such, the above fees billed for work on the Second Amended Complaint are reduced from $11,300 to $1,500.

Defendants provide no explanation as to why the time billed for responding to Defendants' motion to dismiss was excessive.[176]  While the proponent of a fee application carries the ultimate burden to show that the fees sought are reasonable, an objecting party must provide detailed information explaining why the fees sought are not reasonable.[177]  The complained of entries are as follows:[178]

---

[176] ECF No. 390 at 17, ¶ 36.
[177] *Wegner v. Standard Ins. Co.*, 129 F.3d 814, 823 (5th Cir. 1997).
[178] ECF No. 374-1 at 38-39.

| | | | | | | |
|---|---|---|---|---|---:|---:|
| 2/3/2014 | Adversary Proceeding | KLK | Review motion to dismiss filed by US Bank and Caliber. (.6) Email to S. Holmes regarding need to settle before Plaintiffs' counsel incurs expense relating to motion to dismiss. (.1) (N/C) | $500.00 | 0.6 | $300.00 |
| 3/3/2014 | Adversary Proceeding | CNW | Review motion to dismiss and research holder in due course claims. | $250.00 | 2 | $500.00 |
| 3/10/2014 | Adversary Proceeding | KLK | Review motion and order to extend and correspondence with M. Hayward regarding same. (.3) (N/C) Conference with CNW regarding response to motion to dismiss, holder in due course argument, Rule 3002.1 argument, other arguments made in motion to dismiss. (.4) | $500.00 | 0.4 | $200.00 |
| 3/14/2014 | Adversary Proceeding | CNW | Begin preparing outline of motion to dismiss with response, including research. | $250.00 | 2 | $500.00 |
| 3/17/2014 | Adversary Proceeding | CNW | Prepare response to motion to dismiss, including research. | $250.00 | 6.5 | $1,625.00 |
| 3/18/2014 | Adversary Proceeding | CNW | Continue preparing response to motion to dismiss, including research. | $250.00 | 13 | $3,250.00 |
| 3/19/2014 | Adversary Proceeding | CNW | Continue preparing response to motion to dismiss, including research. | $250.00 | 10.5 | $2,625.00 |
| 3/19/2014 | Adversary Proceeding | KLK | Review motion to dismiss filed by Caliber. Review and revise response to motion to dismiss. (1.5) review final response. (.3) | $500.00 | 1.8 | $900.00 |
| 3/19/2014 | Adversary Proceeding | TOB | Work on motion to dismiss (edit, legal research regarding HDC argument, conferences with GAA and CNW). | $400.00 | 3.5 | $1,400.00 |
| 4/10/2014 | Adversary Proceeding | BKM | Review Defendants' motion to dismiss and Plaintiff's response. Obtain copies of caselaw cited in both and begin preparing for use at upcoming hearing. (26 cases) (2.2) | $150.00 | 2.2 | $330.00 |
| 4/11/2014 | Adversary Proceeding | BKM | Continue preparing case law for KLK's review at upcoming hearing.  Pulled 8 additional cases from Westlaw. (2.4) | $150.00 | 2.4 | $360.00 |
| 4/16/2014 | Adversary Proceeding | KLK | Prepare to argue motion to dismiss at status conference. | $500.00 | 1.5 | $750.00 |
| 5/6/2014 | Adversary Proceeding | KLK | Further legal research for or response brief to the second brief filed by Caliber and U.S. Bank Trust on May 5, 2014, and begin draft brief in response. | $500.00 | 2 | $1,000.00 |
| 5/13/2014 | Adversary Proceeding | KLK | [Redacted] (.3) [Redacted]. Emails with trial team regarding same. (.4) | $500.00 | 0.7 | $350.00 |
| | | | | | **Total:** | **$14,090.00** |

After reviewing the relevant time entries and the evidence in the record, the Court concludes that the time spent by the KB Firm responding to the motion to dismiss was overall reasonable and necessary.  It is notable that Lynn's expert report also suggests that Applicants should be

compensated for time spent responding to the motion to dismiss.[179]  The Court does, however, take issue with repeat instances of block billing and vagueness in the motion to dismiss time entries. There are several entries between March 14, 2014, and March 19, 2014, in which Applicants bill for large swaths of time for "preparing response to motion to dismiss, including research."  The Court considers this description to not only be vague, as it doesn't describe what was researched, but it is also block-billed as it does not divide the time spent on the motion to dismiss from the associated research.  Without this information, the Court is not in a good position to assess the reasonableness of these entries.  Thus, the four time entries between March 14, 2019 and March 19, 2014, spent drafting and researching the motion to dismiss, totaling $8,000, are reduced by 30% to $5,600.

As such, the fees KB Firm seeks for responding to Defendants' motion to dismiss are reduced from $14,090 to $11,690.

Defendants complain of two motions for sanctions, one which they allege was withdrawn and the other never filed.  Unless a fee applicant can demonstrate that a withdrawn document was a "good gamble," it is not reasonable for an attorney to bill for time spent preparing the later withdrawn document.[180]  Defendants' assertion that a motion for sanctions was never filed is inaccurate.  On April 10, 2017, Plaintiffs filed a motion for sanctions requesting (i) immediate continuance of Plaintiffs' expert report deadline; (ii) immediate production of remaining documents and information ordered by this Court; (iii) continuance of discovery deadlines; and (iv) a ruling ordering Defendant Caliber to provide a competent Rule 30(b)(6) corporate representative for deposition at Defendant Caliber's expense.[181]

---

[179] ECF No. 490-7 at 7.
[180] *See In re Digerati Techs., Inc.*, 537 B.R. 317, 342 (Bankr. S.D. Tex. 2015) (denying fees billed for a motion that was withdrawn under the "good gamble" standard of *Woerner*).
[181] ECF No. 196 at 3.

On April 11, 2017, this court issued an Order Abating Motion pursuant to Plaintiffs' ex-parte communication[182] that the parties had agreed to extend the expert report and other discovery deadlines.[183]   The parties' counsel communicated via telephone on April 4, 2017, regarding the possibility of extending all deadlines; six days prior to Plaintiffs' filing their motion for sanctions.[184]   Defendants responded to Plaintiffs' Motion on May 1, 2017, explaining that Plaintiffs filed their motion for sanctions before Defendants' counsel was able to respond to Plaintiffs regarding the extension of the deadline.[185]   Further, there is a time entry for Plaintiffs' counsel on April 12, 2017, the day after the Order Abating Motion was filed, for "continue to revise motion for sanction."[186]   This revision occurred after the ex parte communication and the abatement, and should be eliminated.

In *In re Digerati*, the court denied fees to debtor's counsel for services related to a withdrawn Motion to Approve Selection process for Independent Director, and a withdrawn Application to Employ SEC Counsel because the value of the services relating to the motions were not self-evident.[187]   Debtor's counsel failed to demonstrate that these services were necessary or reasonable at the time the services were performed; therefore, debtor's counsel was not entitled to compensation for such services.[188]

Similarly, the value of the services performed in filing the motion for sanctions in this case it not self-evident.   Defendants' statement that its counsel spoke with Plaintiffs' counsel regarding the extension of discovery deadlines is corroborated by a time entry by Plaintiffs' counsel on April

---

[182] ECF No. 197.
[183] ECF No. 198.
[184] ECF No. 200 at 5; ECF No. 374-1 at 62.
[185] ECF No. 200 at 5.
[186] ECF 374-1 at 62.
[187] *In re Digerati Techs., Inc.*, 537 B.R. 317, 338 (Bankr. S.D. Tex. Aug. 21, 2015), *aff'd*, *Herrera v. Dishon*, 2016 WL 7337577 (S.D. Tex. Dec. 16, 2016), *aff'd*, *Matter of Digerati Techs., Inc.*, 710 F. App'x 634 (5th Cir. 2018).
[188] *Id.* at 340.

4, 2017, for "Telephone conference with…J. Vasek regarding discovery status and need to extend discovery deadline."[189]   Further, Defendants' response and Plaintiffs' counsel's ex-parte communication note that the parties agreed to extend the discovery deadlines by two months.[190] Thus, requests (i) - (iii) in Plaintiffs' motion for sanctions were satisfied by the parties' agreement.[191]   Because the extension of discovery deadlines was being actively discussed by the parties prior to Plaintiffs' motion for sanctions, the Motion's probability of success at the time the services were rendered was not likely, the costs incurred for this action were not reasonable in light of ongoing negotiations with Defendants' counsel, and the incurred costs did not produce a benefit. Therefore, Plaintiffs' motion for sanctions regarding the discovery deadlines was not reasonable at the time and was not a good gamble.

With regard to Plaintiffs' request (iv) "a ruling ordering Defendant Caliber to provide a competent Rule 30(b)(6) corporate representative for deposition at Defendant Caliber's expense," Rule 30(b)(6) requires that the persons designated on behalf of an organization must testify about information known or reasonably available to the organization.[192]   A company offering a Rule 30(b)(6) witness "must make a conscientious good-faith endeavor to . . . prepare those persons in order that they can answer fully, completely, unevasively, the questions posed . . . as to the relevant subject matters."[193]   Further, sanctions may be imposed by the Court to redress deposition disputes when corporate representatives are involved, such as ordering another representative to be put

---

[189] ECF No. 200 at 5; ECF No. 374-1 at 62.
[190] ECF No. 200 at 5; ECF No. 197.
[191] ECF 197.
[192] *Id.*
[193] *Hoffman v. L & M Arts*, 2015 WL 1000864 1, 6 (N.D. Tex. Mar. 6, 2015) (citing *Brazos River Auth. v. GE Ionics, Inc.*, 469 F.3d 416, 433 (5th Cir. 2006))

forth.[194]   This course of action is appropriate when the initial witness was unable to properly answer, or had obvious gaps in knowledge.[195]

In *Hoffman*, neither the defendant's corporate representative's inability to explain why certain documents were missing from the corporation's document production nor his lack of knowledge of the details regarding some aspects of the corporation's operations and procedures rendered him an incompetent witness.[196]   The court noted that although the plaintiff may have been entitled to answers on these questions, it was not entitled to sanctions because the corporate representative's deposition could "hardly be said to be tantamount to a failure to appear under Rule 37."[197]   Similarly, a review of the condensed transcript of Jamar Harris's, Defendant Caliber's representative, deposition reveals that Mr. Harris was generally knowledgeable regarding information pertaining to his position as default servicing officer.[198]   Further, Mr. Harris's testimony revealed that although he had gaps of knowledge pertaining to bankruptcy, legal, tax, or insurance matters, he knew either where to begin searching for this information or which department specialized in the information requested.[199]   At other times, Mr. Harris testified that he simply needed more information to properly answer.[200]   Applicants contend in their post-trial brief that "Defendants essentially admitted at the fee hearing that they put up a no-nothing witness for the first properly noticed corporate representative deposition in 2016."[201]   Applicants cite to

---

[194] 8A Fed. Prac. & Proc. Civ. § 2103 n.16 (3d ed.) (citing to *U.S. ex rel Fago v. M&T Mortg. Corp.*, 235 F.R.D. 11 (D.D.C 2006)

[195] *Id.*; *Sony Elecs., Inc. v. Soundview Techs., Inc.*, 217 F.R.D. 104 (D. Conn. 2002)

[196] *Hoffman*, 2015 WL 1000864 at 6 (citing *Resolution Trust Corp. v. S. Union Co.*, 985 F.2d 196, 196–97 (5th Cir. 1993) (affirming award of costs and fees incurred in the deposition of a witness who "possessed no knowledge relevant to the subject matters identified in the Rule 30(b)(6) notice" such that his "appearance [was], for all practical purposes, no appearance at all.")

[197] *Hoffman*, 2015 WL 1000864 at 6 (citing *Alexander v. Fed. Bureau of Investigation*, 186 F.R.D. 137, 143 (D.D.C.1998)

[198] ECF No. 501-2 at 19–67.

[199] *Id.* at 38, 48, 51, 60

[200] *Id.* at 41

[201] ECF No. 537 at 14.

several portions of Kellett's testimony in support of this assertion, but the Court fails to see where Defendants admitted to putting up an incompetent witness.[202]   The cited testimony is merely Kellett's own testimony that she believed Harris to be an incompetent witness.[203] As discussed supra, the deposition transcript speaks for itself and the Court disagrees with Applicants contention that Defendants put up a "no-nothing witness."[204]

Therefore, although Mr. Harris was unable to explain why certain documents were missing from the corporation's document production, or to answer various questions due to his gaps in knowledge, he was knowledgeable and not incompetent.  Furthermore, evidence was introduced at trial that Julian Vasek, an associate at Franklin Hayward, LLP (Caliber's counsel), sent an email on March 27, 2017, to Kellett stating: "[a]s we have said many times, Caliber is willing to produce another corporate representative.  But Caliber continues to believe that Mr. Harris's testimony fully complied with rule 30(b)(6), especially given the topics noticed.  As such, Caliber will not agree to pay for any additional corporate-representative depositions."[205]   Kellett also acknowledged this email on cross-examination and that she filed her first motion for sanctions shortly thereafter.[206]  Because the Court has already determined that Mr. Harris was a competent Rule 30(b) representative, Caliber's resistance to paying for a second Rule 30(b) deposition was not unreasonable.  Further, since Caliber offered to provide another Rule 30(b) representative on March 27, 2017, prior to KB Firm's first motion for sanctions on April 10, 2017, the Court concludes that request (iv) in the motion for sanctions also was unlikely to succeed and was not a "good gamble."  The following billing entries pertain to the first motion for sanctions:[207]

---

[202] *See id.*
[203] *Id.* (citing ECF 527 at 61, ¶ 8-13; 68, ¶ 3-13; p. 78, ¶ 10-21; ECF 528 at 9, ¶ 4 – 15, ¶ 21; 16, ¶ 4 – 17, ¶ 12.
[204] *Id.*
[205] ECF No. 496-45.
[206] ECF No. 527 at 178, ¶ 23 – 179, ¶ 7; 179, ¶ 24 – 180, ¶ 8.
[207] ECF No. 374-1 at 61-62.

| | | | | | | |
|---|---|---|---|---|---|---|
| 3/24/2017 | Adversary Proceeding | KLK | Begin draft of motion for sanctions. Review files of complaints regarding Caliber. | $500.00 | 2.8 | $1,400.00 |
| 3/27/2017 | Adversary Proceeding | KLK | Review Harris deposition for motion for sanctions. | $500.00 | 0.9 | $450.00 |
| 3/27/2017 | Adversary Proceeding | KLK | Further work on motion to compel and for sanctions. | $500.00 | 1.5 | $750.00 |
| 4/4/2017 | Adversary Proceeding | CNW | Conference with KLK and TO3 regarding discovery status, possible motion for sanctions, and other to-do items. | $300.00 | 0.8 | $240.00 |
| 4/9/2017 | Adversary Proceeding | KLK | Revise motion for sanctions. (2.7) Review deposition and finalize extensive appendix. (8.2) | $500.00 | 10.9 | $5,450.00 |
| 4/9/2017 | Adversary Proceeding | CNW | Edit and finalize motion for sanctions. | $300.00 | 2 | $600.00 |
| 4/12/2017 | Adversary Proceeding | KLK | Continue to revise motion for sanctions. | $500.00 | 6.5 | $3,250.00 |
| | | | | | **Total: $12,140.00** | |

As such, because all of the requests in KB Firm's first motion for sanctions were not a "good gamble" the $12,140 sought by KB Firm for the first motion for sanctions is disallowed.

On May 9, 2017, eight days after Defendants responded to Plaintiffs' first motion for sanctions, Plaintiffs filed a second motion for sanctions.[208] The second motion for sanctions was withdrawn on April 19, 2018, pursuant to a Joint Motion to Withdraw.[209] Applicants' time entries reveal that work on this second motion regarding outstanding document production began on April 24, 2017, thirteen days after this Court issued an Order Abating the previous April 10, 2017, motion for sanctions.[210] The second motion for sanctions noted that the parties agreed to a two month extension of the discovery deadlines on April 10, 2017, but asked the Court to formally extend the deadlines.[211] Ten days later, Plaintiffs filed an unopposed motion to suspend deadlines asking the Court to suspend all deadlines until a hearing on the second motion for sanctions was held.[212] That request was granted.[213] It's unknown why Plaintiffs did not seek a formal extension of the discovery deadline despite the agreement with Defendants and before filing their second

---

[208] ECF No. 202.
[209] ECF No. 220.
[210] ECF No. 374-1 at 62; ECF No. 198.
[211] ECF No. 202.
[212] ECF No. 206.
[213] ECF No. 207.

motion for sanctions one month into the agreed extension.  Given the failure to seek a formal extension before filing the second motion for sanctions and the agreement with Defendants, there is no evidence that the second motion for sanctions was reasonably necessary or a "good gamble" at the time it was filed.

Rule 37(b)(2)(A) allows sanctions if a party fails to obey an order to provide or permit discovery.[214]  Further, a court may impose a severe sanction when a party's disobedience is found to be in bad faith, or rises to the level of callous disregard of responsibilities owed to the court and to their opponents.[215]  In *National Hockey League*, the extreme sanction of dismissal was appropriate where the defendants' crucial interrogatories remained substantially unanswered by the plaintiffs' for 17 months despite numerous extensions "granted at the eleventh hour," several warnings by the Court that failure to provide certain information could result in sanctions, and failed promises to produce by the plaintiffs.[216]  The Court concluded that the plaintiffs' conduct demonstrated a callous disregard of their responsibilities and exemplified flagrant bad faith.[217]

Additionally, sanctions in the form of an award of attorneys' fees do not require willful behavior, and can be awarded for a negligent failure to produce correct documents.[218]  In *Coane*, the plaintiff produced an incorrect (executed) version of a release to the defendant.[219]  Although the district court concluded that the plaintiff's error was not intentional because the executed version of the release had less of a negative impact on his case than the unexecuted release, the mistake was inexcusable because as an attorney, the plaintiff had to be aware of the modification of the earlier version of his release, and cognizant of its critical relevance to the instant action.[220]

---

[214] Fed. R. Civ. P. 37(b)(2)(A)
[215] *Natl. Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 640 (1976).
[216] *Id.*
[217] *Id.* at 643.
[218] *Coane v. Ferrara Pan Candy Co.*, 898 F.2d 1030, 1031-32 (5th Cir. 1990)
[219] *Id.* at 1032
[220] *Id.*

The court found the plaintiff alone should bear the costs directly resulting from his "cavalier" attitude toward the release and affirmed the sanction award of attorneys' fees.[221]

Here, Plaintiffs' second motion for sanctions complained of Defendants' alleged failure to produce responsive documents. Regarding Plaintiffs' Request for Production No. 2 – "Documents Identifying Employees Responsible for or Who Handled the Trevino Account," Plaintiffs allege that four (4) teller identification numbers and notes remained unidentified.[222]   However, Defendants claim that they produced a spreadsheet of every individual they were able to identify.[223]

Regarding Plaintiffs' Request for Production Nos. 10 and 13 – "Policy and Procedure Documents and Training Documents from January 2009 to Present," Plaintiffs conceded that Defendant Caliber serviced Plaintiffs' mortgage loan from November 18, 2013, through December 31, 2014.[224]   Additionally, in an email from Defendants' counsel to Plaintiffs' counsel, Defendant explains that only one previous revision is responsive and that the revision from January 20, 2012 did not appear to contain any subsequent revisions to the language in the history.[225]   Although Plaintiffs claim that the non-existence of prior versions of the bankruptcy manual mean that Defendants engaged in spoliation, an email from Defendants' counsel reveals that its search for prior revisions of the bankruptcy manual was ongoing, and an assurance that Caliber would supplement its production in accordance with the rules if it was able to locate any more responsive revisions.[226]

---

[221] *Id.*
[222] ECF 202 at 6
[223] ECF 210 at 7
[224] *Id.*
[225] ECF 202-1 at 23
[226] ECF 202 at 8; ECF 202-1 at 55

Regarding Plaintiffs' request for Production No. 16 – "Audits from January 1, 2009 to present," one of the forms of relief requested was that Defendants produce unredacted versions of such audits to the Court to review *in camera*.[227]  In their response, Defendants agreed to this form of production.[228]

Regarding Plaintiffs Request for Production No. 20 for "Codes," Plaintiffs allege Defendants failed to provide definitions or explanation of all the codes identified by Plaintiffs, while Defendants claim that they produced all documents located that explain the codes and servicing notes.[229]

Unlike the "callous disregard" in efforts to produce discovery in *National Hockey League*, Defendants in this case produced documents to Plaintiffs pursuant to this Court's order.  There is a lack of production in dispute, but it does not rise to the level of complete disregard like the seventeen months of substantially unanswered interrogatories in *National Hockey League*. Additionally, in this case, there was still approximately one month remaining for production before the extended discovery deadline that the parties agreed to.  Also, with regard to attorneys' fees, Defendants' actions do not rise to the level of negligent failure like the plaintiff in *Coane*, because in the present case Defendants have not provided incorrect documents, and there has been additional production of documents since the parties' agreement to extend the discovery deadlines. Thus, the motion for Rule 37(b) sanctions was not a "good gamble" because these sanctions were not objectively reasonable for Defendants' conduct at the time the second motion for sanctions was filed.  The following billing entries pertain to the second motion for sanctions:[230]

---

[227] ECF 202 at 10.
[228] ECF 210 at 8.
[229] ECF 202 at 11; ECF 210 at 9.
[230] ECF No. 374-1 at 62-63.

| | | | | | | |
|---|---|---|---|---|---|---|
| 4/24/2017 | CNW | Adversary Proceeding | Conference with KLK regarding new motion for sanctions. | $300.00 | 0.2 | $60.00 |
| 4/24/2017 | CNW | Adversary Proceeding | Prepare motion for sanctions regarding outstanding document production. | $300.00 | 3.8 | $1,140.00 |
| 4/25/2017 | CNW | Adversary Proceeding | Continue work on motion for sanctions. | $300.00 | 5.2 | $1,560.00 |
| 4/26/2017 | CNW | Adversary Proceeding | Continue work on motion for sanctions. | $300.00 | 4.3 | $1,290.00 |
| 5/2/2017 | KLK | Adversary Proceeding | Review response of Caliber to motion to dismiss (.2) Email to trial team regarding Caliber allegation regarding production of 5 versions of its BK manual. (.1) Email to J. Vasek regarding missing BK manuals allegedly produced. (.1) Continued work on smaller motion for sanctions. | $500.00 | 1.9 | $950.00 |
| 5/2/2017 | KLK | Adversary Proceeding | Further work on shorter motion for sanction. (.5) Conference with CNW regarding Caliber allegationthat it produced 5 sets of BK manuals earlier. (.2) | $500.00 | 0.7 | $350.00 |
| 5/4/2017 | KLK | Adversary Proceeding | Draft proposed new scheduling order. (.3) Conference with T03 regarding same. (.1) Review current draft of new motion for sanctions. (.1) | $500.00 | 0.5 | $250.00 |
| 5/4/2017 | CNW | Adversary Proceeding | Edit motion for sanctions to reflect additional discovery produced by Caliber. | $300.00 | 2.8 | $840.00 |
| 5/4/2017 | CNW | Adversary Proceeding | Further editing of motion for sanctions and appendix. | $300.00 | 0.7 | $210.00 |
| 5/4/2017 | KLK | Adversary Proceeding | Continued work on new, shortened motion for sanctions. (1.5) Conference with CNW regarding same. (.2) | $500.00 | 1.7 | $850.00 |
| 5/4/2017 | CNW | Adversary Proceeding | Additional editing to motion for sanctions and exhibits. | $300.00 | 0.7 | $210.00 |
| 5/5/2017 | CNW | Adversary Proceeding | Edit motion for sanctions. | $300.00 | 0.5 | $150.00 |
| 5/8/2017 | KLK | Adversary Proceeding | Further draft of motion for sanctions. (1.5) Email to T03 and CNW with respect to instructions regarding the same. (.1) | $500.00 | 1.6 | $800.00 |
| 5/9/2017 | KLK | Adversary Proceeding | Review comments by T03 to motion for sanctions and conference with him regarding same. | $500.00 | 0.2 | $800.00 |
| 5/9/2017 | CNW | Adversary Proceeding | Edit motion for sanctions. | $300.00 | 1.6 | $480.00 |
| 5/9/2017 | KLK | Adversary Proceeding | Further review and revision to motion for sanctions. | $500.00 | 2.8 | $1,400.00 |
| 5/9/2017 | CNW | Adversary Proceeding | Continue editing motion for sanctions. | $300.00 | 1 | $300.00 |
| 5/9/2017 | CNW | Adversary Proceeding | Finalize and file motion for sanctions, motion to seal, and sealed exhibits. | $300.00 | 1.3 | $390.00 |
| | | | | | **Total:** | **$12,030.00** |

As such, the $12,030 in fees billed for Plaintiffs' second motion for sanctions are disallowed.

Defendants also generally assert that the $22,000 spent deposing a Caliber corporate representative was excessive without explaining why.[231]   As stated supra, "[g]eneralized statements that time spent was unreasonable or unnecessary are not particularly helpful and not entitled to much weight."[232]   The complained of entries are as follows:[233]

| | | | | | | |
|---|---|---|---|---|---|---|
| 3/29/2018 | CNW | Adversary Proceeding | Review and edit corporate representative deposition notice. | $300.00 | 0.3 | $90.00 |
| 4/6/2018 | CNW | Adversary Proceeding | Begin reviewing documents in preparation for deposition. | $300.00 | 2.2 | $660.00 |
| 4/9/2018 | CNW | Adversary Proceeding | Prepare for deposition of corporate representative. | $300.00 | 7 | $2,100.00 |
| 4/9/2018 | KLK | Adversary Proceeding | Prepare for deposition of 30(b)(6) witness. | $500.00 | 6.5 | $3,250.00 |
| 4/10/2018 | KLK | Adversary Proceeding | Prepare for deposition by re-reading Harris depo and all exhibits, and further study of pay history and notes. (4.5) Prepare for deposition by reading complaints against Caliber. (1.5) Review new production by Caliber received at 7:38 p.m. and compare to old notes. (2.2) Further preparation for deposition (1.1) | $500.00 | 9.3 | $4,650.00 |
| 4/10/2018 | CNW | Adversary Proceeding | Prepare for deposition of Caliber's 30(b)(6) representative. | $300.00 | 10 | $3,000.00 |
| 4/11/2018 | CNW | Adversary Proceeding | Prepare for and attend deposition of E. Smith. | $300.00 | 10 | $3,000.00 |
| 4/11/2018 | KLK | Adversary Proceeding | Prepare for deposition of new 30(b)(6) deponent. (2.4) Take deposition. (7.5) Prepare for remainder of deposition set for tomorrow. (1.6) | $500.00 | 11.5 | $5,750.00 |
| 4/12/2018 | CNW | Adversary Proceeding | Prepare for and attend deposition of E. Smith. | $300.00 | 3.5 | $1,050.00 |
| | | | | | **Subtotal:** | **$23,550.00** |
| | | *Subtract $1,100 for the 2.2 hours KLK spent reviewing new production by Caliber on 4/10/2018 | | | **Total:** | **$22,450.00** |

Other than generalized statements, Defendants fail to explain either in their objection, at trial, or in their post-trial brief why the time spent by KB Firm deposing Caliber's second corporate representative, Mr. Smith, was excessive.[234]   Nevertheless, the Court finds it concerning that nearly every entry is either block billed or contains a vague description.   Notably, there are several full

---

[231] ECF No. 390 at 16-17.
[232] *Castorena v. Mendoza*, 2011 U.S. Dist. LEXIS 166802, at *14 (S.D. Tex. Mar. 14, 2011) (quoting *Norman v. Housing Authority of City of Montgomery*, 836 F.2d 1292, 1302 (11th Cir. 1988)).
[233] ECF No. 374-1 at 85-86.
[234] *See* ECF Nos. 390 and 538.

day entries described as "[p]repare for deposition of Caliber's 30(b) representative." This description does not allow the Court to assess the reasonableness of the time spent preparing for the deposition, especially in light of the 20-30 hours that Wells spent on this task. "Prepare for and attend deposition of E. Smith" should similarly be separated out into separate time entries.

As such, the Court reduces the fees sought preparing for and attending the deposition of Mr. Smith by 30% from $22,450 to $15,715.

Defendants generally assert that the approximately $14,000 spent reviewing the deposition of a Caliber corporate representative was excessive.[235] The complained of entries are as follows:[236]

| | | | | | | |
|---|---|---|---|---|---|---|
| 7/30/2016 | KLK | Adversary Proceeding | Conference call with J. Patterson regarding [redacted]. (.5) Begin review of video of Harris deposition and deposition transcript. (1.5) Further review of documents produced by Caliber and continue to work on supplement to motion to compel. (2.4) | $500.00 | 4.4 | $2,200.00 |
| 7/31/2016 | KLK | Adversary Proceeding | Review Harris deposition and exhibits and make notations with respect to the witness's testimony and entries in the Caliber note and "transaction history." | $500.00 | 6.2 | $3,100.00 |
| 8/2/2016 | KLK | Adversary Proceeding | Further review of Harris deposition. | $500.00 | 2.5 | $1,250.00 |
| 8/2/2016 | KLK | Adversary Proceeding | Review deposition to prepare for hearing on motion to compel. | $500.00 | 5 | $2,500.00 |
| 8/4/2016 | KLK | Adversary Proceeding | Further review of deposition of Caliber corporate representative. | $500.00 | 1.2 | $600.00 |
| 9/10/2016 | KLK | Adversary Proceeding | Review deposition transcript and mark for presentation of testimony at hearing on motion to compel set for September 13, 2016. | $500.00 | 8.2 | $4,100.00 |
| 3/20/2017 | CNW | Adversary Proceeding | Begin review of deposition testimony of J. Harris for items that he did not know and documents he referenced that Caliber did not produce. | $300.00 | 0.5 | $150.00 |
| 3/21/2017 | CNW | Adversary Proceeding | Further in-depth review of J. Harris deposition and exhibits for information he could not testify about and document he said existed that were not produced. | $300.00 | 4 | $1,200.00 |
| 3/22/2017 | KLK | Adversary Proceeding | Review Harris deposition and add parts to markup regarding his lack of preparation for deposition. (1.5) Review other cases regarding allegations of 3002.1 abuse by Caliber and conference with CNW regarding same. (.5). | $500.00 | 2 | $1,000.00 |
| | | | | | **Subtotal:** | **$16,100.00** |
| *Subtract $1,450 for KLK conference with J. Patterson and review of documents produced by Caliber | | | | | **Subtotal:** | **$14,650.00** |
| * Subtract $250 for KLK review of other cases regarding allegations of 3002.1 | | | | | **Total:** | **$14,400.00** |

---

[235] ECF No. 390 at 18.
[236] ECF No. 374-1 at 55-60.

Defendants similarly provided no argument or evidence explaining why the time spent on reviewing the Harris deposition was excessive or unreasonable.[237]   Applicants contend that the time spent reviewing the Harris deposition transcript was reasonable, stating:

> the Jamar Harris deposition was the subject of much dispute between the parties and was attached as an exhibit to several motions, was used as an exhibit at the September 13 and October 18, 2016 motion hearings, and was used as an exhibit at trial on the merits. Smith was being presented to testify in 2018, in addition to other deposition topics, about issues Harris could not, so review of the Harris deposition was required to prepare for the Smith deposition.[238]

The Court is unpersuaded by this argument.  The Court notes that Kellett spent a combined 26.1 hours reviewing and taking notes on the Harris deposition transcript.  There are 232 pages of testimony in the Harris deposition,[239] indicating that Kellett spent on average nearly seven minutes per page reviewing and taking notes.  Considering that Kellett was also present for the entire deposition, the Court finds that the time spent reviewing this transcript is unreasonable and excessive.

As such, the Court reduces the 26.1 hours Kellett spent reviewing and taking notes on the Harris deposition, totaling $13,050, by 50% to $6,525. The Court awards the remaining $1,350 without reduction for a total of $7,875 for time spent reviewing the Harris deposition.

---

[237] *See* ECF No. 390 at 18.
[238] ECF No. 537 at 21.
[239] *See* ECF No. 496-32.

Defendants generally assert that the approximately $25,000 spent preparing to file a summary judgment motion was excessive.[240]  The complained of entries are as follows:[241]

| Date | Timekeeper | Matter | Description | Rate | Hours | Amount |
|---|---|---|---|---|---|---|
| 10/4/2018 | CNW | Adversary Proceeding | Begin work on summary judgment, including review of answer/complaint. | $300.00 | 1.1 | $330.00 |
| 10/5/2018 | CNW | Adversary Proceeding | Continue work on summary judgment motion. | $300.00 | 4.2 | $1,260.00 |
| 10/8/2018 | CNW | Adversary Proceeding | Review transcript of Mr. Trevino's deposition testimony for summary judgment. | $300.00 | 0.8 | $240.00 |
| 10/8/2018 | CNW | Adversary Proceeding | Work on summary judgment motion, including in dept review of depositions. | $300.00 | 3 | $900.00 |
| 10/9/2018 | KLK | Adversary Proceeding | Conference with CNW regarding strategy for our motion for summary judgment. | $500.00 | 0.2 | $100.00 |
| 10/9/2018 | CNW | Adversary Proceeding | Continue reviewing deposition transcripts in connection with summary judgment. | $300.00 | 1 | $300.00 |
| 10/10/2018 | CNW | Adversary Proceeding | Continue review of transcripts for summary judgment motion. | $300.00 | 2 | $600.00 |
| 10/11/2018 | KLK | Adversary Proceeding | Conference with CNW regarding for motion for summary judgment and conference call with clients later today. | $500.00 | 0.2 | $100.00 |
| 10/11/2018 | CNW | Adversary Proceeding | Continue reviewing file for summary judgment motion. | $300.00 | 2 | $600.00 |
| 10/12/2018 | CNW | Adversary Proceeding | Continue work on summary judgment motion. | $300.00 | 2 | $600.00 |
| 10/14/2018 | CNW | Adversary Proceeding | Continue work on summary judgment motion. | $300.00 | 4.5 | $1,350.00 |
| 10/15/2018 | CNW | Adversary Proceeding | Continue work on motion for summary judgment, including in depth review of file. | $300.00 | 6.5 | $1,950.00 |
| 10/16/2018 | CNW | Adversary Proceeding | Continue work on summary judgment motion. | $300.00 | 7.5 | $2,250.00 |
| 10/17/2018 | CNW | Adversary Proceeding | Continue work on motion for summary judgment. | $300.00 | 6.5 | $1,950.00 |
| 10/18/2018 | CNW | Adversary Proceeding | Continue work on summary judgment motion. | $300.00 | 10 | $3,000.00 |
| 10/19/2018 | CNW | Adversary Proceeding | Prepare client declarations for summary judgment. | $300.00 | 0.5 | $150.00 |
| 10/19/2018 | KLK | Adversary Proceeding | Conference with CNW regarding argument part of motion for summary judgment. (.2) Review J. Patterson declaration and conference with him regarding same. (.3) Review and revise fact section of motion for summary judgment. (.3) | $500.00 | 0.8 | $400.00 |
| 10/19/2018 | CNW | Adversary Proceeding | Continue work on motion for summary judgment. | $300.00 | 7.5 | $2,250.00 |
| 10/20/2018 | KLK | Adversary Proceeding | Conference with CNW regarding section of brief on abuse of process, review previous Caliber briefs and J. Patterson expert report regarding same. (.3) Conference with CNW regarding FDCPA section of motion for summary judgment. (.1) | $500.00 | 0.4 | $200.00 |
| 10/20/2018 | CNW | Adversary Proceeding | Continue work on motion for summary judgment. | $300.00 | 10 | $3,000.00 |
| 10/21/2018 | KLK | Adversary Proceeding | Review and revise Plaintiffs' motion for summary judgment. | $500.00 | 0.5 | $250.00 |
| 10/21/2018 | CNW | Adversary Proceeding | Continue to work on summary judgment motion. | $300.00 | 12.5 | $3,750.00 |
| | | | | | **Subtotal:** | **$25,530.00** |

[240] ECF No. 390 at 18.
[241] ECF No. 374 at 100-101.

Defendants provided no argument or evidence explaining why the time spent on the motion for summary judgment was excessive or unreasonable.[242]   However, the Court finds it quite concerning that there are over 70 hours of billing entries that merely described as, "continue to work on summary judgment motion."  "Work on" is perhaps the least helpful description that could be used to help the Court assess the reasonableness of the fees sought and is unreasonably vague.

As such, the Court finds it appropriate to reduce the fees sought for preparing the motion for summary judgment by 30% from $25,530 to $17,871.

Defendants' assert that approximately $7,000 was spent drafting a sur-reply in opposition to Defendants' summary judgment motion but that the sur-reply was never filed.[243]   However, a sur-reply was filed on December 14, 2018 and $9,900—not $7,000—was billed for the sur-reply:[244]

| | | | | | | |
|---|---|---|---|---|---|---|
| 12/7/2018 | KLK | Adversary Proceeding | Review and revise our reply to Defendants' response to our motion for summary judgment. | $500.00 | 4.5 | $2,250.00 |
| 12/11/2018 | CNW | Adversary Proceeding | Begin work on Plaintiffs' sur-reply in opposition to Defendants' motion for summary judgment. | $300.00 | 1.5 | $450.00 |
| 12/12/2018 | CNW | Adversary Proceeding | Continue work on sur-reply. | $300.00 | 11 | $3,300.00 |
| 12/12/2018 | KLK | Adversary Proceeding | Discussion regarding strategy with CNW regarding Plaintiffs' sur-reply in opposition to Defendants' motion for summary judgment. | $500.00 | 0.2 | $100.00 |
| 12/13/2018 | CNW | Adversary Proceeding | Continue work on Plaintiffs' sur-reply in opposition to Defendants' motion for summary judgment. | $300.00 | 10 | $3,000.00 |
| 12/14/2018 | KLK | Adversary Proceeding | Review sur-reply and conference with CNW regarding same. (.5) Further review and revise sur-reply (1.1) | $500.00 | 1.6 | $800.00 |
| | | | | | Subtotal: | $9,900.00 |

Given that the sur-reply was filed, the only consideration remaining is whether the fees billed were reasonable and necessary.  Defendants provided no argument or evidence explaining why the time spent preparing the sur-reply was excessive or unreasonable.  However, the Court finds that the

---

[242] *See* ECF No. 390 at 18.
[243] *Id.*
[244] ECF Nos. 283, 374-1 at 103.

Wells time entries for December 12 & 13, 2018, are vague and unhelpful in assisting this Court to determine their reasonableness.

As such, each are reduced by 30% from $6,300 to $4,410. The remaining $3,600 in fees sought is awarded unreduced for a total of $8,010.

Accordingly, in sum, Defendants' objection that the time spent by Plaintiffs' counsel litigating in this case was wholly unreasonable is sustained in part. The Court disallows a total of $141,239.50 in unnecessary and unreasonable attorneys' fees sought by Applicants.

### d.  Whether the Fee Application is replete with instances of top-heavy billing, overstaffing, and overbilling for the tasks involved

Defendants' Objection states, "[a]s set forth in part [sic] in section III(B)(b) of this Objection, the Fee Application is replete with numerous instances of partners and/or other attorneys with high hourly rates engaging in tasks that could have been performed by associates and/or paraprofessional charging lower hourly rates—especially with regards to KB Firm's time spent on this litigation."[245]  Defendants also assert that the Fee Application contains numerous instances of two or more attorneys and/or paraprofessionals billing times for matters that could have—and should have—been handled by a single attorney.[246]  Defendants do not give any indication as to which tasks they think could have been performed by associates or paraprofessionals instead of attorneys charging higher rates nor do they tell which matters could have been handled by a single attorney.  Defendants also fail to identify specific instances of overstaffing for this Court's review in their post-trial brief and merely recite the generalized language in their objection.[247]  Despite this, the Court has an independent duty to assess the

---

[245] ECF No. 390 at 18, ¶ 37.
[246] *Id.* at 17–18, ¶ 36.
[247] *See* ECF No. 538 at 19.

reasonableness of fees sought[248] and has identified the following problematic entries pertaining to time spent by Bartholow and Wells at a hearing on the motion to dismiss and time spent at trial respectively:[249]

| | | | | | | |
|---|---|---|---|---|---|---|
| 8/26/2014 | Adversary Proceeding | Prepare for and attend hearing on motion to compel, motion to stay, motion for judgment on the pleadings;conference with KLK regarding next steps. | TOB | $400.00 | 3.00 | $1,200.00 |
| 8/26/2014 | Adversary Proceeding | Travel to/from Houston for status conference/hearings on motion to compel, motion to stay, etc. | TOB | $400.00 | 8.00 | $1,600.00 |
| 4/30/2015 | Adversary Proceeding | Travel to Houston for hearing on motions to dismiss filed by HSBC and Caliber. | TOB | $200.00 | 4.5 | $900.00 |
| 4/30/2015 | Adversary Proceeding | Preparation for hearing on motions to dismiss filed by HSBC and Caliber. | TOB | $400.00 | 1.00 | $400.00 |
| 4/30/2015 | Adversary Proceeding | Hearing on motions to dismiss filed by HSBC and Caliber. | TOB | $400.00 | 1.20 | $480.00 |
| 4/30/2015 | Adversary Proceeding | Travel from Houston back to Dallas following hearings on motions to dismiss. | TOB | $200.00 | 4.00 | $800.00 |
| 8/5/2019 | Adversary Proceeding | Attend trial day 1. | CWC | $300.00 | 8.00 | $2,400.00 |
| 8/6/2019 | Adversary Proceeding | Prepare for and attend trial. | CWC | $300.00 | 9.50 | $2,850.00 |
| | | | | | Total: | $10,630.00 |

"If more than one attorney is involved, the possibility of duplication of effort along with the proper utilization of time should be scrutinized.  The time of two or three lawyers in a courtroom or conference when one would do, may obviously be discounted."[250]  "Hours in the passive role of an observer while other attorneys perform" are usually not billable."[251]  Conversely, if evidence is presented that additional attorneys participated in a supporting role, then the time billed may be compensable.[252]   After reviewing the record, the Court finds that Bartholow was a passive observer and did not substantively contribute at the April 30, 2015, hearing concerning the

---

[248] *See e.g.*, <u>In re King</u>, 546 B.R. 682, 701 (Bankr. S.D. Tex. 2016) ("even if no objection had been lodged, this Court has an independent duty to examine all fee requests made by counsel.").
[249] ECF No. 374-1 at 42-45, 123.
[250] *Abrams v. Baylor College of Medicine*, 805 F.2d 528, 535 (5th Cir. 1986) (citing *Johnson*, 488 F.3d at 717).
[251] *Carroll v. Sanderson Farms, Inc.*, 2014 U.S. Dist. LEXIS 16890, at *35 (S.D. Tex. Feb. 11, 2014) (cleaned up) (quoting *Flowers v. Wiley*, 675 F.2d 704, 705 (5th Cir. 1982)).
[252] *See, e.g.*, *Midkiff v. Prudential Ins Co. of Am.*, 2021 U.S. Dist. LEXIS 229562, at *12 (W.D. Tex. Sept. 30, 2021) (finding that plaintiff presented evidence that additional attorney who attended the mediation and trial participated "in a supporting role" rather than merely as a passive observer and declining to reduce the lodestar amount on that basis); *Walker v. United States HUD*, 99 F.3d 761, 768 (5th Cir. 1996) ( "[c]ompensation is sought for more than on attorney's time at depositions, hearings, negotiations, or other activities only if there was a legitimate need for the involvement of more than one attorney").

motion to dismiss.[253]  Similarly, the Court also finds that Wells largely did not participate on days

one and two of the underlying trial on August 5 & 6, 2019, and that her time should similarly be

disallowed.[254]

Accordingly, Defendants' objection is sustained and the above billing entries totaling

$10,630 represent unnecessary overstaffing and are disallowed.

### e.  Whether Defendants' offer of judgment early in the adversary proceeding warrants a substantial reduction to Plaintiffs' requested fees

Defendants urge this Court to take into consideration their initial May 13, 2014 offer of

judgment ("*Offer of Judgment*") and reduce the requested fees significantly.[255]  Relying on *Gurule*,

Defendants assert that the Offer of Judgment would have compensated Plaintiffs three times more

than the *statutory damages* awarded Plaintiffs under the FDCPA and thus, impact their degree of

success.[256]  Although Defendants attached the Offer of Judgment to their Objection, they did not

offer it  nor was it admitted into evidence by the Court.[257]  Nevertheless, it is undisputed that the

Offer of Judgment proposed to adjust Defendants' Claim No. 21-1 and the Rule 3002.1(c) Notice

by the total amount of $2,933.83, plus pay an additional $3,000 to Plaintiffs.[258]

In *Gurule*, the Fifth Circuit held that "in setting a reasonable attorney's fee under a fee-

shifting statute such as 29 U.S.C. § 216(b), a court should consider the prevailing party's rejection

of a Rule 68 offer that was more favorable than the judgment obtained."[259]  Even considering

Defendants' Offer of Judgment as a whole it offered to compensate Plaintiffs by only $5,933.83.

---

[253] April 30, 2015, Min. Entry.

[254] August 5 & 6, 2019, Min. Entry.

[255] ECF No. 390 at 3, 19, ¶¶ 6, 39.

[256] *Id.* at 19–20, ¶¶ 39–40.  Defendants' Offer of Judgment was admitted into evidence along with all other exhibits that were admitted at the underlying trial.  See Apr. 14, 2022 Min. Entry.

[257] ECF No. 490.  This Court did admit all exhibits that were previously admitted at the underlying trial, one of which was a portion of Defendants' Offer of Judgment.  See Apr. 14, 2022 Min. Entry. The portion previously admitted at the underlying trial did not include the actual offer amount itself.  See Apr. 15, 2019 Min. Entry.

[258] ECF No. 390 at 3, ¶ 6; ECF No. 465 at 9–10.

[259] 912 F.3d at 261.

In contrast, this Court awarded Plaintiffs $1,000 in statutory damages and $9,000 in punitive damages for a total award of $10,000—nearly double the compensation offered by Defendants' Offer of Judgment.[260]  Defendants' Offer of Judgment was not "more favorable than the judgment obtained" as contemplated by *Gurule*.[261]

Accordingly, Defendants' objection based on its Offer of Judgment is overruled.

To summarize, the total fees awarded to KB Firm in the Fee Application are as follows:

Fees sought by KB Firm: $641,737.00

Summary of line item reductions:

| Discussion at page number(s): | Line item reduction | Amount reduced/disallowed |
|---|---|---|
| 27-30 | Reduced from fees pertaining to the motion to compel | $29,087.50 |
| 30-35 | Reduced from fees containing the "prepare for trial" description | $22,775.50 |
| 35-36 | Reduced from fees for general work performed between December 2013 and July 7, 2014, respectively per prior order from the Court. | $1,837.50 and $28,105.00 |
| 37 | Reduced from fees that pertain to work done for dismissed Defendant HSBC. | $255.00 |
| 37-39 | Reduced from fees pertaining to the Second Amended Complaint. | $9,800 |
| 39-41 | Reduced from fees pertaining to time spent responding to Defendants' motion to dismiss. | $2,400 |
| 41-46 | Disallowed from fees pertaining to the first motion for sanctions. | $12,140 |
| 46-50 | Disallowed from fees pertaining to the second motion for sanctions. | $12,030 |
| 51-52 | Reduced from fees pertaining to preparing and attending the Smith deposition. | $6,735 |
| 52-53 | Reduced from fees pertaining to reviewing and taking notes on the Harris deposition. | $6,525 |
| 54-55 | Reduced from the fees pertaining to the motion for summary judgment. | $7,659 |
| 55-56 | Reduced from fees pertaining to Plaintiffs' sur-reply to the motion for summary judgment. | $1,890 |
| 56-58 | Disallowed from fees for unnecessary overstaffing. | $10,630 |
| | | Total: $151,869.50 |

---

[260] ECF No. 342.
[261] 912 F.3d at 261.

The Court first reduces KB Firm's requested fees from $641,737 to $489,867.50 pursuant to the above line-item reductions.  Next, the Court reduces KB Firm's fees by 50% for failing to timely file the required disclosures under Rule 2016(b) and comply with Local Rule 2014-1(d) as discussed *supra* from $489,867.60 to $244,933.75.  Last, the Court reduces overall fees by 20% to account for the results obtained as discussed *supra* from $244,933.75 to $195,947.00.

Accordingly, KB firm is awarded reasonable and necessary attorneys' fees totaling $195,947.00 from their Fee Application.

### 3. Reasonableness of the hours billed by Stone Curtis

Defendants did not specifically object to individual time entries of Stone Curtis. Nevertheless, this Court has a duty to review the Fee Application for non-compensable hours.[262] There are numerous problems with the reasonableness of the hours billed by Stone Curtis.  First, many of the entries are impermissibly vague.  For example, several entries include descriptions such as "emails btw counsel" or "email to KK."[263]  To be compensable, time entries for emails must "identify the participants, describe the substance of the communication, explain its outcome and justify its necessity."[264]  If the entry does not set forth both the subject of the communication and the participants, this Court cannot determine whether the services were reasonable or necessary.

As another example, Stone Curtis billed for services such as "emails from KK to OC re motion to compel, discovery issues, need for tel conf."[265]  Such descriptions are so vague that this Court cannot tell what role Stone Curtis played in those particular communications.  It appears that

---

[262] *See e.g.*, *In re King,* 546 B.R. 682, 701 (Bankr. S.D. Tex. 2016) ("even if no objection had been lodged, this Court has an independent duty to examine all fee requests made by counsel.").
[263] ECF No. 374-4 at 6.
[264] *In re Digerati Techs., Inc.*, 537 B.R. 317, 333 (Bankr. S.D. Tex. 2015) (quoting *In re Fibermark, Inc.*, 349 B.R. 385, 396 (Bankr. D. Vt. 2006)).
[265] ECF No. 374-4 at 16.

Stone Curtis was billing for the mere review of an email exchange by others.  Many entries also include descriptions such as "review initial disclosures," or "review transcripts."[266]  Without further information about what was reviewed or for what purpose, the Court cannot determine whether such services were reasonable or necessary.

Second, many entries are block-billed.  For example, one entry states "follow up on status; review emails regarding property taxes paid & by whom; email KK; review [redacted] by clients; resend to KK; KK response; follow up to do notes."[267]  Stone Curtis does not designate how much time was spent on each task plus many of the descriptions are also vague.

Third, some entries are too heavily redacted.  For example, one entry states "email to client re [redacted]."[268]  Although redaction of billing records is acceptable in some instances, the court must have sufficient information to judge the reasonableness of the fees.[269]  In the example mentioned, the Court does not have sufficient information because the redacted portion excludes the necessary substance of the communication, rendering it impermissibly vague.

Fourth, some time entries are for non-compensable clerical work.  For example, Stone Curtis billed for "instructions to JR to save to client file."[270]  Stone Curtis also billed for "calendar," "depo dates discussions"—a scheduling matter—and "get notice/letter mailed to clients."[271]  While some clerical tasks may be compensable, some are considered unrecoverable overhead

---

[266] ECF No. 374-4 at 5.
[267] ECF No. 374-4 at 6.
[268] *Id.*
[269] *Randolph v. Dimension Films*, 634 F. Supp. 2d 779, 800 (S.D. Tex. 2009) (citing *Vantage Trailers, Inc. v. Beall Corp.*, No. 06-3008, 2008 U.S. Dist. LEXIS 68402, at *3 (S.D. Tex. Aug. 28, 2008)).
[270] ECF No. 374-4 at 8.
[271] *Id.* at 9.

expenses.[272]   Some examples of clerical duties include maintaining files, copying, printing, labeling, and emailing documents, and communicating with court staff.[273]

Lastly, "[b]illing judgment should be evident from the attorneys' invoices offered in support of the requested fees and charges for duplicative, excessive, or inadequately documented work should be excluded."[274]   Where an attorney does not exercise billing judgment, the Court may reduce the requested fee.[275]   Here, there is no evidence that Stone Curtis exercised billing judgment.   The invoices are replete with email exchanges billed mostly by Ellen Stone at a rate of $350 an hour.   For example, on August 8, 2016, Ellen Stone billed $35.00 for six minutes or less spent on "email to KK re hearing set."[276]   Stone Curtis's invoices do not indicate that any time was written off.

In sum, approximately 49 of 181 time entries, or about 27%, were block-billed.   The Court also finds that more than half of Stone Curtis' billing entries are vague.   Some entries are so vague that the Court cannot assess what work was even done or for what purpose as discussed *supra*. The Court has been inclined to reduce block-billed and moderately vague billing entries between 20-30%, but in light of the numerous problems identified above in combination with the overall lack of billing judgment the Court finds that a more substantial reduction of 50% is appropriate as to the fees sought by Stone Curtis.[277]

---

[272] *In re Owsley*, 2021 Bankr. LEXIS 895, at *33 (Bankr. S.D. Tex. Apr. 5, 2021), *rev'd on other grounds* 2022 U.S. Dist. LEXIS 84756 (S.D. Tex. Mar. 31, 2022) (citations omitted).
[273] *Meadows v. Latshaw Drilling Co., LLC*, 2020 U.S. Dist. LEXIS 9388, at *10 (N.D. Tex. Jan. 21, 2020) (citing *Carroll v. Sanderson Farms, Inc.*, 2014 U.S. Dist. LEXIS 16890, at *35–36 (S.D. Tex. Feb. 11, 2014)).
[274] *In re Anloc, LLC*, 2021 Bankr. LEXIS 3183, at *22 (citation and internal quotation marks omitted).
[275] *Id.* (collecting cases where fees were reduced by a percentage amount for lack of billing judgment).
[276] ECF No. 374-4 at 6.
[277] *Tow v. Speer*, No. CV H-11-3700, 2015 WL 12765414, at *6 (S.D. Tex. Aug. 17, 2015) ("Courts may use 'a simple across-the-board reduction by a certain percentage as an alternative to line-by-line reductions, particularly when fee documentation is voluminous.'").

Stone Curtis's requested fees are reduced by 50% from $34,839.50 to $17,419.75. Stone Curtis's fees are further reduced by another 50% consistent with this Court's finding above that such adjustment is warranted for failure to comply with Rule 2016(b) timely and Local Rule 2014-1(d) to $8,709.88. Stone Curtis's fees are reduced by another 20% for the overall success achieved in this case to $6,967.91.

Accordingly, Stone Curtis is entitled to $6,967.91 in reasonable and necessary attorneys' fees.

### D. Reasonable and Necessary Expenses

Generally, applicants may recover their full expenses absent valid objections to the reasonableness of such expenses.[278] Recoverable expenses typically include filings fees, copies, and mailings.[279]

### 1. KB Firm's expenses

KB Firm seeks to recover $63,968.42 in expenses. This amount consists of travel costs such as airfare, food, fuel, postage, PACER charges, costs of transcripts, and Westlaw research charges.[280] Other than arguing that Applicants' fees and expenses should be denied *in toto*, Defendants did not lodge any specific challenge to Applicants' expenses contained in their Fee Objection. However, Defendants argue for the first time in their Post-Trial Brief that the $15,051.41 paid by Applicants to retain Jay Patterson as an expert is not an expense that can be shifted to Defendants under Fifth Circuit caselaw.[281] Specifically, Defendants cite the Fifth

---

[278] *See, e.g.*, *In re Ahmadi*, 2018 Bankr. LEXIS 3855, at *15 (Bankr. S.D. Tex. Dec. 10, 2018) (awarding full expenses where no objection was made to the reasonableness thereof and no testimony as to the unreasonableness was provided); *In re Mata*, 2020 Bankr. LEXIS 3102, at *29 (Bankr. S.D. Tex. Oct. 29, 2020) (awarding full expenses where no objection was made to the reasonableness thereof); *Tex. Oil Res. Operating, LLC v. ACSI Holdings, LLC (In re Anloc, LLC)*, 2021 Bankr. LEXIS 3183, at *29–30 (Bankr. S.D. Tex. Nov. 18, 2021) (same).

[279] *See In re Cole*, 2020 Bankr. LEXIS 1921, at *46 (Bankr. S.D. Tex. July 20, 2020).

[280] ECF No. 374-1.

[281] ECF No. 538 at 19.

Circuit's decision in *La. Power & Light Co. v. Kellstrom*, which provides that, "[a] prevailing party cannot recover expert fees under a fee shifting statute unless the statute expressly provides for the recovery of expert fees."[282]   Defendants are also correct in noting that neither 11 U.S.C. § 105(a) nor 15 U.S.C. § 1692k(a)(3) expressly provide for the recovery of expert fees.[283]   Because Defendants could have raised this argument in their Fee Objection and failed to do so, this Court is disinclined to consider it.[284]   However, the Court is also bound to adhere to the Fifth Circuit's direction as it pertains to the shifting of expert witness fees and cannot award fees here in contravention of the holding in *Kellstrom*.

As such, the $15,051.41 paid by Applicants to retain Jay Patterson as an expert witness is disallowed.  Additionally, based on the testimony provided at trial by Kellett, the Court finds that all of KB Firm's Westlaw expenses should be disallowed:[285]

---

[282] ECF No. 538 at 20 (citing 40 F.3d 319, 333 (5th Cir. 1995) (citing *W. Virginia Univ. Hosps., Inc. v. Casey*, 499 U.S. 83, 86-92 (1991)).

[283] *Id.*

[284] *Quest Med., Inc. v. Apprill*, 90 F.3d 1080, 1087 (5th Cir. 1996) ("[a] district court has discretion to consider new theories raised for the first time in a post-trial brief.").

[285] ECF No. 374-1 at 82, 114-116, 130-134.

| | | |
|---|---|---|
| 4/6/2017 | Westlaw research charge | $0.73 |
| 4/20/2017 | Westlaw research charge | $5.63 |
| 4/25/2017 | Westlaw research charge | $2.19 |
| 5/11/2017 | Westlaw charges | $48.56 |
| 5/12/2017 | Westlaw charges | $16.28 |
| 6/19/2018 | Westlaw Research | $64.41 |
| 6/27/2018 | Westlaw Research | $22.24 |
| 8/8/2018 | Westlaw | $45.27 |
| 8/10/2018 | Westlaw | $1.54 |
| 8/13/2018 | Westlaw | $7.69 |
| 8/22/2018 | Westlaw | $18.52 |
| 8/28/2018 | Westlaw | $4.62 |
| 8/30/2018 | Westlaw | $68.95 |
| 8/31/2018 | Westlaw | $4.61 |
| 9/20/2018 | Westlaw | $36.36 |
| 10/16/2018 | Westlaw charges | $6.14 |
| 10/18/2018 | Westlaw charges | $28.56 |
| 10/19/2018 | Westlaw charges | $12.62 |
| 10/20/2018 | Westlaw charges | $41.88 |
| 10/21/2018 | Westlaw charges | $62.03 |
| 10/22/2018 | Westlaw charges | $76.50 |
| 10/23/2018 | Westlaw charges | $36.05 |
| 10/29/2018 | Westlaw charges | $4.28 |

| 11/1/2018 | Westlaw | $21.66 |
|---|---|---|
| 11/5/2018 | Westlaw | $24.25 |
| 11/8/2018 | Westlaw | $10.94 |
| 11/12/2018 | Westlaw | $12.77 |

| 11/13/2018 | Westlaw | $9.30 |
|---|---|---|
| 11/14/2018 | Westlaw | $55.25 |
| 11/16/2018 | Westlaw | $0.55 |
| 11/16/2018 | Westlaw | $29.40 |
| 11/17/2018 | Westlaw | $37.74 |
| 11/18/2018 | Westlaw | $10.39 |
| 11/18/2018 | Westlaw | $7.84 |
| 11/19/2018 | Westlaw | $5.11 |
| 11/19/2018 | Westlaw | $21.13 |
| 11/20/2018 | Westlaw | $31.03 |
| 11/20/2018 | Westlaw | $43.92 |
| 11/21/2018 | Westlaw | $18.44 |
| 12/6/2018 | Westlaw | $1.12 |
| 12/7/2018 | Westlaw | $14.55 |
| 12/10/2018 | Westlaw | $0.56 |
| 12/10/2018 | Westlaw | $1.12 |
| 12/11/2018 | Westlaw | $1.67 |
| 12/12/2018 | Westlaw | $20.89 |
| 12/13/2018 | Westlaw | $9.51 |
| 12/14/2018 | Westlaw | $4.11 |
| 12/14/2018 | Westlaw | $26.85 |
| 3/15/2019 | Westlaw | $23.99 |
| 3/27/2019 | Westlaw | $63.01 |
| 3/28/2019 | Westlaw | $51.08 |
| 3/29/2019 | Westlaw | $78.84 |
| 3/30/2019 | Westlaw | $11.99 |
| 3/31/2019 | Westlaw | $33.67 |
| 4/1/2019 | Westlaw | $13.23 |

| 4/1/2019 | Westlaw | $13.23 |
|---|---|---|
| 4/2/2019 | Westlaw | $34.08 |
| 4/2/2019 | Westlaw | $70.64 |
| 4/2/2019 | Westlaw | $70.64 |
| 4/2/2019 | Westlaw | $34.08 |
| 4/3/2019 | Westlaw | $53.01 |
| 4/3/2019 | Westlaw | $12.19 |
| 4/3/2019 | Westlaw | $12.19 |
| 4/3/2019 | Westlaw | $53.01 |
| 4/4/2019 | Westlaw | $13.23 |
| 4/4/2019 | Westlaw | $13.23 |
| 4/11/2019 | Westlaw | $107.20 |
| 4/11/2019 | Westlaw | $61.76 |
| 4/11/2019 | Westlaw | $4.57 |
| 4/11/2019 | Westlaw | $4.57 |
| 4/11/2019 | Westlaw | $107.20 |
| 4/11/2019 | Westlaw | $61.76 |
| 4/12/2019 | Westlaw | $63.11 |
| 4/12/2019 | Westlaw | $67.59 |
| 4/12/2019 | Westlaw | $67.59 |
| 4/12/2019 | Westlaw | $63.11 |
| 4/13/2019 | Westlaw | $3.05 |
| 4/13/2019 | Westlaw | $3.05 |
| 4/14/2019 | Westlaw | $41.78 |
| 4/14/2019 | Westlaw | $1.52 |
| 4/14/2019 | Westlaw | $1.52 |
| 4/14/2019 | Westlaw | $41.78 |
| 4/15/2019 | Westlaw | $10.66 |
| 4/15/2019 | Westlaw | $10.66 |
| 7/27/2019 | Westlaw | $8.51 |
| 7/27/2019 | Westlaw | $1.79 |
| 7/29/2019 | Westlaw | $6.01 |
| 7/30/2019 | Westlaw | $17.15 |
| 7/30/2019 | Westlaw | $10.47 |
| 7/31/2019 | Westlaw | $114.46 |
| 8/1/2019 | Westlaw | $26.73 |
| 8/5/2019 | Westlaw | $17.39 |
| 8/6/2019 | Westlaw | $14.48 |
| 8/8/2019 | Westlaw | $1.08 |
| 9/25/2019 | Westlaw | $11.76 |
| 9/26/2019 | Westlaw | $39.45 |
| 9/28/2019 | Westlaw | $12.34 |
| 9/30/2019 | Westlaw | $47.62 |
| | | **Total: $2,742.82** |

At trial, Kellett testified that the KB Firm, like most law firms, has a flat fee arrangement with Thomson Reuters for the firm's Westlaw subscription.[286]  Kellett further testified that KB Firm does not consider the flat rate paid for its general Westlaw subscription to be an overhead expense of the firm and that it is the practice of KB Firm to allocate the firm's general Westlaw expense to KB Firm's clients.[287]  Kellett was unable to clearly articulate how KB Firm calculates the allocation of its general Westlaw subscription to its clients.[288]  The Court finds this testimony quite concerning.  While it may be appropriate to independently bill clients for necessary research that is outside of the firm's general subscription to Westlaw, the general subscription is a clear example of an overhead expense.[289]  As such, the $2,742.82 that Applicants seek for Westlaw related expenses are disallowed.  Finally, pursuant to the Court's discussion *supra*, KB Firm's expenses are reduced by $247.99 and $1,871.56 respectively for general work performed between December 2013 and July 7, 2014 and July 8, 2014 and March 21, 2016.

Accordingly, KB Firm's expenses are reduced from $63,968.42 to $44,054.64.

**2.  Stone Curtis's expenses**

Stone Curtis seeks to recover $3,153.17 in expenses.  This amount consists of travel expenses, postage, and copies.[290]  Defendants raised no specific challenges in their Fee Objection to Stone Curtis' expenses, but a review of these expenses reflects that some reduction is warranted.[291]  Specifically, Stone Curtis billed $75.00 for "projected taxi expenses in Houston," $424.00 for "[p]rojected Hotel expenses at $212 per night x 2 rooms," and $200 for "projected

---

[286] ECF No. 528 at 64, ¶ 21-23.
[287] *Id.* at 65.
[288] *See id.*
[289] *See also In re Digerati Techs., Inc.*, 537 B.R. 317, 364 (Bankr. S.D. Tex. 2015) ("Online legal research is a cost that is reflected in an attorney's billing rate and is therefore subsumed into attorneys' fees.").
[290] ECF No. 374-4 at 10, 21.
[291] ECF No. 390

meal expenses in Houston."[292]  Projected—as opposed to actual—expenses are not recoverable and will be disallowed.[293]

Accordingly, Stone Curtis's requested expenses are reduced from $3,153.17 to $2,454.17.

## E.  Supplemental Fee Application

Plaintiffs seek attorneys' fees and costs for the time spent litigating the amount of attorneys' fees and costs for prevailing in the underlying lawsuit.  KB Firm seeks a total of $122,109.50 in attorneys' fees and $8,260.70 in expenses from the Supplemental Fee Application as follows:[294]

| Kellett & Bartholow, PLLC | | | | | |
|---|---|---|---|---|---|
| Timekeeper | Hours in 1/10 Increments | Rate | Total | Adjusted Hours in 1/10 Increments | Adjusted |
| | | | | | |
| Theodore O. Bartholow, III | 22.2 | $435.00 | $9,657.00 | 18.7 | $8,134.50 |
| Karen L. Kellett | 169.6 | $500.00 | $84,800.00 | 82 | $41,000.00 |
| Caitlyn N. Wells | 237.9 | $300.00 | $71,370.00 | 191.2 | $57,360.00 |
| Claude D. Smith | 54.2 | $350.00 | $18,970.00 | 36.3 | $12,705.00 |
| Randi Dunn (paralegal) | 53.0 | $100 | $5,300.00 | 28.6 | $2,860.00 |
| Mahlet Asanake (paralegal) | 3.3 | $100 | $330.00 | 0.5 | $50.00 |
| **Subtotal Fees** | | | **$190,427.00** | | **$122,109.50** |
| | | | | | |
| **Case Expenses** | | | | | **$8,260.70** |
| **Total** | | | | | **$130,370.20** |

### 1.  Applicants' Requested Fees

---

[292] ECF No. 374-4 at 21.
[293] *Energy Mgmt. Corp. v. City of Shreveport*, 467 F.3d 471, 482 (5th Cir. 2006) ("[t]he district court has broad discretion to award attorney's fees.").
[294] ECF No. 466-1.

In the Fifth Circuit, § 330(a) does not authorize compensation for counsel's defense of a fee application.[295]   In the underlying case, Plaintiffs were awarded attorneys' fees pursuant to § 105(a) for prosecution of their abuse of process claim and pursuant to 15 U.S.C. § 1692k(a)(3) for prosecution of their claims under 15 U.S.C. §§ 1692e, 1692e(2), 1692e(5), 1692f, and 1692f(1),[296] not under § 330(a).   Therefore, the Fifth Circuit's holding in *ASARCO* is not applicable.[297]   Applicants here are entitled to reasonable fees for defense of the fee application. However, for the reasons below, those fees will be reduced.

As in *In re Rodriguez*, there were three major disputes over the fees here: (1) whether counsel was entitled to fees at all; (2) whether counsel should bill at Dallas rates or Rio Grande Valley rates; and (3) if counsel is entitled to fees, the reasonable amount of time for which counsel can bill.[298]   As discussed *supra*, KB Firm was successful in the first and second disputes and will be compensated for the fees incurred in proving that it was, in fact, entitled to fees as well as Dallas rates.

Defendants raised five objections to the reasonableness of the amount of time billed by Applicants: (a) the results obtained do not support Plaintiffs' request for fees; (b) Plaintiffs' claims were neither complex nor novel, (c) the time spent by Plaintiffs' counsel in litigating the claims was wholly unreasonable; (d) the Fee Application is replete with instances of top-heavy billing, overstaffing, and overbilling for the tasks involved; and (e) Defendants' offer of judgment early in the adversary proceeding warrants a substantial reduction to Plaintiffs' requested fees.[299] Defendants prevailed on three of their objections: (a), (c), and (d).   Defendants also requested that

---

[295] *In re ASARCO, L.L.C.*, 751 F.3d 291, 299 (5th Cir. 2014).
[296] ECF No. 342.
[297] *See Rodriguez v. Countrywide Home Loans, Inc. (In re Rodriguez)*, 517 B.R. 724, 736 (Bankr. S.D. Tex. 2014) (finding that the Fifth Circuit's holding in *ASARCO* was not applicable where counsel was entitled to fees under § 105 rather than § 330(a)).
[298] *See id.*
[299] ECF No. 390.

this Court deny Applicants' fee entirely for their failure to become properly employed and make the necessary disclosures.  While this Court denied that request, it did reduce the overall fee award by 50% for failure to make the necessary Rule 2016(b) disclosure timely and for failure to comply with Local Rule 201-14(d).  Therefore, Defendants also realized partial success on that objection to Applicants' fees.  Overall, Applicants requested $676,621.50 in fees and this Court disallowed $473,706.59, or approximately 70% of the fees requested in the Fee Application.

In *In re Rodriguez*, the court disallowed 73% of challenged fees and, as a result, found that defendants were the successful party with respect to the amount of time plaintiffs' counsel should be allowed to bill.[300]  As a result, the court disallowed all fees that were incurred defending the fee application except for those that specifically related to issues that plaintiffs' counsel prevailed on.[301]  The fees that were awarded were reduced by 20% for overall inefficiency in proving entitlement to fees.[302]

Here, given the significant reduction in Applicants' fees in large part as a result of the objections set forth by Defendants, Defendants were the successful party with respect to the amount of time counsel should be allowed to bill.  Unlike *In re Rodriguez*, Applicants' billing records in this case do not provide a clear picture of what amount of time was spent in the Supplemental Fee Application on matters for which Applicants were successful.  As such, in this Court's exercise of its broad discretion to reduce unreasonable or unnecessary fees, the Court will opt to utilize a one for one reduction of the Supplemental Fee Application.  Because Applicants were unable to prove that 70% of their requested fees were reasonable and necessary in the Fee Application, the Court similarly considers 70% of the time spent defending the Fee Application to

---

[300] *In re Rodriguez*, 517 B.R. 724, 736 (Bankr. S.D. Tex. 2014).
[301] *See id.*
[302] *Id.*

not be reasonable nor necessary.[303]   As such, any award of fees in the Supplemental Fee Application will be reduced by 70% based on the overall level of success that Applicants achieved in defending their Fee Application.  The Court shall reduce the $122,109.50 in fees sought by KB Firm in the Supplemental Fee Application by 70% after all line-item reductions are deducted as discussed *infra*.

Next, the Court will consider Defendants' objections to the Supplemental Fee Application.

### 1.  Defendants' Objections to the Supplemental Fee Application

Defendants raise three arguments in their Supplemental Fee Objection: (a) that this Court lacks discretion to award fees for defending a fee application under 11 U.S.C. 105(a), (b) that this Court lacks discretion to award fees for defending a fee application under 15 U.S.C. 1692k(a)(3), (c) should the Court award Applicants' fees for defending their Fee Application, that various billing entries were not reasonable and should be disallowed, and (d) that Applicants are not entitled to fees and expenses that pertain to appellate work in this case.[304]  The Court will consider each in turn.

### a.  Whether this Court has authority to award fees for fee defense litigation under 11 U.S.C. § 105(a)

Defendants' first argue that the Supreme Court's decision in *Baker Botts L.L.P. v. ASARCO LLC* precludes this Court's ability to award fees for fee defense litigation under § 105(a), as § 105(a) does not specifically authorize an award of attorneys' fees for fee defense litigation.[305]  In support, Defendants' cite *Baker Botts* for the proposition that, "[i]n our legal system, no attorneys,

---

[303] *See e.g., In re Lopez*, 576 B.R. 84, 93 (Bankr. S.D. Tex. 2017) ("the court 'need not, and indeed should not, become green-eyeshade accountants' because 'the essential goal [is] ... to do rough justice, not to achieve auditing perfection.'") (citing *Fox v. Vice*, 563 U.S. 826, 838 (2011)).
[304] ECF No. 470.
[305] ECF No. 470 (citing 576 U.S. 121, 127 (2015)).

regardless of whether they practice in bankruptcy, are entitled to receive fees for fee-defense litigation absent express statutory authorization."[306]

The Supreme Court held in *Baker Botts* that, "Section § 330(a)(1) does not permit bankruptcy courts to award fees to § 327(a) professionals for defending fee applications."[307] The Court's analysis focused on the express language of § 330(a)(1), which allows courts to award, "reasonable compensation for actual, necessary services rendered."[308] The Court reasoned as such:

> The word "services" ordinarily refers to "labor performed for another." Thus, in a case addressing § 330(a)'s predecessor, this Court concluded that the phrase "'reasonable compensation for services rendered' necessarily implies loyal and disinterested service in the interest of' a client. Time spent litigating a fee application against the administrator of a bankruptcy estate cannot be fairly described as "labor performed for"—let alone "disinterested service to"—that administrator.[309]

This Court notes that the Supreme Court's rationale in limiting fee awards under § 330(a)(1) is highly dependent on the specific limiting language "services rendered" that appears in the statute.[310]

Section 105(a) operates as a codification of this Court's inherent authority to sanction a party for bad faith behavior.[311] This Court does not read the holding in *Baker Botts* as precluding this Court's ability to award attorneys' fees, including fees incurred defending a fee application, as a sanction for bad faith conduct under § 105(a).[312] This Court, as well as the Fifth Circuit, has upheld a bankruptcy court's authority to award attorney's fees as a sanction under § 105(a) since

---

[306] *Baker Botts*, 576 U.S. at 133-134.
[307] *Id.* at 121.
[308] *Id.*
[309] *Id.* (internal citations omitted).
[310] *See id.*
[311] *See e.g.*, *In re Noram Res., Inc.*, No. 08-38222, 2015 WL 5965654, at fn. 4 (Bankr. S.D. Tex. Oct. 9, 2015).
[312] *See* ECF No. 341 at 15-16, 33 (finding Defendants' actions constituted bad faith and that sanctions would be imposed pursuant to § 105(a) for abuse of process).

the *Baker Botts* decision.[313]  Defendants' reliance on *In re Lopez* and *In re Standley*, are similarly misplaced as each concerned fees sought for fee defense litigation under § 330 and not as a sanction under § 105(a).[314]

Defendants also briefly attempt to argue that *Lopez* precludes an award of fees for fee defense litigation under § 105(a) and cite the Court's opinion for the proposition that, "[s]anctions to reimburse legal fees must be compensatory rather than punitive in nature… the court must establish a causal link between the sanctionable conduct and the opposing party's attorney's fees through a 'but-for test…'"[315]  While the Court agrees with this proposition, the Court also notes that were it not for the underlying abuse of process, Applicants would not be here today defending their Fee Application, thus satisfying the "but for" test.[316]  The Court does not read its opinion in *Lopez* as precluding fee awards for fee defense litigation under § 105(a).

Accordingly, Defendants' objection that this Court lacks authority to award reasonable attorneys' fees for fee defense litigation under § 105(a) is overruled.

### b.  Whether this Court has authority to award fees for time spent defending a fee application under 15 U.S.C. § 1692k(a)(3)

Defendants similarly argue that *Baker Botts* precludes this Court's ability to award fees incurred in fee defense litigation under 15 U.S.C. § 1692k(a)(3).[317]  Defendants again cite the Supreme Court for the proposition that, "[i]n our legal system, no attorneys, regardless of whether they practice in bankruptcy, are entitled to receive fees for fee-defense litigation absent express

---

[313] *See Matter of Carroll*, 850 F.3d 811, 816 (5th Cir. 2017); *In re Semco Mfg. Co., Inc.*, No. 22-70149, 2023 WL 187016, at *10 (Bankr. S.D. Tex. Jan. 13, 2023). *See also In re Anloc, LLC*, No. 12-31267, 2021 WL 5441076, at *2 (Bankr. S.D. Tex. Nov. 18, 2021) (listing cases upholding a bankruptcy court's authority to sanction under § 105(a)); *In re Rodriguez*, 517 B.R. 724, 736 (Bankr. S.D. Tex. 2014).
[314] ECF No. 470 (citing 576 B.R. 84 (Bankr. S.D. Tex. 2017); No. 14-36711, 2018 WL 1457242, at *2 (Bankr. S.D. Tex. Mar. 20, 2018)).
[315] ECF No. 470 at 11-12 (citing *In re Lopez*, 576 B.R. 84, 93 (Bankr. S.D. Tex. 2017)).
[316] *Lopez*, 576 B.R. at 93.
[317] ECF No. 470 at 14.

statutory authorization."   However, Defendants' argument collapses almost immediately when scrutinized.

In *Baker Botts*, the Court states that, "[h]ad Congress wished to shift the burdens of fee-defense litigation under § 330(a)(1), it could have done so, as it has done in other Bankruptcy Code provisions, *e.g.*, § 110(i)(1)(C)."[318]   Section 110(i)(1)(C) provides, inter alia, for an award of, "reasonable attorneys' fees and costs in moving for damages under this subsection."[319]   Similarly, § 1692k(a)(3) allows this Court to award, in a successful action, "the costs of the action, together with a reasonable attorney's fee as determined by the court."   These statutes are nearly identical, and as such, this Court concludes per the Supreme Court's reasoning in *Baker Botts* that § 1692k(a)(3) does in fact allow for an award of attorneys' fees for fee defense litigation.

Defendants' also cite to *Tejero v. Portfolio Recovery Associates, LLC*, in support of their argument that this Court is precluded from awarding fees for fee defense litigation.[320]   However, as Defendants acknowledge, *Tejero* did not concern whether § 1692k(a)(3) allows for an award of fees for fee defense litigation, but rather whether a settlement constituted a "successful action" under the statute.[321]   As such, *Tejero* is neither binding nor relevant to the present discussion.

Accordingly, Defendants' objection that this Court does not have the authority to award fees for fee defense litigation under § 1692k(a)(3) is overruled.

### c.  Whether fees sought in the Supplemental Fee Application are neither reasonable nor necessary

Defendants finally object that certain fees and expenses in the Supplemental Fee Application are not reasonable or necessary.[322]   Specifically, Defendants assert that various time

---

[318] *Baker Botts*, 576 U.S. at 122.
[319] 11 U.S.C. § 110(i)(1)(C).
[320] ECF No. 470 (citing 993 F.3d 393 (5th Cir. 2021)).
[321] *See id*.
[322] *See generally id*.

entries are (i) block-billed, (ii) concern inter-office conferences that should be disallowed as unreasonable, (iii) are excessive, and (iv) are over staffed/use a higher rate attorney than is reasonable.[323]  The Court will consider each in turn.

### i.   Block-billed time entries

Defendants assert that the following time entries from the Supplemental Fee Application, totaling $8,475, should be disallowed entirely for being block-billed:[324]

---

[323] *Id.*
[324] ECF No. 470-1.

| Date | EE | Activity | Description | Rate | Hours | Total |
|------|-----|----------|-------------|------|-------|-------|
| 06/03/2020 | CDS | Fee Application | Draft joint motion for scheduling conference on fee application and order on same.  Review local rules and court rues [sic] on form of order and email KLK regarding [redacted] | $350.00 | 0.5 | $175.00 |
| 09/08/2020 | CNW | Fee Application | Attention to Plaintiffs' previous production and correspondence with respect to Defendants' request for production. Email correspondence to KLK regarding [redacted]. | $300.00 | 0.6 | $180.00 |
| 10/21/2020 | CDS | Fee Application | Review case law on motions for protective order and standards for same. Confer with CNW. | $350.00 | 0.8 | $280.00 |
| 12/13/2021 | CDS | Fee Application | Draft response to fee application. Review files and pleadings. Review memorandum opinion to determine the issues already resolved by the Court's ruling on Defendants' motion for summary judgment. | $350.00 | 1.5 | $525.00 |
| 12/20/2021 | CDS | Fee Application | Revise response to fee objection and forward to KLK for review. Confer regarding brief and distinguishing case law. | $350.00 | 1.5 | $525.00 |
| 12/21/2021 | CDS | Fee Application | Revise response to objection to fee application per KLK instruction. Conference with same. Confer with | $350.00 | 3.6 | $1,260.00 |

| | | | MSA regarding [redacted] | | | |
|---|---|---|---|---|---|---|
| 12/22/2021 | CDS | Fee Application | Confer with KLK regarding [redacted] Multiple revisions of same; proof and edit; file same. | $350.00 | 4.2 | $1,470.00 |
| 01/04/2022 | CDS | Fee Application | Draft and revise supplemental fee application. Confer with CNW regarding [redacted]. Review supplemental declarations. | $350.00 | 3.6 | $1,260.00 |
| 01/05/2022 | CDS | Fee Application | Re-draft fact section of supplemental fee application. Confer with KLK regarding [redacted] | $350.00 | 2.8 | $980.00 |
| 01/06/2022 | CDS | Fee Application | Finalize form of supplemental fee application and forward to KLK for review; confer regarding same. Research cases as to whether Johnson factors apply to supplemental fee application. Draft KLK supplemental declaration. Research fee-shifting statute exception to ASARCO and policy behind fee-shifting. | $350.00 | 5.2 | $1,820.00 |

**TOTAL:  $8,475.00**

The Court agrees that the time entries listed above are block-billed.  Furthermore, many of these time entries with redacted entries are also vague.  Rather than entirely disallow these fees as Defendants request, the Court will reduce these fees by 30%.

Accordingly, Defendants' objection is sustained in part and the above entries are reduced by 30% from $8,475 to $5,932.50.

### ii.    Inter-office conferences

Defendants argue that the following billing entries for inter-office conferences were neither reasonable nor necessary and should be disallowed:[325]

| Date | EE | Activity | Description | Rate | Hours | Total |
|---|---|---|---|---|---|---|
| 05/28/2020 | KLK | Fee Application | Conference with TO3 regarding same (.2) | $500.00 | 0.2 | $100.00 |
| 09/03/2020 | KLK | Fee Application | Conference with TO3 regarding [redacted]. | $500.00 | 0.3 | $150.00 |
| 09/22/2020 | TOB | Fee Application | Telephone conference with KLK regarding [redacted] | $435.00 | 1.0 | $435.00 |
| 09/23/2020 | KLK | Fee Application | Conference with RD regarding [redacted] (.5) | $500.00 | 0.5 | $250.00 |
| 09/25/2020 | CNW | Fee Application | Conference with KLK regarding [redacted] | $300.00 | 0.2 | $60.00 |
| 10/02/2020 | CNW | Fee Application | Conference with TO3 regarding [redacted] | $300.00 | 0.7 | $210.00 |
| 10/06/2020 | CNW | Fee Application | Conference with TO3 to [redacted] | $300.00 | 0.2 | $60.00 |
| 10/06/2020 | CNW | Fee Application | Post-call conference with TO3 regarding [redacted] | $300.00 | 0.1 | $30.00 |
| 10/07/2020 | CNW | Fee Application | Conference with TO3 to prepare for [redacted] | $300.00 | 0.2 | $60.00 |
| 10/21/2020 | CNW | Fee Application | Conference with TO3 regarding [redacted] | $300.00 | 1.0 | $300.00 |
| 10/23/2020 | KLK | Fee Application | Conference with TO3 regarding [redacted] (.3) | $500.00 | 0.3 | $150.00 |
| 12/17/2020 | TOB | Fee Application | Conference with CNW on [redacted] (.4) | $435.00 | 0.4 | $174.00 |
| 12/17/2020 | TOB | Fee Application | Conferences with CNW regarding [redacted]. (.5) | $435.00 | 0.5 | $217.50 |
| 02/12/2021 | CNW | Fee Application | Telephone conference with KLK regarding [redacted] | $300.00 | 1.1 | $330.00 |
| 02/12/2021 | TOB | Fee Application | Email, text, telephone conferences with KLK and CNW regarding [redacted] | $435.00 | 1.0 | $435.00 |
| 03/01/2021 | TOB | Fee Application | Telephone conference with KLK regarding [redacted]. (.9) | $435.00 | 0.9 | $391.50 |
| 03/05/2021 | CNW | Fee Application | Multiple conferences with KLK reviewing [redacted] | $300.00 | 3.0 | $900.00 |

---

[325] ECF No. 470-2.

| 04/13/2021 | CNW | Fee Application | Conferences with KLK regarding [redacted]. (.2) | $300.00 | 0.2 | $60.00 |
|---|---|---|---|---|---|---|
| 04/21/2021 | CNW | Fee Application | Telephone conference with KLK regarding [redacted]. (.1) | $300.00 | 0.1 | $30.00 |
| 04/27/2021 | CNW | Fee Application | Conference with KLK regarding information needed for sur-reply. (.3) | $300.00 | 0.3 | $90.00 |
| 04/28/2021 | CNW | Fee Application | Telephone conference with KLK regarding [redacted] (.1) | $300.00 | 0.1 | $30.00 |
| 11/11/2021 | KLK | Fee Application | Conference with TO3 regarding [redacted] | $500.00 | 0.1 | $50.00 |
| 11/17/2021 | KLK | Fee Application | Conference with MSA regarding materials [redacted] (.1) | $500.00 | 0.1 | $50.00 |

**TOTAL:  $4,563.00**

Applicants indicated in their Response to the Supplemental Fee Objection that it was their intention to submit unredacted billing records to the Court for *in camera* review so the Court was in a better position to assess their reasonableness.[326]  However, the Court never received these unredacted records.  Although redaction of billing records is acceptable in some instances, the Court must have sufficient information to judge the reasonableness of the fees.[327]  These billing entries are not just vague, they lack any description of the substance of what was discussed entirely. Without any indication of what was discussed, the Court cannot assess their reasonableness at all.

Accordingly, Defendants' objection that certain inter-office conference billing entries were not reasonable or necessary is sustained and the above fees in the amount of $4,563 are disallowed in their entirety.

      iii.      **Excessive billing**

---

[326] ECF No. 474 at 6-7.
[327] *Randolph v. Dimension Films*, 634 F. Supp. 2d 779, 800 (S.D. Tex. 2009) (citing *Vantage Trailers, Inc. v. Beall Corp.*, No. 06-3008, 2008 U.S. Dist. LEXIS 68402, at *3 (S.D. Tex. Aug. 28, 2008)).

Defendants assert that Applicants spent an excessive amount of time: (1) compiling documents and providing a timeline of events to Mr. Rao for his expert report, and (2) preparing a witness and exhibit list for the hearing on the motion for a protective order:[328]

**Task**: Compile Documents for and Provide Timeline of Events to Plaintiffs' Expert

| Date | EE | Activity | Description | Rate | Hours | Total |
|------|-----|----------|-------------|------|-------|-------|
| 09/09/2020 | RD | Fee Application | Compile documents for J. Rao review for expert report | $100.00 | 1.0 | $100.00 |
| 09/16/2020 | RD | Fee Application | Compile documents to send to J. Rao for expert report. | $100.00 | 0.7 | $70.00 |
| 09/23/2020 | RD | Fee Application | Work on timeline to J. Rao of case events. | $100.00 | 3.2 | $320.00 |
| 09/24/2020 | RD | Fee Application | Continue work on timeline of events for J. Rao expert report. | $100.00 | 5.9 | $590.00 |
| 09/25/2020 | RD | Fee Application | Continue work on timeline of case events for J. Rao expert report. | $100.00 | 6.6 | $660.00 |
| 09/28/2020 | RD | Fee Application | Prepare documents to send to J. Rao for expert report. | $100.00 | 1.1 | $110.00 |
| 09/29/2020 | RD | Fee Application | Continue review of documents and compile documents to send to J. Rao. Continue work of timeline of events. | $100.00 | 2.5 | $250.00 |

**TOTAL:**     **21.0 hours**     **$2,100.00**

---

[328] ECF No. 470-3.

**Task**: Prepare Witness and Exhibit List for Hearing on Motion for Protective Order[1]

| Date | EE | Activity | Description | Rate | Hours | Total |
|------|------|----------|-------------|------|-------|-------|
| 11/27/2020 | CNW | Fee Application | Prepare witness and exhibit list for hearing on motion for protective order. | $300.00 | 1.0 | $300.00 |
| 12/16/2020 | CNW | Fee Application | Review witness & exhibit list and exhibits. | $300.00 | 0.8 | $240.00 |
| 12/17/2020 | CNW | Fee Application | Finalize and file witness and exhibit list for motion for protective order hearing and finalize exhibits for hearing. | $300.00 | 1.5 | $450.00 |

**TOTAL:**   **3.3 hours**   **$990.00**

Defendants also generally assert that the $18,595 spent by Applicants on their motion for a protective order was excessive.[329]  While the proponent of a fee application carries the ultimate burden to show that the fees sought are reasonable, an objecting party must provide detailed information explaining why the fees sought are not reasonable.[330]  Defendants provide little argument as to why the above entries are excessive.  The Court does not consider the twenty-one hours spent by "RD" to be excessive, especially in light of the low billing rate of $100 per hour done for this work.  As to the 3.3 hours billed by Wells, although it seems on the high side for preparing a fairly short witness and exhibit list, the Court does not consider this to be excessive either.

Defendants assert that the $18,595 spent on the motion for a protective order was excessive because it would have been filed by Plaintiffs regardless of the concessions Defendants made in discovery.[331]  The Court is unpersuaded by this speculative argument.  Furthermore, the Court

---

[329] ECF No. 470 at 18.
[330] *Wegner v. Standard Ins. Co.*, 129 F.3d 814, 823 (5th Cir. 1997).
[331] ECF No. 470 at 18.

notes that the out of the 113 disputed discovery requests that a majority were either ultimately withdrawn by Defendants or the Court sustained Plaintiffs' objections to their production.[332]  In light of the level of success Plaintiffs ultimately achieved on the motion for a protective order and the amount that Applicants already voluntarily reduced from their fees in their exercise of billing judgment, the Court declines to further reduce the $18,595 sought by Applicants based on Defendants' argument that these fees are excessive.

Accordingly, Defendants' objection that certain time entries are excessive is overruled.

### iv.    Excessive staffing and use of high rate attorneys

Defendants next generally object to the amount of time that Kellett and Bartholow personally spent defending the Fee Application and argue that more of the time spent defending the fee application should have been delegated to associates who bill at a lower rate.[333]  Defendants also generally assert that Applicants exercised a lack of billing judgment in this case.[334] Defendants do not point to any specific time entries that they believe should have been handled by an associate billing at a lower rate.  In response, Applicants note that KB Firm only has four attorneys on staff, and that the work performed by Kellett and Bartholow personally was reasonable given the amount of work that was necessary in this case.[335]

First, the Court has already ruled that the rates charged by KB Firm are reasonable.  The Court also notes both that KB Firm wrote off a significant amount of time from what was requested in the Supplemental Fee Application, thus showing good billing judgment. The Court does not find that the staffing decisions or overall billing judgment of KB Firm was unreasonable as it relates to the Supplemental Fee Application.

---

[332] *See* ECF No. 419.
[333] ECF No. 470 at 18-19.
[334] *Id.*
[335] ECF No. 474 at 7-8.

Accordingly, Defendants' objection is overruled.

### d. Fees and expenses that pertain to appellate work in this case

Finally, Defendants briefly argue that Applicants are not entitled to fees and expenses that pertain to appellate work in this case.[336]  Defendants acknowledge that no fees or expenses are pending before the Court for appellate work in this case and that this issue is not ripe for consideration.[337]  The Court agrees that this issue is not ripe for consideration and declines to rule on this issue.

Accordingly, because the issue of whether Applicants are entitled to fees and expenses for appellate work in this case is not ripe for consideration, Defendants' objection is overruled without prejudice.

To summarize, the total fees awarded to KB Firm in the Supplemental Fee Application are as follows:

Fees sought by KB Firm: $122,109.50

Line-item reductions:

| Discussion at page number(s): | Line item reduction | Amount reduced/disallowed |
|---|---|---|
| 76-78 | Reduced for block-billing. | $2,542.50 |
| 78-80 | Disallowed for being impermissibly vague, and thus not reasonable or necessary. | $4,563 |
| | | Total: $7,105.50 |

The Court first reduces KB Firm's requested fees from $122,109.50 to $115,004 per the line-item reductions discussed *supra*.  Next, the Court reduces the fees sought by KB Firm in their Supplemental Fee Application by 70% based on the overall level of success Applicants' achieved in defending their Fee Application as discussed *supra* from $115,004 to $34,501.20.

---

[336] ECF No. 470 at 20.

[337] *Id.*

Accordingly, KB firm is awarded reasonable and necessary attorneys' fees totaling $34,501.20 from their Supplemental Fee Application.

## 2. KB Firm's Requested Supplemental Expenses

KB Firm requests that the Court award $8,260.70 in additional expenses incurred defending their fee application.[338]  Primarily, these expenses pertain to Westlaw charges, Pacer Charges, and an expert report compiled by John Rao totaling $6,525.00.  Defendants contend in their Supplemental Fee Objection that the $6,525.00 paid to John Rao for his expert report cannot be shifted as an expense to Defendants under Fifth Circuit caselaw.[339]  For the same reasons discussed *supra*, the Court agrees and disallows the $6,525.00 paid by Applicants to retain John Rao as an expert.

The Court also disallows the $1,343.30 in Westlaw charges in the Supplemental Fee Application for the same reasons stated *supra*:[340]

| Date | Description | Amount Requested |
|------|-------------|------------------|
| 06/13/2020 | Westlaw | $7.30 |
| 06/24/2020 | Westlaw | $82.38 |
| 06/25/2020 | Westlaw | $228.59 |
| 06/26/2020 | Westlaw | $26.07 |
| 06/26/2020 | Westlaw | $3.12 |
| 08/18/2020 | Westlaw | $12.43 |
| 08/31/2020 | Westlaw | $2.92 |
| 08/31/2020 | Westlaw | $31.74 |
| 09/04/2020 | Westlaw | $16.01 |
| 09/04/2020 | Westlaw | $13.01 |
| 09/08/2020 | Westlaw | $1.50 |
| 09/09/2020 | Westlaw | $36.04 |
| 09/11/2020 | Westlaw | $14.51 |
| 09/16/2020 | Westlaw | $63.64 |
| 09/19/2020 | Westlaw | $13.56 |
| 09/20/2020 | Westlaw | $16.56 |

---

[338] ECF No. 466-1.
[339] ECF No. 470 at 19-20.
[340] ECF No. 466 at 31-32.

| 09/25/2020 | Westlaw | $12.54 |
|---|---|---:|
| 10/06/2020 | Westlaw | $2.71 |
| 10/07/2020 | Westlaw | $20.90 |
| 10/12/2020 | Westlaw | $2.71 |
| 10/13/2020 | Westlaw | $93.05 |
| 10/19/2020 | Westlaw | $12.70 |
| 10/21/2020 | Westlaw | $21.71 |
| 10/21/2020 | Westlaw | $4.99 |
| 10/30/2020 | Westlaw | $4.99 |
| 11/23/2020 | Westlaw | $14.13 |
| 11/24/2020 | Westlaw | $33.03 |
| 11/27/2020 | Westlaw | $61.34 |
| 11/28/2020 | Westlaw | $17.72 |
| 12/03/2020 | Westlaw | $5.75 |
| 12/04/2020 | Westlaw | $41.14 |
| 12/08/2020 | Westlaw | $18.40 |
| 12/17/2020 | Westlaw | $52.14 |
| 12/18/2020 | Westlaw | $32.30 |
| 12/21/2020 | Westlaw | $4.03 |
| 01/10/2021 | Westlaw | $36.52 |
| 07/12/2021 | Westlaw | $20.83 |
| 07/12/2021 | Westlaw | $74.02 |
| 07/13/2021 | Westlaw | $3.90 |
| 07/13/2021 | Westlaw | $3.90 |
| 09/15/2021 | Westlaw research | $1.46 |
| 09/17/2021 | Westlaw research | $84.74 |
| 09/18/2021 | Westlaw research | $1.46 |
| 09/20/2021 | Westlaw research | $23.82 |
| 09/21/2021 | Westlaw research | $13.11 |
| 09/24/2021 | Westlaw research | $45.14 |
| 09/24/2021 | Westlaw research | $8.74 |
| | | **Total: $1,343.30** |

Accordingly, KB Firm's fees sought in the Supplemental Fee Application are reduced from $8,260.70 to $392.40.

## F.  Fee Application Summary

Below is a summary of the Court's ruling regarding the various fee applications and the total amount awarded:

| Fees/expenses requested | Requested by | Requested in | Discussion at pages | Total reductions | Amount awarded |
|---|---|---|---|---|---|
| $641,737.00 in fees | KB Firm | Fee Application | 9-60 | $445,790.00 | $195,947.00 |
| $63,968.42 in expenses | KB Firm | Fee Application | 62-68 | $19,913.78 | $44,054.64 |
| $122,109.50 in fees | KB Firm | Supplemental Fee Application | 69-84 | $87,608.30 | $34,501.20 |
| $8,260.70 in expenses | KB Firm | Supplemental Fee Application | 84-86 | $7,868.30 | $392.40 |
| Subtotal requested by KB Firm: $836,075.62 | KB Firm | Fee Application / Supplemental Fee Application | 9-86 | Subtotal reductions from KB Firm award: $561,180.38 | KB Firm subtotal award: $274,895.24 |
| $34,839.50 in fees | Stone Curtis | Fee Application | 60-62 | $27,871.59 | $6,967.91 |
| $3,153.17 in expenses | Stone Curtis | Fee Application | 68-69 | $699.00 | $2,454.17 |
| Subtotal requested by Stone Curtis: $38,037.67 | Stone Curtis | Fee Application | 60-69 | Subtotal reductions from Stone Curtis award: $28,570.59 | Stone Curtis subtotal award: $9,422.08 |
| **Grand total requested: $874,068.29** | | | | **Grand total reductions: $589,750.97** | **Grand total Award: $284,317.32** |

## G.  Post-Judgment Interest

The Court also orders Defendants to pay post-judgment interest on the total amount of attorneys' fees and expenses awarded to Plaintiffs.  The Fifth Circuit has held that interest on attorneys' fees begins to accrue on the date of the judgment allowing recovery of attorneys' fees and runs until the date the fees are paid in full.[341]  Further, if the prevailing party is awarded attorneys' fees and those fees are a part of the judgment, then those fees will bear interest at the same rate as that applied to the judgment on the merits.[342]  The Fifth Circuit allows this interest on attorneys' fees because it "better serve[s] the purpose of awarding these expenses to the prevailing party since it... more nearly compensate[s] the victor for the expenses of the litigation."[343]  In the suit at bar, the rate that will be in effect is 4.70% per annum, the rate in effect when judgment was

---

[341] *See* Copper Liquor, Inc. v. Adolph Coors Co., 701 F.2d 542, 544-45 (5th Cir. 1983) (en banc), *overruled in part on other grounds by J.T. Gibbons, Inc. v. Crawford Fitting Co.*, 790 F.2d 1193, 1195 (5th Cir. 1986), *aff'd* 482 U.S. 437, 107 S.Ct. 2494, 96 L.Ed.2d 385 (1987).

[342] *Id.*

[343] *Id.* at 544.

entered on February 9, 2023.[344]

### III.    CONCLUSION

A judgment consistent with this Memorandum Opinion will be entered on the docket simultaneously herewith.

SIGNED February 9, 2023

Eduardo V. Rodriguez
Chief United States Bankruptcy Judge

---

[344] *Post-Judgment Interest Rates,* United States District & Bankruptcy Court Southern District of Texas, http://www.txs.uscourts.gov/page/post-judgment-interest-rates (last visited February 9, 2023).